IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMEBASE PTY LTD., | ) |
| | ) Civil Action No. 07-cv-04551-JNE-JJG |
| Plaintiff, | ) |
| vs. | ) Honorable Joan N. Ericksen |
| | ) Magistrate Judge Jeanne J. Graham |
| THE THOMSON CORPORATION, | ) |
| WEST PUBLISHING CORPORATION, | ) |
| AND WEST SERVICES, INC., | ) **TIMEBASE'S RESPONSE TO** |
| | ) **THOMSON'S MOTION TO STAY** |
| Defendants. | ) **AND CONSOLIDATE** |

A stay of litigation on the '228 patent is inappropriate because:

1) the '228 (which was filed as a separate lawsuit) has different claims that overcame <u>all</u> of the prior art which is the subject of the '592 reexamination;

2) the outcome of the '592 reexamination will not narrow the scope of discovery or the numbers of products accused of infringement, as there are no products accused by the '592 patent which are not also accused of infringement under the '228 patent; and

3) Thomson's cited authority about reexamination benefitting various issues actually weighs against a stay.

TimeBase incurred delay in obtaining the '228 patent because it erred on the side of disclosure to the PTO – it pulled the '228 patent back from issue so that the Examiner could give his expert analysis on the very prior art and arguments that some anonymous requester filed against TimeBase's '592 patent. Having incurred months of delay to get the '228 patent issued over the '592 reexamination prior art, it is an unfair penalty to TimeBase to cause additional delay waiting for the PTO to compare the same prior art to different claims in a different patent. The patent statute grants a patent owner the right to exclude others from making, using, offering for sale, or selling the patented invention for only twenty years from filing. See 35 U.S.C. 154(a), 271(a). Some of that

time period for the '228 patent was already irrevocably lost overcoming the very reexamination prior art and arguments that is the basis for Thomson's request for further delay.

Thomson repeats the common misconception that monetary damages always can compensate a patent owner's right to exclude others. (Thomson Memo at 8). Such a view ignores the Federal Circuit's view that "because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Polymer Technologies, Inc. and Walter Polovina v. Andrew P. Bridwell, H.A. Spec. Co., and Westmark AG Group, Inc.*, 103 F.3d 970 (Fed. Cir. 1996). The right to exclude has value only through the power of a Court which enjoins further infringing activities. 35 U.S.C. 283. Thomson's proposed stay would stall not only the present litigation, but also would effectively end any hopes of licensing other infringers or potential licensees, as there would be no perceived value to the '228 patent without any risk that infringement might be enjoined in the foreseeable future. (Muldoon Dec. at paras. 4 and 7). Thomson's motion would have the Court waste the value of the '228 patent and its related patent applications. As discussed below, the '592 reexamination provides no benefit to the '228 patent – there will be no fewer accused products, no fewer sales to form the basis for any damages claim, and no benefits to claim construction or validity. Thomson's motion for stay should be denied.

## I.　A STAY CANNOT REDUCE OR ELIMINATE ISSUES TO BE LITIGATED

"The primary purpose of the reexamination procedure is to 'eliminate trial of that issue (when the [patent] is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the [USPTO] (when a claim survives the reexamination proceedings).'" *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994)(quoting *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (*rev'd on other grounds*)). In the present case,

however, this "primary purpose" is irrelevant to the litigation of the '228 patent: the outcome of the '592 reexamination will not eliminate trial of the '228 patent, and the Court already has the expert analysis of the PTO comparing the '228 patent to the prior art cited in the '592 patent, since <u>the '228 Examiner considered all of the references and arguments set forth in the '592 reexamination request.</u>

