# Exhibit 13

curved portions. It points to the conflicting expert testimony it proffered as to the definition of the term, on the fact that the dictionary definition does not define curvilinear as *entirely* bounded by curved lines, and on a different interpretation of the prosecution history. Having reviewed this evidence, we agree with the Claims Court. Indeed under PWC's proffered interpretation of "curvilinear", the prior art Buchi patent would literally meet the curvilinearity limitation of claim 1.

PWC's argument is meritless that adopting the court's construction of "passages" and "curvilinear" violates the doctrine of claim differentiation in light of Vrana patent claims 5, 8, 10 and 12. Those claims have other differences which negate invocation of the doctrine. See *Tandon Corp. v. International Trade Comm'n*, 831 F.2d 1017, 1021-22, 4 USPQ2d 1283, 1287- 88 (Fed. Cir. 1987). We are also unpersuaded the court erred in interpreting "curvilinear" by improperly reading a *limitation* from the specification into the claim just because the interpretation is the same as a statement which appears in the specification. PWC simply confuses the interpretation of a term with adding a limitation which has no predicate in the claim. See *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d at 1433-34, 7 USPQ2d at 1131-32; *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1572, 225 USPQ 236, 237 (Fed. Cir. 1985).

In view of the above interpretation, a diffuser will infringe only if it has an airway with a cross-section which consists entirely of curved lines and which extends the entire length of the diffuser section or the equivalent thereof. Because the accused diffuser passage cross-section contains two straight portions downstream of the throat, it does not literally meet the claim language.

With respect to infringement under the doctrine of equivalents, while we do not agree with a great deal of the court's analysis, *e.g.*, on prosecution history estoppel, we are unpersuaded that the key subsidiary finding that the Advanced Dump diffuser and the Vrana diffuser do not achieve the same overall result is clearly erroneous. With respect to that finding, appellant argues only that it is irrelevant what happens downstream of the passages in each diffuser because the different structure which is needed to accommodate the different airflows is not part of the claims. However, the Claims Court found that the two devices did not achieve the same overall result because of the different output. We agree with appellant that the court legally erred in considering the output. Indeed, it had to do so in order to compare the respective overall results. The different structure which is not part of the claim is evidence of a difference in result.

---

### District Court, N.D. Illinois

Enprotech Corp. v. Autotech Corp.

No. 88 C 4853

Decided March 15, 1990

### JUDICIAL PRACTICE AND PROCEDURE

**1. Procedure — Motions (§410.31)**

Defendant's motion, in suit for declaratory judgment of patent invalidity and non-infringement, to stay proceedings pending reexamination of defendant's patents is denied, since re-examination will not resolve all issues presently before court, and since discovery is nearly complete, case is set for trial, and plaintiff, whose customers have apparently been advised of defendant's contention that plaintiff's device is infringing, needs to have matter resolved.

---

Action by Enprotech Corp. against Autotech Corp., for declaration of patent invalidity and non-infringement. On defendant's motion to stay proceedings pending patent reexamination. Denied.

Kenneth J. Gumbiner, of Patton, Boggs & Blow, Greensboro, N.C.; Philip M. Kolehmainen, of Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., for plaintiff.

William T. Rifkin and Stuart I. Graff, of Rockey & Rifkin, Chicago, for defendant.

**Moran, J.**

Defendant has patents disclosing and claiming a resolver, which detects the position of a rotating shaft, with related decoding electronics. Plaintiff markets a position-sensor with related decoding electronics, and defendant has claimed that plaintiff's devices infringe the patents. Plaintiff brought this declaratory action in June, 1988, asserting invalidity and noninfringement. Discovery proceeded, and by late in the fall the parties were anticipating only limited further discovery and, thereafter, a relatively short trial. On January 18, 1990, the new discovery cutoff date was set for March 20, with the final pretrial order to be filed April 18 and trial set for May 7.

That further discovery, however, apparently came up with some surprises. In any event, on January 31, 1990, plaintiff obtained leave to file an amended complaint which squarely raised inequitable conduct in the Patent Office claims and, according to plaintiff, entitled it to attorneys' fees. That same day the defendant asked for a pretrial conference to discuss a possible stay while defendant pursued a reexamination in the Patent Office. That course of action was discussed at a pretrial conference on February 22 and led to further filings on March 5, which had been requested by the court.

The allegations respecting inequitable conduct in the Patent Office relate to a device which, according to plaintiff, was known to the inventor, was material prior art, and was deliberately not disclosed by the inventor to his attorney or to the Patent Office. The reexamination will, presumably, consider that device, as well as various other United States and foreign references, as prior art. It will not, however, determine the inequitable conduct claim pending here. The process will take, optimistically (we presume that defendant would take an optimistic view of the potential chronology), six to nine months. The result may be a confirmation of claims, perhaps in amended form, or it may result in cancellation.

Plaintiff emphasizes that it has little opportunity to participate and the Patent Office is restricted in the information upon which it relies during the reexamination process. Both concerns are real, although we point out that the original issuance, which created a presumption of validity, was the result of an *ex parte* and circumscribed procedure.

[1] More compelling is plaintiff's contention that the reexamination will not resolve everything. If the claims were cancelled it might end it all — if there were no longer any threat of a claim of infringement it is questionable whether plaintiff could continue this action solely to establish that it was an exceptional case. But if any of the claims survived we would be right back here to litigate the claim that the patent should not be enforced because of inequitable conduct in the Patent Office. Most compelling, however, is the fact that discovery here is almost completed and the case is set for trial. Plaintiff's customers apparently are advised that defendant contends that plaintiff is infringing; plaintiff wants to have the matter resolved.

We are too far along the road to justify halting the journey while the defendant explores an alternate route. The motion to stay is denied.