# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

TimeBase Party Ltd.,

        Plaintiff,

v.

The Thomson Corporation, et al.,

        Defendants.

_____

Civil No. 07-cv-4551 (JNE/JJG)

**ORDER**

     Plaintiff TimeBase Party Ltd. ("TimeBase") brings this suit for infringement of a patent relating to the publishing of electronic information. The parties in this case are involved in a related case regarding a related patent also pending before this Court, Civil No. 07-cv-1687 (JNE/JJG). The Court previously stayed that case pending a U.S. Patent and Trademark Office (PTO) reexamination. The Defendants, The Thomson Corporation, West Publishing Corporation, and West Services, Inc. (Thomson), now move to consolidate the two cases and stay the instant matter pending the outcome of the PTO's reexamination of the related patent. For the reasons set forth below, the Court finds that consolidation of the cases is appropriate, but that a stay of the instant case is not. The Court, therefore, grants Defendants' motion (Doc. No. 12) to the extent it seeks consolidation and denies the motion to the extent it seeks a stay.

## I.    BACKGROUND

###    A.    The Parties

     TimeBase is an Australian company principally operating in Sydney. It alleges that Thomson is infringing two of its patents relating to the publishing of electronic information.

Exhibit 1

Dockets.Justia.com

Specifically, TimeBase alleges that Thomson's PastStat Locator, RegulationsPlus, and Graphical Statutes products infringe the patents at issue. *Complaint*, ¶ 10.

Thomson is an information services company. It owns Westlaw, the on-line legal research tool. The products TimeBase alleges infringe its patents are part of the Westlaw research tool.

### B.     The Patents

The patent at issue in the instant suit is TimeBase's U.S. Patent No. 7,293,228 ('228) entitled "Maltweb Multi-Axis Viewing Interface and Higher Level Scoping." *Decl. of Shawn T. Gordon*, Ex. 9. The application for the '228 was filed on October 12, 2000, and the patent recently issued on November 6, 2007. The '228 states that it is a "continuation in part" of U.S. Patent No. 6,233,592 ('592).

The '592 is entitled "System for Electronic Publishing." *Id*. at Ex. 3. The application for the '592 was filed on July 1, 1998, and the patent issued on May 15, 2001. *Id.*

### C.     The Lawsuits

TimeBase sued Thomson for infringement of the '592 patent on January 24, 2007. That case is designated as 07-cv-1687 and is assigned to Judge Ericksen and this Court.[1]

TimeBase subsequently sued Thomson for infringement of the '228 patent on November 7, 2007, the day after that patent issued. That case is designated as 07-cv-4551 and was originally assigned to Judge Montgomery and Magistrate Judge Boylan. On November 28, 2007, the '228 case was reassigned to Judge Ericksen and this Court as related to the '592 litigation. Both cases are, therefore, currently pending before Judge Ericksen and this Court.

---

[1] The '592 suit was originally filed in the United States District Court for the Northern District of Illinois. On the Defendants' motion it was transferred to the District of Minnesota on March 28, 2007.

The Defendants have raised the defense of patent invalidity in both cases.

### D.   The '592 Reexamination

On January 29, 2007, five days after TimeBase filed the '592 lawsuit, a third party not involved in either lawsuit filed a request in the PTO for ex parte reexamination of the '592 patent. *Declar. of Chad Drown*, Ex. 2 (Doc. No. 36, 07-cv-1687).[2] The reexamination request sought review of all 58 claims in the '592 patent based on three printed publication references. *Id.*

The PTO granted the reexamination request on April 3, 2007. *Id.*

### E.   The '592 Stay

On June 14, 2007, Thomson filed a motion to stay the '592 litigation pending the outcome of the PTO's reexamination proceedings. On June 29, 2007, this Court stayed the '592 litigation due to the reexamination, ordering the parties to submit status updates regarding the reexamination every six months.

The parties recently filed such updates. The reexamination remains pending, and the PTO has not issued any office actions to date.

### F.   The '228 Issuance

Approximately five months after the Court ordered a stay of the '592 litigation, the PTO issued the '228 patent. Before it did so, it considered the three prior art references underlying the '592 reexamination. *Decl. of Joseph N. Hosteny*, Ex. 16. It also considered the arguments submitted in the '592 reexamination. *Id.*; *Jan. 24, 2008, Motion Hearing Transcript of Proceedings*, p. 38. The PTO allowed the '228 patent over this information. *Id.*

---

[2] A lawyer from the Connecticut law firm of Harrington & Smith, PC, made the reexamination request. *Drown Decl.*, Ex. 2. The record does not reflect on whose behalf he made this request.

