TimeBase Pty Ltd. v. Thomson Corporation, The et al                                    Doc. 29 Att. 3

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

-----------------------------------------------------------

Timebase Pty, Ltd.,

        Plaintiff,

    vs.                            Case No. 07-1687

The Thomson Corporation,

        Defendant.

-----------------------------------------------------------

THE HONORABLE JEANNE J. GRAHAM

United States Magistrate Judge

\* \* \*

TRANSCRIPT OF PROCEEDINGS

\* \* \*

Date: June 28, 1997

Reporter: Leslie Pingley

(651) 681-8550 phone    1-877-681-8550 toll free
www.johnsonreporting.com

Exhibit 3

Dockets.Justia.com

APPEARANCES

    MR. MICHAEL R. CUNNINGHAM, Attorney at Law, 80 South Eighth Street, Suite 500, Minneapolis, Minnesota 55402 appeared on behalf of named Plaintiff.

    MR. JOSEPH N. HOSTENY, Attorney at Law, 181 West Madison Street, Suite 4600, Chicago, Illinois 60602 appeared on behalf of named Plaintiff.

    MR. CALVIN L. LITSEY and MS. ELIZABETH C. WRIGHT, Attorneys at Law, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402 appeared on behalf of named Defendant.

Also present: Mark Stignani, Thomson Corporation

PROCEEDINGS

(NO REPORTER WAS PRESENT - The following transcript was prepared from a COPY of the original court tape)

THE COURT: All right. This is the matter of Timebase, Ltd. vs. The Thomson Corporation and the Civil File No. is 07-1687. This is assigned to District Court Judge Joan Ericksen and myself, Jeanne Graham, as Magistrate Judge and we're here today on defendant's motion to stay litigation pending reexamination proceedings.

    May I have appearances please, first from plaintiff's side.

MR. CUNNINGHAM: Your Honor, my name is Michael Cunningham. I'm with the Gray Plant Mooty firm here in the Twin Cities and with me today is Joseph Hosteny, lead counsel for the plaintiffs. He's been admitted pro hac vice in this matter.

THE COURT: All right. Great. Thank you.

THE COURT: And from the defense.

MR. LITSEY: Good morning, Your Honor. Calvin Litsey from Faegre & Benson and with me at counsel table is Ms. Wright, also from Faegre & Benson and Mark Stignani from the Thomson Corporation.

THE COURT: All right. Great. Good morning. Well, defendant's motion so you may come to the podium first.

MR. LITSEY: Thank you, Your Honor. May it please the Court and counsel, as stated in our papers, Your Honor, this is really a textbook case for scheduling a stay of these proceedings in accordance with well-established practice in this District.

    We're here at the outset of the case. There's been a reexamination filed by a third party with respect to the patent in suit on new prior art and the patent office has determined that that prior art presents a substantial question of patentability for this patent that's being asserted.

    As the plaintiff acknowledges this prior art also happens to have been art that was relied on in corresponding European proceedings that have served for the basis of rejecting claims

that are virtually identical to the ones being asserted here.

    The recent decisions we cited from Judge Ericksen, Judge Davis and Magistrate Judge Nelson really, I think, provide the framework for what should be followed here and it's not only that those cases really establish the model in this District for how to stand -- how to handle scheduling stays under these circumstances, but they are really thoughtful opinions that I think really describe, excuse me, in some detail the factors that did apply and if you look at each of those established factors -- I'm sorry, I'm losing my voice.

THE COURT: That's all right.

MR. LITSEY: I will get a glass of water.

    If you look at each of those established factors, they really overwhelmingly favor the scheduling of a stay here as a case management tool, so you look first at the plaintiff and whether or not the plaintiff would be prejudiced and here you have a company that's asserted the patent five years after it's issued. It's an Australian company that doesn't conduct business

Page 6

in the United States, doesn't have a product here, doesn't have a presence here. It's basically asserting a patent to obtain money damages and certainly a stay does not affect that sort of relief and they don't argue that it would.

Second, this case is at the earliest stages of the litigation, so it's really the classic case in which courts exercise their discretion to schedule a stay or literally before any discovery has commenced and I think as Judge Ericksen and Judge Davis both wrote in their opinions under these circumstances scheduling a stay is routinely granted so that's their words.

