# Exhibit 2

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

-----------------------------------------------------------

Timebase Pty, Ltd.,

        Plaintiff,

vs.                                            Case No. 07-4551

The Thomson Corporation,

        Defendant.

-----------------------------------------------------------

THE HONORABLE JEANNE J. GRAHAM

United States Magistrate Judge


\*   \*   \*

TRANSCRIPT OF PROCEEDINGS

\*   \*   \*


Date:  January 24, 2008

Reporter:  Leslie Pingley

Page 2

```
 1                    APPEARANCES
 2
 3
 4         MR. JOSEPH N. HOSTENY, Attorney at Law,
 5   181 West Madison Street, Suite 4600, Chicago, Illinois
 6   60602 appeared on behalf of named Plaintiff.
 7
 8
 9         MR. MICHAEL R. CUNNINGHAM, Attorney at
10   Law, 80 South Eight Street, Suite 500, Minneapolis,
11   Minnesota 55402 appeared on behalf of named Plaintiff.
12
13
14         MR. CALVIN L. LITSEY and MR. SHAWN T.
15   GORDON, Attorneys at Law, 90 South Seventh Street,
16   Suite 2200, Minneapolis, Minnesota 55402 appeared on
17   behalf of named Defendant.
18
19
20
21
22
23
24
25
```

Page 3

```
 1                   PROCEEDINGS
 2
 3         (NO REPORTER WAS PRESENT - The following
 4   transcript was prepared from a COPY of the
 5   original court tape)
 6
 7         THE COURT: This is the matter of
 8   Timebase vs. Thomson Corporation, et.al.  Civil
 9   File No. 07-4551.  It's assigned to District
10   Court Judge Joan Ericksen and myself, Jeanne
11   Graham, as Magistrate Judge.
12         We're here today on Defendant's motion to
13   consolidate with Case No. 07-1687 and to stay the
14   proceedings.
15         May I have appearances please, first from
16   plaintiff's side.
17         MR. CUNNINGHAM: Your Honor, my name
18   is Michael Cunningham and with me this morning is
19   Joseph Hosteny.  He will be making the
20   presentation on behalf of the Plaintiffs.
21         THE COURT: Okay.  Great.  Thank you,
22   good morning.  And the defense?
23         MR. LITSEY:  Good morning, Your
24   Honor.  Calvin Litsey from Faegre & Benson
25   representing the Defendants.
```

Page 4

```
 1         With me at counsel table are Shawn Gordon
 2   also from Faegre & Benson and Mark
 3   (Unintelligible) from the Thomson Corporation.
 4         THE COURT: Great.  Good morning.
 5   All right.  You will have about 25 minutes a
 6   piece if you need that, so go ahead defense.
 7         MR. LITSEY:  Thank you, good
 8   morning, Your Honor.
 9         At the outset I have a couple of pages of
10   demonstratives in one case that I may be
11   referring to during the course of my argument and
12   wanted to provide the Court and counsel with
13   copies of those now if I may.
14         THE COURT: Okay.  Go ahead.
15         MR. LITSEY:  Thank you.  The
16   question before the Court today, Your Honor, is
17   whether as a matter of this Court's management of
18   it's docket it makes sense to proceed with this
19   second case right away, so we proceed out of the
20   starting gates with this case, whether we wait as
21   a matter of efficiency and trying to impose the
22   least burden on the Court and the parties and see
23   what happens with the re-exam in the first case
24   and then at that time go forward with a single
25   scheduling order.
```

Page 5

```
 1         We believe that the factors that this
 2   Court considered just last summer strongly
 3   support a stay here as well.
 4         As the Court may recall, Timebase brought
 5   a lawsuit last year on the 592 patent, which I am
 6   going to refer to as the parent patent or the
 7   original patent this morning, against the three
 8   Thomson Companies, also the ones that have been
 9   sued here.
10         A third party sought to have that patent
11   re-examined in the patent office and the patent
12   office agreed to do that finding that there was
13   substantial question of patentability and then we
14   moved for a stay in your Court.  The Court
15   analyzing the three common factors that Courts
16   look at concluded it was the right decision under
17   the circumstances, so we have that case stayed.
18         Now, Timebase apparently also somewhat
19   later in the 2000 time period had filed an
20   application for a different patent.  That patent
21   application frankly floundered in the patent
22   office for a number of years, about six years
23   actually, when Timebase decided it would change
24   the invention that it was trying to claim in that
25   application and to tie it to this parent
```

Page 6

1  application that's now in the re-exam, so it
2  linked that patent to the patent in the re-exam.
3      And here's where my first very basic
4  exhibit comes in to play, Your Honor, which is
5  basically this blow up and some markings of the
6  specifications from the two patents and I don't
7  expect the Court to read it or I would have
8  supplied magnifying glasses, I guess, but it's a
9  very, very simple point I wanted to make with
10 this, Your Honor, and that is as follows:  The
11 patent on the left is the patent in the first
12 case which is this 592 patent and what we have
13 reproduced here is the specification from that
14 patent.  And as you can see that what happened
15 with respect to the second patent, the 228
16 patent, is that Timebase's prosecution attorneys
17 added all of the invention disclosure from this
18 first patent in to this second patent and just
19 the basic, basic point, Your Honor, is that these
20 are extremely related patents.
21     The claims that are at issue in this case
22 that we're discussing today are all based on and
23 claim priority to this same invention that's
24 disclosed in all this yellow stuff, so the very
25 simple point is that these are extremely related.

Page 7

1  One is the parent and you can think of the other
2  as the child patent and it is for that reason
3  that there are some issues that come in to play
4  when we get into the equities of whether or not a
5  stay is appropriate here or not.
6      Since we now are faced with this second
7  patent in this lawsuit, the question is how
8  should this case be managed and once again we
9  turn to the three factors that this Court
10 considered last summer.
11     No. 1, would there be undue prejudice to
12 the plaintiff if there were consolidation and a
13 stay and we're not talking about whether the
14 plaintiff would be annoyed or not, whether it
15 might suffer some prejudice.  The question is
16 would there be undue prejudice to the plaintiff.
17     Second, would there be a simplification
18 of the issues.  Would there be judicial economy,
19 not whether the case would go away entirely, not
20 whether we would eliminate every single issue,
21 but as a matter of case management does it make
22 sense to eliminate some issues and eliminate
23 efficiency -- inefficiencies.
24     Third, where are we in the case?  Are we
25 at the early stage or are we bumping up against a

Page 8

1  trial.
2      We believe that nothing has changed since
3  last summer to warrant the approach adopted by
4  the Court as it addressed each of these factors
5  and that they each strongly support a stay.  Let
6  me just take them one at a time.  I am going to
7  start with the last one first so I am going in
8  reverse order because I think the last one is the
9  easiest frankly and probably in the least dispute
10 and that is we're at the earliest stages of the
11 litigation.  Literally nothing has happened other
12 than the filing of the complaint, the filing of
13 an answer and the filing of this motion.  There's
14 been no scheduling conference, no schedule has
15 been issued, the parties haven't engaged in
16 discovery and I think as this Court concluded and
17 as Judge Ericksen and Magistrate Judge Nelson did
18 in the VData case, when you're at this stage of
19 the proceedings it's much more likely that these
20 kinds of stays are routinely granted, so
21 therefore this factor weighs in favor of granting
22 a stay of the second case in consolidating it
23 with the first case.
24     Let me turn to the middle factor, that is
25 a factor all about efficiencies, simplification

