# Exhibit 3

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

------------------------------------------------------------

Timebase Pty, Ltd.,

       Plaintiff,

  vs.                              Case No. 07-1687

The Thomson Corporation,

       Defendant.

------------------------------------------------------------

THE HONORABLE JEANNE J. GRAHAM

United States Magistrate Judge

\*   \*   \*

TRANSCRIPT OF PROCEEDINGS

\*   \*   \*

Date:  June 28, 1997

Reporter:  Leslie Pingley

(651) 681-8550 phone    1-877-681-8550 toll free
www.johnsonreporting.com

Exhibit 3

Page 2

APPEARANCES

    MR. MICHAEL R. CUNNINGHAM, Attorney at Law, 80 South Eighth Street, Suite 500, Minneapolis, Minnesota 55402 appeared on behalf of named Plaintiff.

    MR. JOSEPH N. HOSTENY, Attorney at Law, 181 West Madison Street, Suite 4600, Chicago, Illinois 60602 appeared on behalf of named Plaintiff.

    MR. CALVIN L. LITSEY and MS. ELIZABETH C. WRIGHT, Attorneys at Law, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402 appeared on behalf of named Defendant.

Also present: Mark Stignani, Thomson Corporation

Page 3

PROCEEDINGS

    (NO REPORTER WAS PRESENT - The following transcript was prepared from a COPY of the original court tape)

    THE COURT: All right. This is the matter of Timebase, Ltd. vs. The Thomson Corporation and the Civil File No. is 07-1687. This is assigned to District Court Judge Joan Ericksen and myself, Jeanne Graham, as Magistrate Judge and we're here today on defendant's motion to stay litigation pending reexamination proceedings.
    May I have appearances please, first from plaintiff's side.
    MR. CUNNINGHAM: Your Honor, my name is Michael Cunningham. I'm with the Gray Plant Mooty firm here in the Twin Cities and with me today is Joseph Hosteny, lead counsel for the plaintiffs. He's been admitted pro hac vice in this matter.
    THE COURT: All right. Great. Thank you.
    THE COURT: And from the defense.

Page 4

    MR. LITSEY: Good morning, Your Honor. Calvin Litsey from Faegre & Benson and with me at counsel table is Ms. Wright, also from Faegre & Benson and Mark Stignani from the Thomson Corporation.
    THE COURT: All right. Great. Good morning. Well, defendant's motion so you may come to the podium first.
    MR. LITSEY: Thank you, Your Honor. May it please the Court and counsel, as stated in our papers, Your Honor, this is really a textbook case for scheduling a stay of these proceedings in accordance with well-established practice in this District.
    We're here at the outset of the case. There's been a reexamination filed by a third party with respect to the patent in suit on new prior art and the patent office has determined that that prior art presents a substantial question of patentability for this patent that's being asserted.
    As the plaintiff acknowledges this prior art also happens to have been art that was relied on in corresponding European proceedings that have served for the basis of rejecting claims

Page 5

that are virtually identical to the ones being asserted here.
    The recent decisions we cited from Judge Ericksen, Judge Davis and Magistrate Judge Nelson really, I think, provide the framework for what should be followed here and it's not only that those cases really establish the model in this District for how to stand -- how to handle scheduling stays under these circumstances, but they are really thoughtful opinions that I think really describe, excuse me, in some detail the factors that did apply and if you look at each of those established factors -- I'm sorry, I'm losing my voice.
    THE COURT: That's all right.
    MR. LITSEY: I will get a glass of water.
    If you look at each of those established factors, they really overwhelmingly favor the scheduling of a stay here as a case management tool, so you look first at the plaintiff and whether or not the plaintiff would be prejudiced and here you have a company that's asserted the patent five years after it's issued. It's an Australian company that doesn't conduct business

