# Exhibit 4
# Part A



Not Reported in F.Supp.2d                                                                                             Page 1
Not Reported in F.Supp.2d, 2003 WL 23303473 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

Pacesetter, Inc. v. Cardiac Pacemakers
D.Minn.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Minnesota.
PACESETTER INC., a Delaware corporation, Plaintiff,
v.
CARDIAC PACEMAKERS, INC., a Minnesota corporation and Guidant Sales Corporation, an Indiana corporation, Defendants.
No. Civ. 02-1337(DWF/SRN).

Nov. 19, 2003.

Michael A. Lindsay, Dorsey & Whitney, Minneapolis, MN, Jeffrey M. Olson, Sidley Austin Brown & Wood, Los Angeles, CA, Denis R. Salmon, Gibson Dunn & Crutcher, Palo Alto, CA, for Plaintiff.
Felicia Jurgens Boyd, Randall E. Kahnke, Kenneth A. Liebman, David J.F. Gross, Julie Knox Chosy, and James W. Poradek, Faegre & Benson, Minneapolis, MN, for Defendants.
Richard G. Wilson, and William Z. Pentelovitch, Maslon Edelman Borman & Brand, Minneapolis, MN, for Objectors.

### ORDER AND MEMORANDUM

FRANK, J.

**\*1** This matter is before the Court upon Plaintiff's appeal of Magistrate Judge Susan Richard Nelson's order dated November 17, 2003, in which Magistrate Judge Nelson granted Defendants' motion to stay litigation in the above-entitled matter pending completion of reexamination proceedings. Defendants oppose Plaintiff's appeal.

The Court must modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. *See*28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); Local Rule 72.1(b)(2). This is an "extremely deferential standard." *Reko v. Creative Promotions, Inc.,* 70 F.Supp.2d 1005, 1007 (D.Minn.1999)."A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."*Chakales v. Comm'r of Internal Revenue,* 79 F.3d 726, 728 (8th Cir.1996) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)).

The Court finds that Magistrate Judge Nelson's order is neither clearly erroneous nor contrary to law. Thus, the Court denies Plaintiff's appeal and affirms Magistrate Judge Nelson's order of November 17, 2003.

Accordingly, IT IS HEREBY ORDERED:

1. Magistrate Judge Susan Richard Nelson's order of November 17, 2003, granting Defendants' motion to stay litigation of this case pending reexamination proceedings (Doc. No. 119) is AFFIRMED.

### MEMORANDUM

The Court has reviewed all submissions of the parties, including the submissions to Magistrate Judge Susan Richard Nelson at the time the motion to stay litigation, pending reexamination proceedings, was argued before Magistrate Judge Nelson. Based upon that review of the record, the Court has no doubt that the proper exercise of the Court's discretion results in a stay of the litigation. Moreover, the Court respectfully rejects the option of a partial stay of the two patents that are not in reexamination, finding that any fair scrutiny of the record in this case compels the conclusion that the four patents in question, although unrelated, are inextricably intertwined. There is no discernable demarcation of issues, experts, or products. In addition, duplicity and overlap will occur when addressing issues such as experts, discovery, damages, and products.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23303473 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

The District Court has the inherent power to control and manage its docket, which includes the authority to order a stay pending the outcome of reexamination proceedings at the PTO. *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999); *Computer Products Corp. v. Haworth, Inc.,* 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y.2000). Consequently, the decision to grant or deny a stay pending the outcome of a PTO proceeding rests entirely with the sound discretion of the District Court. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988); *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378, 1380 (N.D.Cal.1994).

***2** Plaintiff's patent infringement suit involves Defendants' product lines of pacemakers, defibrillators, and resynchronization devices. Sixty Guidant products are involved, encompassing 14 product lines. Plaintiff filed this suit in a single action, asserting infringement as to four patents: the '523 patent, the '737 patent, the '342 patent, and the '167 patent. In June and July 2003, Plaintiff, not Defendants, requested reexamination of two of the patents, namely, the '737 patent and the '523 patent, and the PTO granted this request.

It should be noted that, with few exceptions, all of the cases cited by Plaintiff and Defendants are factually distinguishable from the instant case. It is indeed rare where a Plaintiff has filed a lawsuit and, for whatever reason, includes an assertion of infringement as to four patents and then subsequent to the filing of the lawsuit requests reexamination of two of those patents. The Plaintiff has not provided an explanation as to why the four patents in question were included in the same lawsuit. However, even if the patents themselves lack a nexus to the validity issues to be determined by the PTO, this Court is unable to glean any undue prejudice that the stay will cause to the Plaintiff.

As far as this Court can determine, the parties did not request that Magistrate Judge Nelson allow discovery to proceed on all four patents on any issues other than validity, concurrent with the PTO's reexamination. If that discovery occurred, with or without prejudice, the case would be nearly ready for trial by the end of reexamination, regardless of the outcome of the reexamination. This approach would be practicable if the parties had attempted to reach a consensus on the issues that a reexamination likely would not alter. However, that consensus has not occurred here. The approach suggested by the Plaintiff almost assures duplicitous and unnecessary discovery at every juncture.

In determining whether a stay is appropriate, the Court considered the same factors that Magistrate Judge Nelson considered, namely: (1) whether a stay would unduly prejudice or present a clear tactical advantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999).

Magistrate Judge Nelson properly weighed the competing interests presented by the facts and balanced the hardships to Plaintiff and Defendants that would result in granting or denying a stay. The findings and conclusions of Magistrate Judge Nelson set forth in her 14-page order of November 17, 2003, reflect proper consideration of the factors that are relevant to both parties. The record further supports Magistrate Judge Nelson's conclusions and decision to grant Defendants' motion to stay litigation pending reexamination proceedings, even if a *de novo* review standard is used by this Court.

***3** It is this Court's conclusion that consideration of all of the relevant factors under the unique circumstances presented in the case weigh in favor of a stay. The Court concurs with Magistrate Judge Nelson that the alternative proposed by the Plaintiff of proceeding ahead with the two patents not under reexamination is impracticable, if not impossible. The notion that the case can be divided in that fashion, simply because the four patents are indeed different, is belied entirely by an examination of the circumstances of this case. Those circumstances in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

clude, but are not limited to:

Common Products: The Guidant products that are accused of infringing the patents in reexamination are the same products accused of infringing the other two patents in suit. Potentially, a number of product lines may be affected by the reexamination proceedings. A partial stay could create multiple and duplicitous proceedings. This case does not lend itself to any meaningful severability of issues that is necessary for an appropriate stay to be imposed.

Common Witnesses: The patents in reexamination and the other patents will require testimony by the same witnesses.

Common Inventors: At least with respect to the '523 patent and the '167 patent, the patents involve a common inventor, Brian Mann.

Common Underlying Technology: While this may be a secondary issue or a less compelling issue, all of the patents in suit involve cardiac pacemakers, their development, their functionality, and their operation.

Common Documents: Because the case involves a wide array of accused products and a large amount of documents related to those accused products, overlap of exhibits and other evidence will be extensive.

The Court has reviewed the record, as noted, including documents related to the following pacemakers: Discovery, Discovery II, Meridian, Pulsar, Pulsar Max, Pulsar Max II, and Insigna; the following defibrillators: Ventak AV, Ventak AV II, Ventak AV III, Ventak Prizm, Ventak Prizm 2, and Ventak Prizm HE; and a chronic heart failure heart device, Contak CD CHFD. Absent some severability of issues, reexamination potentially affects all of Guidant's accused products.

If there is any solution short of a complete stay, it is not the alternative of proceeding ahead with the patents that are not under reeexamination. Rather, as noted previously in this memorandum, since regardless of what the outcome of the reexamination is, there likely will be triable issues left for the Court, it necessarily follows that it may best serve the parties' interests to come up with a discovery plan and to tailor the discovery plan to the particular demands of this case. The parties must determine whether this is an appropriate approach.

The proper exercise of the Court's discretion results in a stay of litigation in this case pending the completion of the reexamination proceedings. The stay will further the interests of judicial economy and conserve the parties' resources without any undue prejudice to the Plaintiff.

