

TimeBase Pty Ltd. v. Thomson Corporation, The et al Doc. 35 Att. 1

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,450 | 01/29/2007 | 6,233,592 | 886B.0008.SI(US) | 7192 |

20583 7590 03/28/2008

JONES DAY
222 EAST 41ST ST
NEW YORK, NY 10017

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 03/28/2008

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

Dockets.Justia.com



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Alan L. Stern, Harrington K. Smith, PC
4 Research Drive
shelton, CT 06484-6212

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. 90/008,450.

PATENT NO. 6,233,592.

ART UNIT 3992.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Office Action in Ex Parte Reexamination* | **Control No.**<br>90/008,450 | **Patent Under Reexamination**<br>6,233,592 | |
|---|---|---|---|
| | **Examiner**<br>MAJID A. BANANKHAH | **Art Unit**<br>3992 | |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

a☒ Responsive to the communication(s) filed on *29 January 2007* .    b☐ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire 2 month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Information Disclosure Statement, PTO/SB/08.
3. ☐ Interview Summary, PTO-474.
4. ☐ _____.

Part II SUMMARY OF ACTION

1a. ☒ Claims *1-58* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims *1-58* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a)☐ approved (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All b)☐ Some* c)☐ None of the certified copies have

   1☐ been received.

   2☐ not been received.

   3☐ been filed in Application No. _____ .

   4☐ been filed in reexamination Control No. _____.

   5☐ been received by the International Bureau in PCT application No. _____.

   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

## DETAILED ACTION

### *Reexamination*

1. This is an *ex parte* reexamination of U.S. Patent No. 6,233,592 requested by a third party requester. Claims 1-58 will be examined.

2. The references discussed herein are as follows:

D2: Arnold-Moore T. et al: "The ELF data model and SGQL query language for structured document databases", Sixth Australasian Database Conference, ADC'95, Adelaide, AU, vol. 17, no. 2, 30 January 1995, - 31 January 1995 pages 17-26, XP002204886 Australian Computer Science Communications ISSN: 0157-3055 ("Arnold-Moore")

### *Claim Rejections - 35 USC § 102*

3. The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

4. Claims 1-37, and 39-58 are rejected under 35 U.S.C. 102(b) as being anticipated by T. Moore et al.

**As per claims 1-19:**

T. Moore et al. discloses, teaches and suggests the following claim limitations as identified in the claim chart below:

| Claims of Schnelle '592 patent | Disclosure of T. Morre |
|---|---|
| **Claim 1.** A computer-implemented system for publishing an electronic publication using text-based data | "A data model and query language for accessing structured documents expressed in SGML is presented. The ELF (ELements with Features) model uses the SGML grammar (DTD) directly as a schema avoiding transformations which can lose information. The model also gives flexibility to the implementor to retrieve whole documents and decompose them, retrieve atomic elements and recombine them, or pursue alternatives which retrieve the elements directly. The language, Structured Generalized Query Language (SGQL), allows efficient access to the content, structure and attributes of documents at any level within their structure. This is all |

| | |
|---|---|
| | achieved with a simple, largely orthogonal functional language."<br>*T. Moore abstract.* |
| a plurality of predefined portions of text-based data with each predefined portion being stored | SGML describes a tagging scheme and a meta- grammar for describing the structure of documents. Each document instance consists of a declaration (which describes the character set and the available facilities), a DTD (document type definition - the grammar which the document satisfies) and the tagged text itself. Standard declarations and DTD's can avoid the need to transfer this information unnecessarily but the power exists to describe unusual structures or documents.<br>Each structural element in the body of the text is surrounded by a begin (<gi> ) and end (</gi> ) tag where gi is any generic identifier or element type name.<br>*T. Moore, page 18 left-hand column lines 19 -32.*<br><br>"In order to construct a conceptual model of the database system we consider the database to be a list of ELF's (ELements with Features) where an ELF is:<br><br>• a complete SGML element - primitive content tokens (#PCDATA, CDATA and RCDATA) are considered to be elements for this purpose;"<br>*T. Moore, page 20 right-hand column lines 23-29.* |
| at least one predefined portion being modified and stored | implicit in discussion of element versioning in *T. Moore last paragraph of page 20, right-hand column*:<br><br>"*EID* (an absolute element identifier). When versioning hypertext, links can either be static or dynamic [15]. In order to support static links to elements we require an absolute identifier for each ELF. The EID is also useful for supporting dynamic inclusion of sub-elements [13]. The EID should be allocated by the DBMS and should be unique for each element even though the element may occur in more than one version tree and once allocated should not change."<br><br>*T. Moore, page 20, right-hand column, lines 43-53.* |
| a plurality of linking means of a markup language, each predefined portion of said text-based data and said at least one modified predefined portion of text-based data being encoded with at least one linking means; and | We thus see that a database system to support databases of large structured documents need a query language that allows retrieval:<br>• by exact matching Boolean combinations of words and phrases;<br>• by ranking by similarity to a given text; |

