IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | | |
|---|---|---|---|
| TIMEBASE PTY LTD., | ) | | |
| | ) | Civil Action Nos. | 07-cv-1687 (JNE/JJG) |
| Plaintiff, | ) | | 07-cv-4551 (JNE/JJG) |
| vs. | ) | | |
| | ) | **TIMEBASE'S SUPPLEMENTAL BRIEF** | |
| THE THOMSON CORPORATION, | ) | **REGARDING APPEAL OF AND** | |
| WEST PUBLISHING CORPORATION, | ) | **OBJECTIONS TO ORDERS** | |
| AND WEST SERVICES, INC., | ) | **DENYING A STAY OF THE '228** | |
| | ) | **CASE (NO. 07-4551) AND LIFTING** | |
| Defendants. | ) | **THE STAY OF THE** | |
| | ) | **'592 CASE (NO. 07-1687)** | |

This supplemental brief is provided pursuant to the Court's order of April 18, 2008, asking that the parties address the office action issued in the reexamination of the '592 patent. That office action does not alter the outcome. The record before Magistrate Judge Graham included every fact significant to her exercise of discretion, including that an office action would issue, and might issue in precisely the form it did. Her decision remains entitled to extremely deferential review.

Magistrate Judge Graham recognized, as Thomson admitted, that both patents involved the same products, the same witnesses and the same evidence. (Order, 4551 docket no. 24, page 7). No possible outcome of the reexamination could simplify the issues by narrowing the number of accused products or the scope of discovery, i.e., the validity of the '228 claims would not be affected by the reexamination of the '592. And as Judge Graham also noted, the Patent Office's issuance of the '228 patent over the prior art at issue in the reexamination means that the PTO's disposition of the '592 can have little to no effect on the '228 patent. Nothing in the subsequent reexamination office action has changed that view – none of the claim terms in the '228 were redefined or altered by the '592 office action.

The office action was anticipated by the parties and the Court. The documents before Judge Graham included the request for reexamination, and the order granting the request. The request for reexamination of the '592 patent sought reexamination of every claim of the '592. Thomson pointed out that the reexamination request form sought "Reexamination of claims 1-58." (Exhibit 4 to the Declaration of Shawn T. Gordon, Case 07-4551, docket no. 15-6). The request said "In light of the three references, there are substantial new questions of patentability with regard to claims 1-58 of the '592 patent, as further discussed below." *Id.* This request was part of the record before Judge Graham because Thomson included it with the declaration by its counsel, Mr. Gordon.

Thomson also ensured that Magistrate Judge Graham was aware that the Patent Office granted the request with respect to every claim. The order granting the request said the reexamination would go forward. (Exhibit 5 to the Gordon Declaration, 4551 docket no. 15-7). That is not surprising, because the evidence before Judge Graham showed that the vast majority of requests – about ninety-two to ninety-seven per cent -- are indeed granted. (Exhibits 9 and 10 to the Declaration of Joseph Hosteny, 4551 docket nos. 17-17 and 17-18). The Patent Office's order said: "A substantial new question of patentability affecting claims 1-58 of United States Patent 6,233,592 is raised by the request for *ex parte* reexamination." (Exhibit 5 to the Gordon Declaration, at paragraph 1). The examiner added that each article "raises a substantial new question of patentability as to claims 1-58 of the Schnelle '592 patent." (Exhibit 5 to the Gordon Declaration, paragraphs 2, 3 and 4). At page 3 of her ruling, Judge Graham commented that the "reexamination request sought review of all 58 claims in the '592 patent . . . ." (Order dated February 7, 2008, 4551 docket no. 24 at page 3).

The parties and Judge Graham knew that all fifty-eight claims were the subject of the reexamination, and that the Patent Office had decided to reexamine all of them. Everyone knew that an office action would issue. At the oral argument on January 24, the parties repeatedly mentioned that an office action would be forthcoming, though no one knew exactly when. (Transcript of January 24, 2008 hearing, at pages 10, 22-23, 27, and 44, 4551 docket no. 23).

Judge Graham was aware that any office action could reject all of the claims. In the proceedings on the earlier motion to stay the 1687 case, Thomson's brief argued that the outcome here would be the same as in Europe. (See pages 6-7 of Thomson's Memorandum in Support of Motion to Stay Proceedings, Case 07-1687, docket no. 35). Thomson argued that one outcome was that all the claims would be rejected and canceled:

> Either they are going to be out right rejected the way they have based on this prior art in the European patent proceedings in which case the case is over and we won't be back here at all and the parties will not have had to expend any additional resources.

