# Exhibit 5
# Part 22
# To Third Declaration of
# Joseph N. Hosteny

Dockets.Justia.com

## DECISION

A substantial new question of patentability affecting claims 1-43 of United States Patent

Number 6,032,137 is raised by the request for *ex parte* reexamination.

### *Service of Papers*

After the filing of a request for reexamination by a third party requester, any document

filed by either the patent owner or the third party requester must be served on the other party (or

parties where two or more third party requester proceedings are merged) in the reexamination

proceeding in the manner provided in 37 CFR 1.248. See 37 CFR 1.550(f).

### *Waiver of Right to File Patent Owner Statement*

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530

to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner

waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in

the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third

party requester, see 37 C.F.R 1.550(f). The Patent Owner may consider using the following

statement in a document waiving the right to file a Patent Owner Statement:

### WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT

Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement.

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in

*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Amendment in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or claims

in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally

presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR

1.20(c).

### *Submissions*

In order to insure full consideration of any amendments, affidavits or declarations or

other documents as evidence of patentability, such documents must be submitted in response to

the first Office action on the merits (which does not result in a close of prosecution).

Submissions after the second Office action on the merits, which is intended to be a final action,

will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33

after appeal, which will be strictly enforced.

### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6,032,137 throughout the course of this reexamination proceeding. Likewise, if

present, The third party requester is also reminded of the ability to similarly apprise the Office of

any such activity or proceeding throughout the course of this reexamination proceeding. See

MPEP §§ 2207, 2282 and 2286.

### Request's Indications

The request indicates that Requester considers:

Claims 1 and 26 are unpatentable over Campbell et al., USPN 5,373,550, (Campbell).

Claims 42 and 43 are unpatentable over Campbell.

Claims 2, 16, 18, 27, 29, 36 and 38-41 are unpatentable over Campbell.

Claims 3-8 and 28 are unpatentable over Campbell and admitted prior art (APA).

Claims 10 and 33 are unpatentable over Campbell and APA.

Claims 34 and 35 are unpatentable over Campbell, Owens et al., USPN 4,264,808,

(Owens) ("old art" viewed in a new light) and Minoli, Imaging in Corporate Environments

(Minoli).

Claims 20 and 21 are unpatentable over Campbell and Minoli.

Claims 1, 2, 18, 26, 27 and 29 are unpatentable over ANSI/ABA X9.46-1995, version

0.13 Draft (ANSI-1995) and ANSI X9.46-1997 (ANSI-1997).

Claims 9, 11-15, 19 and 30-32 are unpatentable over Campbell, Owens and Minoli.

Claims 17, 22-25 and 37 are unpatentable over Campbell and Minoli.

### Substantial New Question

There are substantial new questions of patentability (SNQP) is based on Campbell,

Minoli, ANSI/ABS X9.46-1995, v. 0.13,and ANSI X9.46-1997.  A discussion of the specifics

now follows:

It is agreed that the consideration of Campbell raises an SNQP as to Claims 1 and 26 of

the Ballard patent ('988 patent or Ballard).  As pointed out in the request on pages 5-7, Campbell

teaches in col. 5:23-28 "[t]hat a controller (42) may read some data accompanying check images,

for example, it may identify that TCP/IP protocol information accompanying those images. That information may instruct the node (12) about the identity of the sending institution and the intended receiving institution." In col. 3:43-58 Campbell teaches "the processing node (12) receives check images and performs certain processing procedures on those images, including at least temporary storage of the received check images." Campbell teaches the processing node (12) "transmits frames of digital information representing check images to the network (38) after those images have been processed by the node (12)." *Id.* Campbell teaches "[a] node controller and router (42) control the routing of check images to their intended destinations, both in the controller and to their ultimate destinations outside the network (38)." Campbell in col. 2:20-22 and 50-63 teaches a communication network being a public switched telephone network either electrically or optically based and/or digital or analog; and suitable digital networks are a packet network and a frame relay network. In col. 5:55-60 Campbell teaches "[t]he controller (42) may also be configured to handle information encrypted by sending institutions to provide security for the images transported by the network (38). The controller (42) may have its own encryption and decryption equipment to provide a secure environment in the node (12)." In col. 5:26-27 Campbell teaches this encrypted information includes check images and also information "about the identity of the sending institution. Thus, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, Campbell raises an SNQP as to Claims 1 and 26, which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of Campbell raises an SNQP as to Claims 42 and 43 of the Ballard patent. As pointed out in the request on pages 7-8, in addition to incorporating the