Put another way, even if the USPTO were to determine that all of the '592 claims are invalid (which is an unlikely result) this case will need to proceed with respect to the claims of the '228 patent. See *Gladish v. Tyco Toys, Inc.*, 29 USPQ.2d 1718, 1720 (E.D. Cal. 1993) (denying motion for a stay pending resolution of a reexamination proceedings because "the reexamination proceeding will not finally resolve all the issues in the litigation") (Hosteny Dec., Ex.12). See also *American Ceramicraft, Inc. v. Eisenbraun Reiss, Inc.*, 28 USPQ.2d 1241, 1249 (D. N.J. 1993) (denying request for a stay pending resolution of a reexamination proceeding in part because "even if the reexamination is unfavorable, [the patent owner] intends to continue to press the validity of its patent.") (Hosteny Dec., Ex. 13); See also *Emprotech Corp. v. Autotech Corp.*, 15 USPQ.2d 1319, 1320 (denying stay where reexamination would not resolve all issues in the litigation) (Hosteny Dec., Ex. 14). As Thomson points out, there are no products accused of infringing the '592 which are not also accused of infringing the '228 patent. Thus, the '592 reexamination cannot "narrow" the issue of infringement, nor will it "narrow" the issue of damages, since the same volume of sales is at issue for the '228 patent, regardless of the outcome of the reexamination. Even validity would not be finally resolved, since all the references which are the subject matter of the '592 patent were already addressed in the prosecution of the '228. The <u>only</u> forum for resolving any of the issues in dispute is the present lawsuit.

## II. THOMSON IGNORES THE DIFFERENCES OF THE '228 AND '592 PATENTS

Thomson characterizes the '228 patent as a "word for word" copy of the '592 patent (Thomson memo at 4), but ignores key distinctions. The '592 patent cites nine patents and two publications. (Hosteny Dec., Ex. 7). The '228 is a continuation in part, which means it has additional text. The '228 cites more art than does the '592. The '228 cites fifty-seven U.S. patents and patent applications, and fifty documents. (Hosteny Dec., Ex. 8). The cited patents include the '592. (*Id*.). The cited documents include the reexamination request for the '592, which in turn includes the requestor's arguments. (Hosteny Dec., Ex. 8). The documents also include the order granting the request for the reexamination of the '592, where the examiner gave his reasons why there was a substantial new question of patentability regarding the '592. (Hosteny Dec., Ex. 8). The documents include the references used by the requestor. (Hosteny Dec., Ex. 8). Last, the documents include the third party observations filed in the European Patent Office, and several communications with the EPO. (Hosteny Dec., Ex. 8).

Thomson downplays this PTO's expert analysis in the '228 patent, merely noting that "the references that are the subject of the '592 reexamination were not before the PTO when it first allowed the '228 patent[, but that] TimeBase submitted these references after receiving the first notice of allowance." (Thomson memo at 5). Yet the effort that TimeBase put in (and the additional delay it endured) in getting the '228 patent is far greater than Thomson's characterization implies. When TimeBase learned of the references which were the subject of the reexamination of the '592, it took an extraordinary step: it requested the Patent Office to withdraw the '228 from issue, so that the Examiner could specifically consider the references and arguments made in the reexam request for the '592 patent. (Hosteny Dec., Ex. 16). That process consumed several months. The Examiner considered those materials, and issued a new notice of allowance without making any changes to the

claims of the '228. (Hosteny Dec., Ex. 16). The expert nature of this analysis should not be ignored: Stephen Hong, the primary examiner of the '228 patent, has examined eight hundred and fifty-two patents as a primary examiner, and another one hundred and sixteen as an assistant examiner. (Hosteny Dec., Ex. 15). The Examiner's determination that the '228 patent claims were allowable over the references and arguments in the '592 reexamination is the expert view of the PTO – there is no reason for further delay to hear what the PTO says about a different patent prior to litigating the '228 patent.

## III. THOMSON'S RELIANCE UPON ITS CITED AUTHORITY IS MISPLACED

Thomson says that statements of the patentee in a prosecution of a related patent are relevant to claim construction. (Thomson memo at 10, citing *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004)). Yet *Microsoft* is in no way limited to reexamination and its effects upon claim construction. In *Microsoft,* three patents of a five-patent family were asserted. The specifications were identical. The Federal Circuit used statements in the application for the '627 patent to construe the claims of the other two patents. One of the other patents was later in time than the '627, and the other was earlier than the '627. The Federal Circuit used the prosecution history of a later-filed patent to construe the claims of a patent which was already issued. The fact that a patentee has a subsequent pending application, however, should not act as any bar to the ability to enforce other patents in the same family.

Put another way, a patentee with an issued patent may have a pending application which claims priority to an already issued patent, yet the existence of a pending, unissued patent application is no reason to stay litigation involving the issued patent. Likewise, the existence of a reexamination proceeding on the '592 patent is effectively no different than any of TimeBase's other pending patent applications from the same '228 patent family. See, e.g., US2007/0074107 (Hosteny

5

Dec., Ex. 14). Thomson's rationale would have us wait for all the prosecution of all the pending patent applications related to the '228 patent before TimeBase could bring a single infringement claim. There would be no end to waiting for the PTO. Thomson's proposed stay would thus place Timebase at a clear tactical disadvantage, and thus should be denied.