3

## II.   ANALYSIS

Thomson now seeks to expand the stay this Court issued in the '592 litigation to encompass the instant case involving the '228. Thomson argues that, since the patents are related, it is possible that the '592 reexamination could affect the scope of the '228. It maintains, therefore, that the most efficient course is to stay both cases pending the outcome of the reexamination. TimeBase counters that, while the patents are related, the '228 has now issued over the prior art underlying the '592 reexamination. Therefore, it argues that the PTO has already spoken with respect to the '228, and little, if anything, will be gained from the possible considerable delay involved in awaiting the '592 reexamination.[3]

For the reasons set forth below, the Court finds that, on balance, a stay of the '228 litigation is unwarranted.

### A.   Stay of '228 Litigation Pending Reexamination of '592 Patent

#### 1.   Stay Test

The power to stay proceedings is part of a court's inherent power to control its docket. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Lunde v. Helms*, 898 F.2d 1343, 1345 (8th Cir. 1990). Courts often use a three-factored test when considering a stay motion based on patent reexamination: 1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; 2) whether a stay will simplify the issues; and 3) whether discovery is complete and a trial date has been set. *E.g., VData, LLC v. Aetna, Inc.*, Civ. No. 06-cv-1701 (JNE/SRN), 2006 WL 3392889, *4 (D. Minn. Nov. 21, 2006) (slip op.). The party seeking a stay "must make out a clear case of hardship or inequity in being required to go

---

[3] According to PTO statistics, an ex parte PTO reexamination lasts an average of 23.7 months and a median of 18.4 months. *Hosteny Decl.*, Ex. 9. The '592 reexamination commenced on April 3, 2007, and has now been pending for 10 months.

4

forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255.  The decision to grant or deny a stay pending reexamination proceedings rests firmly within the Court's sound discretion.  *Id.*; *VData*, 2006 WL 3392889 at *4 (citing *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994)).[4]

### 2. Application of Stay Factors

While courts generally analyze the three factors outlined above in determining whether to grant a stay motion in this context, the heart of the analysis tends to be on whether a stay will simplify the issues.  The Court, therefore, begins with this factor.

#### a. Simplification of the issues

A common rationale for staying patent infringement litigation pending PTO reexamination is to gain the PTO's expertise regarding the validity and scope of the patent under reexamination.  *E.g.*, *VData*, 2006 WL 3392889 at *6 ("if the court stays the proceedings pending the PTO's reexamination decision, all prior art presented to the court will have been first considered by the PTO, with its particular expertise….") (citing *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565, 1987 WL 6314, *2 (N.D. Ill. Feb. 2, 1987) (quotation omitted)).  This makes sense in many patent infringement cases.  In fact, prior to the issuance of the '228 patent and the filing of the instant lawsuit, the Court found it appropriate to stay the '592 litigation for this reason.

---

[4] This Court has previously considered whether it is authorized to order relief on a stay motion in the context of a PTO reexamination, or whether a report and recommendation is required. *Cognex Corp. v. VCode Holdings, Inc.,* Civ. No. 06-1040 (JNE/JJG), Order and Memorandum, pp. 7-9 (Dec. 11, 2006) (Doc. No. 93), *aff'd* (Feb. 5, 2007).  In *Cognex*, the Court examined the nature of such a stay and determined that, "A stay pending reexamination is not dispositive relief, so therefore, this Court has authority to grant that relief."  Likewise, here, the Court issues an order on Thomson's motion.

However, the PTO's issuance of the '228 patent in November 2007 significantly changes the equation and removes this patent litigation from the ordinary procedural course. The PTO issued the '228 patent after considering the same three prior art references at issue in the '592 reexamination. Thus, the '228 patent issued over the prior art the PTO is still considering in the '592 reexamination. The PTO has, therefore, now spoken with respect to the prior art's impact on the '228 patent, finding that it did not preclude issuance of the patent.

This case is, therefore, unique. A stay of the '228 litigation cannot be premised on the PTO's expertise, because the PTO has already provided its expertise with respect to the '228. The parties agreed at oral argument that the two matters are completely independent within the PTO. In other words, the issuance of the '228 does not affect the '592 reexamination, and the '592 reexamination does not impact the issuance of the '228. Therefore, while no one disputes that the two patents are related, the PTO's issuance of the '228 over the prior art at issue in the reexamination means that the PTO's disposition of the '592 can have little to no effect on the '228, or the instant litigation.