And third, of course, staying the proceedings will simplify and narrow the issues here. It really avoids wasting the Court's time, the party's times, expending resources when the patent is really in flux and therefore in these same cases the judges in this District and elsewhere recognize it. It's really the common sense thing to do because generally, although it's -- none of us can predict what's going to happen exactly in the patent and trademark office, but generally one of three things is

Page 7

going to occur.

Either they are going to be out right rejected the way they have based on this prior art in the European patent proceedings in which case the case is over and we won't be back here at all and the parties will not have had to expend any additional resources.

Second, in a substantial number of cases the claims get amended so they are changed in some way, often in a significant way, and it's really again the claims that define the scope of infringement, the scope of whether or not prior art is relevant, invalidity, claim construction, all those sorts of issues and even if -- even if these patents emerged without a word having been changed, you still have the entire proceeding that serves as an additional prosecution history record because the plaintiffs will be talking about what their claims mean, what they say, what the scope of the patent is and the patent office will also be making those kinds of determinations.

So it makes little sense for the parties to embark on what is going to be substantial and expensive discovery, especially here where you

Page 8

have an Australian plaintiff and we're going to be needing to conduct discovery in Australia, perhaps third-party discovery there pursuant to the Hague Convention and so forth. It makes little sense to embark on that sort of expensive discovery to engage the Court in infringement contentions and positions -- invalidity contentions and positions, claim construction issues, formulating Markman proceedings and briefings, all of which are likely to have to be redone in the event that there's any change in the claims, so that's why courts routinely employ stay as a litigation management tool under these circumstances and that's precisely what we're asking the Court to do here is simply to follow what Judge Ericksen, Judge Davis and Magistrate Judge Nelson have all recently done under similar circumstances and used the stay as a scheduling tool to manage litigation efficiently and indeed they say there's a liberal policy of doing that in this District.

So I think if you look at the -- at the three factors they really overwhelmingly favor a stay under these circumstances.

So what does the plaintiff say? Frankly

Page 9

the plaintiff doesn't engage on any of these issues, Your Honor. The plaintiff doesn't dispute that the three factors courts look at really overwhelmingly support the scheduling of a stay here.

Instead what the plaintiff does is ignore these factors. They don't address them. Rather they suggest that this Court do what no court in this District has ever done and what no court in the Country has ever done in any case that they have cited and suggest that we multiply the proceedings, not try to streamline them in an unprecedented, unfair and unreasonable way rather than addressing the scheduling issue of whether or not we should go forward with this litigation, plaintiffs asked the Court to order defendants to instruct their own lawyers to create work product for claims benefit by finding additional references that might affect this patent, then for us to start our own proceeding, a separate proceeding, with the patent and trademark office at our expense, then to use that work product for them to argue with the patent office in proceedings that we're completely shut out of, these are ex parte proceedings, and then to have

us bound by that decision. I mean on it's face it's unfair. It's unreasonable. We wouldn't agree to it. No reasonable party would agree to it and no court ever has imposed those sorts of conditions on granting or scheduling a stay.

A stay is merely a common sense case management tool. It's an opportunity to have the Court not expend substantial resources while there's a pending reexam initiated by this third party.

And I want to address the point they make in their brief that somehow we're behind this third-party proceeding.

First of all, it's completely false. They come in to court without any evidence whatsoever, not a shred of evidence other than mere assertions by their attorneys and frankly I think it's beyond the realm of any reasonable argument that somebody should make -- be making in their brief. If we had wanted to bring a separate proceeding, we would have done so. We have chosen not to and, in fact, the normal proceeding is not for a third party to have initiated something, but for the defendant itself to have done that. We have chosen not to. We

would prefer to be in court if and when we have to litigate this patent and, in fact, in most proceedings where it is the defendant who's even initiated the PTO proceedings, it's in those circumstances that the courts still allow and provide for the scheduling of the stay. That's what's happened in all the cases that we have cited in which Judge Ericksen and Judge Davis have applied the stay.

In fact, as Judge Ericksen and Judge Nelson wrote in the Vdata case, that's specifically the framework that Congress contemplated is that you would really have two separate proceedings, each of which a defendant could take advantage of. We didn't initiate this proceeding and we shouldn't be -- because we have chosen to be in court be forced in to creating our own proceeding.