Page 9

1  of the issues and docket management.  The test
2  once again is not as Timebase seems to suggest
3  whether the case would go away if we stayed this
4  case, it would eventually go away or whether we
5  would eliminate every single question.
6      The question is whether we would simplify
7  issues, whether it would be more economical to
8  the parties, less burdensome to this Court and
9  whether there are some substantial inefficiencies
10 that we might avoid and it's those inefficiencies
11 that I want to address and I am just going to
12 take them one at a time and go through them
13 slowly, and for lack of better names, I am going
14 to call the first inefficiency having to do
15 things over.  That's one inefficiency and the
16 second one is we have two cases rather than one
17 and what kinds of problems does that create.
18     Let me start with the first inefficiency
19 which is having to do things over.  Because of
20 the relationship between these two patents, Your
21 Honor, because they are tied together, because
22 they are linked, the Federal circuit has made
23 very clear that what happens in the patent office
24 proceeding on the re-exam affects this patent.
25 It affects the scope of it's patent.  It affects

Page 10

1  the nature of the claims in the patent,
2  statements that Timebase makes in that proceeding
3  bind it with respect to this second patent.
4       And the main point here is that as long
5  as this proceeding is going on with respect to
6  the 592 patent, we essentially have a patent in
7  flux.  It's not a patent whose scope has been
8  finally determined because it could change based
9  on positions Timebase takes, based on arguments
10 it makes in response to actions taken by the
11 patent office.
12      So as a result of this there is the
13 potential that if this case right now is not
14 stayed we would end up redoing certain things.
15 What do I mean by that?  Let me give you an
16 example.  One of the things we'll have to do in
17 this case is proceed with claim construction, go
18 to a Markman Hearing and so forth.  I'm sure the
19 Court is familiar with all the steps that go
20 through.  The parties select claim terms.  They
21 come up with arguments as to how those terms
22 could be construed.  They file briefs.  They will
23 present them to Magistrate -- I'm sorry, to Judge
24 Ericksen in this case.  On that she'll hold a
25 Markman Hearing and eventually issue an order and

Page 11

1  she'll write an opinion based on the party's
2  understanding of what those claim terms mean at
3  that time and based on the arguments that are
4  made at that time.
5       If two months after we have gone through
6  that entire process Timebase in response to
7  arguments in the patent office suddenly says in
8  order to overcome some of this prior art, you
9  know what, what we really meant by this term is
10 this, so now we're changing this or we agree that
11 we now have to limit our invention in this way
12 and seek an amendment, all of that is binding on
13 it in the case that we would have gone forward
14 on.  All of that would then change the potential
15 for having to go through and essentially redo one
16 or more claim constructions, so that is the sort
17 of having to do things over problem that can
18 result as a result of having this case go forward
19 while the re-exam proceeding continues.
20      And if you look at my second basic
21 demonstrative, again these are sort of crude, but
22 I tried to put down a number of sort of common
23 litigation steps.  You could probably chose
24 others, but they are pretty common with respect
25 to most patent proceedings and the main point is

Page 12

1  as you go through these kinds of steps way down
2  in the lower right hand corner, the potential
3  inefficiency here is having to redo one or more
4  of these.  I gave the claim construction issue,
5  but there could be other kinds of examples as
6  well.  For example, different prior art might
7  become relevant that really wasn't before because
8  of changes in the position that Timebase has
9  made.
10      But the basic point is until the re-exam
11 issues are settled, we have a patent that is in
12 flux.
13      Now, what's the likelihood of any of
14 these things happening, none of us can predict.
15 I'm sure that there could be substantial
16 arguments, there could be substantial changes
17 that occur in the proceedings before the patent
18 office.  There could be just a few.  There could
19 be none at all.
20      The point is that none of us know at this
21 point in time, and all of us -- but the risk of
22 having to substantially redo one or more of these
23 activities exists so long as that patent is in
24 flux.
25      Now, Timebase may argue, well, it's

Page 13

1  pretty unlikely that that's going to happen
2  because, look, the prior art that's in this
3  proceeding now, we just got that patent issued
4  over that.  Well, you can make arguments all
5  sorts of different ways there.  No one knows how
6  carefully that examiner really looked at those.
7  Those were submitted after he had already granted
8  an allowance and they were put in with a whole
9  bunch of other art.  You know, we can presume he
10 did, but nobody really knows how they operate.
11      This examiner we know already has decided
12 there's a substantial question of patentability.
13      The European patent office on this same
14 prior art has rejected these same sorts of claims
15 entirely.  Timebase can't even get a patent in
16 Europe based on this, so there's kind of a wide
17 range of speculation here that we can all come up
18 with our own as to what that might be, but the
19 point is there's at least some possibility, if
20 not a reasonable probability, that what happens
21 in the patent office and in these proceedings is
22 going to affect the claims, the nature, the scope
23 of the invention and that presents the
24 possibility of this huge inefficiency of having
25 to do redo things and really change the entire

Page 14

1  landscape because it's really the claims and the
2  nature of the invention that drive the whole
3  litigation in terms of what prior art you're
4  looking for, who you're going to depose, what
5  subpoenas you send out, what arguments you make
6  about infringement and non-infringement, damages,
7  all those sorts of things.
8         So that's the one inefficiency that I
9  think having to do things over inefficiency that
10 would be eliminated if we waited, if we waited
11 with this case, and went forward all in one piece
12 after the re-exam took place.
13        The second inefficiency is really the
14 fact that we have two cases rather than one and I
15 have just tried to show that again on this
16 demonstrative by saying, look, at the top you
17 combine these cases, you go through these things
18 once. You have one scheduling order, one
19 protective order. You deal with documents. You
20 deal with written discovery all at once. You
21 don't -- not every one of these things might be
22 inefficient or you might have -- might not have
23 complete duplicativeness on all of these, but
24 having to go forward twice, there's this
25 transaction cost even if the content of a number

Page 15

1  of these things are the same, just the
2  transaction cost of having to go through two
3  hearings, appearing in court twice, all those
4  sorts of things, identifying experts twice, is an
5  inefficiency and it can become pretty
6  significant.
7         Let me give you an example. Just take
8  the case of a deposition. If we proceed with
9  this second case we will be taking the
10 depositions of the four inventors. They are down
11 in Australia. Whether we have to proceed
12 pursuant to the Hague Convention or not, I don't
13 know, I guess it depends on whether Timebase
14 makes them available or not, but we will have
15 prepared, gone down, taken four depositions of
16 inventors in Australia.
17        Meanwhile, sometime later if this case is
18 not stayed and assuming the other case goes
19 forward, we will have to some months later fly
20 down to Australia, depose three inventors, two of
21 whom are identical and the same and have to go
22 through that whole procedure again.
23        Now, there's great expense associated
24 with all of that, but it also raises the
25 possibility of kinds of disputes that all of us,