Page 6

```
 1    in the United States, doesn't have a product
 2    here, doesn't have a presence here.  It's
 3    basically asserting a patent to obtain money
 4    damages and certainly a stay does not affect that
 5    sort of relief and they don't argue that it
 6    would.
 7            Second, this case is at the earliest
 8    stages of the litigation, so it's really the
 9    classic case in which courts exercise their
10    discretion to schedule a stay or literally before
11    any discovery has commenced and I think as Judge
12    Ericksen and Judge Davis both wrote in their
13    opinions under these circumstances scheduling a
14    stay is routinely granted so that's their words.
15            And third, of course, staying the
16    proceedings will simplify and narrow the issues
17    here.  It really avoids wasting the Court's time,
18    the party's times, expending resources when the
19    patent is really in flux and therefore in these
20    same cases the judges in this District and
21    elsewhere recognize it.  It's really the common
22    sense thing to do because generally, although
23    it's -- none of us can predict what's going to
24    happen exactly in the patent and trademark
25    office, but generally one of three things is
```

Page 7

```
 1    going to occur.
 2            Either they are going to be out right
 3    rejected the way they have based on this prior
 4    art in the European patent proceedings in which
 5    case the case is over and we won't be back here
 6    at all and the parties will not have had to
 7    expend any additional resources.
 8            Second, in a substantial number of cases
 9    the claims get amended so they are changed in
10    some way, often in a significant way, and it's
11    really again the claims that define the scope of
12    infringement, the scope of whether or not prior
13    art is relevant, invalidity, claim construction,
14    all those sorts of issues and even if -- even if
15    these patents emerged without a word having been
16    changed, you still have the entire proceeding
17    that serves as an additional prosecution history
18    record because the plaintiffs will be talking
19    about what their claims mean, what they say, what
20    the scope of the patent is and the patent office
21    will also be making those kinds of
22    determinations.
23            So it makes little sense for the parties
24    to embark on what is going to be substantial and
25    expensive discovery, especially here where you
```

Page 8

```
 1    have an Australian plaintiff and we're going to
 2    be needing to conduct discovery in Australia,
 3    perhaps third-party discovery there pursuant to
 4    the Hague Convention and so forth.  It makes
 5    little sense to embark on that sort of expensive
 6    discovery to engage the Court in infringement
 7    contentions and positions -- invalidity
 8    contentions and positions, claim construction
 9    issues, formulating Markman proceedings and
10    briefings, all of which are likely to have to be
11    redone in the event that there's any change in
12    the claims, so that's why courts routinely employ
13    stay as a litigation management tool under these
14    circumstances and that's precisely what we're
15    asking the Court to do here is simply to follow
16    what Judge Ericksen, Judge Davis and Magistrate
17    Judge Nelson have all recently done under similar
18    circumstances and used the stay as a scheduling
19    tool to manage litigation efficiently and indeed
20    they say there's a liberal policy of doing that
21    in this District.
22            So I think if you look at the -- at the
23    three factors they really overwhelmingly favor a
24    stay under these circumstances.
25            So what does the plaintiff say?  Frankly
```

Page 9

```
 1    the plaintiff doesn't engage on any of these
 2    issues, Your Honor.  The plaintiff doesn't
 3    dispute that the three factors courts look at
 4    really overwhelmingly support the scheduling of a
 5    stay here.
 6            Instead what the plaintiff does is ignore
 7    these factors.  They don't address them.  Rather
 8    they suggest that this Court do what no court in
 9    this District has ever done and what no court in
10    the Country has ever done in any case that they
11    have cited and suggest that we multiply the
12    proceedings, not try to streamline them in an
13    unprecedented, unfair and unreasonable way rather
14    than addressing the scheduling issue of whether
15    or not we should go forward with this litigation,
16    plaintiffs asked the Court to order defendants to
17    instruct their own lawyers to create work product
18    for claims benefit by finding additional
19    references that might affect this patent, then
20    for us to start our own proceeding, a separate
21    proceeding, with the patent and trademark office
22    at our expense, then to use that work product for
23    them to argue with the patent office in
24    proceedings that we're completely shut out of,
25    these are ex parte proceedings, and then to have
```