**\*4** For these reasons, the Court has affirmed Magistrate Judge Susan Richard Nelson's order of November 17, 2003.

D.Minn.,2003.
Pacesetter, Inc. v. Cardiac Pacemakers
Not Reported in F.Supp.2d, 2003 WL 23303473 (D.Minn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2008 U.S. DIST. LEXIS 3483

HERIBERTO ORTIZ, Plaintiff, v. DONATELLE ASSOCIATES, LLC; DONATELLE PRECISION COMPONENTS, INC.; DONATELLE PLASTICS, INC., d/b/a Donatelle d/b/a Donatelle Holdings d/b/a Donatelle Companies d/b/a Donatelle Group; KENNETH RUDE, individually and in his capacity as Human Resources Manager of Donatelle; and CAROL WILSON, individually and in her capacity as employee and agent of Donatelle, Defendants.

Civil No. 06-4825 (JRT/FLN)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

2008 U.S. Dist. LEXIS 3483

January 16, 2008, Decided
January 16, 2008, Filed

COUNSEL: [*1] Christopher R Walsh, WALSH LAW FIRM, Minneapolis, MN, for plaintiff.

James R Andreen and Kristy A Saum, ERSTAD & RIEMER, PA, Minneapolis, MN, for defendants.

JUDGES: JOHN R. TUNHEIM, United States District Judge.

OPINION BY: JOHN R. TUNHEIM

OPINION

ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER WITH MODIFICATIONS

This matter is before the Court on plaintiff Heriberto Ortiz's objections to an order issued by United States Magistrate Judge Franklin L. Noel on September 24, 2007. The Magistrate Judge's order addressed plaintiff's Motion to Stay Discovery and Extend Deadlines in the Scheduling Order, [1] and defendants' Motion to Compel. The Magistrate Judge summarily granted in part and denied in part both motions. Plaintiff has filed objections to the Magistrate Judge's Order, pursuant to *Rule 72(a) of the Federal Rules of Civil Procedure* and Local Rule 72.2(a). For the reasons set forth below, the Court overrules plaintiff's objections and affirms the order of the Magistrate Judge.

1  Plaintiff's original motion also included a request that the Court remand the action to state court. Docket No. 29. Plaintiff's motion was later amended to separate the remand request into a distinct motion, which was scheduled for a hearing. See [*2] Docket Nos. 48, 49.

BACKGROUND

Plaintiff filed this action in state court in November 2006, alleging that defendants -- his former employer and co-workers -- discriminated against him on the basis of his race and national origin. Plaintiff also brought state law claims for tortious interference with contract and defamation. Defendants successfully removed the action to federal district court on December 8, 2006. Plaintiff's attorney stated he did not believe that the removal was appropriate, and promised to bring a motion to remand the case to state court.

The parties met for a pretrial conference with the Magistrate Judge on February 2, 2007, and the deadline for discovery was set for September 1, 2007. Defendants allege that that they served plaintiff with interrogatories and requests for documents on February 5, 2007, and did not receive plaintiff's answer until June 15, 2007, after defendants had filed a motion to compel. Defendants allege that the answers to interrogatories did not adequately identify the experts plaintiff proposed to use, and that plaintiff never corrected this failure despite

defendants' request. Defendants allege that they served plaintiff with a request for a [*3] second set of documents on June 25, 2007, and that this request was never answered.

On July 26, 2007, defendants served plaintiff with a notice that plaintiff's deposition would be taken on August 9, 2007. After the parties agreed to reschedule this deposition for August 28, plaintiff filed a motion on August 13 to remand the case to state court, to stay discovery, and to extend the deadlines set in the pretrial scheduling order. On August 26, plaintiff's attorney left a voicemail for defendants' attorney, indicating that he had not had time to prepare his client for the deposition and would be leaving soon for a trip to California, and asking for an agreement to extend or stay discovery until the August 13 motion had been resolved. Defendants did not agree to this request.

On August 31, 2007, defendants filed a motion asking the Court (1) to compel plaintiff to submit to a deposition after the discovery deadline; (2) to compel plaintiff to respond to the request for documents served on June 25, 2007; (3) to exclude the plaintiff's use of expert witnesses because of the plaintiff's inadequate disclosures, or, in the alternative, to compel plaintiff to provide all information related [*4] to his expert witnesses that is required under *Rule 26(a)(2)(B)* and allow defendants time to obtain rebuttal experts; (4) to allow defendants time to make a dispositive motion after plaintiff's deposition had been taken; [2] and (5) to award defendants the costs and fees incurred in the making of the motion. On September 10, 2007, plaintiff filed an amended motion severing his request for a remand to state court, and that matter was set for a hearing. Consequently, this Order concerns only plaintiff's requests to stay discovery and extend the deadlines from the pretrial scheduling order.

> 2   Defendants filed a motion for summary judgment on October 17, 2007. This was well before the December 1, 2007, deadline for dispositive motions, and moots defendants' request for an extension.

Following a hearing on the motion to compel and the motion to stay discovery and extend the deadlines set in the pretrial scheduling order, the Magistrate Judge summarily granted in part and denied in part both motions. With respect to plaintiff's motion, the Magistrate Judge extended the deadline for completing depositions, and ordered that they be completed by November 1, 2007. The Magistrate Judge denied plaintiff's [*5] motion in all other respects. With respect to defendants' motion, the Magistrate Judge granted defendants' request to compel the deposition of the plaintiff, and ordered that he be made available on or before November 1, 2007; granted defendants' request to compel plaintiff's response to defendants' June 25, 2007, request for documents; denied defendants' request to exclude plaintiff's expert witnesses; granted defendants' request to compel plaintiff to provide the expert information required under *Rule 26(a)(2)(B)* [3]; granted defendants' request that plaintiff be required to pay their costs and fees expended in bringing the motion, an expense of $ 1,377.50; and denied defendants' motion in all other respects.

> 3   The Magistrate Judge ordered the plaintiff to make all required expert witness disclosures, including expert reports, on or before November 1, 2007. The Magistrate Judge required defendants to make all required expert witness disclosures, including expert reports, on or before December 1, 2007.

Plaintiff now objects to the portions of the Magistrate Judge's order denying plaintiff's motion for a stay of discovery or extension of discovery deadlines, and granting defendants' motion [*6] for expenses.

## ANALYSIS

### I. STANDARD OF REVIEW

"The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential." *Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999)*. This Court will reverse such an order only if it is clearly erroneous or contrary to law. *28 U.S.C. § 636(b)(1)(A)*; *Fed. R. Civ. P. 72(a)*; Local Rule 72.2(a).

### II. STAY OF DISCOVERY

Under *Local Rule 16.3*, a pretrial discovery schedule "shall not be extended or modified except upon written motion and for good cause shown." Plaintiff argued to the Magistrate Judge that it would be a mistake to allow discovery to proceed before the Court had resolved the question of jurisdiction. Plaintiff adds the allegation that the delay was actually caused by the defendants, who refused to cooperate in his investigation into the removal

of the case from state court. Plaintiff adds that additional factors contributed to the delay, including "trial, trial preparation, family/health issues, travel plans and other conflicts."

Defendants reply that there was not good cause for an extension because (1) plaintiff's motion to remand will ultimately be found untimely, [*7] and is not an excuse for delaying discovery; (2) plaintiff waited until almost the end of the allotted seven months for discovery to bring his motion for a stay; and (3) even if the case is ultimately remanded, any discovery conducted now will be worthwhile, because the state proceedings would require discovery as well.

The Court finds nothing in the record demonstrating that the Magistrate Judge's conclusion was clearly erroneous or contrary to law. As defendant notes, the mere possibility of a remand did not make it fruitless to proceed with discovery. Moreover, even though plaintiff's questions about the effectiveness of the removal arose shortly after it occurred, it appears that plaintiff did not make a formal motion for a remand for almost nine months. [4] It would not have been reasonable for plaintiff to keep this case in limbo for that long over an issue he had not formally challenged. To the extent that plaintiff was having difficulty investigating the grounds for such a motion, he could have brought a motion to compel discovery.