| | |
|---|---|
| | • using hypertext links;<br>• by attribute;<br>• of and by arbitrary sub-parts or whole documents.<br>*T. Moore, page 18, left-hand column, lines, 1-10.*<br><br>"*EID* (an absolute element identifier). When versioning hypertext, links can either be static or dynamic [15]. In order to support static links to elements we require an absolute identifier for each ELF. The EID is also useful for supporting dynamic inclusion of sub-elements [13]. The EID should be allocated by the DBMS and should be unique for each element even though the element may occur in more than one version tree and once allocated should not change."<br><br>*T. Moore, page 20, right-hand column, lines 43-53.* |
| a plurality of attributes, | "Each structural *element* in the body of the text is surrounded by a begin (<gi>) and end (</gi>) tag where gi is any *generic identifier* or element type name. Elements can be nested within each other and the DTD allows the specification of the *content model* of each element type, with quite com plex combinations easily expressed."<br>*T. Moore, page 18, right-hand column lines 30-36.*<br><br>"• a list of features associated with that element (we avoid using the term 'attribute' to prevent confusion with SGML attributes)."<br><br>*T. Moore, page 20, right-hand column, lines 29-31.* |
| each attribute being a point on an axis of a multidimensional space for organizing said plurality of predefined portions and said at least one modified predefined portion of said text-based data. | "One can associate typed" information with par\-ticular SGML elements by using *attributes* which appear in the text within the begin tag. Because of its wide-spread usage and expressive power, con\-siderable work has been put into translating plain text and structured text into SGML [4, 6, 29] so even those documents not currently in SGML can be converted. A complete description of SGML can be found in."<br>*T. Moore, page 18, left-hand column, lines36-44*<br><br>A data point in a multidimensional space is a typical graphical/special representation of, and the plurality of attributes (recited above) is the corresponding |

| | |
|---|---|
| | mathematical description of, the same data point (here the predefined/modified portions). These two formats of presentation are positively correlated. Attributes of any database can be seen as spanning up a multidimensional space indexing the database records. |
| **Claim 2.** The system according to claim 1, comprising means for searching within the system. | "These databases will need to be searched by attribute. This will, for example, allow a software engineering document that is the right version to be retrieved. The databases will need to be queried on content."<br><br>*T. Moore, page 17, right-hand column, lines 23-27* |
| **Claim 3.** The system according to claim 2, wherein said searching means uses one or more attributes. | "These databases will need to be searched by attribute. This will, for example, allow a software engineering document that is the right version to be retrieved. The databases will need to be queried on content."<br><br>*T. Moore, page 17, right-hand column, lines 23-27* |
| **Claim 4.** The system according to claim 2, wherein said searching means uses any predefined portion, any modification of a predefined portion, or any word or phrase within such predefined portion or such modification. | "These databases will need to be searched by attribute. This will, for example, allow a software engineering document that is the right version to be retrieved. The databases will need to be queried on content. It may be appropriate to search for "metal fatigue" only in section that are about "wings" The database should allow for partial document retrieval."<br><br>*T. Moore, page 17, right-hand column, lines 23-31.* |
| **Claim 5.** The system according to claim 1, further comprising means for searching at least one of said text-based predefined portions of said data using said plurality of attributes, wherein said plurality of attributes are coupled to each of said predefined portions by said respective linking means, and for retrieving one or more of said predefined portions using said plurality of attributes to define a point in said multidimensional space. | "These databases will need to be searched by attribute. This will, for example, allow a software engineering document that is the right version to be retrieved. The databases will need to be queried on content. It may be appropriate to search for "metal fatigue" only in section that are about "wings" The database should allow for partial document retrieval. The whole of a government Act may be an inappropriate retrieval unit, if one is searching for a definition. There may be a number of relevant portions of a single document that are relevant, and yet the whole document may still be an inappropriate retrieval unit. However in a different context, the whole document may be exactly the right retrieval unit. Finally, we will certainly wish to follow any hypertext links that are provided. This may mean that appropriate table of contents support is required also."<br>*T. Moore, page 17, right-hand column, last paragraph.* |