(Transcript of June 28, 2007, 1687 docket no. 53, at page 7). Thomson made the point again at page 27 of the same hearing: "since at least in 10 to 12 percent of the cases it's rejected in it's entirety as it has been in Europe twice."

Thomson continued that argument in its second stay motion. Its memo said "These same references had been cited by the European Patent Office in its repeated rejections of the European counterpart to the '592 patent." (Memorandum in Support of Motions to Consolidate and Stay, 4551 docket no. 14, at page 3). Thomson repeatedly treated all the claims together, saying that "there's at least some possibility, if not a reasonable probability, that what happens in the patent office and in these proceedings is going to affect the claims, the nature, the scope of the invention . . . ." (Transcript of the January 24, 2008 hearing, 4551 docket no. 23, at page 13 and at page 14 referring again to the "claims" as a whole).

3

In response to a question from Judge Graham, Thomson said that "this examiner and the re-exam proceeding is going to agree with what the European patent office did. They've rejected all these claims." (Transcript of January 24 hearing, at page 26). Thomson said that "The European patent office on this same prior art has rejected these same sorts of claims entirely. TimeBase can't even get a patent in Europe on this . . . ." (January 24 Transcript, at page 13). Thomson said that the U.S. examiner would agree with Europe: "They've rejected all these claims. They don't have a patent. TimeBase doesn't have a patent in Europe." (January 26 Transcript, at page 26). Thomson followed that statement by referring to an office action. (Transcript of January 24 hearing, page 27). Over and over, Thomson stressed that all the claims of the '592 were the subject of the reexamination and would all be rejected.

The office action was anticipated by one of the questions by Magistrate Judge Graham, which dealt with the possibility that all of the claims of the '592 patent would be canceled. (Transcript of January 24, 2008 hearing, 4551 docket no. 23, at pages 40-41). Her ruling recognized that the examiner in the '592 could take a different position on the references in question, leading to a different result from the '228 (Order, 4551 docket no. 24, at page 10). In the latter, the same reexamination references were considered and the patent nonetheless issued without any claims being amended.

The record shows that the office action was expected, and that the parties and Judge Graham understood it could concern all of the claims, and that the claims could be rejected. The office action that did issue added nothing new in terms of the claims affected by the reexamination, or the arguments made regarding those claims. As described below, the office action arguments are identical to those in the reexamination request, save that only one of the three references filed in the reexamination application has been taken up by the examiner as

4

relevant. Magistrate Judge Graham correctly exercised her discretion based upon the record before her.

To the extent this Court decides to consider subsequent events, those events confirm that Judge Graham's order was reasonable and remains so.

The request for reexamination of the '592 was predicated on three documents. (Exhibit 4, Gordon Declaration, 4551 docket no. 15-6, third page referring to items denominated as D1, D2 and D3). So was the order granting reexamination; it cited D1, D2, and D3. (Exhibit 5 to the Gordon Declaration, 4551 docket no. 15-7). D1, D2, etc. is the shorthand nomenclature used by the EPO and the USPTO. The office action, however, is different and narrower: it is based only upon one of the three documents, that is, D2, a purported printed publication by T. Arnold-Moore and others. (Office Action in *ex parte* Reexamination, 4551 docket no. 35-2). The office action does not mention the other items, D1 or D3. The reexamination is narrower than was originally thought to be the case. Judge Graham's order was predicated on a more conservative record, and one more favorable to Thomson than that which has subsequently emerged. Had Judge Graham known that the office action would only rely on one reference, her decision would have been unchanged.

A fair reading of subsequent events in the EPO likewise demonstrates that Judge Graham's decision would not have been different. Thomson has frequently referred to the proceedings in the European Patent Office as a justification for a stay; it says that the EPO has rejected claims based upon the same references as are cited in the '592 reexamination. (See the Transcript of the June 28, 2007 hearing at pages 4, 7, 25 and 26, 1687 docket no. 53, and Exhibits 6 and 7 to the Gordon Declaration, 4551 docket nos. 15-8 and 15-9). However, the most recent statement from the EPO mentions D2, but does not rely upon it. (See Exhibit 1 to

the Third Declaration of Joseph N. Hosteny, filed contemporaneously with this brief). Judge Graham heard and understood Thomson's arguments about what is happening in Europe. Subsequent events show that the statements and arguments by Thomson potentially inflated the significance of those proceedings, the pertinence of D2, and the degree to which the EPO proceedings foreshadowed a similar result in the U.S. Thomson's arguments insured that Judge Graham's decision had to be based upon facts and reasoning that were more conservative, and more favorable to Thomson, than we now know to be the case.