above stated teachings herein, Campbell further teaches destination identifying data identifies

one of the banks involved in the underlying transaction represented by the check and this data

may be obtained from the endorsements on the check, and this data can be obtained by an

operator who views the image of the check and manually enters the destination data, thus

verifying the accuracy of the endorsement from the image. See Campbell, col. 3:65-67. Thus,

there is a substantial likelihood that a reasonable examiner would consider these teachings

important in deciding whether or not these claims are patentable. Accordingly, Campbell raises

an SNQP as to Claims 42 and 43, which has not been decided in a previous examination of the

Ballard patent.

It is agreed that the consideration of Campbell raises an SNQP as to Claims 2, 16, 18, 27,

29, 36 and 38-41 of the Ballard patent. In col. 2:64 - col. 3:12 Campbell teaches a scanner

means. In col. 2:46-49 and Figure 2 Campbell teaches a data collecting subsystem. In col. 7:15-

27 Campbell teaches tagged, encrypted, compressed bitmap images. In col. 2:27-49 Campbell

teaches having plural remote and central locations. In col. 3:10-31; col. 4:56-58 and col. 2:61

Campbell teaches LANs and a WAN communication architecture. In col. 2:25-33 Campbell

teaches that a collection may occur at a processing node (12) that transmits check images

between two or more banks. Thus, there is a substantial likelihood that a reasonable examiner

would consider these teachings important in deciding whether or not these claims are patentable.

Accordingly, Campbell raises an SNQP as to Claims 2, 16, 18, 27, 29, 36 and 38-41 which has

not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of a combination of Campbell and APA raises an

SNQP as to claims 3-8 and 28 of the Ballard patent. As pointed out in the request on page 10,

Ballard in col. 6:46-60 teaches "[a]s is known to person of ordinary skill in the art, the DATs 200

could also include additional devices for capturing other biometric data for additional security.

These devices include facial scans, fingerprints, voice prints, iris scans, retina scans and hand

geometry." This APA in combination with the teachings of Campbell in col. 7:15-27 of

compressed tagged images and in col. 6:57-60 of digital storage make a substantial likelihood

that a reasonable examiner would consider these teachings important in deciding whether or not

these claims are patentable. Accordingly, Campbell in combination with APA raise an SNQP as

to Claims 3-8 and 28 which has not been decided in a previous examination of the Ballard patent.

It is agreed that the consideration of the combination of Campbell, Owens and Minoli

raises an SNQP as to Claims 34 and 35 of the Ballard patent. In figure 1 Campbell shows

transmitting within a remote subsystem. In col. 2:26-32 Campbell teaches transmitting between

a remote and central subsystem. In col. 3:41-52 Campbell teaches transmitting within a central

subsystem. In col. 3:20-43 Campbell teaches connecting a remote to a central subsystem. In col.

3:32-52 Campbell teaches connecting a central to a remote subsystem. Thus, there is a

substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not these claims are patentable. Accordingly, the combination of Campbell,

Owens and Minoli raises an SNQP as to Claims 34 and 35 which has not been decided in a

previous examination of the Ballard patent.

It is agree that the consideration of the combination of Campbell and Minoli raises an

SNQP as to Claims 20 and 21of the Ballard patent. Campbell teaches temporary and long-term

archiving of the images at the check processing node (12). Minoli teaches several image storage

systems. Thus, there is a substantial likelihood that a reasonable examiner would consider these

teachings important in deciding whether or not these claims are patentable. Accordingly, the

combination of Campbell and Minoli raises an SNQP as to Claims 20 and 21 which has not been

decided in a previous examination of the Ballard patent.