Thomson further argues that Judge Franks's decision in *Pacesetter Inc. v. Cardiac Pacemakers, Inc.*, No. 02-1337, 203 WL 23303473 at *2 (D. Minn. Nov. 19, 2003) is "dispositive" of the issue of whether a Court should stay litigation when less than all of the patents in suit are subject to a reexamination. However, the resulting litigation in *Pacesetter* suggests the need for continuing discovery in present case. In *Pacesetter*, the patentee had to endure a one year stay of litigation, only to have all of its claims confirmed without any changes. (*Pacesetter* joint stipulation to lift stay, Hosteny Dec., Ex. 17). Even then, in the subsequent claim construction briefing, the defendant in *Pacesetter* criticized the plaintiff for withholding allegedly material arguments from the PTO (Hosteny Dec. Ex. 17, Defendants' Opening Markman brief at 18-19), and further criticized the patentee's claim construction arguments as being influenced by undisclosed prior art references (Hosteny Dec., Ex. 17, Defendants' Opening Markman Brief at 29).

Thomson alleges that there exists an overlap between the '228 and '592 patents on the issue of validity. (Thomson memo at 6). Obviously, Thomson must be referring to some as-yet-unproduced prior art reference in its possession, since the '228 patent overcame all the prior art in the '592 reexamination request. If the subsequent history of *Pacesetter* is any example, discovery in this case should <u>not</u> be stayed, so that we avoid second-guessing by Thomson, similar to what happened in *Pacesetter*, i.e., that TimeBase failed to include alleged prior art or arguments by Thomson during reexamination. Thomson's allusion to "overlap" suggests that it is holding onto additional unproduced prior art that will impact the validity of the '228 and the reexamination of the

6

'592. Again, Thomson's "two bites at the apple" approach to litigation would place TimeBase at a clear tactical disadvantage, and thus weighs heavily against a stay of discovery.

Even if the subsequent history of *Pacesetter* did not weigh against a stay in the present case, the facts of that case are easily distinguishable:

1) in *Pacesetter,* the re-examinations were initiated by the Plaintiff itself, as opposed to the anonymous infringer/requestor in the present case;

2) in *Pacesetter,* the Plaintiff, (the Party opposing the Stay) had itself caused delay, as opposed to the present case when TimeBase promptly brought the alleged prior art to the attention of the Examiner in the '228 prosecution;

3) in *Pacesetter,* the references in question had not been considered in the patent prosecution of any of the patents in the portfolio which formed the basis of the litigation, so the benefit of the PTO's thinking was not available to the parties, as opposed to the present case, where the Court and the parties already have the benefit of Examiner Hong's analysis; and

4) in *Pacesetter,* the re-examination process moved relatively expeditiously (about 1 year), while in the present case, the reexamination is 12 months post filing of the request and still no first Office Action has been received.

The delay in the current reexamination is no accident or anomaly – the average pendency of reexaminations is over 22 months (unlike the median pendency cited by Thomson). (Hosteny Dec., Ex. 10). The most recent statistics from the PTO (i.e., since *Pacesetter*) show a 36% increase in the number of third-party *ex parte* re-examinations (25% overall) filed in 2007 over 2006, and an increase of about sixty-one percent in the portion of *ex parte* re-examination cases that relate to patents the subject of litigation (i.e., those reexamination which would be subject to "special dispatch"). (Hosteny Dec., Exs. 9 and 10). These statistics show a clear trend – the PTO is being

7

clogged by requests for reexamination, and those requests are driving up the delay (and harm) to patent holders. Once a decision to grant or deny the re-examination is made, there are no maximum time periods proscribed during which the PTO is required to complete further substantive steps in the process. Waiting out the increasing delay currently being experienced at the Patent Office simply is not justified by the facts of the present case.