Thomson acknowledged as much at the hearing on this motion, stating that it urged the Court to stay the '228 litigation together with the '592 litigation, not so much for the PTO's expertise, but because TimeBase might make statements in the reexamination regarding the scope of the '592 patent. Such statements, urges Thomson, could also impact the '228, and are sufficient reason to stay both cases. *Motion Hearing Transcript* at 55-56.

While a patentee's statements in a patent proceeding can, in certain circumstances, be part of the prosecution history used to interpret a related patent, *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349-1350 (Fed. Cir.), *cert denied*, 543 U.S. 821 (2004), the Court finds this an insufficient basis to stay the '228 litigation. Rather than a situation where the PTO's

6

decision regarding the '592 patent will either dispense of the '228 case altogether, narrow it in some way, or at least provide the Court with expertise upon which to rely, the Court is presented with a situation where both parties agree that the PTO's expertise will have minimal, if any, effect on this matter. Rather, the sole basis for the stay is the possibility that TimeBase may make a statement that could narrow its claims with respect to the '592, and therefore with respect to the '228. The Court finds this too slim a reed upon which to predicate a stay of the '228 litigation.

The unusual history of the two patents at issue before the PTO distinguishes this case from those upon which Thomson relies. *E.g.*, *Pacesetter, Inc. v. Cardiac Pacemakers, Inc.*, No. Civ. 02-1337 (DWF/SRN), 2003 WL 23303473 (D. Minn. Nov. 19, 2003); *VData*, 2006 WL 3392889 (D. Minn. 2006); *Alloc, Inc. v. Unilin Decor N.V.*, No. Civ. A. 03-253-GMS, 2003 WL 21640372 (D. De. July 11, 2003). In none of those cases had the PTO already considered the import of the prior art references at issue at the time the stay was sought. Thus, while courts have stayed patent infringement cases pending reexamination of related patents, and even unrelated patents, those cases did not involve a situation, as here, where the PTO had already issued its opinion on the prior art in question. Thus, the Court finds those cases inapposite.

Thomson also argues that judicial economy concerns dictate a stay of both cases pending reexamination of the '592. Thomson stresses that both cases involve the same parties, accused products, two of the same inventors, and considerable overlap in witnesses and other discovery. TimeBase acknowledges the significant overlap in litigating the two cases. The Court agrees that judicial economy dictates litigating the two cases together. It disagrees, however, that staying both cases is the best way to proceed. Because, as discussed herein, a stay of the '228

litigation is inappropriate, and it would be inefficient to litigate these related cases separately, the Court finds that judicial economy considerations favor moving forward with both cases now.

### b.  Undue prejudice or clear tactical disadvantage

The Court next considers whether TimeBase would be unduly prejudiced or suffer clear tactical disadvantage by a stay of the '228 litigation pending reexamination of the '592. The Court finds that TimeBase would suffer a clear tactical disadvantage by the stay Thomson seeks.

The '592 reexamination is an ex parte proceeding initiated by a third-party apparently unrelated to TimeBase or Thomson. Because the reexamination is ex parte, only TimeBase, the patentee, substantially participates in the process. Thomson does not participate at all.

Certainly, it would be advantageous to Thomson to stay litigation of the instant matter while it sits on the sidelines watching TimeBase defend the '592 in reexamination. Unlike in patent litigation, a patent is not presumed valid in a PTO reexamination. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988). In a reexamination, a lower preponderance of the evidence standard applies to invalidate a patent claim, rather than the clear and convincing evidence required to prove patent invalidity in court. *Id.* Moreover, Thomson does not have to take any position in the reexamination, because it is not part of it. Thus, its invalidity arguments, including those based on possible additional prior art references, are reserved for use at a later time. TimeBase, conversely, may have to take a position on the scope of the '592 patent in the reexamination, a position that binds it in subsequent litigation or PTO proceedings. This scenario provides the best of both worlds to Thomson. If the PTO confirms the '592's claims, Thomson can still argue the invalidity of both patents in court or the PTO using prior art it has kept to itself during the current PTO proceeding. If the PTO cancels or modifies a claim, Thomson can use that decision to its advantage in subsequent litigation.