The sole case that plaintiff points to in support of it's argument that Thomson and the West Company should be bound by the results of a PTO proceeding says nothing of the sort. The Emhart [sic] case from the Northern District of Illinois neither ordered a party to commence it's own reexam proceeding nor did it order a

defendant to be bound by the exam as a condition for granting a stay. In fact, if you look at that case, what the Court did there is examine the same sort of traditional factors that the courts here look at and concluded that based on the -- the stage in which the proceeding were at, the benefits that would be obtained, it was appropriate to order a stay there.

It did note that in that case the defendant who had initiated the PTO proceedings there had voluntarily assured the Court that it would not contest the issues that the PTO decided provided that the plaintiff played fair in that proceeding in which they were not party, but the Court neither ordered the defendant to do that nor did it form the basis of the Court's decision to grant a stay.

And, in fact, when the plaintiff raised this argument in it's brief, we searched for cases in which other plaintiffs had made this argument and frankly I was only able to find one and I have a copy of it. It's not in your brief, but I would be happy to provide the Court and Counsel with a copy if I may approach.

THE COURT: All right.

MR. LITSEY: Your Honor, this case is a 2004 case from the Northern District of Illinois entitled Zylik vs. Quick Logic [sic] and if you actually look at the case it applies the same three factors that courts in this district do and concluded that a stay was appropriate and then it addressed the contention of the defendant. If you look at the last page of the slip opinion the two paragraphs above the conclusion it addresses the plaintiff's request there to require the defendant who had actually initiated the proceedings there to be bound by the resolution of those proceedings and in the last paragraph the Court says, quote, the Court will not force defendant to abide by the PTO's findings as a condition of granting the stay. Plaintiff cites no authority that defendant is obligated to abide by the PTO's findings. To the contrary, courts have held that a non-patent holder is permitted to challenge a patent both in the PTO and in District Court, so to the extent there's any precedent exactly on point out there, Your Honor, it's this case and it rejects the plaintiff's argument here.

In fact, if you look at the language from

1  that quote that I just read where it talks about
2  the patent holder being permitted to challenge
3  patents both in the patent and trademark office
4  and in the District Court it's exactly the
5  observation that Judge Ericksen made when the two
6  bites at the apple argument was made in the Vdata
7  case. She said, no, that's exactly what Congress
8  intended. And of course we're not even
9  attempting to do that here. This is a third
10 party reexamination in any event.
11         In short, Your Honor, as a matter of case
12 management, there's really no dispute that the
13 factors employed in this District for scheduling
14 a stay are overwhelmingly in favor of granting
15 the motion. This is really, again, a classic
16 textbook case in which the courts can manage the
17 case by staying the proceedings and allowing what
18 is happening in the patent and trademark office
19 to run it's course, especially here where it's
20 clear there's no prejudice to the plaintiff from
21 doing it. It gets it's remedy at the end of the
22 day. We're at the very early stages of
23 litigation. No discovery has been conducted and
24 we're here. There's been a substantial question
25 raised about the validity of this patent that

1  will be addressed in those proceedings.
2         Once that proceeding runs it's course,
3  then we will either be back here in front of the
4  Court and litigating this case or we'll be back
5  here with a substantially different patent and so
6  therefore it makes sense to wait and manage this
7  case and just stay the proceedings until that --
8  until the PTO has finished it's work in those
9  proceedings initiated by a third party.
10            THE COURT: Okay. Thank you.
11            MR. LITSEY: Thank you.
12            THE COURT: And response?
13            MR. HOSTENY: Thank you, Your Honor.
14 Joe Hosteny on behalf of Timebase.
15         A little bit of background. Timebase is
16 a small company. It is an Australian company.
17 In fact, it's gone through some changes because
18 the original inventors of the technology left,
19 encountering some financial difficulties and the
20 patent is now in different hands.
21         The investors in Timebase are not simply
22 people interested in making money on a patent.
23 They are pension funds and this is an investment
24 by those pension funds or what they call
25 Superannuation funds in Australia.