Page 16

1  and especially I'm sure this Court would like to
2  avoid, that is we do the second set of
3  depositions. Are there going to be objections
4  about whether we get to do them at all because
5  they were deposed once before in this other case.
6  Are there going to be objections about you can't
7  ask that question again because you answered --
8  asked it in the other deposition. What if we had
9  a 30(b)(6) deposition on a particular topic and
10 then months later we're in the second case, we
11 want to do it on that topic, are there going to
12 be arguments about whether we get to do it at all
13 or whether we exhausted our opportunity. There
14 are all sorts of complex, thorny issues that
15 could arise and potential disputes between the
16 parties that would burden this Court, all of
17 which could be avoided or minimized by managing
18 these cases together.
19        So that exactly is what Judge Frank
20 looked at in the Pacesetter case and that's the
21 case I have handed up to the Court as the last
22 demonstrative. We talked about this, I think,
23 last summer but it's really a very similar
24 situation. It's not an identical situation, but
25 it's a very similar situation that he was dealing

Page 17

1  with. He had one case, not two, but the argument
2  was let's go ahead with these two patents while
3  these other two are in re-exam. And you may
4  recall that in the Pacesetter case these patents
5  were unrelated. He goes on to say, you know,
6  these aren't even related unlike the case here so
7  he's really just dealing with this having to do
8  things twice inefficiency and he concluded it
9  doesn't make sense to do that and I just kind of
10 highlighted some of the language where he talks
11 about that. He says, you know, even though only
12 two of these are in re-exam and even though these
13 other two patents are unrelated, they are really
14 inextricably intertwined. You're really talking
15 about the same technology. You are going to have
16 many of the same witnesses, same documents and so
17 forth and he says, you know, quote, there's no
18 discernible demarkation of issues, experts or
19 products, in addition duplicity and overlap will
20 occur when addressing issues such as experts,
21 discovery, damages and products and that's
22 exactly the sort of situation that we have here.
23        Judge Ericksen actually took a similar
24 approach in approving Magistrate Judge Nelson's
25 order in the VData case. It's a little more

```
                                              Page 18                                                 Page 20
 1   settle there because one was in re-exam. They       1   don't identify will be hampered.
 2   had tried to get the other one in to re-exam and    2       Well, first of all, there's absolutely
 3   she said, you know, it doesn't really matter        3   nothing in the record to support this. In other
 4   whether this other one goes into re-exam or not,    4   words, they haven't come forward with an
 5   I am not going to proceed with it. It's not         5   affidavit, a declaration from any company who has
 6   efficient to do it that way.                        6   provided testimony in this case that says, you
 7       So in short, Your Honor, in terms of            7   know what, we have actually refused to take a
 8   simplifying the issues, minimizing the costs and    8   license in this case because we're concerned that
 9   the burdens to the Court and to the parties we      9   this litigation is not going to move fast enough
10   think weighs heavily in favor of let's wait,      10   so that we don't want to be hung out there in
11   let's grant a stay, let's allow these cases to    11   some sort -- in some sort of nowhere land.
12   move forward together simultaneously.             12       This sort speculative contention where
13       Finally, Your Honor, on the last factor,     13   there's no evidentiary support in the record is
14   Timebase hasn't shown and they really can't show  14   nothing more than speculation.
15   that they are going to incur any undue prejudice  15       If one were to speculate one could
16   if they are required to wait for these two cases  16   easily -- equally plausibly argue that the reason
17   to go forward. The situation hasn't changed      17   why no one has taken a license in the last seven
18   since last summer when this Court found that     18   years since this patent or the original patent
19   there would be no undue prejudice to Timebase.   19   has been out is because nobody agrees that
20   Timebase's ownership may or may not have changed.20   there's innovation having to do with this product
21   That really seems pretty murky in the record as 21   or people think the patent is invalid. That's an
22   to actually who owns them, but it's still a     22   equally speculative statement to make.
23   company based in Australia. It has no presence  23       The fact that Timebase would like to
24   in the United States. It still doesn't sell    24   secure a victory sooner rather than later, that's
25   here. It still doesn't have any employees, still 25   not a form of undue prejudice. That's something

                                              Page 19                                                 Page 21
 1   has no facilities. It's not in the market here.    1   that exists in every case. Everybody wants that.
 2   It's not doing anything in the way of sales of     2   No court has ever held and they don't cite a
 3   products. It's not competing in any way with the   3   single case to support the contention that this
 4   defendants. None of this has changed from last     4   sort of novel speculation is the sort of undue
 5   summer.                                            5   prejudice that gets factored into a stay or not.
 6       Under these circumstances, they are not       6       Courts aren't in the business of
 7   going to be entitled to show that they are         7   advancing one party's economic agenda over
 8   entitled to any sort of injunctive relief. They    8   another's.
 9   are going to be seeking damages. They will be      9       The issue here is how do you best manage
10   seeking damages in the form of a reasonable     10   the Court's docket and figure out what is the
11   royalty based on sales of defendant's products  11   most efficient way to proceed. It may not be
12   and probably try to get pre-judgment interest   12   possible to strike the perfect balance between
13   based on that as well and as Judge Ericksen noted13  the parties in any given case and there's no
14   in VData and as this Court found last summer,  14   question that equities can weigh in different
15   that's not undue prejudice. When you get       15   ways, but if one analyzes the same factors that
16   compensated and damages there simply is no     16   this Court did last summer, they strongly support
17   prejudice to Timebase in these circumstances and17  a stay here.
18   nothing has changed since last summer.         18       We're at the very beginning of the case.
19       The only thing I have noted in their      19   Nothing has happened. There's no doubt that if
20   papers was that they now speculate that they   20   you -- if the parties wait, the Court waits and
21   would somehow suffer, I think is what they are 21   we proceed together in a single scheduling order
22   saying, some unspecified prejudice because if  22   you eliminate the potential prejudice of having
23   they don't get a fast win here in this case the23   to redo things over while this whole patent
24   opportunities to license the technology covered24   proceeding is in flux, while the scope of the
25   by the patent to certain companies that they  25   patent in this very case is in flux. You don't
```

(651) 681-8550 phone    1-877-681-8550 toll free
www.johnsonreporting.com

Page 22

1  have the problem of having to redo things twice
2  by having two separate lawsuits proceeding even
3  though there's going to be great overlap, you're
4  going to be doing things twice in different
5  proceedings and you're going to have arguments
6  about what you can and cannot do based on what
7  you did the first time.  All of that gets
8  eliminated if there's a stay here.
9       So, Your Honor, since we're at the
10 earliest stage of the proceedings, since we would
11 be minimizing these huge potential inefficiencies
12 if the cases are allowed to proceed together
13 under one scheduling order, we ask that the Court
14 grant our motion.
15      The parties can continue to report to the
16 Court and we'll try and do a thorough and better
17 job every six months and obviously if something
18 changes, if there's some remarkable change,
19 whatever, either party is free to petition the
20 Court for a change, so that's -- none of this is
21 set in stone, but certainly at this stage,
22 whether it's going to be three months from now we
23 get action in the patent office, whether it's six
24 months, nine months, the fact is whenever that
25 happens the reasons for staying it still make

Page 23

1  sense.  The reason for proceeding together still
2  makes sense and as I said as long as there is
3  compensation and damages for Timebase at the end
4  of the day there simply is no undue prejudice.
5       THE COURT: Okay.
6       MR. LITSEY:  Thank you, Your Honor.
7       THE COURT: I have a couple of
8  questions.
9       MR. LITSEY:  Sure.
10      THE COURT: One I will just take from
11 something that you just said and that is if there
12 is a remarkable change.  Well, it wasn't a
13 remarkable change that the 228 patent that
14 considered the prior art references that, you
15 know, that are part of the re-examination of 592,
16 isn't that a pretty remarkable change that they
17 all looked at and they went ahead with the 228
18 patent?  I know you mentioned -- you touched on
19 this, but I do think we need to address that a
20 little bit more, if they considered the same
21 prior art as in the re-examination, isn't that a
22 pretty good signal about what's going to happen
23 in the re-examination?
24      MR. LITSEY:  I don't think so, Your
25 Honor, for this reason, and again we can all