Page 10

1  us bound by that decision.  I mean on it's face
2  it's unfair.  It's unreasonable.  We wouldn't
3  agree to it.  No reasonable party would agree to
4  it and no court ever has imposed those sorts of
5  conditions on granting or scheduling a stay.
6       A stay is merely a common sense case
7  management tool.  It's an opportunity to have the
8  Court not expend substantial resources while
9  there's a pending reexam initiated by this third
10 party.
11      And I want to address the point they make
12 in their brief that somehow we're behind this
13 third-party proceeding.
14      First of all, it's completely false.
15 They come in to court without any evidence
16 whatsoever, not a shred of evidence other than
17 mere assertions by their attorneys and frankly I
18 think it's beyond the realm of any reasonable
19 argument that somebody should make -- be making
20 in their brief.  If we had wanted to bring a
21 separate proceeding, we would have done so.  We
22 have chosen not to and, in fact, the normal
23 proceeding is not for a third party to have
24 initiated something, but for the defendant itself
25 to have done that.  We have chosen not to.  We

Page 11

1  would prefer to be in court if and when we have
2  to litigate this patent and, in fact, in most
3  proceedings where it is the defendant who's even
4  initiated the PTO proceedings, it's in those
5  circumstances that the courts still allow and
6  provide for the scheduling of the stay.  That's
7  what's happened in all the cases that we have
8  cited in which Judge Ericksen and Judge Davis
9  have applied the stay.
10      In fact, as Judge Ericksen and Judge
11 Nelson wrote in the Vdata case, that's
12 specifically the framework that Congress
13 contemplated is that you would really have two
14 separate proceedings, each of which a defendant
15 could take advantage of.  We didn't initiate this
16 proceeding and we shouldn't be -- because we have
17 chosen to be in court be forced in to creating
18 our own proceeding.
19      The sole case that plaintiff points to in
20 support of it's argument that Thomson and the
21 West Company should be bound by the results of a
22 PTO proceeding says nothing of the sort.  The
23 Emhart [sic] case from the Northern District of
24 Illinois neither ordered a party to commence it's
25 own reexam proceeding nor did it order a

Page 12

1  defendant to be bound by the exam as a condition
2  for granting a stay.  In fact, if you look at
3  that case, what the Court did there is examine
4  the same sort of traditional factors that the
5  courts here look at and concluded that based on
6  the -- the stage in which the proceeding were at,
7  the benefits that would be obtained, it was
8  appropriate to order a stay there.
9       It did note that in that case the
10 defendant who had initiated the PTO proceedings
11 there had voluntarily assured the Court that it
12 would not contest the issues that the PTO decided
13 provided that the plaintiff played fair in that
14 proceeding in which they were not party, but the
15 Court neither ordered the defendant to do that
16 nor did it form the basis of the Court's decision
17 to grant a stay.
18      And, in fact, when the plaintiff raised
19 this argument in it's brief, we searched for
20 cases in which other plaintiffs had made this
21 argument and frankly I was only able to find one
22 and I have a copy of it.  It's not in your brief,
23 but I would be happy to provide the Court and
24 Counsel with a copy if I may approach.
25           THE COURT:  All right.

Page 13

1           MR. LITSEY:  Your Honor, this case
2  is a 2004 case from the Northern District of
3  Illinois entitled Zylik vs. Quick Logic [sic] and
4  if you actually look at the case it applies the
5  same three factors that courts in this district
6  do and concluded that a stay was appropriate and
7  then it addressed the contention of the
8  defendant.  If you look at the last page of the
9  slip opinion the two paragraphs above the
10 conclusion it addresses the plaintiff's request
11 there to require the defendant who had actually
12 initiated the proceedings there to be bound by
13 the resolution of those proceedings and in the
14 last paragraph the Court says, quote, the Court
15 will not force defendant to abide by the PTO's
16 findings as a condition of granting the stay.
17 Plaintiff cites no authority that defendant is
18 obligated to abide by the PTO's findings.  To the
19 contrary, courts have held that a non-patent
20 holder is permitted to challenge a patent both in
21 the PTO and in District Court, so to the extent
22 there's any precedent exactly on point out there,
23 Your Honor, it's this case and it rejects the
24 plaintiff's argument here.
25      In fact, if you look at the language from