> 4   As noted above, this case was removed to federal court on December 8, 2006, and the plaintiff's Motion to Remand to State Court was filed on August [*8] 13, 2007.

While the additional factors cited by plaintiff are relevant, he has not demonstrated that the Magistrate Judge's weighting of these factors was clearly erroneous or contrary to law. Accordingly, the Court affirms the Magistrate Judge's denial of plaintiff's motion to stay discovery.

### III. EXPENSES

Plaintiff also challenges the Magistrate Judge's award of expenses in connection with defendants' motion to compel. *Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure* provides that when a motion to compel is granted, or when discovery is only provided after the motion is filed, the moving party is entitled to recover the expenses it incurred in bringing the motion. The only exceptions to this principle are where the court finds that "the motion was filed without the movant's first making a good faith effort to obtain . . . discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." *Fed. R. Civ. P. 37(a)(4)(A)*.

Plaintiff contends that the awarding of expenses was not appropriate because he responded adequately to the majority of defendants' discovery [*9] requests, and proceeded in good faith in seeking extensions when he needed more time. Plaintiff also contends that he should not be required to pay expenses because he is indigent. Defendants reply that an award of expenses is discretionary, and that plaintiff has not shown that the Magistrate Judge's award was clearly erroneous or contrary to law. Defendants add that any concerns over plaintiff's ability to pay can be addressed by shifting the burden of payment to plaintiff's attorney, who defendants claim was responsible for plaintiff's discovery failures.

The Court agrees that the Magistrate Judge's award was not clearly erroneous or contrary to law. Plaintiff has not demonstrated that defendants failed to make a good faith effort to obtain discovery without the aid of the Court, that his discovery delays were clearly "substantially justified," or that the circumstances make an award clearly "unjust." *See Fed. R. Civ. P. 37(a)(4)(A)*. The only question is whether the expenses should have been assessed against plaintiff or his attorney.

Expenses awarded under *Rule 37(a)(4)* are not shifted to an attorney merely because his or her client is indigent. *See Fed. R. Civ. P. 37* advisory committee's [*10] note. Even if they were, plaintiff does not support his assertion of indigence with any evidence. However, defendants are correct that *Rule 37(a)(4)* permits the Court to assess the expenses against an attorney if it was the attorney's conduct that was responsible for the motion. The record is not without support for this possibility. However, the evidence is not clear enough on this question for the Court to second-guess the determination of the Magistrate Judge, who also had the benefit of a hearing on these matters. The Magistrate Judge's allocation of the expenses is not clearly erroneous, and is affirmed.

Finally, the Court notes a technical modification of the Order of the Magistrate Judge. The Magistrate Judge

indicated that the docket numbers for plaintiff's Motion to Stay Discovery and Extend Deadlines in the Scheduling Order were 48 and 49. The Court's review of the docket indicates that the proper docket number for this motion is 29. The Court, therefore, will modify the Magistrate Judge's order to reflect the correct docket number for that motion.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** plaintiff's objections [Docket [*11] No. 65]. **IT IS HEREBY ORDERED** that the Magistrate Judge's Order dated September 24, 2007 [Docket No. 64] is **MODIFIED** by replacing "## 48, 49" with "# 29" -- which reflects the correct docket number assigned to plaintiff's Motion to Stay Discovery and Extend Deadlines in the Scheduling Order. The Magistrate Judge's Order is **AFFIRMED** in all other respects.

DATED: January 16, 2008

at Minneapolis, Minnesota.

s/ John R. Tunheim

JOHN R. TUNHEIM

United States District Judge

Slip Copy
Slip Copy, 2006 WL 3392889 (D.Minn.)
(Cite as: Slip Copy)

Page 1

CVData, LLC v. Aetna, Inc.
D.Minn.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Minnesota.
VDATA, LLC, and Vcode Holdings, Inc.,
Petitioners,
v.
AETNA, INC., PNY Technologies, Inc., Merchant's Credit Guide Co., The Allstate Corporation, and American Heritage Life Insurance Co., Respondents.
Civil No. 06-1701 JNE/SRN.

Nov. 21, 2006.

Edward E. Casto, Jr., Esq., Jonathan T. Suder, Esq., Kurt J. Niederluecke, Esq., on behalf of Plaintiffs.
William F. Stute, Esq. on behalf of Defendant Aetna, Inc.
Roger D. Taylor, William F. Forsyth on behalf of Defendant PNY Technologies, Inc.
Eric J. Strobel, Esq., on behalf of Defendant Merchant's Credit Guide Co.

**ORDER**

JOAN N. ERICKSEN, District Judge.

*1 The above-entitled matter comes before the Court upon the Report and Recommendation of United States Magistrate Judge Susan Richard Nelson dated October 31, 2006. No objections have been filed to that Report and Recommendation in the time period permitted.

Based on the Report and Recommendation of the Magistrate Judge, and all of the files, records and proceedings herein,

IT IS HEREBY ORDERED that:

1. Merchant's Motion to Stay Litigation Pending Reexamination Proceedings (Doc. No. 22) be **GRANTED**;

2. Aetna's Motion to Dismiss (Doc. No. 42) be **DENIED**;

3. Aetna's Motion for Sanctions (Doc. No. 55) be **DENIED**;

4. Plaintiff's Motion to Strike Exhibits (Doc. No. 59) be **DENIED as MOOT**;

5. Plaintiff's Motion to Strike Exhibits (Doc. No. 71) be **DENIED as MOOT**.

SUSAN RICHARD NELSON, United States Magistrate Judge.

**REPORT AND RECOMMENDATION**

The above-captioned matter comes before the undersigned United States Magistrate Judge on Defendant Merchant's Credit Guide Co.'s ("Merchant's") Motion to Stay, Consolidate, or Dismiss (Doc. No. 22), Defendant Aetna, Inc.'s ("Aetna") Motion to Dismiss (Doc. No. 42), Defendant Aetna's Motion for Sanctions (Doc. No. 55), Plaintiffs' Motion to Exclude Exhibits (Doc. No. 59), and Plaintiffs' Motion to Strike (Doc. No. 71.) This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

**I. BACKGROUND**

On May 5, 2006, Plaintiff VData, LLC ("VData") filed this action against Defendants Aetna, PNY Technologies, Inc. ("PNY"), Merchant's, The Allstate Corporation ("Allstate"), and American Heritage Life Insurance Co., alleging patent infringement in violation of 35 U.S.C. § 271. (Doc. No. 24, Ex. A.) In its Complaint, VData asserts that Defendants have infringed United States Patent No. 5,612,524 ("the '524 patent") of which VData is the exclusive rightful holder. (*Id.*) The '524 patent, issued by the United States Patent and Trademark Office ("PTO") on March 18, 1997, describes an "Identification Symbol System and Method with Orientation Mechanism."(*Id.*) VData claims that Defendants have infringed the '524 patent literally, or under the doctrine of equivalents, by making, using, selling, or offering for sale, articles that infringe the '524 patent. (*Id.*) In addition, VData asserts that the Defendants will continue to infringe the '524 patent causing it immediate and irreparable harm. (*Id.*) The Complaint alleges that Defendants' infringement was willful and seeks treble monetary damages and a permanent injunction. (*Id.*)

Slip Copy
Slip Copy, 2006 WL 3392889 (D.Minn.)
(Cite as: Slip Copy)

Page 2

On May 17, 2006, VData filed its First Amended Complaint. (Doc. No. 24, Ex. C.) A new Plaintiff, VCode Holdings, Inc. ("VCode") joined in the action and VData and VCode assert that Defendants willfully infringed both the '524 patent and U.S. Patent No. 4,924,078 ("the '078 patent") of which Plaintiffs "together own all right, title and interest."(*Id.*) The '078 patent issued on May 8, 1990, and like the '524 patent, covers an "Identification Symbol System and Method." (*Id.*) The First Amended Complaint likewise alleges that Defendants infringed the '524 and '078 patent literally, or under the doctrine of equivalents, by making, using, selling or offering for sale articles and services that infringe claims in the '524 and '078 patents. In addition, it also alleges willful infringement and demands treble damages as well as a permanent injunction. (*Id.*) The Plaintiffs have not moved for a preliminary injunction.