| | |
|---|---|
| | We thus see that a database system to support databases of large structured documents need a query language that allows retrieval:<br>• by exact matching Boolean combinations of words and phrases;<br>• by ranking by similarity to a given text;<br>• using hypertext links;<br>• by attribute;<br>• of and by árbitrary sub-parts or whole documents.<br>*T. Moore, page 18, left-hand column, lines, 1-10.* |
| **Claim 6.** The system according to claim 1, wherein said markup language is Standard Generalised Markup Language (SGML) or extensible Markup Language (XML).. | "Use of grammars to describe the structure of documents has long been associated with databases and many previous dealings with structured documents have constructed their own grammar [8, 24, 25]. The ISO standard, Standard Generalized Markup Language (SGML) [10], now provides a grammar for describing document structure which is widely used for document exchange."<br>*T. Moore, page 18, left-hand column, lines, 11-18.* |
| **Claim 7.** The system according to claim 6, wherein said text-based data is encoded using one or more Document Type Definitions (DTD) or Style Sheet Mechanisms (SSM). | "SGML describes a tagging scheme and a meta-grammar for describing the structure of documents. Each document *instance* consists of a *declaration* (which describes the character set and the avail\-able facilities), a *DTD* (document type definition - the grammar which the document satisfies) and the tagged text itself. Standard declarations and DTD's can avoid the need to transfer this informa\-tion unnecessarily but the power exists to describe unusual structures or documents.<br><br>Each structural *element* in the body of the text is surrounded by a begin (<gi>) and end (</gi>) tag where gi is any *generic identifier* or element type name. Elements can be nested within each other and the DTD allows the specification of the *content model* of each element type, with quite com plex combinations easily expressed."<br>*T. Moore, page 18, left-hand column, lines, 19-28.* |
| **Claim 8.** The system according to claim 1, wherein said linking means comprises any piece of information additional to the body of the text-based data. | "We thus see that a database system to support databases of large structured documents need a query language that allows retrieval:<br>• by exact matching Boolean combinations of |

| | |
|---|---|
| | words and phrases;<br>• by ranking by similarity to a given text;<br>• using hypertext links;<br>• by attribute;<br>• of and by arbitrary sub-parts or whole documents."<br>*T. Moore, page 18, left-hand column, lines, 1-10.*<br>and<br>"Use of grammars to describe the structure of documents has long been associated with databases and many previous dealings with structured doc\-uments have constructed their own grammar [8, 24, 25]. The ISO standard, Standard Generalized Markup Language (SGML) [10], now provides a grammar for describing document structure which is widely used for document exchange."<br>*T. Moore, page 18, left-hand column, lines, 11-18.* |
| **Claim 9.** The system according to claim 8, wherein said linking means is a code or markup that allows departure and destination points to be created between portions of said text-based data. | "We thus see that a database system to support databases of large structured documents need a query language that allows retrieval:<br>• by exact matching Boolean combinations of words and phrases;<br>• by ranking by similarity to a given text;<br>• using hypertext links;<br>• by attribute;<br>• of and by arbitrary sub-parts or whole documents."<br>*T. Moore, page 18, left-hand column, lines, 1-10.*<br>and<br>"Use of grammars to describe the structure of documents has long been associated with databases and many previous dealings with structured doc\-uments have constructed their own grammar [8, 24, 25]. The ISO standard, Standard Generalized Markup Language (SGML) [10], now provides a grammar for describing document structure which is widely used for document exchange."<br>*T. Moore, page 18, left-hand column, lines, 11-18.* |
| **Claim 10.** The system according to claim 1, wherein said at least one linking means comprises an identification code for said respective predefined | "*EID* (an absolute element identifier). When ver-sioning hypertext, links can either be static or dynamic [15]. In order to support static links |