The publication now cited in the office action may not be a publication at all. We referred above to D2, the Arnold-Moore document, as a "purported" publication. We describe it this way because the EPO examiner indicated that he found it on-line, but only in 2002. (See the second page of the examiner's letter, Exhibit 6 to the Gordon Declaration, 4551 docket no. 15-8). The U.S. filing date of the '592 patent is January 30, 1998 (Field 63, regarding the PCT application), and the patent claims a foreign priority date of January 31, 1997. (See Exhibit 3 to the Gordon Declaration, 4551 docket no. 15-4). If D2, the Arnold-Moore document, is not proven to be publicly available before January 1, 1996, then it is not a printed publication under § 102(b). To constitute a printed publication, a document must be generally accessible to those members of the public interested in the art prior to the "critical date," that is, more than a year before the filing date of the patent. See, for example, *Bruckelmyer v. Ground Heaters, Inc.,* 445 F.3d 1374, 1378 (Fed. Cir. 2006).

The European standard for prior art appears to be broader, another reason to be cautious about analogizing European and U.S. practices. Article 54(2) of the European Patent Convention says:

> The state of the art shall be held to comprise everything made available to the public by means of a written or oral description, by use, or in any other way, before the date of filing of the European patent application.

(Obtained from http://www.epo.org/patents/law/legal-texts/html/epc/2000/e/ar54.html).

Whether this document is a publication remains to be seen. It may or may not be. But before it can bear in any way upon a claim of a patent in reexamination, it must be a "printed publication" under 35 U.S.C. §102. The examiner's Bible, the Manual of Patent Examining Procedure, says that documents posted on line are considered to be "publically available as of the date the item was publicly posted." (Exhibit 2 to Third Hosteny Declaration, MPEP §2128, obtained from the PTO's web site). The same section adds that a document having no posting date and including no publication or retrieval date cannot be considered as prior art. *Id.* Going by that standard, the online date is the one referred to by the EPO examiner, sometime in the year 2002. D2 would not be a printed publication under § 102(b).

Another copy of D2 has a handwritten date on the first page, and handwritten page numbers. (Exhibit 3 to Third Hosteny Declaration). Handwriting is not evidence of publication; no one knows when the date was applied, by whom, or why.

A U.S. examiner can ask the PTO's Scientific and Technical Information Center (STIC) for help. *Id.* That office maintains a library. See § 901.06(a) of the MPEP. (Exhibit 4 to Third Hosteny Declaration). The library has foreign patents, but does not mention foreign publications. *Id.* The ability of the PTO to resolve the status of the D2 document is unclear.

Whether the D2 document is a printed publication can be resolved in the litigation, where discovery is available to the parties. (Thomson's document requests seek information about Arnold-Moore, so it intends to pursue this subject). Waiting for a reexamination proceeding to tackle a problem the PTO may not be able to solve will accomplish nothing but delay.

The conclusion to draw from this is that the slim reed envisioned by Judge Graham as an inadequate basis for a stay is even weaker: the reexamination is narrowed to one document, the EPO is not at present relying on that document, the status of the document as a printed publication is uncertain, and the status may not be resolvable in the reexamination. Judge Graham's approach was conservative and fair to the movant, Thomson. Subsequent events, to the extent this Court cares to consider them, confirm that Judge Graham exercised her discretion appropriately and without error.

The April 18 order notes that the office action rejected all claims of the '592 patent. There are two reasons why that fact is not significant to Judge Graham's decision.

First, neither the scope nor the bases for the rejection are new. The grounds are largely restatements, nearly or actually verbatim, of the arguments made in the original reexamination request. There is no presumption of validity in a reexamination. *Ethicon v. Quigg,* 849 F.2d 1422, 1427 (Fed. Cir. 1988) (no presumption). Since there has not yet been any rebuttal by TimeBase, it is logical for an examiner to apply the requestor's arguments to the claims identified by the requestor, and that is what happened here. The decision granting the reexamination incorporates by reference the reexamination request. See paragraph 5 on page 3 of Exhibit 5 to the Gordon Declaration, 4551 docket no. 15-7. The office action also repeats or closely parallels the request. With respect to claim 1, the request refers to the abstract of D2 for the first part of claim 1; so does the office action. (See Exhibit 5 to the Gordon Declaration, and the office action, 4551 docket no. 35-2). For the next four parts of claim 1, the request and the office action refer to the same portions of D2. *Id.* With respect to the third clause of claim 1 ("at least one predefined portion . . . ."), the examiner quotes the requestor, too: the words "implicit in discussion of element versioning in" appear both on the second text page of the request and in

the third, right-hand cell on page 3 of the office action. *Id.* With respect to the last clause of claim 1, the examiner's comment includes a sentence that is taken from the request: "attributes of any database . . . the database records" is at the bottom of the second page of the request and the top of page 5 of the office action. *Id.* The office action incorporates and follows the request and the decision granting reexamination. It reveals only what Judge Graham was already aware of: that all 58 claims were asserted to be invalid based upon D2, the Arnold-Moore document.