It is agreed that the consideration of ANSI-1995 and ANSI-1997, collectively "ANSI",

raise an SNQP as to Claims 1, 2, 18, 26, 27 and 29 of the Ballard patent. As pointed out in the

request on pages 16-19, ANSI teaches an electronic data interchange protocol for exchange of

electronic digitized images of financial documents among different financial institutions

involved in a payment transaction. The exchange occurs across diverse computing platforms and

the original imaging application captures images of paper transaction data. ANSI teaches a

concept of functional groups that are packaged and interchanged between financial institutions.

These functional groups are defined as "items views" and "creation computer". The "item

views" include images of documents. The "creation computer" is a data element which

"conveys the system name of the originator's host computer that was used to create and digitize

the imaging data." See ANSI-1995, page 105; ANSI-1997, page 105. Thus, both images of

documents and associated identification information which identifies the source of the digitized

images are transmitted through the system. ANSI teaches a system that processes, sends, verifies

and stores transaction data and identification information. As taught on page 12 of both ANSI-

1995 and ANSI-1997, "upon receipt of the interchanged data, the FII-translator will parse the

incoming data for the receiving imaging application. Then, the receiving imaging application

may generate acknowledgements or replies to query requests, and become the originating

imaging application for a new image interchange." ANSI teaches a communication network

where data may be transmitted within and between financial institutions. As taught in ANSI-

1995, page 15-16, and ANSI-1997 page 16, "packaged interchanged content is delivered from

the originating imaging application's financial image interchange translator to the receiving

imaging application's financial image interchange translator through a computer network by

transmitting the packaged interchange data electronically." ANSI teaches encrypting data prior

to transmission. As taught on page 57 of both ANSI-1995 and ANSI-1997, "encryption key

name ... conveys the name of the key used to encipher the contents of this functional group"

(meaning the image and originator data). "Th[is] name is mutually known to the security

originator and the security recipient, is unique for this relationship, and allows a particular key to

be specified." Thus, there is a substantial likelihood that a reasonable examiner would consider

these teachings important in deciding whether or not these claims are patentable. Accordingly,

ANSI raises an SNQP as to Claims 1, 2, 18, 26, 27 and 29 which has not been decided in a

previous examination of the Ballard patent.

It is agreed that the consideration of the combination of Campbell, Owens and Minoli

raise an SNQP as to Claims 9-15, 19 and 30-33 of the Ballard patent. As pointed out in the

request on page 11, for Claims 10 and 33, and pages 20-21, for Claims 9, 11-15, 19 and 30-32,

Minoli teaches a "polling server". This teaching causes the teachings of Owens with respect to

its "polling server" (col. 12:12-16); the database (col. 12: 18-27; the report generator (col. 14:12-

18); the CPU (col. 12:27-36); the domain name services program (col. 21:1-17) and the memory

hierarchy (col. 12:23-27) to be viewed in a new light with the teachings of Minoli as to its

teachings of a domain name services program, see pages 248-249, along with the "polling

server" teaching found on pages 33 and 350 in Minoli. Minoli teaches using WORM jukebox

and optical storage jukebox to store check images, see pages 30-31 of Chapter 7. On page 33,

Minoli teaches CD-ROM optical storage being faster than video servers. Owens discusses ways

of storing data into predefined fields, i.e. "machine pattern recognition units" which include "a

conventional character recognition reader which reads the decompressed image of a document

(18) and ascertains the monetary amount thereon." See Owens col. 23:44-47. Owens teaches

manners to correct errors, "[w]hen data is missing, the associated image is routed to one of the

processors (396,398) for display on one of the CRTs (150) where an operator keys in the

appropriate data on an associated keyboard (152). See Owens col. 23;47-52. Thus, there is a

substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not these claims are patentable. Accordingly, the Campbell, Owens and

Minoli combination raise an SNQP as to Claims 9, 11-15, 19 and 30-32, which has not been

decided in a previous examination of the Ballard patent.