Thomson's reliance upon the *VData LLC v. Aetna, Inc.*, No. 06-1701, 2006 WL 3392889, at *4 (D. Minn. Nov. 21, 2006) (Ericksen J., adopting report and recommendation) case is no better. The *VData* case involved two patents that expired in November 2007, so the future damage was limited. *VData LLC* at *3. Also, reexamination was sought for both patents in the case, and one request had been granted. Here, we already have the PTO's views on the reexamination art as compared to the '228 patent. Unlike *VData*, there is no chance that '228 claims will be narrowed because some claims of the '592 patent would be changed or invalidated. In *VData*, the Court opined that the reexaminations might encourage settlement. The opposite may be true here if the '228 case is stayed. In addition, the delays caused by those reexaminations are at odds with the "median" length of time cited by Thomson. In *VData*, the '524 patent reexam request (90/007,980) was granted on April 6, 2006. The <u>first</u> office action did not issue until December 4, 2007, i.e., 20 months later. The reexamination request for the other patent in *VData* (90/008,204) was granted on January 17, 2007. There has been no office action after twelve months. (Hosteny Dec., Exs. 1-2). Thomson said in its brief that reexams take 17.6 months. The '524 has already considerably exceeded that, and the PTO has only gotten to the first action in that case. Reexaminations can take four to seven years. (Hosteny Dec., Exs. 3-7). In one of these instances, a seven-year-long reexamination was followed by a new reexamination request. (Hosteny Dec., Exs. 3-4). The Patent Office's statistics are skewed; they include very short cases where requests for reexamination were denied.

8

Thomson has also cited *Alloc v. Unilin Decor N.V.,* 2003 U.S. Dist. LEXIS 11917 (D.Del. 2003). In *Alloc*, the Court granted a stay where one of a family of patents was being reexamined, <u>and</u> the ITC had already decided that the other patents in the same family were not infringed by the same defendant. The ITC decision was on appeal, and thus the *Alloc* court decided to wait for both the Patent Office's and the Federal Circuit's decisions. *Alloc* is distinguishable on its facts, too.

## IV. THOMSON IGNORES THE REAL PREJUDICE TO TIMEBASE

Thomson argues that a delay alone cannot constitute prejudice to TimeBase. (Thomson memo at 8). Yet, as Thomson is well aware, the present motion is not simply a matter of delay – rather, the proposed stay would work a serious financial hardship on TimeBase and severely damage the value of the '228 patent as well as patent applications not even in suit.

TimeBase is a small company with 13 employees. (Muldoon Dec., at para.2). Its future depends upon the technology described in the '228 patent and related intellectual property. (Muldoon Dec., at para. 2). Most of TimeBase is owned for the benefit of investors investing pension funds, i.e., funds intended for the benefit of retirees. (Muldoon Dec. at para. 2). TimeBase is actively working to license its technology in the United States, but is hampered in its efforts by the fact that other potential licensees (for instance, Complinet) see Thomson using the technology without a license, and thus there is uncertainty as to whether a license is going to be required. The inability to achieve a positive result with Thomson is a major impediment to persuading other companies to license TimeBase's technology. (*Id*. at para 7).

The technology claimed in the '228 patent (versioning technology and point-in-time storage) is a popular item -- for now. This technology is currently a focus of many large companies in the IT market, and the TimeBase technology may not have an economic life as long as the patent term if TimeBase cannot enter into licensing agreements in a timely fashion and drive adoption of its patented solution. (Muldoon Dec. at para. 5). Thus, the opportunity for TimeBase exists in a

9

window, and that window can close at any time. Delay may well destroy TimeBase's economic opportunity to realize a return for its investors.  Thus, Thomson's proposed stay would unduly prejudice TimeBase.  Thomson's motion should be denied.

## V. CONCLUSION

Thomson motion fails to show how any issue would be helped if a stay of the '228 patent litigation were granted.  To the contrary, the only results of such a delay would be to diminish the value of the '228, to create a clear tactical disadvantage for TimeBase, and to unfairly prejudice TimeBase by grinding all of its other licensing efforts to a halt, both as to the '228 patent and other intellectual property rights.  Thomson's motion to stay should be denied.  Consolidation, to the extent it might preclude a stay, should also be denied.

Respectfully submitted,

 /s/ Joseph N. Hosteny
Joseph N. Hosteny
Arthur A. Gasey
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602
Telephone: (312) 236-0733

Michael R. Cunningham
Gray, Plant & Mooty
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Phone: 612/632-3000
Fax: 612/632-4444
michael.cunningham@gpmlaw.com

Attorneys for TimeBase Pty Ltd.