Thomson seems to suggest that it is entitled to this strategic advantage. It is not. While a stay pending reexamination may be useful in cases where it will actually simplify the issues, here the Court has determined that it will not. Accordingly, the Court finds that common sense dictates that a stay under these circumstances will clearly work a strategic disadvantage to TimeBase with respect the '228 patent. Not only will TimeBase have to wait indefinitely for a PTO reexamination decision that can have little, if any, impact on the '228's validity, it may have to take positions that will be later used against it in litigation, while Thomson keeps its defenses and arguments under cloak, only to be revealed at a more strategically advantageous time.[5] As such a result does not simplify the litigation process here, neither does it strike the Court as particularly fair under the circumstances of this case.[6]

### c. Timing

The '228 litigation, like the '592 litigation, has just begun. Discovery has not commenced. Thus, the timing factor weighs in favor of a stay. However, the additional factors discussed above tip the scales against imposition of a stay.

In sum, the Court recognizes that stays of litigation pending reexamination are often the routine course. The Supreme Court in *Landis*, however, cautioned against mechanical or

---

[5] The Court recognizes that Congress fashioned the reexamination process to work in this way. This does not, however, compel the Court to reflexively allow use of it to stay litigation that will not significantly benefit from the PTO process. There is nothing inherently inconsistent about the litigation and administrative processes proceeding simultaneously in this case. *See Ethicon*, 849 F.2d at 1428 ("challenging validity in a court and requesting PTO reexamination are concepts not in conflict.") (internal quotation and citation omitted).

[6] Thomson argues that the Court should simply order the stay and then revisit that decision later if the PTO takes too long to act or some other reason justifies varying from the stay. The Supreme Court has expressly rejected this "wait and see" approach. *Landis*, 299 U.S. at 257 ("an order which is to continue by its terms for an immoderate stretch of time is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done"). It sidesteps the fact that it is the stay applicant's burden in the first instance to show it is entitled to a stay.

reflexive use of stays. 299 US. at 255-56 ("We must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions."). *See also Fresenius Medical Care Holding, Inc. v. Baxter Intern., Inc.*, No. C 03-1431 SBA, 2007 WL 1655625, *3 (N.D. Cal. June 7, 2007) ("There is no per se rule that patent cases should be stayed pending reexaminations, because such a rule would invite parties to unilaterally derail litigation.") (citation and internal quotation omitted). The Court finds that such caution is appropriate here in the unique circumstances presented by this case.

### B. The '592 Stay

The Court stayed the '592 litigation on June 29, 2007, before the '228 patent issued and before the instant lawsuit commenced. While the circumstances existing at that time made that stay appropriate, things have changed. A PTO examiner has now indicated that the prior art references at issue in the reexamination did not preclude issuance of the '228 patent. While the '592 examiner could conclude otherwise, the record now before the Court supports moving forward with the litigation. The Court, therefore, in its discretion, finds that circumstances underlying the stay it issued in the '592 litigation have changed, and the '592 stay should be lifted. The '228 and '592 cases shall now proceed together.

### C. Consolidation

The parties do not dispute the clear advantages of litigating the '228 and '592 patent infringement cases together. Rather, they disagree regarding whether both should proceed now or both should be delayed pending the '592 reexamination. As the Court has determined that both cases should now move forward, the Court also consolidates them, as Thomson requested, because they involve common questions of both law and fact. *See* Fed. R. Civ. P. 42(a)(2). The Court, therefore, grants Thomson's consolidation motion.

### III. CONCLUSION

Significant overlap in the '228 and '592 patent infringement cases warrants consolidation of those cases to achieve judicial economy. Staying litigation of the '228 case pending PTO reexamination of the '592 is, on balance, unwarranted as it would not sufficiently simplify the issues presented in the '228 litigation. The PTO has already issued the '228 over the prior art at issue in the reexamination. Because a stay of the '228 litigation is inappropriate, and it would be highly inefficient to litigate these related cases separately, the Court finds that both cases should now move forward.

For the foregoing reasons, and based on all the files, records and proceedings herein,

**IT IS HEREBY ORDERED THAT**:

    A.    Defendants' Motion to Consolidate (Doc. No. 12) is **GRANTED IN PART** to the extent it seeks consolidation of Civil File No. 07-cv-4551 (JNE/JJG) with Civil File No. 07-cv-1687 (JNE/JJG). Accordingly, this case, Civil File No. 07-cv-4551 (JNE/JJG), is **CONSOLIDATED** with Civil File No. 07-cv-1687 (JNE/JJG).

    B.    Defendants' Motion to Consolidate (Doc. No. 12) is **DENIED IN PART** to the extent it seeks a stay of Civil File No. 07-cv-4551 (JNE/JJG).

Dated: February 7, 2008.

                              s/ *Jeanne J. Graham*
                              JEANNE J. GRAHAM
                              United States Magistrate Judge