1         The patent deals with electronic
2  publishing. Basically you take pieces or
3  portions of text and then portions of that text
4  that are amended, store them in a database and
5  link them in some fairly unobvious way so that
6  you can explore the history of a written document
7  as it may have existed a good deal of time in the
8  past. For example, how a statute might have been
9  amended, how a particular statute was amended in
10 a particular year, whether a particular statute
11 was amended with respect to certain wording in a
12 section and it gives you the ability -- the
13 patent gives examples of legislation, but it
14 applies not only to legislation but also to
15 technical documents, medical literature and the
16 like. It's a useful invention.
17        I am not certain where the defendants
18 have gotten some of the ideas they have about
19 what we supposedly asked them for. My partner,
20 Art, had a conversation, I believe it was with
21 Mr. Litsey when the question came up whether we
22 would agree to a stay and we made three
23 suggestions.
24        One, we said, look, if Thomson, and you
25 have to keep in mind that representatives of

1  Thomson or some of it's subsidiaries and
2  representatives of Timebase negotiated a number
3  of years ago in an effort to reach an agreement
4  concerning this 592 patent. They were unable to
5  do so. One of the things that Timebase did was
6  provide a standstill period so that the people
7  they were negotiating with at Thomson would have
8  the opportunity to go and investigate the patent,
9  so we believe that Thomson or it's subsidiaries
10 have investigated the patent. I believe
11 Mr. Stignani who is here today was involved in
12 some of those negotiations. I was not.
13        So we made three suggestions. We said,
14 look, if you are going to do a reexamination, if
15 you have any inclination to do a reexamination,
16 do it quickly. We know this other one is out
17 there filed by an attorney in Connecticut on
18 behalf of some anonymous third party. We don't
19 know who it is. So we suggested first do a
20 reexamination quickly so we don't have a double
21 length stay. And I will get to it in a moment.
22 The stays can be extremely long and that's one of
23 Timebase's concerns and that was why it suggested
24 to Thomson if you want to do a reexamination do
25 it now or do it very, very soon.

 1          The second thing we suggested was let's
 2   make that reexamination have the maximum benefit
 3   and let's do it in a way that minimizes the
 4   prejudice to Timebase and the waste of everyone's
 5   time after a reexamination is over.
 6          More specifically we said, and you know I
 7   will quote just as Mr. Litsey will quote, all of
 8   those court decisions extolling the benefits of
 9   reexamination. The benefits are get the expert
10   involved. He's a neutral expert. It's a patent
11   examiner, let that person take a look. Then the
12   Court's time is saved. The party's time is saved
13   and money is not wasted relitigating issues.
14          We said that's fine. Here's a way to do
15   that. Let's have that reexamination considered
16   not only what this anonymous third party has put
17   in to play, but also anything that you, the
18   defendants, have that you would like to put in to
19   play that fall within the scope of reexamination,
20   not all prior art, but patents and printed
21   publications. We said if you presently possess.
22   We didn't ask anybody to go dig up anything,
23   although frankly I think they are probably very
24   busy digging up things right now. We said
25   anything that it presently possessed should be

Page 19

 1   put into that reexamination so it could be
 2   considered as well.
 3          This is computer technology. It's
 4   database technology. It deals with markup
 5   languages and I think it would be a shame to go
 6   through a reexamination to resolve three
 7   documents only to get to the end of that
 8   reexamination and have Thomson tells us that here
 9   is three more documents, three more publications,
10   three more patents or in the cases of what I have
11   seen some defendants do, scores of patents and
12   publications. Let's get them into the
13   reexamination now. That benefits everyone.
14          The last point was, and this is something
15   that every party faced with a reexamination
16   request and every Court faced with a
17   reexamination request has to confront and that is
18   will the defendant reargue the same piece of
19   prior art that was considered in the
20   reexamination after the reexamination is over.
21   So we asked if they would agree to be bound. We
22   didn't tell them they had to be. We asked if
23   they would agree to be bound.
24          The response to those three questions was
25   silence until we received the motion for a stay

Page 20

 1   and the motion for a stay did not address any of
 2   those three points and that's why our response
 3   lays them out and that's why our response says we
 4   don't like a stay. I don't want a stay because I
 5   have seen stays go on for, in my personal
 6   experience, five years. I have seen a stay go on
 7   in a case in my office for seven years. I've
 8   seen a stay go on in a case in my office for
 9   three years, so they are not all 19 months.
10   That's one of the problems.
11          I realize you have to make a decision
12   based on the statistical data, but that's why
13   stays scare plaintiffs and patent owners because
14   they can be so, so long and so that's the basis
15   of the conditions we suggested and that's why we
16   came here and we said we're not necessarily
17   opposing a stay, but we do think and we cited, I
18   think it's the Landis case, stays are not
19   automatic. Stays in litigation are not
20   automatic. They are a discretionary decision of
21   a Court when it weighs the factors that applies
22   to both sides and looks at the potential up and
23   downside or prejudice to both sides and I think
24   if we're going to have a reexamination it's
25   reasonable for Thomson to give us any prior art,