Page 24

1  speculate and sort of lay the odds differently,
2  the fact of the matter is we don't know what that
3  examiner did, how he considered it.
4       Timebase sat on that prior art on at
5  least two of the references for four years.  They
6  could have brought this prior art in the 228 case
7  and even in the other case much earlier, was
8  aware of them from the European patent office
9  proceedings.  It waited until after it had
10 completely changed it's patent, the one we're
11 talking about now is the one at issue in this
12 case, and it completely changed it.
13      The examiner allowed the patent.  Then
14 they bring forward additional prior art.  Now,
15 it's not an uncommon tactic for patent
16 prosecutors to do that, but the odds of a
17 prosecutor changing their mind or the patent
18 office changing it's mind, an examiner, after
19 he's already allowed something tends to be a
20 little more remote once they have made that
21 decision and then there's a lot of additional art
22 that gets, I won't say dumped in, because, you
23 know, I think there were 15 references or
24 something the first time and then they added more
25 later, but, you know, how carefully he considered

Page 25

1  it, whether he said, you know, I am not going to
2  worry about it because it's in re-exam, maybe
3  they'll sort it out there.  Who knows.  I'm
4  speculating, you know, any of us would be
5  speculating.
6       THE COURT: Did you just say that
7  the -- say that again, that the patent was issued
8  and then the prior art -- is this related to
9  the -- explain what you just said.
10      MR. LITSEY:  Sure, sure.  What
11 happened was the patent was allowed.  It wasn't
12 issued yet, but the examiner said I am going to
13 go ahead and I am going to allow this and then
14 before it was issued, I'm not sure, Timebase
15 could have paid like it's issuance fee and just
16 said go ahead, great, but they said no, wait, we
17 want to get this additional prior art in.
18      THE COURT:  That's when they pulled
19 back and submitted the prior art?
20      MR. LITSEY:  Correct.
21      THE COURT: And then it did issue in
22 November?
23      MR. LITSEY:  Correct, right.
24      THE COURT: Okay.
25      MR. LITSEY:  And they are trying to

Page 26

1  make a virtue out of that and I'm trying to say
2  they really shouldn't be so virtuous about that
3  because they actually sat on two of the
4  references for four years.
5       The second point is none of it's binding.
6  None of that is binding, you know, on what the
7  examiner in the --
8          THE COURT: Do you have -- when you
9  have a situation like this, is it the same
10 examiner or is it --
11         MR. LITSEY: It's a different
12 examiner and, you know, supposedly the examiners
13 who do the re-exams are supposed to be more
14 senior kinds of people and so forth. You know,
15 whether that's true in this case or not, I
16 haven't looked at the particular experience of
17 each of these examiners.
18      As I said before, one could equally argue
19 it's just as likely or plausible that the -- this
20 examiner and the re-exam proceeding is going to
21 agree with what the European patent office did.
22 They've rejected all these claims. They don't
23 have a patent. Timebase doesn't have a patent in
24 Europe, but based on these same references, these
25 same three references which they knew about for a

Page 27

1  number of years and were brought to their
2  attention by the European patent office.
3       So, you know, we don't know, again, the
4  timing of this is sort of in flux. If we all
5  knew three months from now we'd get word there
6  would be some action in the patent office. I
7  think everybody is surprised that nothing has
8  happened in the course of a year. I think we
9  both cite different statistics on kind of
10 average, that we take the median and it's like --
11 a little over 17 months, 17 and a half months.
12 They've cited statistics about the average which
13 is more like 22 months so whether we're, you
14 know, two-thirds of the way along or only half or
15 a quarter, who knows. I mean things are -- I'm
16 sure there's more a back log in the patent office
17 than there has been in the past too. We just
18 don't now.
19      They are supposed to be moving
20 expeditiously as we reported in our second letter
21 of the Court to try to be a little more specific
22 about how all that works. They are supposed to,
23 because it's in litigation and so forth, that's
24 supposed to be like at the top of their list so
25 we can hope and trust that they will be dealing

Page 28

1  with it soon. How soon we don't know, but I
2  would say that the decision by that examiner will
3  be made independently of whatever decision the
4  European patent office has made and whatever
5  decision the examiner on the 228 patent has made.
6       And remember the claims in the 228 patent
7  are slightly different. They did try to add some
8  things in about screen shots and that sort of
9  thing, so they are a little different in that
10 way.
11         THE COURT: And besides the ones
12 that we all know from this District, do you know
13 of any other case where the stay -- this one
14 seems to be a little bit different. I suppose
15 Pacesetter involved some patents where the prior
16 art had already been examined, but the other one
17 by Judge Nelson, weren't they both in
18 re-examination at that time?
19         MR. LITSEY: I think at the time of
20 the issuance of the opinion I don't remember what
21 the subsequent proceeding or what actually
22 happened, but at the time of the opinion one was
23 in re-exam and somebody had asked to put the
24 other one in re-exam, but it wasn't yet in
25 re-exam, so -- but judge -- Magistrate Judge

Page 29

1  Nelson recommended to Judge Ericksen and she
2  accepted the recommendation that that second
3  patent not go forward even though it wasn't in
4  re-examination.
5       I think Pacesetter is very, very similar
6  to this case. I mean it's just -- it's basically
7  the same thing except it's happening in one case
8  and he decided let's not split them in two.
9  Let's keep them in one and we're here, I guess,
10 Your Honor, would have to decide whether to go
11 forward and have them split or keep them together
12 as one.
13         THE COURT: That would be my last
14 question to you. Everyone has talked about
15 either we stop them both or one goes forward and
16 one doesn't. What if we just say that the
17 remarkable change was the 228 patent was issued
18 and so now we're just going to start them both up
19 again?
20         MR. LITSEY: Well, I think for all
21 the reasons Your Honor decided last summer that
22 wasn't a good idea would apply here the same. I
23 mean all of these cases that deal with why you
24 wait when you have a re-exam is because
25 everything is in flux. You're going to have all

Page 30

1  this potential to redo things.  The whole claim
2  construction process can hardly go forward when
3  that's -- when that's happening.
4        THE COURT:  Okay.  And I guess that's
5  kind of what I really want to focus on a little
6  bit here just for a few minutes and that is
7  wouldn't -- so in looking at this now, where we
8  are now versus where we were last summer, it's
9  not -- couldn't you always have -- our District
10 seems to be that we tend to consider the stay
11 process and maybe for the very reasons that you
12 talked about, but couldn't it always be that
13 someone gives a call and gets the re-examination
14 process going and then we run and we try to get a
15 stay and so particularly in a technology field
16 where today is, you know, almost obsolete and
17 tomorrow certainly will be, you know, doesn't
18 that always then favor, when you talked about not
19 favoring one side or the other, I completely
20 argue with you, but doesn't that always favor the
21 defense when someone is trying to get, you know,
22 relief from what they say is in fringing, if that
23 is the think?  If you can always say you have a
24 stay when you re-exam, isn't that always a
25 potential here of kind of just never having a