Page 14

1  that quote that I just read where it talks about
2  the patent holder being permitted to challenge
3  patents both in the patent and trademark office
4  and in the District Court it's exactly the
5  observation that Judge Ericksen made when the two
6  bites at the apple argument was made in the Vdata
7  case.  She said, no, that's exactly what Congress
8  intended.  And of course we're not even
9  attempting to do that here.  This is a third
10  party reexamination in any event.
11        In short, Your Honor, as a matter of case
12  management, there's really no dispute that the
13  factors employed in this District for scheduling
14  a stay are overwhelmingly in favor of granting
15  the motion.  This is really, again, a classic
16  textbook case in which the courts can manage the
17  case by staying the proceedings and allowing what
18  is happening in the patent and trademark office
19  to run it's course, especially here where it's
20  clear there's no prejudice to the plaintiff from
21  doing it.  It gets it's remedy at the end of the
22  day.  We're at the very early stages of
23  litigation.  No discovery has been conducted and
24  we're here.  There's been a substantial question
25  raised about the validity of this patent that

Page 15

1  will be addressed in those proceedings.
2        Once that proceeding runs it's course,
3  then we will either be back here in front of the
4  Court and litigating this case or we'll be back
5  here with a substantially different patent and so
6  therefore it makes sense to wait and manage this
7  case and just stay the proceedings until that --
8  until the PTO has finished it's work in those
9  proceedings initiated by a third party.
10            THE COURT:  Okay.  Thank you.
11            MR. LITSEY:  Thank you.
12            THE COURT:  And response?
13            MR. HOSTENY:  Thank you, Your Honor.
14  Joe Hosteny on behalf of Timebase.
15        A little bit of background.  Timebase is
16  a small company.  It is an Australian company.
17  In fact, it's gone through some changes because
18  the original inventors of the technology left,
19  encountering some financial difficulties and the
20  patent is now in different hands.
21        The investors in Timebase are not simply
22  people interested in making money on a patent.
23  They are pension funds and this is an investment
24  by those pension funds or what they call
25  Superannuation funds in Australia.

Page 16

1        The patent deals with electronic
2  publishing.  Basically you take pieces or
3  portions of text and then portions of that text
4  that are amended, store them in a database and
5  link them in some fairly unobvious way so that
6  you can explore the history of a written document
7  as it may have existed a good deal of time in the
8  past.  For example, how a statute might have been
9  amended, how a particular statute was amended in
10  a particular year, whether a particular statute
11  was amended with respect to certain wording in a
12  section and it gives you the ability -- the
13  patent gives examples of legislation, but it
14  applies not only to legislation but also to
15  technical documents, medical literature and the
16  like.  It's a useful invention.
17        I am not certain where the defendants
18  have gotten some of the ideas they have about
19  what we supposedly asked them for.  My partner,
20  Art, had a conversation, I believe it was with
21  Mr. Litsey when the question came up whether we
22  would agree to a stay and we made three
23  suggestions.
24        One, we said, look, if Thomson, and you
25  have to keep in mind that representatives of

Page 17

1  Thomson or some of it's subsidiaries and
2  representatives of Timebase negotiated a number
3  of years ago in an effort to reach an agreement
4  concerning this 592 patent.  They were unable to
5  do so.  One of the things that Timebase did was
6  provide a standstill period so that the people
7  they were negotiating with at Thomson would have
8  the opportunity to go and investigate the patent,
9  so we believe that Thomson or it's subsidiaries
10  have investigated the patent.  I believe
11  Mr. Stignani who is here today was involved in
12  some of those negotiations.  I was not.
13        So we made three suggestions.  We said,
14  look, if you are going to do a reexamination, if
15  you have any inclination to do a reexamination,
16  do it quickly.  We know this other one is out
17  there filed by an attorney in Connecticut on
18  behalf of some anonymous third party.  We don't
19  know who it is.  So we suggested first do a
20  reexamination quickly so we don't have a double
21  length stay.  And I will get to it in a moment.
22  The stays can be extremely long and that's one of
23  Timebase's concerns and that was why it suggested
24  to Thomson if you want to do a reexamination do
25  it now or do it very, very soon.