*2 In response to the Amended Complaint, Defendants [FN1] filed a series of motions. On July 14, 2006, Merchant's filed its Motion to Stay, Consolidate, or Dismiss. (Doc. No. 22.) On July 30, 2006 and August 28, 2006, respectively, Aetna filed its Motion to Dismiss and Motion for Sanctions. (Doc. Nos. 42 and 55.)Plaintiffs have objected to the exhibits filed in support of Aetna's Motion to Dismiss and on August 29, 2006 and August 31, 2006, moved to strike them from the record. (Doc. Nos. 59 and 71.)

> FN1. Defendants Allstate and American Heritage Life Insurance Co. were dismissed from this case by Plaintiffs pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. (Doc. No. 96-1.) Only Defendants Aetna, PNY and Merchant's remain as defendants in this case.

The current action is not the only ongoing litigation pertaining to the '524 and '078 patents. On March 13, 2006, prior to the Plaintiffs' filing of the current lawsuit, Cognex Corporation ("Cognex") sued Plaintiffs, and others, in a declaratory judgment action alleging that the '524 and '078 patents were invalid and unenforceable ("the *Cognex* litigation"). (Doc. No. 24, Ex. D.) Cognex is a supplier of machine vision systems, including data matrix symbol readers, which enable the automation of manufacturing processes where vision is required. (*Id.*)

In addition to the litigation surrounding the '524 patent, a request for reexamination of the '524 patent was filed with the PTO on March 22, 2006. (Doc. No. 24, Ex. F.) The request sought reexamination of claims 1-5, 8-9, 15, 19-32 and argued that each was either anticipated by, or obvious in light of, prior art. (*Id.*)On April 6, 2006, the PTO granted the request for reexamination.

Finally, on September 5, 2006, Defendant PNY filed a request for reexamination of the '078 patent with the PTO. (Doc. No. 82.) The PTO has yet to respond to that request.

## II. MERCHANT'S MOTION TO STAY, CONSOLIDATE, OR DISMISS

### A. Parties' Arguments

Merchant's has moved the Court to stay the proceedings pending the outcome of the *Cognex* litigation and/or the PTO reexamination of the '524 patent and '078 patents[FN2]. In the alternative, Merchant's seeks either an order consolidating this case with the *Cognex* litigation or an order dismissing it in its entirety. (*Id.* at ¶¶ 7, 20, 17.)Aetna joins Merchant's motion to stay and its alternative motion to dismiss. (Doc. No. 86.)

> FN2. Merchant's submitted its brief before PNY submitted its request for the reexamination of the '078 patent. However, at the motion hearing, Merchant's orally moved to extend the stay it seeks to include the '078 patent.

Merchant's argues that a stay of the proceedings pending the outcome of the *Cognex* litigation and/or the PTO's reexamination of '524 and '078 patents is appropriate because: 1) the stay will not cause undue prejudice or present a clear tactical disadvantage to Plaintiffs; 2) the stay will likely simplify the issues; and 3) the case is at an early procedural posture, no discovery has been taken nor has a trial date been set. (Def. Merchant's Mem. Supp. Mot. Stay at ¶ 9.) Merchant's argues that Plaintiffs will not be prejudiced because it is likely that the validity or enforceability issues related to these patents will be resolved in the *Cognex* litigation or the PTO's reexamination process.(*Id.* at ¶ 10.)Merchant's maintains that staying the proceedings pending the

Slip Copy
Slip Copy, 2006 WL 3392889 (D.Minn.)
(Cite as: Slip Copy)

Page 3

outcome of the *Cognex* litigation and/or the PTO's reexamination process will simplify the issues because the Court in the *Cognex* litigation could declare the '524 patent invalid or unenforceable, and the PTO reexamination could find the '524 and '078 patents invalid. (Def. Merchant's Mem. Supp. Mot. Stay at ¶ 9.) at ¶¶ 10-11, 14-15.) Conversely, Merchant's notes that if the PTO upholds the validity of the patents at issue, the Plaintiffs' position would become stronger. (*Id.* at ¶ 15.)With either outcome, Merchant's argues, the remaining issues would become "infinitely simplified." (*Id.* at ¶¶ 11.)Finally, the stay is particularly appropriate, Merchant's contends, because the litigation has yet to emerge from its preliminary stage, the parties have not yet taken discovery and the Court has yet to schedule a trial. (*Id.* at ¶ 12.)

*3 In the alternative, Merchant's asks the Court to dismiss this case under: 1) the abstention doctrine established in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814 (1976); 2) Federal Rule of Civil Procedure 12(b)(1); or 3) Federal Rule of Civil Procedure 12(b)(6).(*Id.* at ¶¶ 17-19.)In its second alternative motion, Merchant's requests that, if the Court neither stays these proceedings nor grants its motion to dismiss, the Court then consolidate this case with the *Cognex* litigation because the two proceedings have common questions of fact and law and the consolidation would save judicial and litigant resources. (*Id.* at ¶¶ 20-23.)Finally, Merchant's urges the Court to use its discretion under District of Minnesota Local Rule 1.3 to sanction Plaintiffs for not identifying the *Cognex* litigation, or the PTO proceedings, on their civil cover sheet as required by District of Minnesota Local Rule 3.1. Merchant's argues that Plaintiffs' omission deprived the Court of "the knowledge necessary to dismiss, stay, or consolidate the action" and therefore, the Court should take one of these three courses of action as a sanction. (*Id.* at ¶¶ 24-28.)Merchant's does not seek a monetary sanction. (*Id.* at ¶ 28.)

Plaintiffs respond that a stay pending the outcome of the *Cognex* litigation and/or the PTO's reexamination of the '524 and '078 patents will cause them undue prejudice and fail to simplify the issues in the case. (Pls.' Resp. Opp. Def. Merchant's Mot. Stay at 4, 8.) First, Plaintiffs argue that a stay will cause them undue prejudice because: 1) it will enable Defendants to "continue their infringing activities unfettered"; 2) it will provide Defendants with multiple opportunities to attack the '524 or '078 patents ("a second (or third) bite at the apple"); and 3) the impending expiration of the patents at issue in November, 2007 may place the PTO in an "all or nothing" situation in which it must validate or invalidate each patent as a whole, given that the PTO may not amend a patent's claims after its expiration. (*Id.* at 8-9.)

Second, Plaintiffs contend that a stay would fail to simplify the issues in this case because: 1) neither the *Cognex* litigation nor the PTO's reexamination of the '524 and '078 patents will provide the Defendants with a basis for issue preclusion; 2) the PTO reexamination process is unlikely to invalidate the '524 patent in its entirety and the PTO has not yet approved reexamination of the '078 patent; and 3) the issues in this case are broader than the validity of the '524 and '078 patents. Because the *Cognex* litigation and the PTO reexamination proceedings will not have a preclusive effect on Merchant's, Plaintiffs argue that Merchant's will remain free to assert that the '524 and '078 patents are invalid because they are anticipated by the same prior art references as form the basis for the requests for PTO reexamination. In addition, Plaintiffs assert that because the reexamination request fails to raise new prior art, the '524 and '078 patents will likely survive reexamination. (*Id.* at 5-6.)Finally, Plaintiffs maintain that, in addition to invalidity, this case involves issues of infringement, willfulness, damages, and enforceability and that a stay pending either the *Cognex* litigation or the PTO reexamination process would resolve none of these issues. (*Id.* at 6.) Therefore, Plaintiffs assert that a stay will not promote judicial economy. (Pls.' Resp. Opp. Def. Merchant's Mot. Stay at 6-7.) If the Court is inclined to grant a stay, however, Plaintiffs move the Court for a partial stay of the proceedings only as they pertain to the '524 patent. (*Id.* at 11.)