| | |
|---|---|
| portion. | to elements we require an absolute identifier for each ELF. The EID is also useful for sup\-porting dynamic inclusion of sub-elements [13]. The EID should be allocated by the DBMS and should be unique for each element even though the element may occur in more than one version tree and once allocated should not change."<br><br>*T. Moore, page 20, right-hand column, lines 43-53.* |
| **Claim 11.** The system according to claim 1, wherein a first database comprises said plurality of predefined portions of text-based data. | "Given that SGML provides a way of describing all of the meaningful fragments of a document, we may modify and clarify the desired list of features in order to more precisely describe the characteris-tics of a structured document query language:<br><br>• query across different documents;<br><br>• return lists of SGML elements;<br><br>• query on content;<br><br>• query on SGML and non-SGML attributes;<br>• query on pure structure; and<br>• query on a mixture of content and SGML structure. "<br><br>*T. Moore, page 18, right-hand column, last paragraph through right-hand column lines 1-4.*<br><br>Separate storage of content, hyperlinks and attributes data is inherently taught by T. Moore and the use of SGML language. |
| **Claim 12.** The system according to claim 11, wherein a second database comprises said plurality of attributes for managing said first database. | "Given that SGML provides a way of describing all of the meaningful fragments of a document, we may modify and clarify the desired list of features in order to more precisely describe the characteris-tics of a structured document query language:<br><br>• query across different documents;<br><br>• return lists of SGML elements;<br><br>• query on content;<br><br>• query on SGML and non-SGML attributes;<br>• query on pure structure; and<br>• query on a mixture of content and SGML structure. "<br><br>*T. Moore, page 18, right-hand column, last paragraph* |

| | |
|---|---|
| | *through right-hand column lines 1-4.*<br><br>Separate storage of content, hyperlinks and attributes data is inherently taught by T. Moore and the use of SGML language. |
| **Claim 13.** The system according to claim 1, wherein said predefined portions are encoded with one or more attributes. | "Each structural *element* in the body of the text is surrounded by a begin (<gi>) and end (</gi>) tag where gi is any *generic identifier* or element type name. Elements can be nested within each other and the DTD allows the specification of the *content model* of each element type, with quite complex combinations easily expressed.<br><br>One can associate typed information with par\- ticular SGML elements by using *attributes* which appear in the text within the begin tag. "<br><br>*T. Moore, page 18, right-hand column, lines 29-38.* |
| **Claim 14.** The system according to claim 1, wherein said respective predefined portion is changed by performing one of the group consisting of adding at least one attribute to said respective predefined portion, deleting at least one attribute from said respective predefined portion, and modifying at least one of the attributes of said respective predefined portion. | T. Moore inherently teaches the editing of the data portion:<br><br>*"EID* (an absolute element identifier). When ver- sioning hypertext, links can either be static or dynamic [15]. In order to support static links to elements we require an absolute identifier for each ELF. The EID is also useful for sup\- porting dynamic inclusion of sub-elements [13]. The EID should be allocated by the DBMS and should be unique for each element even though the element may occur in more than one version tree and once allocated should not change."<br><br>*T. Moore, page 20, right-hand column, lines 43-53.* |
| **Claim 15.** The system according to claim 1, wherein said respective predefined portion is changed by performing one of the group consisting of adding data to said respective predefined portion, deleting data from said respective predefined portion, and modifying data of said respective predefined portion. | T. Moore inherently teaches the editing of the attributes:<br><br>*"EID* (an absolute element identifier). When ver- sioning hypertext, links can either be static or dynamic [15]. In order to support static links to elements we require an absolute identifier for each ELF. The EID is also useful for sup\- porting dynamic inclusion of sub-elements [13]. The EID should be allocated by the DBMS and should be unique for each element even though the element may occur in more than one version tree and once allocated should not change."<br><br>*T. Moore, page 20, right-hand column, lines 43-53.* |