Second, an examiner's starting point is not indicative of his final position. Such rejections are typical Patent Office practice in response to requests for reexamination of all claims. Just as most requests are granted, most requestors seek reexamination of every claim in a patent. The Patent Office typically grants the request for the claims identified by the requestor, and most often rejects the same claims in the first action. We located eight patents reported in the media as being reexamined. Just as in this case, seven of the eight requests sought reexamination of every claim in the original patent. One sought reexamination of seven of the nine claims in the original patent. In all eight cases, and just as in this case, reexamination was ordered for every claim in the request. Just as in this case, in seven of the eight cases, every claim in the request was rejected in the first office action. In one case, all but one of the claims was rejected. (See Exhibit 5 to the Third Hosteny Declaration).

The conclusion to be drawn is that blunderbuss requests and rejections do not mean a patent is going to be canceled. On the contrary, in two of the four completed reexaminations, 92 of the original 94 claims were not changed, and the remaining two had only trivial amendments. In these two cases, 147 new claims were added. In the other two concluded reexaminations, some original claims were amended and a few new claims were added. Not one claim in any of these reexaminations was canceled. (Exhibit 5 to the Third Hosteny Declaration). The fact that

the first office action in this case follows the reexamination application and rejects all claims of the '592 does not constitute a reason to alter Judge Graham's decision.

Early office actions, following the reexamination application format and rejecting all claims of the patent that is the subject of the reexamination, are common. The significance of those actions should not be over-emphasized. Upholding of all claims, notwithstanding early office actions rejecting all of the claims, are also not uncommon. A rejection of all claims is not a bellwether of the final decision, and would often be misleading about the final result. The office action here should have no effect upon Judge Graham's analysis and conclusions.

Thomson's theory has been that TimeBase would say something in response to an office action concerning the claims of the '592. (See, for example, page 11 of the January 28 hearing transcript, 4551 docket no. 23). Then, so the theory goes, whatever TimeBase said would bear upon claim interpretation, not only in the suit involving the '592 patent, but also in the '228 case, where the <u>same</u> references were cited, and the claims were <u>allowed</u> by the examiner. Thomson's theory was speculative, and now is even more speculative, because two of the three references cited in the request are not relied upon in the office action.

There is absolutely no error in Magistrate Judge Graham's decision. The standard of review here is whether the Order is clearly erroneous, or contrary to law. "This is an extremely deferential standard." *Pacesetter Inc. v. Cardiac Pacemakers, Inc.*, No. 02-1337, 2003 WL 23303473 at *1 (D. Minn. Nov. 19, 2003) (citing *Reko v. Creative Promotions, Inc.,* 70 F.Supp.2d 1005, 1007 (D.Minn.1999)); *Ortiz v. Donatelle Assoc., L.L.C.*, 2008 U.S. Dist. LEXIS 3483 at *6 (D. Minn. January 16, 2008) (affirming the Magistrate's denial of a motion to stay discovery and saying that "[t]he standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential.") (also citing *Reko*) (LEXIS

and Westlaw cited cases are Exhibit 4 to the Second Declaration of Joseph N. Hosteny, 4551 docket no. 33). It remains entitled to deferential review. Any subsequent or new evidence makes the accuracy of her decision even more apparent.

With respect to both patents, the same products are accused of infringement. The '228 is not in reexamination, and its claims were allowed after the examiner saw every argument and reference used to provoke the reexamination of the '592 patent. The reexamination therefore cannot resolve this suit. No matter what may happen with respect to the '592 patent, the same products and witnesses will be dealt with. There is ample time to take discovery while we wait for something the Patent Office may never do. Judge Graham's order ought not be changed. At the very least, the suit concerning the '228 patent should continue.

Respectfully submitted,

/s/ Joseph N. Hosteny
Joseph N. Hosteny
Arthur A. Gasey
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602
Phone: 312-236-0733; Fax: (312) 236-3137
jhosteny@hosteny.com, gasey@nshn.com

Michael R. Cunningham
Attorney No. 20424
Gray, Plant, Mooty, Mooty & Bennett, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Phone: (612) 632-3000
Fax: (612) 632-4444
michael.cunningham@gpmlaw.com
Attorneys for TimeBase Pty Ltd.