It is agreed that the consideration of the combination of Campbell and Minoli raise an

SNQP as to Claims 17, 22-25 and 37 of the Ballard patent. As pointed out in the request on page

22, Minoli teaches using modem connections and connecting several networks in addition to the

hardware typically part of a communication network. See Minoli pages 31, 263, 268-271. Also,

Minoli teaches dynamic assigning, see pages 248-249. Likewise, Campbell teaches dynamic

assigning, col. 3:30-39 in addition to polling, col. 3:30-39; and storing, col. 3:43-58. Thus, there

is a substantial likelihood that a reasonable examiner would consider these teachings important

in deciding whether or not these claims are patentable. Accordingly, the Campbell and Minoli

combination raise an SNQP as to Claims 17, 22-25 and 37 which has not been decided in a

previous examination of the Ballard patent.

### *Issues not within Scope of Reexamination*

It is noted that an issue not within the scope of reexamination proceedings has been

raised: patent owners' belief of claim coverage. The issue will not be considered in a

reexamination proceeding. 37 CFR 1.552(c). While this issue is not within the scope of

reexamination, the patentee is advised that it may be desirable to consider filing a reissue

application provided that the patentee believes one or more claims to be partially or wholly

inoperative or invalid based upon the issue.

### *Conclusion*

Per MPEP § 2258 all "live" claims are reexamined during reexamination.

*Communications*

Please mail any communications to:

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P. O. Box 1450
> Alexandria, VA   22313-1450

Please FAX any communications to:

> (571) 273-9900
> Central Reexamination Unit

Please hand-deliver any communications to:

> Customer Service Window
> Attn:  Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulany Street
> Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

Michael O'Neill
CRU Examiner
GAU 3993
(571) 272-4442

CONFS:

PTO/SB/57 (04-05)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO-1465)

# REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

Address to:
**Mail Stop *Ex Parte* Reexam**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

**Attorney Docket No.:**

**Date:** 23 November 2005

1. [x] This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number  6,032,137
   issued  Feb. 29, 2000 . The request is made by:

   [ ] patent owner.     [x] third party requester.

2. [x] The name and address of the person requesting reexamination is:

   64660  U.S. PTO
   90007830

   First Data Corporation

   6200 S. Quebec Street

   11/25/05

   Greenwood Village, CO  80111

3. [ ]  a.  A check in the amount of $_____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);

   [x]  b.  The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1)
           to Deposit Account No. 18-1260 _____ (submit duplicative copy for fee processing); or

   [ ]  c.  Payment by credit card. Form PTO-2038 is attached.

4. [x]  Any refund should be made by [ ] check or [x] credit to Deposit Account No. 18-1260 _____ .
        37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. [x]  A copy of the patent to be reexamined having a double column format on one side of a separate paper is
        enclosed. 37 CFR 1.510(b)(4)

6. [ ]  CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
        [ ] Landscape Table on CD

7. [ ]  Nucleotide and/or Amino Acid Sequence Submission
        *If applicable, items a. – c. are required.*

        a. [ ] Computer Readable Form (CRF)
        b. Specification Sequence Listing on:

           i. [ ] CD-ROM (2 copies) or CD-R (2 copies); or
           ii. [ ] paper

        c. [ ] Statements verifying identity of above copies

8. [ ]  A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. [x]  Reexamination of claim(s) ___1-43_____ is requested.

10. [x] A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on
        Form PTO/SB/08, PTO-1449, or equivalent.

11. [ ] An English language translation of all necessary and pertinent non-English language patents and/or printed
        publications is included.

01 FC:1812     2520.00 DA     90007830

[Page 1 of 2]

This collection of information is required by 37 CFR 1.510. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO
to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 2 hours to complete,
including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments
on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent
and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS
ADDRESS. SEND TO: Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/57 (04-05)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. ☐ The attached detailed request includes at least the following items:

    a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.510(b)(1)

    b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.510(b)(2)

13. ☐ A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e)

14. ☒ a. It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
    The name and address of the party served and the date of service are:

    DataTreasury Corporation

    175 Pinelawn Road, Suite 200

    Melville, NY 11747

    Date of Service: _____ 23 November 2005 _____ ; or

    ☐ b. A duplicate copy is enclosed since service on patent owner was not possible.

15. Correspondence Address: Direct all communication about the reexamination to:

☒ The address associated with Customer Number: | 33694

**OR**

☐ Firm or Individual Name

Address

| City | State | Zip |
|---|---|---|
| Country | | |
| Telephone | Email | |

16. ☐ The patent is currently the subject of the following concurrent proceeding(s):
    ☐ a. Copending reissue Application No. _____ .
    ☐ b. Copending reexamination Control No. _____ .
    ☐ c. Copending Interference No. _____ .
    ☐ d. Copending litigation styled: _____

    _____

    _____

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| Authorized Signature | Date |
|---|---|
| Jeffrey P. Kushan | 43,401 | ☐ For Patent Owner Requester |
| Typed/Printed Name | Registration No. | ☐ For Third Party Requester |



# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Patent No.: | **6,032,137** |
| Filed: | May 19, 1998 |
| Patent Owner: | DataTreasury Corporation |
| Applicant: | Claudio R. BALLARD |
| For: | Remote Image Capture with Centralized Processing and Storage |

Mail Stop **Ex Parte Reexam**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## REQUEST FOR REEXAMINATION UNDER 35 U.S.C. § 302

Sir:

Reexamination under 35 U.S.C. §§302-307 and 37 CFR §1.510 is requested of claims 1-43 of United States Patent Nos. 6,032,137 ("the '137 patent") (copy attached in double column format as Appendix A), which issued on February 29, 2000 based on prior art patents and printed publications cited in the accompanying Information Disclosure Statement.[1] Copies of the references cited in the Information Disclosure Statement are attached as Exhibits to this Request. None of the primary references serving as anticipatory references or ones which render the claims obvious were cited during the prosecution of the '137 patent despite the fact that one of them is a patent found in the same classes/subclasses as the '137 patent. Moreover, none of those references are cumulative to prior art that was considered by the Examiner during prosecution of the '137 patent.

---

[1] The '137 patent is a continuation in part patent, which claims priority to the U.S. Patent No. 5,910,988 (the '988 patent). The undersigned have also submitted concurrently with this petition a request for an *ex parte* reexamination of the '988 patent.

This patent has not expired due to non-payment of maintenance fees and is assigned to DataTreasury Corporation ("DataTreasury"). In accordance with 37 C.F.R. §§ 1.33(c) and 1.510(b)(5), this request is being served in its entirety on the assignee DataTreasury.

## I.   STATEMENT POINTING OUT SUBSTANTIAL NEW QUESTION OF PATENTABILITY

To obtain a patent, an inventor must have a novel invention. *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 780, 227 USPQ 773, 777 (Fed. Cir. 1985) That is, a person shall be entitled to a patent unless -

"the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent" 35 U.S.C. § 102(a);

"the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for a patent in the United States" 35 U.S.C. §102(b); or

"the invention was described in a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent" 35 U.S.C. § 102(e).

Moreover, one may not obtain a patent on an invention if the differences between the invention and the prior art are such that the invention as a whole would have been obvious to the person of ordinary skill in the pertinent art. 35 U.S.C. § 103(a).

The '137 patent to Claudio R. Ballard, filed on May 19, 1998, as a continuation in part patent claiming priority to the U.S. Patent No. 5,910,988, filed on August 27, 1997. The patent claims systems and methods for capturing and transmitting images of checks from a remote location to a central processing location.

U.S. Patent No. 5,373,550 issued to Campbell, et al. December 13, 1994 (***Exhibit A***) describes just such a method and a system for check image processing. Campbell, et al. teaches a system for and method of (1) capturing images of paper documents at one or more banks; (2) managing the capturing and sending of the images with the multi-workstation equipment;

(3) collecting, processing, sending and storing the transaction data at a central location; (4) managing the collecting, processing, sending and storing of the transaction data; (5) encrypting the information transmitted, which includes both the images and information about the identity of the sending institution; and (6) transmitting the images and accompanying information within and between the remote location and the central location by virtue of a communication network as contemplated by claims 1-43 of the '137 patent. To the extent Campbell, et al. does not expressly describe specific components of the system or method, those components are nevertheless inherent in the description of the system and its use set forth in Campbell, et al or are obvious in view of the level of skill in the art, admissions made the patentee in the patent or other prior art, namely U.S. Patent No. 4,264,808 to Owens, et al. (**Exhibit H**) and the Minoli textbook (**Exhibit G**). The Minoli textbook was published more than one year before the '988 patent was filed, and discloses imaging systems and networks including numerous details of such systems claimed in many of the dependent claims of the '137 patent. Thus, Campbell, et al., either alone or in combination with these references, raises a substantial new question of patentability of claims 1-43 of the '137 patent under 35 U.S.C. § 102(b) or § 103(a).

ANSI X9.46-1995 (**Exhibit C**), which was a document accessible and distributed to a working group of financial institutions dedicated to developing an electronic data interchange standard for the exchange of check images and financial data across a computing network more than one year before the '988 patent was filed[2], describes the systems, methods and networks exactly as set forth in claims 1, 26, 18, 27, and 29. Thus, ANSI X9.46-1995 raises a substantial new question of patentability of these claims of the '137 patent under 35 U.S.C. § 102(b).

ANSI X9.46-1997 (**Exhibit D)** was the standard that resulted from the working groups efforts on ANSI X9.46-1995, and was published in 1996 by the American Bankers Association and was approved by the American National Standards Institute, Inc. on January 21, 1997. Like ANSI X9.46-1995, ANSI X9.46-1997 describes the systems, methods and networks exactly as set forth in claims 1, 26, 18, 27, and 29. Thus, ANSI X9.46-1997 raises a substantial new question of patentability of claims 1, 26, 18, 27, and 29 of the '137 patent under 35 U.S.C. § 102(b).

---

[2] This document was also available to members of the financial industry upon request or reasonable diligence.

## II.   DESCRIPTION OF THE CLAIMED SUBJECT MATTER OF THE '137 PATENT

The '137 patent describes a system for scanning checks to create images, and for transmitting, storing and processing the images. All of the claims are directed to remote capture and transmission of encrypted images. As will be made clear from the analyses of the newly cited art, remote capture and transmission of encrypted images was a well-known concept at least within the banking industry since the early 1990's.

All of the claims require the transmission of a "subsystem identification information", a term not defined by the specification of the '137 patent ("the Specification").[3] According to claim 1, the remote data access subsystem "provide[s] encrypted subsystem identification information and encrypted paper transaction data to the data processing subsystem."[4] Analogously, the method of claim 26 includes a step of "encrypting subsystem identification information and transaction data."

Claims 1-41 require that specific check fields, such as payee information and check amount be transmitted from the remote to the central subsystem (or location). These limitations are simply elements that are typically found on the front and back of a check, "including a payer bank's routing number, a payer bank's routing information, a payer's account number, a payer's check, a payer bank's draft, a check amount, a payee bank's identification number, a payee bank's routing information, and a payee's account number."

Claims 42 and 43 of the '137 patent are substantially similar to claims 1 and 26 of the '137 patent, but they do _not_ require that these specific check fields be transmitted, while they _do_ require a step of "verifying the transaction data."

---

[3] The Specification does disclose that a controller may tag the image with "an identification number to identify the merchant originating the scan." '137 patent, col. 8, lns. 21-24.

[4] The Specification discloses that a controller may execute "an encryption algorithm which is well known to an artisan of ordinary skill in the field to encrypt the CBI [compressed bitmap image] in step 318. Encryption protects against unauthorized access during the subsequent transmission of the data." Col. 8, lns. 3-5. Further disclosure of encryption, including methods of encryption, algorithms, and the exact data that is encrypted is lacking in the Specification.

## III. EXPLANATION OF PERTINENCY AND MANNER OF APPLYING CITED PRIOR ART TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED BASED ON PRIOR ART

### 1. *U.S. Patent No. 5,373,550 to Campbell, et al.*

Campbell, et al. describes a public switched telephone network including a check clearing services node 12, which receives **check images** from a sending institution 14, processes the image data, and transmits the check images to a receiving institution 16. Campbell, et al., Col. 2, lns. 25-33. Campbell, et al. was not cited in the original prosecution of the '137 patent.[5]

### A. *Campbell, et al. anticipates independent claims 1 and 26 under 35 U.S.C § 102(b) or renders them obvious under §103(a)*

Each and every element of at least independent claims 1 and 26 of the '137 patent is taught by Campbell, et al. and thus should be rejected under 35 U.S.C. § 102(b).[6] Campbell, et al. teaches the remote data access subsystem of claim 1 as sending bank 14. Campbell, et al., Col. 3, ln. 10-12. Campbell, et al. describes that both paper transaction data, i.e., images of checks, and subsystem identification information, i.e., accompanying identifiers, are transmitted from a remote data access subsystem. "The controller 42 may read some data accompanying check images, for example, it may identify that TCP/IP protocol information accompanying those images. That information may instruct the node 12 about the *identity of the sending institution* and the intended receiving institution." Campbell, et al., Col. 5, lns. 23-28 (emphasis added). Furthermore, the processing node 12 "may read certain overhead information accompanying the images, including frame relay flags, identifiers, address bits, indicators, and other overhead information." Campbell, et al., Col. 5, lns. 2-5.

For the specific check elements of claims 1-41, such as payee information and check amount, these elements are simply a recitation of what is found on the front and back of a check, "including a payer bank's routing number, a payer bank's routing information, a payer's account number, a payer's check, a payer bank's draft, a check amount, a payee bank's identification

---

[5] However, in DataTreasury's corresponding European Application 98/942251.4-1238 having claims similar to the claims as issued in the '137 case, the EPO recently issued an office action on October 24, 2005 ("EPO Office Action", Exhibit B), wherein all the claims were rejected in view of Campbell, et al.

[6] A claim chart setting forth an element by element analysis is attached as Exhibit J.

number, a payee bank's routing information, and a payee's account number." Campbell, et al. specifically contemplates transmitting images of both the front and back of a check. Campbell, et al., Col. 3, lns. 5-10. Thus, an image of the front and back of the check will include these limitations.

Campbell, et al. teaches the central data processing subsystem of claim 1. Specifically, "the processing node 12 receives check images and performs certain processing procedures on those images, including at least temporary storage of the received check images." Campbell, et al., Col. 3, lns. 43-58. The processing node 12 "transmits frames of digital information representing check images to the network 38 after those images have been processed by the node 12. A node controller and router 42 control the routing of check images to their intended destinations, both in the controller and to their ultimate destinations outside the network 38." Campbell, et al., Col. 3, lns. 30 – 39.

Campbell, et al. also teaches the communication network of claim 1. Images are exchanged via a public switched telephone network. Campbell, et al., Col. 2, lns. 20-22. "The public switched telephone network 10 may be ....electrically or optically based or ... may be digital or analog. Two examples of suitable digital networks are a packet network and a frame relay network, such as the existing packet and frame relay networks now provided by carriers such as AT&T." Campbell, et al., Col. 2, lns. 50-63.

Campbell, et al. also teaches the encryption limitations of claim 1. "The controller 42 may also be configured to handle information encrypted by sending institutions to provide security for the images transported by the network 38. The controller 42 may have its own encryption and decryption equipment to provide a secure environment in the node 12." Campbell, et al., Col. 5, lns. 55-60. Thus, the sending bank 14 is capable of sending encrypted "information." This information includes check images and also information "about the identity of the sending institution." Campbell, et al., Col. 5, lns. 26-27. Thus, encrypted information includes encrypted images and encrypted subsystem identification information.

The limitations of claim 1 of the '137 patent are also anticipated by FIG. 2 of Campbell, et al. A bank of first deposit 36 (type of bank 14) and a payor bank 34 (type of bank 16) interchange images through the check processing node 12. For example, check images may be transmitted in a "forward flow path from a bank of first deposit [through the check processing

node 12] to a payor bank." Campbell, et al., Col. 7, lns. 65-68. The bank of first deposit may have check processing equipment for generating images of the checks. Campbell, et al., Col. 4, lns. 18-21; Col. 3, lns. 46-48. Thus, the bank of first deposit 36 may be considered a remote data access subsystem that transmits images to the check processing node 12 (a central data access subsystem), for the forward presented of check images. Thus, this may be considered another teaching of claim 1.

Furthermore, each and every step of claim 26 of the '137 patent is taught by Campbell, et al. As explained, Campbell, et al. describes a method of (1) capturing images of paper documents at one or more banks; (2) managing the capturing and sending of the images with the multi-workstation equipment; (3) collecting, processing, sending and storing the transaction data at a central location (check processing node 12); (4) managing the collecting, processing, sending and storing of the transaction data at the check processing node 12; (5) encrypting the information transmitted to the check processing node 12 which includes both the images and information about the identity of the sending institution; and (6) transmitting the images and accompanying information within and between the remote location and the central location by virtue of a communication network.

### B.    *Independent Claims 42-43 of U.S. Patent No. 5,910,137 are obvious under 35 U.S.C. § 103(a) over Campbell, et al. (U.S. Patent No. 5,373,550)*

Claims 42-43 of the '137 patent do not have the specific delineated check fields as a limitation. There is one additional limitation in claims 42 and 43 over claims 1 and 26 of the '137 patent: "verifying the transaction data from the check." In claim 42, the verifying step occurs at the remote data access subsystem. In claim 43, it is not specified whether the verifying steps occurs at the remote or central subsystem. The term "verifying" means "checking or testing the accuracy of."

Images are transmitted from the sending bank 14 along with destination identifying data so that the image is routed to the appropriate receiving bank 16. Campbell, et al. Col. 3, lns. 61-63. The destination identifying data is "transaction data" in that it identifies one of the banks involved in the underlying transaction represented by the check. Campbell, et al., Col. 4, lns. 13-21. The destination identifying data may be obtained from the endorsements on the check. Campbell, et al., Col. 4, lns. 5-9. The destination identifying data may be obtained by an

operator who views the image of the check and manually enters the destination data, verifying the accuracy of the endorsement from the image. Campbell, et al., Col. 3, lns. 65-67. Thus, Campbell, et al. meets the verifying limitations of independent claims 42 and 43 of the '137 patent, wherein a verifying step is performed at the remote data access system, the sending bank 14.

### C.  Dependent claims 2-25 and 27-41 of the '137 patent do not add any inventive elements

The dependent claims of the '137 patent do not contain any additional features which would add patentable subject matter to the independent claims. As was stated by the EPO in the European Office Action, the dependent claims "refer to minor implementation details or other generally known features which would be used by the skilled person as a matter of normal design procedure." [7]

#### i.  Campbell, et al. anticipates dependent claims 2, 16, 18, 27, 29, 36, and 38-41 of the '137 patent under 35 U.S.C. § 102(b)

Specifically, Campbell, et al. teaches each and every one of these dependent claim limitations, including the scanner of claim 2 (Campbell, et al., Col. 2, ln. 64 – Col. 3, ln. 12); the data collecting subsystem of claim 18 (Campbell, et al., FIG. 2; Col. 2, lns. 46-49); the tagged, encrypted, compressed bitmap image of claim 27 (Campbell, et al., Col. 7, lns. 15 – 27); and the plurality of remote and central locations of claim 29 (Campbell, et al., Col. 2, lns. 27-49).

Claim 16, dependent on claim 1, adds further architecture to the communication network of claim 1, such as a first and second LANs corresponding to the remote and central subsystems, and a WAN for transmitting data between the remote and the central subsystems. A first LAN impliedly connects the components of the sending bank 14 (Campbell, et al., Col. 3, ln. 10-31); while a second LAN 56 connects the components at the check processing node (12) (Campbell, et al., Col. 4, lns. 56-58), while the network 10 may be a WAN (Campbell, et al., Col. 2, ln. 61).

Claim 18 describes an intermediate data collecting subsystem in between the remote and central subsystems. This limitation is taught by the embodiment of Campbell, et al. described

---

[7] EPO Office Action, p. 3. Ballard's corresponding European Application 98/942251.4-1238 contains claims that are similar to the claims as issued in the '988 patent. The EPO recently issued an office action on October 24, 2005 ("EPO Office Action"), wherein all the claims were rejected using Campbell, et al. as the primary reference. In Ballard's corresponding International Application, PCT/US/98/17662, the European Searching Authority cited Campbell, et al. as an "X reference" (particularly relevant if taken alone). This EPO Office Action and Search Report is attached as Exhibit B.