Page 21

 1   not any prior art I should say, any patents or
 2   printed publications in it's possession now so
 3   that those can go into the reexamination.
 4          I think it's also reasonable while this
 5   case is on the Court's docket that Thomson has a
 6   period of time in which to file it's own
 7   reexamination request or should not do so.
 8          On the last condition, it was something
 9   we asked them to do. I am not even asking the
10   Court to impose that condition. I simply will
11   say that if we're all here some day down the road
12   after a reexamination and we're all looking at a
13   piece of literature considered by the patent
14   office and Thomson is arguing that that piece of
15   literature should, despite a contrary decision by
16   the examiner, invalidate a claim or claims, we're
17   wasting our time. We're really, truly wasting
18   our time.
19          By the way, one point on the
20   reexamination statistics, I do not think that the
21   majority of statistics as represented by the
22   defendants result in patents being cancelled. I
23   think the majority of patents -- first, I cannot
24   recall in approximately 20 years of litigation
25   experience, I cannot recall a reexamination

Page 22

request that was not granted. It is routine for
examiners to say there's a substantial new
question of patentability unless that reference
is already in the file, so they always do that.
         Secondly, in my experience most patents
come out of reexamination and I think that's the
correct reading of the statistics cited in the
party's briefs. Most patents come out of
reexamination with at least some claims confirmed
and therefore you have a patent in most instances
that survives.
         I have nothing further unless the Court
has any questions for me.
             THE COURT: I have a procedural
question that popped up in my head when you guys
were talking that you're -- the European findings
are applicable here?
             MR. HOSTENY: No, they are not.
European patent law has different legal standards
entirely and in -- frankly in our view they
have -- they write claims differently from how
U.S. claims are written. I don't know. I can't
go in to detail on what the standards of
obviousness they apply. We think the examiner
has been rigorous to the point of being

Page 23

persnickety on these particular references and
our point of view and our client's point of view
is they are going to get by those references and
they are going to get -- achieve patent
protection in Europe.
         I think what's going on in Europe has
little or nothing to do with the decision that
Your Honor has to make here regarding a stay.
             THE COURT: Okay. All right. Thank
you. So what about the idea that, you know, what
about this whole idea that at, you know, after
let's say 20 months or 24 -- let's say two years
down the line then you decide that you want to
have a reexamination and we go on. I mean I
don't like stays that go on for that period of
time of either. Either we're in or out at a
certain point, so how do we deal with that?
             MR. LITSEY: First of all, as I told
Mr. Hosteny's partners, Art Gasey, when they
first raised this with us, he must not have
spoken to his colleague about what we talked
about because I rejected these proposals out of
hand. They are unreasonable. They don't make
any sense. I said we're not intending to start
our own reexam. There's a reexam that currently

Page 24

is in place by a third party and it makes sense
as a matter of case management to wait until
that's run it's course before we all run off and
conduct a bunch of discovery.
         Of course, the Courts permit parties to
do both. We have chosen not to. We would prefer
to be in court not in an ex parte proceeding
where we don't get to present our evidence.
         If for any reason my client instructed us
later to seek a reexam in this case, then we
would be back -- A, we wouldn't necessarily be
seeking a stay and B, if we were we would be back
in front of Your Honor and we could read me the
riot act and deny a motion if we brought another
motion to stay, so that issue is really not even
before the Court.
         And frankly with respect to being
efficient, if the plaintiff truly wanted to be
efficient there's nothing preventing the
plaintiff from putting in whatever references it
wants into the current reexam. It gets to argue
with the patent office about that. We're totally
a bystander here. We don't get to participate.
         They're suggesting that we give up our
day in court, be ordered to start our own

Page 25

proceeding under what feasible procedures we
decide what we have to do or not do and whether
we would be back in front of the court as to
whether we complied or not or whether somebody is
taking my deposition about whether I had a Sports
Illustrated article or something that was prior
art that should have been put in. I mean it
would be tantamount to ridiculousness, so we
don't want to be in that proceeding. The
proceeding exists.
         If the plaintiff believes there's
additional art it's it's obligation to go out and
do what any reasonable patent owner does, conduct
an examination, find the art and present it to
the patent office and it's free to do that. We
should not be compelled as part of our defense in
this case to initiate proceedings that we don't
want to be a part of.
         We're simply asking the Court in view of
proceedings that already exist, in view of the
fact that the European patent office which
actually I think the obviousness standard is
harder for a defendant there to overcome, they
have written a lot about the claims there, all of
which are very pertinent. They haven't denied

Page 26

that they are virtually the same as the ones here.

The patent examiner here has found a substantial question of patentability. I think it makes ultimate sense. This is again a textbook case in which it makes sense to wait, stay these proceeding until that has run it's course and then we can be off to Australia or whatever or we may not even back here since at least in 10 to 12 percent of the cases it's rejected in it's entirety as it has been in Europe twice.

THE COURT: Okay. All right. Thank you. I am going to take just a few minutes. I am going to look at a couple of things and then I believe I am going to be able to render an opinion here on the bench, so you folks know what's going on because either we're going to do Rule 16 or we're not is the bottom line, so give me about 10 minutes and I will be right back.

(A recess was had in the proceedings)

THE COURT: We're back on the record in the Timebase case. I am ready to make my

Page 27

decision known.

I am actually a fairly practical person, but there are some parts of what plaintiff has talked about that makes some sense to me, but as I read the cases and I certainly note the ones that are in this District as well as the other ones that are cited, I just -- I just have to keep coming back to the question is whether I order a stay or not at this point and I go through the three factors and the three factors seem to me to be very clear that they do warrant a stay.

I will mention a few things here just so you know where I am coming from.

I think first clearly the stage of the proceeding is obviously the parties have not exchanged any discovery or even initial disclosures and I know some in regards that's of concern to the plaintiff's side, but the fact is is that we have yet to really start this case so obviously that does mitigate towards having a stay.

Simplification of the issues, it does appear that those that are experts in the PTO area or PTO office that the reexamination will be

Page 28

considering prior art references to the 592 patent and it will apparently narrow the issues from what I can tell.

So what I really get to is the prejudice and tactical advantage and piece of that and whether this is just being done to cause prejudice or for tactical advantage. Well, it could be that there is strategy here that recognizes that. However, it does appear to me that that's something that the Court can, in fact, control.

In this case we don't have -- we don't have U.S. products. We don't have U.S. presence really and there really isn't a great argument regarding prejudice except that they were hoping by the conditions that they were seeking, that is the plaintiffs, to at least make this efficient and that I can agree with, is efficiency is good. But that does not equal having undue prejudice or tactical disadvantage and so I find that that also mitigates towards having a stay.

The main -- the main problem I see is delay, possible delay. That's the main problem I see and I believe that the Court can control that in terms of whether or not there is -- there are

Page 29

future requests for reexaminations and stays. Reexamination so be it, but request for stays I should say.

The one area I wanted to touch on specifically is really the last thing that was discussed here which I should say we realized was not on the tape, so maybe you could describe what it was that you said at the very end so it could be in your words and not mine.

MR. HOSTENY: Yes, Your Honor. All I was saying, I think was that, A, we weren't asking the defendants to necessarily find art. We believe they have some due to the passage of time. We wanted them to provide what they presently possessed by way of patents and printed publications.

And then secondly I pointed out response to Mr. Litsey's point that we may well, that is Timebase, may well put additional references into the reexamination if there is or is none, so they can be considered, but we don't know that our universe is going to overlap exactly with the defendants. That's why we say if you folks have patents and printed publications, let us have them.

1  THE COURT: All right. I did
2  consider that because I understand how that would
3  potentially increase the efficiency of going
4  through all of this with at least this
5  reexamination, but I don't believe that I have --
6  I just don't see how one decides there's going to
7  be a stay and then makes that conditional
8  exactly. I suppose one would do that if I could
9  find that there was undue prejudice and I just
10 can't make that finding because I suppose there
11 could be prior art between now and -- or the
12 printed publication, something that is found a
13 year from now and there's not much we can do
14 about that, so it seems to me that while I
15 certainly understand it that's not something I
16 can make a condition of the stay.
17     I will be limiting it, however, to the
18 reexamination process. I am not going to do
19 including all appeals at this point.
20     Were you requesting all appeals?
21     MR. LITSEY: We were, Your Honor,
22 and we would, of course, understand if the Court
23 wanted to extend the stay until that -- until the
24 patent office was done with it. We could revisit
25 the issue in the event that there's an appeal

1  from that, but if there is an appeal then usually
2  that is included in a stay because that completes
3  the process.
4      THE COURT: Okay. Well, I suppose we
5  can visit that when we need to, but at this point
6  I am limiting it to the reexamination process and
7  I don't -- what I would like is to keep somewhat
8  control over it. In other words, we don't all
9  walk out the door and you folks remember the
10 case, but a year from now whether we will
11 remember it or not, I would like a letter that's
12 filed.
13     My suggestion would be on a six-month
14 interval to tell me what's going on in the case.
15     You folks know better than I, is that too
16 frequent? Is nothing going to be able to be
17 reported within --
18     MALE SPEAKER: I wish I could say.
19     THE COURT: Okay.
20     MALE SPEAKER: There's a chance that
21 we will have, you know, an office action I'm
22 estimating within three to four months.
23     THE COURT: Good.
24     MALE SPEAKER: And typically the
25 patent office will -- typically the patent takes

1  as much time as it wants to take and tells the
2  plaintiff or the patent owner to respond in 30 to
3  60 days, usually 30 days, but I think the
4  examiners indicated you have three to four months
5  so there's a chance we will have something by six
6  months, at least from the patent office and
7  probably a response.
8      THE COURT: Okay. Then I am going to
9  say I would like -- I would like to have, in
10 essence, a status letter six months -- in six
11 month periods and if nothing else it reminds me
12 what's going on in this case and reminds everyone
13 to don't forget about it.
14     I wanted to mention that for use if
15 anyone is going to follow this up to the District
16 Court that Vdata was my primary authority in
17 really looking at this. I will even go ahead and
18 mention that this Court actually ruled a slightly
19 differently in another matter, but I don't think
20 it's a published opinion in Cognex vs. VCode, but
21 that case was, I find, and I will do it just now
22 so everyone understands that I at least
23 considered it, I find that case to be different.
24 It was in a different posture in terms of it's
25 procedural posture and it was also different in

1  terms of what that case was about. It was about
2  more than just the patents and so I -- for the
3  reasons I stated in Cognex and affirmed by Judge
4  Ericksen, did not allow the stay in that case,
5  but I find that this is more like the Vdata and
6  that is why I am acknowledging that I believe
7  all -- all of the factors go towards a stay in
8  this case.
9      Now, if there is no disclosure at this
10 point of current printed publications that the
11 defendant knows and if there happens to be a
12 reexamination later, then I do think it's clear
13 that it becomes less and less compelling to allow
14 any kind of serial stays if, in fact, there were
15 things that could be done now that might have
16 made the examination process that's currently
17 under way more efficient ish, so I just throw
18 that out there for everyone's consideration and
19 certainly while I am not making -- I am not
20 making a ruling ahead of time, my main concern
21 about this whole thing in terms of how these
22 things have played out over the years is serial
23 stays are not something I prefer to do, so I will
24 just say that. Okay.
25     Well, so I am granting the motion, all of

Page 34

1  that to say I am granting the motion.
2     Okay. Anything else we can do today?
3  Oh, that means we're not going to have the
4  Rule 16. All right. Thank you all. Thanks for
5  being here and for good argument and good written
6  materials. I appreciate it.
7
8           * * *

Page 35

1  STATE OF MINNESOTA  )
                       ) ss.
2  COUNTY OF DAKOTA    )
3
4       BE IT KNOWN, that I transcribed the
5  tape-recorded proceedings held at the time and place
6  set forth herein above;
7
8       That the proceedings were recorded
9  electronically and stenographically transcribed into
10 typewriting, that the transcript is a true record of
11 the proceedings, to the best of my ability;
12
13      That I am not related to any of the
14 parties hereto nor interested in the outcome of the
15 action;
16
17      WITNESS MY HAND AND SEAL:
18
19
20
21      _____
22            Leslie Pingley
23            Notary Public
24
25