Page 31

1  case that really makes it through?  I don't know.
2        Honestly I'm not sure what your answer is
3  going to be.  I'm not even sure the District
4  Court is the best place to figure those things
5  out anyway.  Maybe it is the patent office, but
6  talk to me a little bit about that.
7        MR. LITSEY:  Let me comment on that.
8  I think there's a couple of things.  One is that
9  the United States Congress in it's infinite
10 wisdom has seen fit to allow both kinds of
11 proceedings.  There's the argument they make
12 about two bites at the apple.  Judge Ericksen
13 specifically rejects.  She said look, you have a
14 process that's setup.  It's legitimate for
15 parties, and remember we're not the party seeking
16 the re-exam, we'd prefer to make all our
17 arguments in court, but somebody has gone forward
18 with a re-exam process and they are entitled to
19 do that and while that happens then it does put a
20 burden on the Court if there's litigation and
21 that's why you look at the three factors.
22 There's one, two, three, so sometimes you'll be
23 in the middle of a case or you'll be three weeks
24 before trial and the Court will say, no, this
25 doesn't make any sense, we're not going to wait

Page 32

1  now.  We're too close to the finish line for that
2  to happen, so that's why that's an important
3  factor.  Here we're nowhere out of the starting
4  gate.
5        The third factor is very important as
6  well or maybe I'm reversing them because I
7  reversed them in my argument, but the prejudice
8  to the plaintiff, is there going to be undue
9  prejudice?  I think as Judge Ericksen or maybe it
10 was Judge Frank said, you know, delay alone is
11 not prejudice.  You know, the fact that there's a
12 passage of time is not prejudice.  You have to
13 point to something specifically and here there's
14 no question certainly last summer, and they
15 didn't make any arguments last summer really
16 about prejudice, that they will be compensated in
17 damages and pre-judgment interest, whatever.
18       Our sales -- Thomson is a multi-billion
19 dollar corporation.  It's not like it's going
20 anywhere and if they successfully navigate the
21 patent office proceedings and we are back in
22 court and they successfully navigate all our
23 arguments and prove infringement, at the end of
24 the day they will be compensated in damages.
25 That's the remedy they will get.  That remedy

Page 33

1  won't change.  Their ability to get that remedy
2  won't change.  Their ability to recover won't
3  change.  None of that will change as a result of
4  any stay of these proceedings and again we're
5  speculating on how long it might be.  It might be
6  three, six, twelve, who knows, but during that
7  time period and they haven't raised any other
8  legitimate prejudice.
9        They speculate -- they haven't come
10 forward with any evidence about any actual loss,
11 failure of somebody to license where somebody has
12 gone on record to say that and that's not undue
13 prejudice.  You don't get to engineer -- have the
14 Court's engineer economic incentives for parties
15 you want to license.  That shouldn't be the role
16 of the court, so they haven't cited a single
17 case, not one, that supports that sort of
18 speculative harm, even if it existed and again if
19 you look at the record they have got to make a
20 record.  There's no record here.  They need to
21 come forward with declarations from a party and
22 say here's what happening, I would have done this
23 and so forth, so they don't have that record.
24       And then, of course, the middle factor,
25 what do you do?  You know, it is a matter of case

Page 34

1  management. It is within this Court's discretion
2  how to proceed, but I just think when you
3  consider all of the factors, when you consider
4  whether you are going to start one and then have
5  another one, have multiple scheduling orders,
6  these overlap. They sued the same parties. They
7  are accusing the same products. It's the same
8  technology and so forth and in those
9  circumstances I think you do what Judge Frank
10 did. You know, Pacesetter is right on point.
11 It's the right way to proceed in my judgment,
12 but, you know, I am obviously advocating for
13 defendants here, but I think if you look at those
14 three factors, that's what you do in these
15 proceedings, whether it's been a year out of
16 re-exam, 16 months, 18 months. You say let's
17 look at these, how do they shift, how do they fit
18 in here. I think they all strongly support a
19 stay and consolidation.
20         THE COURT: Okay. Thank you.
21         MR. LITSEY: Thank you.
22         THE COURT: And from Timebase.
23         MR. HOSTENY: Thank you, Your Honor.
24     There are two themes that run Thomson's
25 argument that I utterly reject, utterly reject.

Page 35

1      One, their supposition is that this Court
2  should wait for the expertise of patent office.
3  Nevertheless, I just heard Mr. Litsey say that we
4  don't know whether the examiner of the 228 looked
5  at these new references. It's late in the game.
6  Maybe he overlooked them and there's an
7  intimation that my client sneaked them in there
8  somehow late in the game in order to slide them
9  by under the door.
10     The law is that an examiner is a quasi
11 judicial official and has a statutory obligation
12 at all times during an examination, a
13 re-examination and a re-issue to ensure that the
14 statutory requirements are met.
15     It is, I think, quite surprising that
16 Thomson says let's get the patent office's
17 expertise, but we can't trust what Examiner Hong
18 did.
19     Examiner Hong, according to the exhibits
20 we provided, has been a supervisory examiner on
21 over 800 cases. There's every reason to believe
22 that he knows his business.
23     The other theme that I heard is that
24 there's going to be obstructions in discovery.
25 There will be instructions not to answer because

Page 36

1  you asked that question the last time. That's
2  not only an improper instruction under the
3  Federal Rules, it assumes that I am going to go
4  to Australia and make trouble for Thomson in this
5  case or Timebase is going to make trouble. I
6  utterly reject the notion and I find it
7  offensive.
8      If you want us too, I will make sure we
9  do everything to completely circumvent the Hague
10 Convention. We will probably do that in any case
11 to make discovery easy to take.
12     No. 2, if you want us to, I will have the
13 witnesses that are under Timebase's control here
14 in Minnesota on the coldest day of the decade for
15 their depositions if necessary. I cannot make
16 that representation regarding two inventors
17 because they are no longer with the company, but
18 I certainly will do that and I will certainly
19 tell Timebase it needs to do that with respect to
20 person's under it's control and they will do it.
21     They have been here before. They were
22 here six years ago. The prior management of
23 Timebase, a small company that's experienced
24 rocky times, they were here before to negotiate
25 with Thomson. The door was closed on them. They

Page 37

1  know what Minnesota is like. They are willing to
2  be here. It's a fine place to do business and to
3  litigate a lawsuit.
4          THE COURT: I think the coldest day
5  was last week though.
6          MR. LITSEY: He said the decade,
7  Your Honor.
8          THE COURT: Oh, decade. Yes, I don't
9  know if we've gotten there yet.
10         MR. HOSTENY: Let's talk about the
11 patents for a moment in this exhibit. The 529
12 examiner does not have before him any of those
13 portions circled in white. These are two
14 different matters. They are related. I don't
15 know what Thomson means by floundered in the
16 patent office. Timebase filed it's 529 patent
17 application and then filed the 228 as a
18 continuation in part, which every party has the
19 right to do.
20     The continuation in part means that the
21 descendant patent, the 228, has the same
22 specification plus additional material in it.
23     And the 228 also differs in another
24 important respect. The 228 cited something like
25 50 U.S. patents and something like 57

Page 38

publications. If you look at the art cited on the 592 which was years ago when it was originally filed, there's about eight or ten patents cited and a couple of articles. If you look at the 228 you will have to go on to the second page to see the differences between the patents and the 228 sites a far greater amount of prior art, plus as Thomson recognizes, all of the references cited in the re-examination request of the 592. I did not hear Thomson mention that the 228 examiner was also given the argument made to support the re-examination of the 592 and considered that as well and that examiner of the 228 was given the European observations as well, so the 228 examiner has had everything in front of him.

Does an examiner comment upon every reference? No. There's no requirement that an examiner do so. The requirement that the examiner has is to ensure statutory compliance and in more modern patent practice it has become prevalent for people to supply more references and it is highly unusual for an examiner to make a comment upon every reference. I have never seen such a case. That does not mean the

Page 39

examiner has not considered them. In fact, in the file history of the 228 the examiner specifically initialed, which is the way an examiner indicates on a list of references that those references have been considered by the examiner and that the examiner has deemed them as no bar to patentability of the claims of the 228.

A little word about European practice because it came up in Mr. Litsey's argument. Europe is Europe, not the United States. It has different standards of patentability. It has something that they call the unity of invention. It's standards on obviousness are not quite the same. It is a first to file system unlike a first inventor system in the United States and the status in Europe is that there have been rejections. The rejections have been responded to so nothing is over in Europe and our client is waiting for the next response from the European patent office.

The 592 re-examination can't consider the prior art cited in the 228, cannot invalidate claims in the 228 and cannot cancel claims in the 228.

Let's look at, for example, a couple of

Page 40

the cases that the defendants cited from this District.

THE COURT: You know, as you're talking about that, why don't we combine something that -- when you just said that.

MR. HOSTENY: Okay.

THE COURT: Is the 592 examiner bound by the 228 passage?

MR. HOSTENY: No, I think they are independent. I think the 592 examiner is on his own and must do the same thing that the 228 examiner did. The 592 examiner has to comply with the statutory standards in a re-examination. There's no presumption of validity in a re-examination. It's just like a new examination all over again.

THE COURT: So you could have the situation where the 228 does go through, but the 592 for some reason doesn't and then -- and then what do you do with the 228?

MR. HOSTENY: You proceed on the 228.

THE COURT: Does the 592, for lack of a better term, stuff just fall out.

MR. HOSTENY: It depends on what the

Page 41

examiner does there. The examiner may say that the claims are confirmed. The examiner may say that the claims are confirmed with amendments. The examiner may say certain claims are cancelled. The patent owner can add new claims in a re-examination, so that could happen as well, so there's a number of different things that could happen with the 592.

THE COURT: I guess what I am trying to get at, depending on all that, does -- is there -- let's -- since I'm apt to have to do this, let's say worst case scenario and for some reason it's thrown out, does then the 228 get re-examined for now, but validity based on the fact that the 59 -- those specifications would have been thrown out or does it just stand on it's own even though the same has been thrown out in another patent?

MR. HOSTENY: It stands on it's own except like the Microsoft case that the defendants cited, an issued patent that's a continuation in part can conceivably be interpreted by -- the intrinsic evidence is the claims, the specification and thirdly the prosecution history. The intrinsic evidence does

Page 42

1  not include inventor testimony. There's any
2  number of cases saying inventor testimony on
3  claim construction is marginal, if not useless.
4       And this is -- this is a flaw, I think,
5  that exists in Thomson's argument. With respect
6  to the 228 there is a subsequent pending
7  application that we attached as an exhibit. It's
8  not allowed. It's pending in the patent office.
9       In the Microsoft case, there was a
10 parent -- a parent patent that issued, then a
11 descendant patent that issued and then from that
12 descendant there was yet another patent that
13 issued.
14      In the Microsoft case the District Court
15 interpreted the one in between, the middle
16 patent, using statements made in the prosecution
17 history of the subsequent patent.
18           THE COURT: Okay.
19           MR. HOSTENY: If we were to follow
20 Thomson's logic, we would say let's wait until
21 all prosecution is done in the patent office
22 because the 592 examiner might say something
23 useful. The examiner of the pending application
24 or applications might say something useful and
25 that all could conceivably, although we don't

Page 43

1  know how, could conceivably bear on the 228
2  patent.
3       Let's assume the worst case because one
4  of the reasons -- to go back, one of the reasons
5  to differ to the patent office is because the
6  patent and re-examination might be found invalid
7  or claims might be cancelled, so let's assume
8  that the 592 is wiped out. The 228 stands. It
9  is still valid. It is still presumed valid and
10 the statutory right to exclude -- a patent
11 owner's statutory right is not to get damages.
12 The patent owners statutory right is to exclude
13 others from using it's invention.
14      That's why we say back off a bit when you
15 hear Thomson talk about dollars all the time.
16 Dollars are not the nature of the patent remedy.
17 Often they are part of the relief, but the nature
18 of a patent is the right to exclude.
19      In any event, even if the 592 gets blown
20 up, which is unlikely, the 228 stands and the 228
21 can be litigated.
22      Another point that we have -- well, let's
23 go back. There two cases that I think are
24 interesting on the simplification point. One is
25 VData issuing out of this District and I believe

Page 44

1  that's Judge Ericksen and the other is Card
2  Technology. They are both cited in the briefs.
3  They both cite some factors about favoring a stay
4  and, by the way, in the VData case it's
5  interesting because here's the history of VData,
6  two patents in suit, one re-examination was in
7  play. The other re-examination had been
8  requested. Both of them were expiring within
9  about a month or two. No, they both expired in
10 November of 2007, within about year or year and a
11 half of the time the request for re-examination,
12 so the future life is short and according to the
13 patent office's website, which is one of our
14 exhibits, we're 20 months out on one of the
15 patents before an office action issued, so I say
16 take 17 month estimates with a big grain of salt.
17 In the other case we're a year out and nothing
18 has happened.
19      And as long as I'm on patent office
20 statistics, the two other points I wanted to make
21 about this was you can look at averages. What
22 did Mark Twain say, there are three kinds of
23 lies, white lies, lies and statistics, something
24 along those lines. You can make -- these
25 statistics are so gross and so overall on the

Page 45

1  patent office that you have to realize that a
2  number of re-examination requests are denied.
3  Those have a very short lifetime. Those drag the
4  average down.
5       There are other re-examinations that go
6  on for a significant period of time, longer than
7  the median or longer than the average, whether
8  it's 17 or 22 months.
9       For example, in one of our cases, the
10 Razmanath [sic] patent, the 314 patent, the
11 re-examination was seven years. It ended about
12 three or four months ago and what happened as
13 soon as it ended? Somebody filed another
14 re-examination request. If an infringer or a
15 defendant can keep this thing in the patent
16 office, then that's great because nothing can
17 ever happen to them.
18      Irving Younger said the defendant's game
19 is delay because then maybe the world will end
20 and who will care. Delay is the game that
21 Thomson is playing and delay is the game that's
22 prejudicing Timebase in this case.
23      Here's the factors from VData and Card
24 Tech. In Card Tech there were four patents in
25 suit, two plaintiff, two defendant. The

Page 46

1  defendants got stayed for a re-examination and
2  the plaintiff's patents went ahead.
3       First factor, all prior art presented to
4  the Court will have been first considered by the
5  PTO with it's particular expertise. All prior
6  art has already been presented to the PTO with
7  respect to the 228. Thomson has not invoked any
8  new re-examination.
9       Many discovery problems relating to prior
10 art can be alleviated by the PTO examination.
11 Okay, let's look at Pacesetter. After the
12 re-examinations were over and those were
13 relatively short, those were about a year or so
14 in that case as I recall, what happened, the
15 defendants said to the plaintiff, you hid some
16 prior art from the patent office. You didn't
17 give the patent office this piece of prior art or
18 that piece of prior art. In other words, games
19 continue after the patent office has done it's
20 job.
21      Remember last summer we asked the
22 condition of your order be Thomson give us your
23 prior art that you are aware of now. Let's put
24 it into the 592 re-examination. Thomson didn't
25 want to do that. Thomson still doesn't want to

Page 47

1  do that.
2       When these re-examinations --
3  re-examination is over and this case is
4  litigated, whenever it is, Thomson will have some
5  prior art that the patent office didn't see.
6  Either they know about it now or they will find
7  out about it then, but there will be new prior
8  art.
9       In those cases resulting in effective
10 invalidity of the patent the suit will likely be
11 dismissed. That can't happen with the 228. The
12 592 re-exam can't invalidate the 228.
13      The outcome of the re-examination may
14 encourage a settlement. I think an additional
15 stay here discourages settlement. I think there
16 are things that make people settle cases and what
17 makes people settle cases is a deadline, not
18 something that's off in the far distant future.
19 The way lawyers work, they have got a brief due
20 next week, they have got a trial next month, they
21 have got a response due, that's what's going to
22 make this case settle is deadline and what makes
23 this case settle is no stay.
24      The record on re-examination would likely
25 be entered at trial. The 228 has a 1,400 page

Page 48

1  file history, 14 to 1,500 pages. That record
2  already exists. We don't have to wait for the
3  592 record which won't do us much good anyway.
4  You know, and the factors in the Card Data case
5  are pretty much the same thing.
6       The interesting thing that the defendant
7  doesn't -- that Thomson doesn't mention about
8  Pacesetter is, it appears at Page 2, as far as
9  this Court can determine, the parties did not
10 request that Magistrate Judge Nelson allowed
11 discovery to proceed on all four patents on any
12 issues other than validity concurrently with the
13 PTO's re-examination.
14      If that discovery occurred, with or
15 without prejudice, the case would be nearly ready
16 for trial by the end of re-examination regardless
17 of the outcome of the re-examination. That is
18 something that we think is -- ought to be
19 considered here.
20      Thomson agrees with us that the products
21 accused are the same, that the damages sought
22 will be established probably on the same
23 guidelines, a reasonable royalty basis. The
24 witnesses are going to be substantially the same.
25 We can have discovery proceed on the 228 and for

Page 49

1  that matter on the 592 as well eliminating this
2  duplication issue and if and when there's an
3  order that comes out of the PTO or re-examination
4  certificate that comes out of the PTO regarding
5  the 592, the Court can take it into account at
6  that time, but we can be doing something useful
7  in the meantime which is getting discovery over
8  with, at least with respect to everything other
9  than validity.
10      I am jumping around. Let me see for a
11 moment.
12      THE COURT: Can I -- I need to ask
13 another thing.
14      MR. HOSTENY: Sure.
15      THE COURT: And maybe you answered a
16 little bit. Whatever.
17      If the 228 issues on the 6th of November,
18 I think, and this is filed on the 7th, is that
19 right?
20      MR. HOSTENY: Yes.
21      THE COURT: With that history?
22      MR. HOSTENY: Issued on the 6th,
23 filed on the 7th.
24      THE COURT: So on the one hand maybe
25 delay is the game over here, but on the other

Page 50

1  hand, you know -- don't you normally -- I mean as
2  soon as you get an issuance on this, clearly you
3  start-up again to see if maybe this one will go
4  through, isn't it the normal practice not to just
5  rush to the courthouse because if it issues on
6  November 7th there can be -- can there -- there
7  can be no infringement until November 7th so
8  really all we're talking about is possible
9  infringement between November 7th and then you
10 filed that next day, so forward from there or
11 November 6th or November 7th.
12       It also seems to me to be -- it could be
13 interpreted as a rush to the courthouse because
14 normally wouldn't you send letters or try to
15 negotiate and if nothing else now we're just so,
16 you know, talk to me about that if that makes any
17 sense to you what my question is.
18           MR. HOSTENY:  Yes, it does, Your
19 Honor.
20       My experience has been that in most
21 cases, although we still try them, letter
22 negotiations are not effective, particularly when
23 you're dealing with a small entity like Timebase,
24 effectively a start-up company with few
25 employees, and a large organization like Thomson

Page 51

1  which has layer upon layer upon layer of decision
2  making that goes on.
3        I can -- I can't think and I have written
4  letters in any numbers of instances where I
5  provide claim charts, patent file histories,
6  exhibits to the claim charts.  I say here are the
7  patents.  We encourage you to take a license.  We
8  would like you to take a license.  We're willing
9  to meet with you.  Here's a non-disclosure
10 agreement.  We'll share information with you.
11       In one of my cases representing an
12 individual inventor we were so -- we said -- we
13 were told we're thinking about it, we're thinking
14 about it, we're thinking about it.  After a year
15 we were told go away.  Your client committed
16 inequitable conduct.
17       Just the other day I followed up again
18 with a fellow in Washington regarding another
19 client and he promised me a month ago they are
20 getting their hands around some prior art and
21 it's in Germany, but I will be back to you in
22 mid-January.  So mid-January I said, well, Joel,
23 that's happening here.  Well, you have got all
24 those pending Summary Judgement Motions in that
25 case in Chicago that involve the same patent so

Page 52

1  we don't want to do anything now.  I told them
2  all the Summary Judgement Motions had been
3  decided.  You can't get that first base.
4        I don't go this far, but there's a lawyer
5  in Detroit and there's some sense in what he
6  says, the only letter I send is a complaint
7  because that's what makes people move.  You can't
8  make them move otherwise.  It's like trying to
9  move a mountain with some of these organizations
10 and the history with Thomson has been
11 negotiations were unsuccessful.  Timebase came
12 here in 2001 one, negotiated with Thomson and
13 went home.  No deal could be struck.
14       The 592 case was started.  There's no
15 negotiations there.  No deal could be struck.
16 The case went into a stay.  Our feeling was if we
17 have a new patent and we have already waited
18 eight or nine months because we took the unusual
19 step of going back to the patent office, you have
20 to petition to make them withdraw from issue.
21 You can't normally -- you can't just ask.  When
22 they grant the petition, then you file an
23 information disclosure statement.  You give the
24 examiner the references and then you wait and
25 that's another eight or nine months of time that

Page 53

1  our client incurred.
2        They just made what I think is a
3  reasonable judgment not to wait any longer for
4  Thomson to come around to the bargaining table.
5  That's kind of where we are on that one.
6        Meanwhile we have put something
7  additional on your plate, but it's the only place
8  we have to come to for relief in my opinion and
9  Timebase is not interested in a quick victory.
10 Does it hope to win?  It sure does.  It sure does
11 and I have confidence in it's case.
12       What Timebase does want is it's day in
13 court.  That's what it really, really wants, it's
14 day in court, up or down, win, lose, it wants to
15 take it's shot.
16       On the stay business, there's just one
17 last thing I would like to mention and then I
18 think I have covered most of my points.  The
19 remaining ones probably -- Ethicon vs. Quig [sic]
20 cited by Thomson relies for the proposition that
21 a court has the inherit power to grant a stay on
22 the Supreme Court's decision in Landis and Landis
23 Justice Cardoza said in part the suppliant for a
24 stay must make out a clear case of hardship or
25 inequity in being required to go forward if there

Page 54

```
 1   is even a fair possibility that the stay for
 2   which he praise will work damage to someone else.
 3          And just immediately preceding is this
 4   how -- how this can best be done calls for the
 5   exercise of judgment which must weigh competing
 6   interests and maintain an even balance.  Stays
 7   are not routine. If a court considers an
 8   established set of factors, that's fine.
 9          Bottomline, I just want to mention while
10   I am going by on this Ella case that the
11   defendants relied upon fairly heavily, there's
12   one patent in suit that was a member of a family.
13   One of the other family members was being
14   re-examined and three of the remaining family
15   members had been asserted against the same
16   defendants in the International Trade Commission
17   and the ITC found that the other three were not
18   infringed so the Court in Ella said, look, in
19   this family out of the five we have got three
20   that are on appeal because the ITC said they are
21   not infringed.  We have got one that's
22   re-examination which seems to me to be a case for
23   a stay and I think that's an exercise of
24   reasonable judgment and there's no question that
25   this is a discretion of the court.
```

Page 55

```
 1          The VData case I already addressed.
 2          The Pacesetter case I did want to mention
 3   briefly.  The party that invoked the
 4   re-examination there was the plaintiff filed on
 5   four patents and then the plaintiff invoked the
 6   re-examination on two.  That's not something that
 7   Timebase has done here.  If Timebase did do
 8   anything like that it did it in the 228 ahead of
 9   time by going back to the patent office.
10          And the claims in the 228 are narrower
11   and in my view hit Thomson's products right on
12   the head even better than the 592 claims do.
13          Unless you have questions, Your Honor, I
14   am done.  Thank you.
15              THE COURT: That's it.  Brief
16   response, if any.
17              MR. LITSEY:  Thank you, Your Honor.
18              THE COURT: I am going to take it
19   under advisement, maybe not surprisingly.
20              MR. LITSEY:  You have been very
21   patient, so I will be quick.
22          One thing to keep in mind is what
23   happens -- what are we talking about in this
24   re-exam? It's not just the expertise of the PTO.
25   The main thing that affects the scope and shape
```

Page 56

```
 1   of the patent is what Timebase says about them.
 2   They are bound by their statements.  That's the
 3   main point.  They defined -- they will redefine
 4   their patent, the scope of the claims based on
 5   what they say.  We're not necessarily sitting
 6   around for the expertise of the PTO so much as
 7   once the PTO makes an argument, Timebase needs to
 8   respond to it.  That response determines the
 9   scope of the patent.  And as Mr. Hosteny
10   acknowledged, the examiner there will examine it
11   on his own and he may come to an entirely
12   different conclusion then what the European
13   patent office has judged so far and what the 228
14   examiner judged.
15          Again, I just point out, they talk about
16   delay and our game is being delay, I think I take
17   umbrage at that.  We didn't file the re-exam,
18   even though it's a perfectly reasonable,
19   legitimate thing to do, we weren't the party to
20   do that.  They have been the ones who have
21   proceeded with piecemeal patents having sat on
22   prior art in the patent office that they knew
23   about in 2002 when they talk about these
24   extraordinary efforts they went through to
25   retract and withdraw and then bring it suddenly
```

Page 57

```
 1   to the intention of the patent office.
 2          They knew about two of those references
 3   back in 2002 when the European patent office told
 4   them about it when they turned up in their
 5   search, so we are the innocent party here.
 6          Defendants have to be presumed innocent
 7   in this court.  None of this is of our making.
 8   We're trying to make the best of a bad situation.
 9   What do we do? There is this re-exam that's
10   pending.  What do we do about it.  That's the
11   question before the Court, not who's to blame for
12   it or anything else.  We certainly didn't bring
13   it, but what do we do about it and the fact is
14   that as long as you have that re-exam taking
15   place, statements they will make in that
16   examination can dramatically or mildly or perhaps
17   not at all change what's going to happen going
18   forward.
19          But the point is there is a very real
20   possibility of that happening and that's why
21   courts routinely, all the time, grant stays when
22   there's re-exams and this patent is tied to the
23   592.  What they say about the 592 affects what
24   they say about the 228.
25          They have come in and they are relying on
```

15 (Pages 54 to 57)

Page 58

1  the priority date of the 592 patent. They are
2  trying to get behind the prior art. They filed
3  later on the 228. They are trying to get the
4  benefit of the 592. They are stuck with the
5  specification of the 592 if they are going to
6  rely on it for it's earlier priority date, that's
7  why these are so tied together. You can't get
8  more related cases.
9       Mr. Hosteny talked about the right to
10 exclude as being one of the statutory benefits.
11 That's true, but you have to prove a case for
12 injunction to do that. They don't have an
13 injunction case. If you look at the U.S. Supreme
14 Court's case in Ebay from 2006, under no
15 circumstances when they are not operating or
16 competing in this market are they entitled to an
17 injunction. They are looking at damages. This
18 is a damages case. That's what he will seek.
19 There's no undue prejudice to them for having to
20 wait and getting an additional pre-judgment
21 interest or whatever at the end of the day.
22      And I just have to bring up the small
23 company thing, Your Honor, because if anybody
24 sort of obfuscated on that, it really isn't a
25 relevant factor because Timebase isn't doing

Page 59

1  business here and there's no undue prejudice to
2  them, but as far as I can tell, they are either
3  owned by or managed or whatever by the Deutsch
4  Bank Group of companies. Deutsch Bank alone has
5  730 billion dollars in assets. It's a six
6  billion dollar revenue banking company, whether
7  it's Deutsch Bank or one of it's subsidiaries
8  controlling them, I don't know, but this notion
9  that they are a small struggling business frankly
10 doesn't -- rings hollow.
11      That's all I have. Thank you.
12           THE COURT: All right. Thank you. I
13 am going to take it under advisement, as I
14 obviously asked a lot of questions today because
15 I wanted to understand some of those things that
16 I asked about. I think I do now, so I will -- I
17 plan to do this again as -- at least right now I
18 plan to do it as on order as I did last time. I
19 know that there have been some that have been
20 issued as R and R. I think we talked about that
21 last time, that we certainly have the authority
22 to do it as an order and Judge Ericksen didn't
23 seem to mind that at least in the sense that she
24 didn't overrule me just because it was an order,
25 but -- so that's probably the way it's going to

Page 60

1  come out one way or the other. I will try to do
2  it as quickly as we can so you know what's going
3  on. All right. Thank you so much.
4       MR. LITSEY: Thank you for your
5  time.
6       MR. HOSTENY: Thank you so much.
7
8
9            * * *

Page 61

1  STATE OF MINNESOTA    )
                         ) ss.
2  COUNTY OF DAKOTA      )
3
4       BE IT KNOWN, that I transcribed the
5  tape-recorded proceedings held at the time and place
6  set forth herein above;
7
8       That the proceedings were recorded
9  electronically and stenographically transcribed into
10 typewriting, that the transcript is a true record of
11 the proceedings, to the best of my ability;
12
13      That I am not related to any of the
14 parties hereto nor interested in the outcome of the
15 action;
16
17      WITNESS MY HAND AND SEAL:
18
19
20
21      _____
22           Leslie Pingley
23           Notary Public
24
25

16 (Pages 58 to 61)

(651) 681-8550 phone    1-877-681-8550 toll free
www.johnsonreporting.com