1        The second thing we suggested was let's
2   make that reexamination have the maximum benefit
3   and let's do it in a way that minimizes the
4   prejudice to Timebase and the waste of everyone's
5   time after a reexamination is over.
6        More specifically we said, and you know I
7   will quote just as Mr. Litsey will quote, all of
8   those court decisions extolling the benefits of
9   reexamination.  The benefits are get the expert
10  involved.  He's a neutral expert.  It's a patent
11  examiner, let that person take a look.  Then the
12  Court's time is saved.  The party's time is saved
13  and money is not wasted relitigating issues.
14       We said that's fine.  Here's a way to do
15  that.  Let's have that reexamination considered
16  not only what this anonymous third party has put
17  in to play, but also anything that you, the
18  defendants, have that you would like to put in to
19  play that fall within the scope of reexamination,
20  not all prior art, but patents and printed
21  publications.  We said if you presently possess.
22  We didn't ask anybody to go dig up anything,
23  although frankly I think they are probably very
24  busy digging up things right now.  We said
25  anything that it presently possessed should be

1   put into that reexamination so it could be
2   considered as well.
3        This is computer technology.  It's
4   database technology.  It deals with markup
5   languages and I think it would be a shame to go
6   through a reexamination to resolve three
7   documents only to get to the end of that
8   reexamination and have Thomson tells us that here
9   is three more documents, three more publications,
10  three more patents or in the cases of what I have
11  seen some defendants do, scores of patents and
12  publications.  Let's get them into the
13  reexamination now.  That benefits everyone.
14       The last point was, and this is something
15  that every party faced with a reexamination
16  request and every Court faced with a
17  reexamination request has to confront and that is
18  will the defendant reargue the same piece of
19  prior art that was considered in the
20  reexamination after the reexamination is over.
21  So we asked if they would agree to be bound.  We
22  didn't tell them they had to be.  We asked if
23  they would agree to be bound.
24       The response to those three questions was
25  silence until we received the motion for a stay

1   and the motion for a stay did not address any of
2   those three points and that's why our response
3   lays them out and that's why our response says we
4   don't like a stay.  I don't want a stay because I
5   have seen stays go on for, in my personal
6   experience, five years.  I have seen a stay go on
7   in a case in my office for seven years.  I've
8   seen a stay go on in a case in my office for
9   three years, so they are not all 19 months.
10  That's one of the problems.
11       I realize you have to make a decision
12  based on the statistical data, but that's why
13  stays scare plaintiffs and patent owners because
14  they can be so, so long and so that's the basis
15  of the conditions we suggested and that's why we
16  came here and we said we're not necessarily
17  opposing a stay, but we do think and we cited, I
18  think it's the Landis case, stays are not
19  automatic.  Stays in litigation are not
20  automatic.  They are a discretionary decision of
21  a Court when it weighs the factors that applies
22  to both sides and looks at the potential up and
23  downside or prejudice to both sides and I think
24  if we're going to have a reexamination it's
25  reasonable for Thomson to give us any prior art,

1   not any prior art I should say, any patents or
2   printed publications in it's possession now so
3   that those can go into the reexamination.
4        I think it's also reasonable while this
5   case is on the Court's docket that Thomson has a
6   period of time in which to file it's own
7   reexamination request or should not do so.
8        On the last condition, it was something
9   we asked them to do.  I am not even asking the
10  Court to impose that condition.  I simply will
11  say that if we're all here some day down the road
12  after a reexamination and we're all looking at a
13  piece of literature considered by the patent
14  office and Thomson is arguing that that piece of
15  literature should, despite a contrary decision by
16  the examiner, invalidate a claim or claims, we're
17  wasting our time.  We're really, truly wasting
18  our time.
19       By the way, one point on the
20  reexamination statistics, I do not think that the
21  majority of statistics as represented by the
22  defendants result in patents being cancelled.  I
23  think the majority of patents -- first, I cannot
24  recall in approximately 20 years of litigation
25  experience, I cannot recall a reexamination

Page 22

1   request that was not granted.  It is routine for
2   examiners to say there's a substantial new
3   question of patentability unless that reference
4   is already in the file, so they always do that.
5           Secondly, in my experience most patents
6   come out of reexamination and I think that's the
7   correct reading of the statistics cited in the
8   party's briefs.  Most patents come out of
9   reexamination with at least some claims confirmed
10  and therefore you have a patent in most instances
11  that survives.
12          I have nothing further unless the Court
13  has any questions for me.
14              THE COURT:  I have a procedural
15  question that popped up in my head when you guys
16  were talking that you're -- the European findings
17  are applicable here?
18              MR. HOSTENY:  No, they are not.
19  European patent law has different legal standards
20  entirely and in -- frankly in our view they
21  have -- they write claims differently from how
22  U.S. claims are written.  I don't know.  I can't
23  go in to detail on what the standards of
24  obviousness they apply.  We think the examiner
25  has been rigorous to the point of being

Page 23

1   persnickety on these particular references and
2   our point of view and our client's point of view
3   is they are going to get by those references and
4   they are going to get -- achieve patent
5   protection in Europe.
6           I think what's going on in Europe has
7   little or nothing to do with the decision that
8   Your Honor has to make here regarding a stay.
9               THE COURT:  Okay.  All right.  Thank
10  you.  So what about the idea that, you know, what
11  about this whole idea that at, you know, after
12  let's say 20 months or 24 -- let's say two years
13  down the line then you decide that you want to
14  have a reexamination and we go on.  I mean I
15  don't like stays that go on for that period of
16  time of either.  Either we're in or out at a
17  certain point, so how do we deal with that?
18              MR. LITSEY:  First of all, as I told
19  Mr. Hosteny's partners, Art Gasey, when they
20  first raised this with us, he must not have
21  spoken to his colleague about what we talked
22  about because I rejected these proposals out of
23  hand.  They are unreasonable.  They don't make
24  any sense.  I said we're not intending to start
25  our own reexam.  There's a reexam that currently

Page 24

1   is in place by a third party and it makes sense
2   as a matter of case management to wait until
3   that's run it's course before we all run off and
4   conduct a bunch of discovery.
5           Of course, the Courts permit parties to
6   do both.  We have chosen not to.  We would prefer
7   to be in court not in an ex parte proceeding
8   where we don't get to present our evidence.
9           If for any reason my client instructed us
10  later to seek a reexam in this case, then we
11  would be back -- A, we wouldn't necessarily be
12  seeking a stay and B, if we were we would be back
13  in front of Your Honor and we could read me the
14  riot act and deny a motion if we brought another
15  motion to stay, so that issue is really not even
16  before the Court.
17          And frankly with respect to being
18  efficient, if the plaintiff truly wanted to be
19  efficient there's nothing preventing the
20  plaintiff from putting in whatever references it
21  wants into the current reexam.  It gets to argue
22  with the patent office about that.  We're totally
23  a bystander here.  We don't get to participate.
24          They're suggesting that we give up our
25  day in court, be ordered to start our own

Page 25

1   proceeding under what feasible procedures we
2   decide what we have to do or not do and whether
3   we would be back in front of the court as to
4   whether we complied or not or whether somebody is
5   taking my deposition about whether I had a Sports
6   Illustrated article or something that was prior
7   art that should have been put in.  I mean it
8   would be tantamount to ridiculousness, so we
9   don't want to be in that proceeding.  The
10  proceeding exists.
11          If the plaintiff believes there's
12  additional art it's it's obligation to go out and
13  do what any reasonable patent owner does, conduct
14  an examination, find the art and present it to
15  the patent office and it's free to do that.  We
16  should not be compelled as part of our defense in
17  this case to initiate proceedings that we don't
18  want to be a part of.
19          We're simply asking the Court in view of
20  proceedings that already exist, in view of the
21  fact that the European patent office which
22  actually I think the obviousness standard is
23  harder for a defendant there to overcome, they
24  have written a lot about the claims there, all of
25  which are very pertinent.  They haven't denied

(651) 681-8550 phone    1-877-681-8550  toll free
www.johnsonreporting.com

Page 26

1  that they are virtually the same as the ones
2  here.
3         The patent examiner here has found a
4  substantial question of patentability. I think
5  it makes ultimate sense. This is again a
6  textbook case in which it makes sense to wait,
7  stay these proceeding until that has run it's
8  course and then we can be off to Australia or
9  whatever or we may not even back here since at
10 least in 10 to 12 percent of the cases it's
11 rejected in it's entirety as it has been in
12 Europe twice.
13         THE COURT: Okay. All right. Thank
14 you. I am going to take just a few minutes. I
15 am going to look at a couple of things and then I
16 believe I am going to be able to render an
17 opinion here on the bench, so you folks know
18 what's going on because either we're going to do
19 Rule 16 or we're not is the bottom line, so give
20 me about 10 minutes and I will be right back.
21
22     (A recess was had in the proceedings)
23
24         THE COURT: We're back on the record
25 in the Timebase case. I am ready to make my

Page 27

1  decision known.
2         I am actually a fairly practical person,
3  but there are some parts of what plaintiff has
4  talked about that makes some sense to me, but as
5  I read the cases and I certainly note the ones
6  that are in this District as well as the other
7  ones that are cited, I just -- I just have to
8  keep coming back to the question is whether I
9  order a stay or not at this point and I go
10 through the three factors and the three factors
11 seem to me to be very clear that they do warrant
12 a stay.
13         I will mention a few things here just so
14 you know where I am coming from.
15         I think first clearly the stage of the
16 proceeding is obviously the parties have not
17 exchanged any discovery or even initial
18 disclosures and I know some in regards that's of
19 concern to the plaintiff's side, but the fact is
20 is that we have yet to really start this case so
21 obviously that does mitigate towards having a
22 stay.
23         Simplification of the issues, it does
24 appear that those that are experts in the PTO
25 area or PTO office that the reexamination will be

Page 28

1  considering prior art references to the 592
2  patent and it will apparently narrow the issues
3  from what I can tell.
4         So what I really get to is the prejudice
5  and tactical advantage and piece of that and
6  whether this is just being done to cause
7  prejudice or for tactical advantage. Well, it
8  could be that there is strategy here that
9  recognizes that. However, it does appear to me
10 that that's something that the Court can, in
11 fact, control.
12         In this case we don't have -- we don't
13 have U.S. products. We don't have U.S. presence
14 really and there really isn't a great argument
15 regarding prejudice except that they were hoping
16 by the conditions that they were seeking, that is
17 the plaintiffs, to at least make this efficient
18 and that I can agree with, is efficiency is good.
19 But that does not equal having undue prejudice or
20 tactical disadvantage and so I find that that
21 also mitigates towards having a stay.
22         The main -- the main problem I see is
23 delay, possible delay. That's the main problem I
24 see and I believe that the Court can control that
25 in terms of whether or not there is -- there are

Page 29

1  future requests for reexaminations and stays.
2  Reexamination so be it, but request for stays I
3  should say.
4         The one area I wanted to touch on
5  specifically is really the last thing that was
6  discussed here which I should say we realized was
7  not on the tape, so maybe you could describe what
8  it was that you said at the very end so it could
9  be in your words and not mine.
10        MR. HOSTENY: Yes, Your Honor. All
11 I was saying, I think was that, A, we weren't
12 asking the defendants to necessarily find art.
13 We believe they have some due to the passage of
14 time. We wanted them to provide what they
15 presently possessed by way of patents and printed
16 publications.
17        And then secondly I pointed out response
18 to Mr. Litsey's point that we may well, that is
19 Timebase, may well put additional references into
20 the reexamination if there is or is none, so they
21 can be considered, but we don't know that our
22 universe is going to overlap exactly with the
23 defendants. That's why we say if you folks have
24 patents and printed publications, let us have
25 them.

Page 30

1    THE COURT: All right. I did
2 consider that because I understand how that would
3 potentially increase the efficiency of going
4 through all of this with at least this
5 reexamination, but I don't believe that I have --
6 I just don't see how one decides there's going to
7 be a stay and then makes that conditional
8 exactly. I suppose one would do that if I could
9 find that there was undue prejudice and I just
10 can't make that finding because I suppose there
11 could be prior art between now and -- or the
12 printed publication, something that is found a
13 year from now and there's not much we can do
14 about that, so it seems to me that while I
15 certainly understand it that's not something I
16 can make a condition of the stay.
17    I will be limiting it, however, to the
18 reexamination process. I am not going to do
19 including all appeals at this point.
20    Were you requesting all appeals?
21    MR. LITSEY: We were, Your Honor,
22 and we would, of course, understand if the Court
23 wanted to extend the stay until that -- until the
24 patent office was done with it. We could revisit
25 the issue in the event that there's an appeal

Page 31

1 from that, but if there is an appeal then usually
2 that is included in a stay because that completes
3 the process.
4    THE COURT: Okay. Well, I suppose we
5 can visit that when we need to, but at this point
6 I am limiting it to the reexamination process and
7 I don't -- what I would like is to keep somewhat
8 control over it. In other words, we don't all
9 walk out the door and you folks remember the
10 case, but a year from now whether we will
11 remember it or not, I would like a letter that's
12 filed.
13    My suggestion would be on a six-month
14 interval to tell me what's going on in the case.
15    You folks know better than I, is that too
16 frequent? Is nothing going to be able to be
17 reported within --
18    MALE SPEAKER: I wish I could say.
19    THE COURT: Okay.
20    MALE SPEAKER: There's a chance that
21 we will have, you know, an office action I'm
22 estimating within three to four months.
23    THE COURT: Good.
24    MALE SPEAKER: And typically the
25 patent office will -- typically the patent takes

Page 32

1 as much time as it wants to take and tells the
2 plaintiff or the patent owner to respond in 30 to
3 60 days, usually 30 days, but I think the
4 examiners indicated you have three to four months
5 so there's a chance we will have something by six
6 months, at least from the patent office and
7 probably a response.
8    THE COURT: Okay. Then I am going to
9 say I would like -- I would like to have, in
10 essence, a status letter six months -- in six
11 month periods and if nothing else it reminds me
12 what's going on in this case and reminds everyone
13 to don't forget about it.
14    I wanted to mention that for use if
15 anyone is going to follow this up to the District
16 Court that Vdata was my primary authority in
17 really looking at this. I will even go ahead and
18 mention that this Court actually ruled a slightly
19 differently in another matter, but I don't think
20 it's a published opinion in Cognex vs. VCode, but
21 that case was, I find, and I will do it just now
22 so everyone understands that I at least
23 considered it, I find that case to be different.
24 It was in a different posture in terms of it's
25 procedural posture and it was also different in

Page 33

1 terms of what that case was about. It was about
2 more than just the patents and so I -- for the
3 reasons I stated in Cognex and affirmed by Judge
4 Ericksen, did not allow the stay in that case,
5 but I find that this is more like the Vdata and
6 that is why I am acknowledging that I believe
7 all -- all of the factors go towards a stay in
8 this case.
9    Now, if there is no disclosure at this
10 point of current printed publications that the
11 defendant knows and if there happens to be a
12 reexamination later, then I do think it's clear
13 that it becomes less and less compelling to allow
14 any kind of serial stays if, in fact, there were
15 things that could be done now that might have
16 made the examination process that's currently
17 under way more efficient ish, so I just throw
18 that out there for everyone's consideration and
19 certainly while I am not making -- I am not
20 making a ruling ahead of time, my main concern
21 about this whole thing in terms of how these
22 things have played out over the years is serial
23 stays are not something I prefer to do, so I will
24 just say that. Okay.
25    Well, so I am granting the motion, all of

Page 34

1   that to say I am granting the motion.
2         Okay.  Anything else we can do today?
3   Oh, that means we're not going to have the
4   Rule 16.  All right.  Thank you all.  Thanks for
5   being here and for good argument and good written
6   materials.  I appreciate it.
7
8                * * *
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 35

1   STATE OF MINNESOTA    )
                          ) ss.
2   COUNTY OF DAKOTA      )
3
4         BE IT KNOWN, that I transcribed the
5   tape-recorded proceedings held at the time and place
6   set forth herein above;
7
8         That the proceedings were recorded
9   electronically and stenographically transcribed into
10  typewriting, that the transcript is a true record of
11  the proceedings, to the best of my ability;
12
13        That I am not related to any of the
14  parties hereto nor interested in the outcome of the
15  action;
16
17  WITNESS MY HAND AND SEAL:
18
19
20
21       _____
22            Leslie Pingley
23            Notary Public
24
25