*4 Plaintiffs argue that the Court should deny Merchant's alternative motion to dismiss because: 1) the abstention doctrine created in *Colorado River Water Conservation District,* 424 U.S. at 814, is inapposite as it involved a federal court's abstention in the face of a concurrent state court action which, unlike the *Cognex* litigation, would involve all the issues in the case; 2) under 28 U.S.C. § 1338, the Court has exclusive subject matter jurisdiction over this patent suit; and 3) Plaintiffs' Amended Complaint makes sufficient factual allegations to survive a Rule 12(b)(6) motion to dismiss. (*Id.* at 9-10.)In addition,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3392889 (D.Minn.)
(Cite as: Slip Copy)

Page 4

Plaintiffs maintain that Defendants' alternative motion to consolidate should be denied because the *Cognex* litigation involves different products, a different infringement analysis and non-patent claims such as defamation and violation of the Minnesota Uniform Deceptive Trade Practices Act, all of which could complicate the issues, protract discovery, and confuse the jury. (*Id.* at ¶¶ 4-9.) Finally, Plaintiffs maintain that Merchant's motion for sanctions must fail because: 1) the cover sheet required by D.Minn. LR 3.1 is purely administrative; 2) Merchant's has requested inappropriate relief for a violation of D.Minn LR 3.1; 3) the *Cognex* litigation is not a related case within the meaning of D.Minn LR 3.1; 4) D.Minn LR 3.1 does not require a listing of a PTO proceeding because it is not a judicial proceeding; and 5) Merchant's has not suffered prejudice as a result of the omission. (*Id.* at 10-12.)

In addition to the Plaintiffs' arguments against Merchant's alternative motion to consolidate, non-party *Cognex* also submitted a memorandum in opposition to the motion. (Doc. No. 89-1.)

**B. Discussion**

This Court recommends that this case be stayed pending the PTO's reexamination of the '524 patent, and if it is approved, the reexamination of the '078 patent, because the stay: 1) would not unduly prejudice or create a clear tactical disadvantage for Plaintiffs; and 2) would potentially simplify the issues in the case and significantly promote judicial economy. In addition, as discovery has not begun and a trial date has not yet been set, a stay is particularly appropriate.

A district court possesses the power to stay proceedings incidental to the power inherent in every court to control its docket. *Lunde v. Helms*, 898 F.2d 1343, 1345 (8th Cir.1990) (*citing Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). Therefore, the decision to grant or deny a stay pending the outcome of a PTO proceeding rests with the sound discretion of the Court. *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp.1378, 1380 (N.D.Cal.1994), *see also, Grayling Ind., Inc., et al. v. GPAC, Inc.*, No. 1:89-cv-451-ODE, 1991 U.S. Dist. LEXIS 16750, at *3 (N.D.Ga. Mar. 25, 1991) ("The decision whether to stay proceedings in district court while a reexamination by the PTO takes place ... has been recognized to be within the district court's inherent discretionary power."). Courts have adopted a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings. *ACSII Corp.*, 844 F.Supp. at 1381.

*5 In determining whether a stay is appropriate, courts consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question; and (3) whether discovery is complete and whether a trial date has been set. *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citations omitted). The court must weigh the competing interests presented by the facts and balance the hardships to the parties resulting from granting or denying the stay as well as consider "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."*Gladish v. Tyco Toys, Inc.*, No. Civ. S-92-1666, 1993 U.S. Dist. LEXIS 20211, at * *2-3 (E.D.Cal. Sept. 16, 1993) (citations omitted).

The Court finds that all three factors support ordering a stay of the entire case.

**1. A Stay Will Not Cause Undue Prejudice or a Clear Tactical Disadvantage to Plaintiffs**

The Court finds that a stay of the entire proceeding, pending the reexamination of the '524 and '078 patents, would not cause Plaintiffs undue prejudice nor would it place Plaintiffs at a clear tactical disadvantage because monetary damages provide Plaintiffs with an adequate remedy.

In considering the undue prejudice or tactical disadvantage that might result from a stay, courts have taken the position that if other remedies are available, undue prejudice is sufficiently ameliorated. For example, the court in *Softview Computer Prods. Corp., et. al v. Haworth, Inc.*, No. 97 Civ. 8815, 2000 U.S. Dist. LEXIS 11274, at * *10-11 (S.D.N.Y.2000 Aug. 10, 2000), noted that any prejudice to the party opposing the stay could be ultimately remedied through an injunction and money damages.

Plaintiffs have failed to explain why monetary damages and a permanent injunction would not adequately compensate them for the harm they have suffered. Plaintiffs argue that a stay would enable Merchant's to "continue their infringing activities

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3392889 (D.Minn.)
(Cite as: Slip Copy)

Page 5

unfettered," but Plaintiffs have not sought a preliminary injunction. Moreover, Plaintiffs have stated an intention to seek monetary damages for up to six years of past infringement. In addition, as Plaintiffs will suffer no new damages after the '524 and '078 patents expire in November 2007, a stay would not unduly protract the period during which Plaintiffs suffer harm.

Plaintiffs respond that a stay, pending the PTO's reexamination of the '524 and '078 patents, provides Defendants with "a second ... bite at the apple."This argument is unavailing as courts routinely grant stays of litigation pending the PTO's reexamination decision. *CNS Inc. v. Silver Labs,* No. Civ-04-968, 2004 U.S. Dist. LEXIS 28960, at *3 (D.Minn. Nov. 29, 2004). Therefore, this type of prejudice cannot meet the criteria established in *Xerox,* 69 F.Supp.2d at 406. In creating the reexamination process, Congress countenanced a scheme in which a patent's validity may come under attack in both a courtroom and the PTO. *Ethicon v. Quigg,* 849 F.2d 1422, 1426-1427 (Fed.Cir.1988).

**2. A Stay Will Potentially Simplify the Issues and Promote Judicial Economy**

*6 The Court finds that a stay of the entire proceedings, pending a reexamination of the '524 and '078 patents, would likely simplify issues pertaining to the validity of the patents at issue, and/or the infringement thereof, because the PTO may find the '524 and '078 patents invalid, or narrow their claims. The former result would potentially eliminate this case and the latter would likely result in a clarification of the infringement issues for trial.

A number of courts have noted the advantages to staying litigation pending reexamination proceedings before the PTO, including the following:
 1. All prior art presented to the court will have been first considered by the PTO, with its particular expertise.
 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
 4. The outcome of the reexamination may encourage a settlement without the further use of the court.
 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
 7. The cost will likely be reduced both for the parties and the court.

*Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.,* No. 85 C 7565, 1987 U.S. Dist. LEXIS 15033, *3-4 (E.D.Ill. Jan. 30, 1987). An obvious benefit to a stay in terms of judicial economy is that the PTO could potentially eliminate trial on the issue of infringement. *See Robert H. Harris Co. v. Metal Mfg. Co.,* Civ. No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086, at *8 (E.D.Ark. Jun. 21, 1991). As courts have noted, if the reexamination proceeding invalidates or narrows a claim or claims, issues at trial will be simplified. *Softview Computer Prods. Corp., et. al,* 2000 U.S. Dist. LEXIS 11274 at *9; *Grayling Ind.,* 1991 U.S. Dist. LEXIS 16750 at *6 (stating that if the patents are declared unpatentable, the action would be moot, whereas if the patents are deemed valid by the PTO, such a finding would be admissible and carries a presumption of validity.) Courts may benefit from the PTO's expertise if claims are reaffirmed: "if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims."*Softview Computer Prods. Corp., et. al,* 2000 U.S. Dist. LEXIS 11274 at * *9-10; *see also, Hewlett-Packard Co. v. Acuson Corp.,* No. C-93-0808 MHP, 1993 U.S. Dist. LEXIS 6449, at *12 (N.D.Cal. May 6, 1993) (finding that the possible hardship for the party opposing stay "is outweighed by the orderly cause of justice measured in terms of the simplification of issues, proof, and questions of law which are expected to result from the stay."). Particularly in complex cases involving multiple patents and related patents, courts have found that a stay would result in simplification. *Pegasus Development Corp., et al. v. Directv, Inc., et. al,* No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, at *6 (D.Del. May 14, 2003).

*7 Not only does a stay have the potential to narrow or dispatch claims altogether, it also may minimize the attendant financial costs of litigation to the parties and the courts. As the court in *Softview Computer Prods. Corp., et. al* stated in its decision granting a stay, "although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing

Slip Copy
Slip Copy, 2006 WL 3392889 (D.Minn.)
(Cite as: Slip Copy)

Page 6

invalid claims."*Softview Computer Prods. Corp*., et. al, 2000 U.S. Dist. LEXIS 11274 at *9.

Even in cases in which the patent-in-suit is merely *related* to patents in reexamination, courts have found stays beneficial for purposes of narrowing issues relating to the claims and streamlining discovery. *See Alloc, Inc. v. Unilin Decor N.V.*, 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, at *7 (D.Del. July 11, 2003). The *Alloc* case involved a motion to stay the litigation of the '579 patent pending the completion of both the '621 reexamination proceedings and the United States Federal Circuit's decision on three other related patents. 2003 U.S. Dist. LEXIS 11917 at **1-3. The court held that there was a sufficient correlation among all of the patents, making a stay appropriate. *Id.* at *7.

In this case, it is clear that this factor-simplifying the issues and trial in the case-weighs heavily in favor of granting a stay. First, the reexamination challenges to both the '524 and '078 patents are based on prior art. Therefore, if the court stays the proceedings pending the PTO's reexamination decision, "[a]ll prior art presented to the court will have been first considered by the PTO, with its particular expertise" and "many discovery problems relating to prior art can be alleviated by the PTO examination".*Emhart,*1987 U.S. Dist. LEXIS 15033 at *3. In addition, "the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation."*Id.* at **3-4.If the PTO invalidates the '524 or '078 patents, or limits their claims so severely that they are effectively invalidated, this suit, which centers on the infringement thereof, will likely be dismissed. However, even if the PTO only narrows some of the claims, "issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination."*Id. at *4.* Given that this suit involves infringement claims, the outcome of the reexamination may encourage a settlement without the further use of the court. *Id. at *4.* Therefore a stay would likely result in a cost reduction for both parties and the court. *Id. at *4.* These benefits outweigh the PTO reexamination's lack of a preclusive effect and accrue whether or not the PTO invalidates the '524 patent. The issues present in this case are broader than invalidity, but the possible narrowing of the infringement and enforceability issues represent a substantial benefit.

*8 Finally, the Court recognizes that the PTO has not yet approved the reexamination of the '078 patent, however, because these patents are related, the PTO's reexamination of the '524 patent alone will likely narrow issues relating to the claims and streamline discovery. Therefore, this factor weighs strongly in favor of staying the entire case pending the reexamination of only the '524 patent, even if the PTO does not grant reexamination of the '078 patent.

**3. Status of Discovery**

The third factor which courts consider in evaluating whether to stay a case pending a PTO reexamination is the stage of litigation, namely, whether discovery is complete or whether much remains to be done. *Xerox, 69 F.Supp.2d at 406.* As discovery has not yet begun in the present case, the Court finds that a stay would likely conserve discovery resources because it would potentially enable the parties to focus their discovery efforts on a narrower set of issues. Therefore, a stay is particularly appropriate.

Courts granting stays during the early phases of discovery have sought to avoid the unnecessary expenditure of resources. As one court has noted:
Discovery is not yet completed, extremely voluminous summary judgment motions have been served, the Markman hearing has not yet been held and the Pretrial Order has not yet been prepared. It would be a serious waste of both the parties' and the Court's resources if the Markman and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.

*Softview Computer Prods. Corp., et. al,* 2000 U.S. Dist. LEXIS 11274, at **8-9. Therefore, "[a] stay pending reexamination is routinely ordered, particularly where discovery has not progressed past the early stages."*CNS Inc. v. Silver Labs,* 2004 U.S. Dist. LEXIS 28960 at *3. In granting a stay after the parties had conducted some written discovery, the *CNS* court noted that, "the bulk of the discovery will be sought or pursued after, and with the benefit of, the reexamination."*Id.* In contrast, courts which have denied stays pending reexamination proceedings have generally done so where the request for reexamination came late in the litigation, after extensive discovery or trial preparation. *Gladish,*1993 U.S. Dist. LEXIS 20211 at **3-4 (citations omitted).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3392889 (D.Minn.)
(Cite as: Slip Copy)

Page 7

As it is undisputed that neither party has taken any discovery in this case and that a trial date has not been set, the stay's benefit to the discovery process is maximized. Therefore, a stay is particularly appropriate.

C. CONCLUSION

The Court is persuaded that a stay will not prejudice any of the parties, will simplify the issues, and will help promote focused and efficient discovery. As the Court recommends that Merchant's motion for a stay pending reexamination of the '524 and '078 patents be granted, the Court need not address Merchant's alternative motions to consolidate or dismiss.

*9 Plaintiffs have requested that the '078 patent litigation proceed if the Court grants a stay with respect to the '524 patent reexamination, but have not articulated any reason why separate trials would promote judicial economy. The Court finds that a complete stay pending the outcome of the PTO proceedings will advance the goal of simplifying the issues and promoting judicial economy.

Finally, the Court believes that sanctions in this case are not appropriate even if Plaintiffs may have technically violated D.Minn. LR 3. 1, because no harm to Defendants has resulted. Therefore the Court will not exercise its discretion to impose sanctions on Plaintiffs.

III. AETNA'S MOTION TO DISMISS

Aetna moves for the dismissal of Plaintiffs' Amended Complaint on three grounds. First, Aetna argues that the Court should dismiss Plaintiffs' Amended Complaint under Rule 12(b)(2), arguing that the Court lacks personal jurisdiction over Aetna. Second, Aetna contends that the Court should dismiss Plaintiffs' Amended Complaint under Rules 12(b)(4) and 12(b)(5) alleging that they were served with a defective summons. Third, Aetna maintains that the Court should dismiss Plaintiffs' suit under Rule 12(b)(6), as Plaintiffs have failed to state a plausible infringement claim against Aetna and because Plaintiffs' claims are barred by the doctrine of collateral estoppel. Finally, if the Court denies Aetna's Motion to Dismiss, Aetna moves, in the alternative, pursuant to Federal Rule of Civil Procedure 19(a), for the Court to join third party Source One Direct, Inc. ("Source One") as a necessary and indispensable party on the grounds that Aetna's possible infringement stems from its contractual relationship with Source One.

A. Personal Jurisdiction over Aetna

1. Background

Aetna argues that the Court should dismiss this suit against it for lack of personal jurisdiction because: 1) Minn.Stat. § 543.19, which confers jurisdiction over foreign corporations, will not confer jurisdiction over Aetna directly; and 2) although Minn.Stat. § 543.19 may confer jurisdiction over Aetna's subsidiaries, under *Kling v. ADC Group Long-Term Disability Plan*, No. CV-04-2626-2004 U.S. Dist. LEXIS 21045, at *5 (D.Minn. Oct. 14, 2004), the activities of Aetna's subsidiaries are insufficient to permit the Court to exercise personal jurisdiction over Aetna.

Aetna contends that its business activities will not satisfy Minn.Stat. § 543.19 subd. 1(a)-(d) because: 1) it "does not own, use, or possess any real or personal property in Minnesota"; 2) "[i]t does not transact any business in Minnesota"; 3) it has not committed any act inside Minnesota causing injury or property damage; and 4) it has not committed any act outside Minnesota causing injury or property damage inside Minnesota. (*Id.* at 7.) Aetna characterizes itself "not [as] an operating company that conducts business in Minnesota," but rather as "a holding company of subsidiary companies which provides employee welfare benefits" and whose "business occurs principally in the states of Connecticut and Pennsylvania."(Def. Aetna's Mem. Supp. Mot. Dismiss at 5.)

*10 Although Aetna denies engaging in direct contacts with the state of Minnesota, Aetna does not refute that one of its subsidiaries conducts business in the state. Nonetheless, Aetna contends that "in order for personal jurisdiction over a parent corporation to be based on the activities of a subsidiary, there must be 'a close interconnection between the parent and the subsidiary ... such as the consolidation of corporate image and operations.' " (*Id.* at 4.*citing Kling,*2004 U.S. Dist. LEXIS 21045, at *5 (internal citations omitted).) Aetna asserts that this standard has not been met as Aetna and its subsidiaries are

Slip Copy
Slip Copy, 2006 WL 3392889 (D.Minn.)
(Cite as: Slip Copy)

Page 8

"independent corporate entities." (*Id. citing Kling,*2004 U.S. Dist. LEXIS 21045, at *5) Therefore, Aetna argues that, like the *Kling* court, this Court should dismiss this case for lack of personal jurisdiction. (*Id.*)

Plaintiffs respond that the Court should deny Aetna's motion because they have made the necessary prima facie showing of general jurisdiction-that Aetna has systematic and continuous contacts with the state of Minnesota, as evidenced by the contents of its *www.aetna.com* web site. (Pls.' Resp. Opp. Def. Aetna's Mot. Dismiss at 4-5.) Plaintiffs have produced copies of print outs of numerous web pages hosted on its web site. (Doc. No. 52, Ex. 4-15.) Plaintiffs contend that these web pages demonstrate that: 1) Aetna owns and controls the *www.aetna.com* web site as evidenced by the appearance of "Aetna, Inc." in the copyright information located at the bottom of the pages (Doc. No. 52, Ex. 4-5, 8-15); 2) Aetna maintains a "national presence" by providing benefits in "all 50 states" (*Id.*, Ex. 4); 3) Aetna has employees who have "new business responsibilities for ... Minnesota", employees who provide "sales support" for Minnesota and employees who are "sales contacts" for Minnesota (*Id.*, Ex. 5, 6, 7); 4) *www.aetna.com* promotes the health plans and services Aetna provides in Minnesota (*Id.*, Ex. 9); 5) *www.aetna.com* lists three job openings in Minnesota (*Id.*, Ex. 10); 6) there are at least 500 primary care doctors in Minneapolis, Minnesota who participate with Aetna (*Id.*, Ex. 12); and 7) *www.aetna.com* permits Aetna customers to pay their bill by credit card while enrolling in Aetna health plans (*Id.*, Ex. 14.)

Aetna disputes that the information contained at the *www.aetna.com* web site provides a basis for the Court to exercise general jurisdiction over Aetna. (Def. Aetna's Resp. Supp. Mot. Dismiss at 2.) First, Aetna argues that "the only demonstrated link" between Aetna and *www.aetna.com* is the appearance of Aetna's name indicating copyright ownership of the web pages. (*Id.* at 3.) Moreover, Aetna maintains that "just about every, if not every, web-page on"*www.aetna.com* contains a link to the web site's "Legal Statement" web page, which indicates that "Aetna," as used in the web pages, "is the brand name for products and services provided by one or more of the Aetna group of subsidiary companies."(*Id.* at 2-3.)Therefore, argues Aetna, the services offered at *www.aetna.com* are not provided by Defendant Aetna, who is the parent holding company of these subsidiaries (*Id.* at 2-3)[FN3].

> FN3. Finally, Aetna asks the Court to recognize that in *Advantus Capital Management v. Aetna, Inc.,* (D. Minn Civ. No. 06-cv-2855), the only other case in which it has appeared as a defendant in this District, the Court issued a preliminary injunction without addressing Aetna's affirmative defense that the court lacked personal jurisdiction over Aetna.

2. Discussion

*11 The Court recommends that Aetna's motion to dismiss for lack of personal jurisdiction be denied as the Court finds that Plaintiffs have established a prima facie case of general personal jurisdiction over Aetna.

While the plaintiff always carries the burden of proof, a plaintiff need only produce prima facie evidence of personal jurisdiction over a defendant to survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).*Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd.,* 89 F.3d 519, 522 (8th Cir.1996); *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir.1992), cert. denied,506 U.S. 908 (1992). In assessing a plaintiff's evidence, the court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Digi-Tel Holdings, Inc.,* 89 F.3d at 522. Any "doubt[s] should be resolved in favor of retention of jurisdiction."*V.H. v. Estate of Birnbaum,* 543 N.W .2d 649, 653 (Minn.1996). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings.*Stevens v. Redwing,* 146 F.3d 538, 546 (8th Cir.1998) (citing *Land v. Dollar,* 330 U.S. 731, 735 n. 4 (1947) (noting that "when a question of the District Court's jurisdiction is raised ... the court may inquire by affidavits or otherwise, into the facts as they exist" and "the mode of its determination is left to the trial court"))[FN4]

> FN4."While in some cases it is more appropriate to test jurisdictional facts upon the proof adduced after full discovery, the court may properly address itself to the jurisdictional issue at any earlier stage of the proceedings where the affidavits and other

exhibits presented on motion and opposition thereto make the issue ripe for early determination."*Block Industries v. DHJ Industries, Inc., 495 F.2d 256, 259 n. 3 (8th Cir.1974)* (citations omitted).

This Court has personal jurisdiction over a foreign defendant if a state court in Minnesota would also have jurisdiction. See *Digi-Tel Holdings, Inc., 89 F.3d at 522*. Minnesota's reach over foreign defendants extends to the fullest extent permitted by the United States Constitution. See *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir.1991)* (citing *Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn.1985)* (en banc), *cert. denied,*474 U.S. 1006 (1985))."[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."*Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)* (quoting *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)*). For the Court to acquire jurisdiction over a non-resident defendant, the defendant's contacts with Minnesota "must be sufficient to cause the defendant to 'reasonably anticipate being haled into court' " in Minnesota. *Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir.2003)* (quoting *World-Wide Volkswagen Corp., 444 U.S. 286, 297 (1980)*). The contacts with Minnesota must be more than " 'random,' 'fortuitous,' or 'attenuated.' " *Burger King, 471 U.S. at 475* (citations omitted).

The Eighth Circuit considers the following factors in determining whether personal jurisdiction is proper: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390 (8th Cir.1991)*. The first three factors are the primary factors, the remaining two are secondary factors. *Id.* The Court looks to all of the contacts in the aggregate and examines the totality of the circumstances in making its determination. *Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A., 51 F.3d 1383, 1388 (8th Cir.1995.)*

*12 Authority over the person may be conferred through either specific or general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & nn. 8-9 (1984)*.

Courts do not examine the third primary factor when conducting a general jurisdiction analysis. *Lakin v. Prudential Sec., Inc, 348 F.3d 704, 710-713 (8th Cir.2003)*. Instead, to confer general jurisdiction, federal due process requires that: 1) the nature and quality of the contacts with the forum state are "continuous and systematic"; and 2) the quantity of contacts with the forum state are "substantial." *Lakin, 348 F.3d at 708*.

Courts apply the test developed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.Pa.1997)*, to determine when a defendant's web site evidences continuous and systematic contacts with the forum state. *Lakin, 348 F.3d at 712*. The *Zippo* test provides:

At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Lakin, 348 F.3d at 710citing Zippo, 952 F.Supp. at 1124*. However, a web site's mere commercial functionality will not, without more, permit a court to determine if the defendant's quantity of contacts with the forum state are substantial in number. *Id.* Therefore, courts require a showing, separate from the web site's commercial functionality, that the defendant has a substantial number of contacts with the forum state. *Id.*

The Court finds that Plaintiffs have established a prima facie case that the Court may exercise general jurisdiction over Aetna because: 1) the commercial functionality of the *www.aetna.com* web site, Aetna's extensive contacts with Minnesota health care providers, and Aetna's promotion of health plans and services throughout Minnesota establish a prima facie

Slip Copy
Slip Copy, 2006 WL 3392889 (D.Minn.)
(Cite as: Slip Copy)

Page 10

case that the nature and quality of Aetna's contacts with Minnesota are systematic and continuous; and 2) the number of Minnesota health care providers who participate with Aetna and the extent of its promotion of health plans and services throughout Minnesota constitute a prima facie case that Aetna's contacts with Minnesota are substantial in number.

*13 As an initial matter, the Court finds that Aetna has blurred the distinction between itself and its subsidiaries on *www.aetna.com* because the web site uses "Aetna" to refer to Defendant Aetna, Inc ., to describe Aetna, Inc.'s subsidiaries and to describe its brand. On the page entitled "Business Profile," under the heading "Aetna, Inc.," the web site notes, "Aetna (N.Y.SE: AET) is one of the nation's leaders in health care, dental, pharmacy, group life, disability and long term care insurance and employee benefits."(Doc. No. 52, Ex. 4.) Finally, the web page containing the "Legal Statement" also displays Aetna, Inc.'s registered trademark in the upper left corner, thereby reenforcing the interpretation that "Aetna," as used on *www.aetna.com,* refers to Aetna, Inc., as well as its subsidiaries. (Doc. 52, Ex. 17.)

Turning to the nature and quality of Aetna's contacts with Minnesota, the Court finds that Plaintiffs have established a prima facie case that Aetna's contacts are continuous and systematic because Plaintiffs have made a prima facie case that: 1) the commercial functionality of the *www.aetna.com* web site satisfies the middle ground of the *Zippo* test; and 2) Aetna actively maintains commercial relationships with Minnesota health care providers and actively promotes health plans and services throughout Minnesota. As set forth in *Lakin,*

The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Lakin, 348 F.3d at 710. The *www.aetna.com* web site apparently exhibits a high level of interactivity that is commercial in nature because it ostensibly: permits users to download claim forms, enables users to discover, and apply for, jobs online, encourages members to log in to view the status of their claims, and empowers customers to pay bills online when enrolling in health plans.

Apart from the systematic and continuous contacts Aetna maintains with Minnesota through its web site, Aetna also has commercial relationships with hundreds of primary care physicians in Minneapolis, Minnesota who have contracted with Aetna to provide health care services. Moreover, Aetna actively promotes its health plans and services throughout Minnesota.

In addition, the scale of Aetna's interactions with Minnesota health care providers is substantial. The list of primary care doctors on its web site ends with those whose last name begins with the letter "G". In addition, the list only includes primary care doctors. Aetna's search functionality permits searches for specialists, behavioral health providers, natural alternatives providers, and dentists. Therefore, the list supports the inference that it probably represents a fraction of the total number of health care professionals in Minneapolis, let alone Minnesota, who have contracted to provide services for Aetna. Moreover, the list of pharmacies that are apparently members of Aetna's Medicare Rx Plan network totals nineteen pages. These lists together constitute a prima facie case that Aetna has a substantial number of contacts with health care providers in Minnesota.

*14 Finally, Aetna's citation to *Kling* is unavailing. 2004 U.S. Dist. LEXIS 21045 at *5-6. First, *Kling* addressed a parent company that had no direct contacts with the state of Minnesota, unlike Aetna which has direct contacts with Minnesota as evidenced in its web site. *Id.* at *6. In addition, *Kling* acknowledges that a defendant's status as a holding company does not provide an absolute bar to personal jurisdiction where "a close interconnection exists between the parent and subsidiary, such as the consolidation of corporate image and operations".*Kling,*2004 U.S. Dist. LEXIS 21045 at *5-6. Here, as discussed above, Plaintiffs have made a prima facie case that Aetna has consolidated its image with that of its subsidiaries. Moreover, Aetna has apparently engaged in marketing operations on behalf of itself and its subsidiaries through the use of its web site.

**B. Sufficiency of Service**

Aetna further contends that the Court should dismiss Plaintiffs' suit against it under Federal Rules of Civil Procedure 12(b)(4) and Rule 12(b)(5) because Plaintiffs served Aetna with a faulty summons. Aetna maintains that, under Federal Rule of Civil Procedure 4(a) ("Rule 4(a)"), a summons

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3392889 (D.Minn.)
(Cite as: Slip Copy)

Page 11

must, "identify the court and the parties."(Def. Aetna's Mem. Supp. Mot. Dismiss at 7-8.) Because Plaintiffs' summons only listed VData, and not VCode, as a plaintiff, Aetna argues the summons was flawed and the service insufficient. (*Id.*)

Plaintiffs contend that any defect in service was "a technical violation of Rule 4" and does not form the basis for dismissal because it did not cause Aetna prejudice. (Pls.' Resp. Opp. Def. Aetna's Mot. Dismiss at 7 citing *FDIC v. Swagger,* 773 F.Supp. 1244, 1249 (D.Minn.1991).) Plaintiffs argue that they served their Amended Complaint along with the defective summons and that the Amended Complaint "clearly identifies" VCode as a Plaintiff. If the Court finds that the error caused Aetna prejudice, Plaintiffs request that the Court exercise its discretion and quash service but retain the case. (*Id.*)

The Court recommends that Defendant's motion to dismiss for improper service and insufficiency of process be denied because Plaintiffs' service error was technical and did not cause Aetna prejudice. In the face of a technical violation of Rule 4(a), "dismissal is not appropriate unless the party has been prejudiced. Rule 4, Fed.R.Civ.P., is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."*Andersen Windows, Inc. v. Delmarva Sash & Door Co.* No. CV-02-74, 2002 U.S. Dist. LEXIS 12008, at *9 (D. Minn. June 28, 2002) (internal citations omitted). Whereas in *Anderson,* the Plaintiffs served an additional summons to correct their original defective summons, the Plaintiffs in this case served their Amended Complaint with the defective summons and the Amended Complaint clearly stated that VCode was an additional plaintiff. Aetna has not alleged that it could not determine that VCode was a party to the dispute or that the error has caused it prejudice.

**C. Aetna's 12(b)(6) Motion-Infringement and Collateral Estoppel**

*15 Aetna urges the Court to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging that: 1) it fails to state a plausible infringement claim against Aetna as Plaintiffs have sued the wrong party; and 2) Plaintiffs' claims are barred by the doctrine of collateral estoppel. The Court recommends that Aetna's motion be denied.

**1. Plaintiffs Have Sufficiently Pled a Claim of Infringement**

Aetna contends that the Court should dismiss Plaintiffs' claim of infringement on the grounds that Plaintiffs have failed to sue the real party in interest, Source One Direct, Inc. ("Source One") with whom Aetna contracts to manufacture plastic and paper identification cards. (Def. Aetna's Resp. Supp. Mot. Dismiss at 6-7, 9-10.)

Aetna argues that the mailing attached as Exhibit C to Plaintiffs' Complaint is insufficient evidence to support a claim of infringement under § 271(a) because, even if the envelope bears Aetna's name and an allegedly infringing 2D barcode, there is no proof that the envelope was mailed, or if mailed, that it was mailed by Aetna. (Def. Aetna's Mem. Supp. Mot. Dismiss at 10.) Morever, Aetna alleges that Source One, and not Aetna, affixed the 2D barcode at issue in this case to Exhibit C. (*Id.* at 10-11.)In addition, Aetna disputes that its relationship with Source One can be accurately analogized to *Pellegrini v. Analog Devices, Inc.,* 375 F.3d 1113, 1118 (Fed.Cir.2004), which it contends "dealt with a situation in which a company employs an agent or contractor to *manufacture infringing articles on its behalf.*" (emphasis in original) (Def. Aetna's Resp. Supp. Mot. Dismiss at 6.) [FN5].

> FN5. In support of its motion to dismiss, Aetna has submitted copies of: Mr. Kenneth Hewitt's letter of January 30, 2006 to ACACIA Technologies Group (Doc. No. 38, Ex. C), Mr. Hewitt's letter of February 28, 2006 to ACACIA Technologies Group (*Id.,* Ex. D), International Data Matrix's summary judgment motions filed in *Veritec v. International Data Matrix Inc.,* (M.D.Fla.Civ. No. 92-1170-CIV-T23B) ("*Veritec I*"), which respectively allege unenforceablity and invalidity of the '078 patent as grounds for summary judgment (*Id.* 38, Ex. E-F), Judge Steven D. Merryday's order dismissing the *Veritec I* case (*Id.,* Ex. G), a Vericode Identification Systems brochure (*Id.,* Ex. H), a *Newsweek* magazine article of April 21, 1986 entitled "Cracking Down on Counterfeits" (*Id.,* Ex. I), an *Automatic I.D. News* article entitled, "When bar coding can't fit the real estate"(*Id.,* Ex. J), a copy of the October