| | |
|---|---|
| **Claim 16.** The system according to claim 1, wherein said text-based data comprises legislation. | The content of the data portion (claim limitation) does not affect the structure and operation of the system disclosed because the computer does not know what data content might be. As such the claim is anticipated by T. Moore. |
| **Claim 17.** The system according to claim 16, wherein each of said plurality of predefined portions of said text-based data is a respective provision of said legislation. | The content of the data portion (claim limitation) does not affect the structure and operation of the system disclosed because the computer does not know what data content might be. As such the claim is anticipated by T. Moore. |
| **Claim 18.** The system according to claim 17, wherein said provision is a section or schedule of an Act, or a regulation or schedule of a Regulation(s). | The content of the data portion (claim limitation) does not affect the structure and operation of the system disclosed because the computer does not know what data content might be. As such the claim is anticipated by T. Moore. |
| **Claim 19.** The system according to claim 1, wherein each predefined portion is a block of said text-based data, said block being larger than a single word and less than an entire document of said text-based data. | "Each structural *element* in the body of the text is surrounded by a begin (<gi>) and end (</gi>) tag where gi is any *generic identifier* or element type name. Elements can be nested within each other and the DTD allows the specification of the *content model* of each element type, with quite complex combinations easily expressed.<br><br>One can associate typed information with par\- ticular SGML elements by using *attributes* which appear in the text within the begin tag. "<br><br>*T. Moore, page 18, right-hand column, lines 29-38.* |

**As per claims 20-37, and 39:**

Claims 20-37, and 39 relates to claims 1-19 and thus are rejected for the same reasons as discussed in the rejection of claims 1-19 respectively.

**As per claims 40-58:**

Claims 40-58 relates to claims 1-19 and thus are rejected for the same reasons as discussed in the rejection of claims 1-19 respectively.

***Claim Rejections - 35 USC § 103***

5. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

6. Claim 38 is rejected under 35 U.S.C. 103(a) as being unpatentable over T. Moore.

***As Per Dependent Claim 38***

T. Moore taught the invention substantially as claimed, however, T. Moore does not teach "wherein said recording medium is made from one of the group consisting of magnetic media, optical media, and magneto-optical media". But the use of magnetic media, optical media, and/or magneto-optical media is well known in the art. It would have been obvious for a person of ordinary skill in the art at the time the invention as made to use any of the storage media well known to those skill in the art including magnetic, optical, and/or magneto-optical media according to the situation and size of the data portions and availability.

## *CONCLUSION*

### *Amendment in Reexamination Proceedings*

7. Patent Owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c).

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced. See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

### *Service of Papers*

8. After filing of a request for ex parte reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. The document must reflect service or the document may be refused consideration by the Office. See 37 CFR 1.550(f).

### *Extensions of Time*

9. Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Litigation Reminder*

10. The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. ~~4,709,202~~ 6,233,592 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

## NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), automatically changed to that of the patent file as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, including the present reexamination proceeding, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed as follows:

By **U.S. Postal Service Mail** to:

Mail Stop *Ex Parte* Reexam
ATTN: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

By Fax to: (571) 273-9900
Central Reexamination Unit

By hand to: Customer Service Window
Randolph Building
401 Dulany St.
Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

MAJID A. BANANKHAH
PRIMARY EXAMINER
CRU / AU 3992

Majid A. Banankhah
Primary Examiner
Central Reexamination Unit 3992

Conferee:

Conferee: