# Exhibit 5
# Part 25
# To Third Declaration of
# Joseph N. Hosteny

Dockets.Justia.com

| Office Action in Ex Parte Reexamination | Control No. 90/006,983 | Patent Under Reexamination 6105007 |
|---|---|---|
| | Examiner Ella Colbert | Art Unit 3624 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

a ☒ Responsive to the communication(s) filed on <u>25 March 2004</u> .   b ☐ This action is made FINAL.
c ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.   3. ☐ Interview Summary, PTO-474.

2. ☒ Information Disclosure Statement, PTO-1449.   4. ☐ _____.

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-111* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims *1-111* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been   (7a)☐ approved   (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some*   c)☐ None    of the certified copies have

    1☐ been received.

    2☐ not been received.

    3☐ been filed in Application No. _____ .

    4☐ been filed in reexamination Control No. _____.

    5☐ been received by the International Bureau in PCT application No. _____.

    * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 04-01)                    Office Action in Ex Parte Reexamination                    Part of Paper No. 030905

## DETAILED ACTION

1.     The following communication is a reexamination of Claims 1-44 of United States

Patent Number 6,105,007 in response to a request that claims 1-44 be reexamined and

newly added claims 45-111 with Letter and Certificate of Service for amendment

transmitted on September 10, 2004 will be examined.

### Claim Rejections - 35 USC § 112

2.     The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out
> and distinctly claiming the subject matter which the applicant regards as his
> invention.

3.     Claims 49, 63, 77, and 91 are rejected under 35 U.S.C. 112, second paragraph,

as being indefinite for failing to particularly point out and distinctly claim the subject

matter which applicant regards as the invention.  It is not clear what the structure is

because the regulations are subject to change over time and because the regulations

are changeable they are not pointing out the original structure of the system.

### Claim Rejections - 35 USC § 102

4.     The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –

> (e) the invention was described in a patent granted on an application for patent
> by another filed in the United States before the invention thereof by the applicant
> for patent, or on an international application by another who has fulfilled the
> requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before
> the invention thereof by the applicant for patent.

5.      The changes made to 35 U.S.C. 102(e) by the American Inventors Protection Act

of 1999 (AIPA) and the Intellectual Property and High Technology Technical

Amendments Act of 2002 do not apply when the reference is a U.S. patent resulting

directly or indirectly from an international application filed before November 29, 2000.

Therefore, the prior art date of the reference is determined under 35 U.S.C. 102(e) prior

to the amendment by the AIPA (pre-AIPA 35 U.S.C. 102(e)).

6.      Claims 1-4, 19-23, 35, 37, 39, and 42 are rejected under 35 U.S.C. 102(e) as

being anticipated by Lockwood U.S. Patent 5,576,951.

        Regarding independent claim 1, Lockwood discloses an automatic account

processing system for establishing a financial account without human intervention for

applicants located at a remote interface, said system comprising (column 12, lines 38-

41 and column 16, lines 15-18 and lines 36-41):

        a.      a remote interface adapted to (column 12, lines 38-41):

        i.      allow an applicant to remotely request an account (column 16, lines 38-

41); and

        ii.     receive data from an applicant (column 13, lines 27-31 and line 66-column

14, line 12 and lines 57-60, and Figure 8);

        b.      a data processing system with associated memory having establishment

criteria bearing on the ability and willingness of the applicant to comply with account

requirements for establishing and holding an account at a financial institution based on

prescribed data obtained from the applicant and information about the applicant

obtained fro

m at least one database containing information about the applicant relevant to the ability

and willingness of the applicant to comply with the account requirements (column 13,

lines 27-36 and lines 59-65 and column 12, lines 61-65);

     c.     a communication network electronically coupling said data processing

system to said applicant interface (column 12, lines 38-41);

     d.     without human assistance, said data processing system adapted to

(column 15, lines 58-64):

     i.     receive the data from the applicant received at the remote interface

(column 14, lines 49-51, column 13, lines 27-31, column 13, line 66 –column 14, line 12,

and Figure 8);

     ii.     access the at least one database for information relevant to the applicant's

identity and for the information relevant to the applicant's ability and willingness to

comply with the account requirements (column 13, lines 5-18 and lines 31-35 and

column 15, lines 39-54);

     iii.     verify the applicant's identity by comparing certain of the information

received from the applicant with certain of the information received from said at least

one database relevant to the applicant's identity (column 15, lines 38-45 and column 18,

line 65 –column 19, line 3);

     iv.     compare certain of the information received from the applicant and certain

of the information received from said at least one database relevant to the applicant's

ability and willingness to comply with the account requirements to determine in real time

and without human assistance if the applicant's requested account is approved (column 13, lines 31-36, column 15, lines 1-6, and column 15, lines 48-54); and

  v.  send a result to the remote applicant interface informing the applicant whether or not establishment of the requested account was approved (column 15, line 1-column 16, line 14).

  Regarding claim 2, Lockwood discloses the automatic account processing system of claim 1 wherein said data processing system is further adapted to open an account at a financial institution upon approval (column 12, lines 32-37 and column 16, lines 36-41). Lockwood teaches an automatic financial account processing terminal, an application which includes "the selection and opening of so-called 'self-directed investments' such as Individual Retirement Accounts".

  Regarding claim 3, Lockwood discloses the automatic account processing system of claim 2 wherein said data processing system is further adapted to effect a funds transfer to the account at the financial institution (column 21, lines 43-47 and column 22, lines 13-65 ("typically the customer has an established account number on file 247. The customer would enter a PIN (Personal Identification Number), credit card number 248 or other suitable payment data manually on the keypad").

  Regarding claim 4. Lockwood discloses the automatic account processing system of claim 3 wherein said remote interface and said data processing system cooperate to receive information from the applicant identifying a source for the funds to transfer to the account and an amount of funds to transfer (column 21, lines 43-47 and column 22, lines 13-65). Also, Lockwood discloses that the applicant identifies the

source for the funds to transfer (e.g., credit card number) and the amount of the funds

(e.g., price of good or service) via a remote terminal (column 21, lines 25-58).

Regarding independent claim 19, Lockwood teaches, The automatic credit

account processing system providing real time credit account processing without human

intervention for applicants located at a remote interface, said system comprising

(column 12, lines 38-41 and column 16, lines 15-18 and lines 36-41):

Lockwood teaches an automatic loan processing system for real-time approval of

loans and a loan is simply one species of credit account that is available to a consumer.

   a.   remote applicant interface adapted to (column 12, lines 38-41):

        i.    allow an applicant to remotely request a credit account (column 16,

lines 38-41); and

        ii.   receive data from the applicant (column 13, lines 27-31, column 13,

line 66-column 14, line 12 and lines 57-60, and Figure 8);

   b.   a data processing system with associated memory having underwriting

criteria bearing on the ability and willingness of an applicant to repay a credit obligation

based on prescribed data obtained from the applicant and information about the

applicant obtained from at least one database containing information about the

applicant relevant to the ability and willingness of the applicant to repay a credit

obligation (column 13, lines 27-36 and lines 59-65 and column 12, lines 61-65).

   c.   a communication network electronically coupling said data processing

system to said applicant interface (column 12, lines 38-41);

    d.    without human assistance, said data processing system adapted to (column 15, lines 58-64):

    i.    receive the data from the applicant received at the applicant interface (column 14, lines 49-51, column 13, lines 27-31, column 13, line 66 –column 14, line 12, and Figure 8);

    ii.    access the at least one database for information relevant to the applicant's ability and willingness to repay the credit obligation (column 13, lines 5-18 and lines 31-35 and column 15, lines 39-54);

    iii.    verify the applicant's identity by comparing certain of the information received from said at least one database relevant to the applicant's identity (column 15, lines 38-45 and column 18, line 65 –column 19, line 3);

    iv.    compare certain of the information received from the applicant and certain of the information received from said at least one database relevant to the applicant's ability and willingness to repay the credit obligation with said underwriting criteria (column 15, lines 38-45 and column 18, line 65 –column 19, line 3); '

    v.    based on the comparison of certain of the information received from the applicant and certain of the information received from said at least one database (col. 13, lines 31-36, col. 15, lines 1-6, and column 15, lines 48-54);

    relevant to the applicant's ability and willingness to repay the credit obligation with said underwriting criteria, determine in real time and without human assistance if the applicant's requested credit account is approved (column 13, lines 31-36, column 15, lines 1-6, and column 15, lines 48-54); and

vi.    send a result to the remote applicant interface informing the

applicant whether or not establishment of the requested credit account was approved

(column 15, line 1-column 16, line 14).

This independent claim is rejected for the similar rationale as above for claim 1.

Regarding claim 20, Lockwood teaches, The automatic credit account

processing system of claim 19 wherein said data processing system is further adapted

to open the credit account at a financial institution upon approval (col. 12, lines 32-37

and col. 16, lines 36-41 – an automatic financial account processing terminal which is

an application including the selection and opening of so-called 'self-directed

investments' such as Individual Retirement Accounts").

This dependent claim is rejected for the similar rationale as given above for

dependent claim 2.

Regarding claim 21, Lockwood teaches, The automatic credit account

processing system of claim 19 wherein said credit account is a credit card account (col.

7, line 64-col. 8, line 2).

Regarding claim 22, Lockwood teaches, The automatic credit account

processing system of claim 19 wherein said data processing system is further adapted

to provide a loan from the financial institution based on the credit account (column 12,

lines 38-41 and column 16, lines 15-18 and lines 36-41). Lockwood teaches an

automatic loan processing system for real-time approval of loans and a loan is simply

one species of credit account that is available to a consumer.

Regarding claim 23, Lockwood teaches, The automatic credit account processing system of claim 19 wherein said data processing system is further adapted to effect a funds transfer to an account at a financial institution from the approved credit account (col. 21, lines 43-47- a data processing system adapted to facilitate payments for products and services via funds transfer between established accounts and col. 22, lines 13-65 – the customer has an established account number on file 247 and the customer enters a PIN (Personal Identification Number), credit card number 248 or other payment data manually on the keypad).

Regarding independent claim 35, this independent claim is rejected for the similar rationale given above for claims 1 and 19.

Regarding independent claim 37, this independent claim is rejected for the similar rationale as given to independent claim 1, 19, and 35.

Regarding independent claim 39, this independent claim is rejected for the similar rationale as given to independent claims 1, 19, 35, and 37.

Regarding independent claim 42, this independent claim is rejected for the similar rationale as given above for claims 1, 19, 35, 37, and 39.

### *Claim Rejections - 35 USC § 103*

7.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

> Patentability shall not be negatived by the manner in which the invention was made.

8.      The factual inquiries set forth in Graham v. John Deere Co., 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

> 1.      Determining the scope and contents of the prior art.
> 2.      Ascertaining the differences between the prior art and the claims at issue.
> 3.      Resolving the level of ordinary skill in the pertinent art.
> 4.      Considering objective evidence present in the application indicating obviousness or nonobviousness.

9.      Claims 5-10, 24, 25, 36, 38, 40, and 43 are rejected under 35 U.S.C. 103(a) as

being unpatentable over Lockwood U.S. Patent 5,576,951 in view of Nishimura or

Nishimura Translation Japanese Laid-Open Patent Application No. H04-195256.

        Regarding claim 5,  Lockwood failed to teach, The automatic account processing

system of claim 3 wherein said remote interface is further configured to receive funds

from the applicant and said data processing system is adapted to receive information

relating to the funds received from the applicant at the remote interface and to transfer

to the account an amount corresponding to the funds received from the applicant.

Nishimura Translation pg. 8, line 40 -pg. 9, line 12. Nishimura teaches an applicant can

transfer funds to a newly opened account or existing account by depositing paper

currency or coins into a currency acceptor at the terminal and the terminal determining

the deposited amount and includes a message to the host computer which adds the

deposited amount to the account file. Lockwood does teach using a credit card at a

terminal that can be used for payment (col. 21, lines 46-55).   It would have been

obvious to a person having skill in the art at the time the invention was made to have a

remote terminal to receive the funds and to modify the system of Lockwood to include

Nishimura's remote interface configured to receive funds from the applicant and a data

processing system adapted to receive information relating to the funds received from

the applicant and to transfer an amount corresponding to the funds received because it

would allow the configured remote interface taught by Nishimura to be used at

Lockwood's terminal for processing the received funds (deposit) from an applicant and

the transfer of funds to the applicant's account.

Regarding claim 6,  Lockwood teaches, The automatic account processing

system of claim 5 wherein said remote interface may include one of the group

consisting of a cash acceptor, card reader, and scanner to receive the funds (col. 14,

lines 10-12 and fig. 8 – magnetic strip reader (122)).  Nishimura also teaches The

automatic account processing system of claim 5 wherein said remote interface may

include one of the group consisting of a cash acceptor, card reader, and scanner to

receive the funds (Nishimura Translation, pg. 5, lines 6-22, fig. 3 – a card

insertion/ejection opening (15), paper currency insertion/ejection opening (17), and a

coin insertion/ejection opening (18)).  Together Lockwood and Nishimura teach the

limitation of claim 6.

Regarding claim 7,  Lockwood failed to teach, The automatic account processing

system of claim 2 wherein said data processing system is further adapted to effect a

funds transfer to the account at the financial institution from another account.  The

Nishimura Translation teaches, The automatic account processing system of claim 2

wherein said data processing system is further adapted to effect a funds transfer to the

account at the financial institution from another account (pg. 9, lines 43-47). It would have been obvious to one having ordinary skill in the art at the time the invention was made to modify the system of Lockwood to include the data processing system being further adapted to effect a funds transfer to the account at the financial institution from another account because it would allow Lockwood to have a terminal that prompts the applicant to select the transfer destination (e.g., the established account) and the source (e.g., account encoded on the inserted magnetic strip) and for the system to perform the transfer of the funds from the account to the transfer destination (a data processing system adapted to effect a funds transfer to the account from another account).

Regarding claim 8, Lockwood failed to teach, The automatic account processing system of claim 1 further comprising a card issuing device located at said remote interface and adapted to configure a card based on applicant and account information wherein said data processing system is further adapted to effect issuance of a transaction card associated with the account from the card issuing device after approval of the requested account. Nishimura teaches, The automatic account processing system of claim 1 further comprising a card issuing device located at said remote interface and adapted to configure a card based on applicant and account information wherein said data processing system is further adapted to effect issuance of a transaction card associated with the account from the card issuing device after approval of the requested account (Nishimura Translation, pg. 4, lines 40-45, pg. 9, lines 14-24, and fig. 4 – card issuing (51) for issuing a magnetic card to the applicant upon

verification of establishment of an account from the host computer then the terminal will issue a magnetic card and display a message to the applicant). It would have been obvious to one having ordinary skill in the art at the time the invention was made to modify the system of Lockwood to include the teaching of Nishimura to have a card issuing device located at a remote interface and adapted to configure a card based on applicant and account information wherein the data processing system is further adapted to effect issuance of a transaction card associated with the account from the card issuing device after approval of the requested account because such a modification would allow Lockwood to have a card issuing device for issuing a card upon verification of the establishment of an account and completing a transaction.

Regarding claim 9, Lockwood teaches, The automatic account processing system of claim 1 wherein said criteria bearing on the ability and willingness of the applicant to comply with account requirements is weighted and said data processing system (col. 14, lines 57-60) is further adapted to:

a.      provide a score based on the comparison of certain of the information received from the applicant and certain of the information received from said at least one database relevant to the applicant's ability and willingness to comply with the account requirements (col. 13, lines 30-36), and

b.      determine whether or not to approve the account request based on the score (col. 15, lines 50-58).

Regarding claim 10, Lockwood teaches, The automatic account processing system of claim 1 wherein said account is one of the group consisting of a checking

account, savings account, retirement account, interest bearing, non-interest bearing

account, and credit account (col. 16, lines 36-41).

Regarding claim 24, this dependent claim is rejected for the similar rationale as

given above for claim 8.

Regarding claim 25, this dependent claim is rejected for the similar rationale as

given above for claim 9.

Regarding claim 36, this dependent claim is rejected for the similar rationale as

given above for claim 9.

Regarding claim 38, this dependent claim is rejected for the similar rationale as

given above for claim 9.

Regarding claim 40, this dependent claim is rejected for the similar rationale as

given above for claim 9.

Regarding claim 43, this dependent claim is rejected for the similar rationale as

given above for claim 9.


10.     Claims 11-18, 26-29, 31-34, 41, and 44-111 are rejected under 35 U.S.C. 103(a)

as being unpatentable over (US 5,576,951) Lockwood  and (Japanese Laid-Open

Patent Application No. Ho4-195256) Nishimura or Nishimura Translation, Hereafter

Nishimura in view of (US 5,475,403) Havlovick et al, hereafter Havlovick.


Regarding claim 11, Lockwood teaches, The automatic account processing

system of claim 1 further comprising a printer located at the remote interface for printing

checks, said data processing system further adapted to cooperate with said remote

interface to effect printing a negotiable instrument associated with the account (column

14, lines 12-14 –a remote terminal with a printer and column 7, lines 29-32 –

automatically dispensing information, goods, and services ... from travel, financial, and

other service providers). Nishimura teaches, The automatic account processing system

of claim 1 further comprising a printer located at the remote interface for printing checks,

said data processing system further adapted to cooperate with said remote interface to

effect printing a negotiable instrument associated with the account (page 8, lines 17-20

–establishing a checking account, page 6, lines 46-48 – processing portions 54

comprises a conveyor device 54a linked to ... a printing head 54b, and page 7, lines 18-

20 –"the account number and other data are written to the bankbook 16 by the printing

head 54b and the bankbook is ejected from the bankbook insertion/ejection opening

14"). Nishimura does not expressly teach using the terminal printer to print a negotiable

instrument associated with the account. Havlovick teaches, a device for "printing

checks with all of the relevant information, storing the entered information, and

reconciling the transactional information with the data from a financial institution (column

3, line 56-column 4, line 2). It would have been obvious to one having ordinary skill in

the art at the time the invention was made to have a printer located at the remote

interface for printing checks, said data processing system further adapted to cooperate

with said remote interface to effect printing a negotiable instrument associated with the

account and to incorporate in Lockwood's terminal and Nishmura's terminal with

Havlovick 's printing device because such an incorporation would allow Lockwood and

Nishmura to have a means for the electronic printing of a negotiable instrument associated with a financial institution account.

Regarding claim 12, Lockwood and Nishimura failed to teach, The automatic account processing system of claim 11 wherein said negotiable instrument is a blank check. Havlovick teaches, wherein said negotiable instrument is a blank check (column 16, lines 1-36). It would have been obvious to one having ordinary skill in the art at the time the invention was made to have the negotiable instrument to be a blank check and to incorporate the teaching of Havlovick into the system of Lockwood and Nishimura because such an incorporation would allow Lockwood and Nishimura to have a device for printing a blank check to use later as a negotiable instrument for the payment of goods and/or services.

Regarding claim 13, Lockwood, Nishimura, and Havlovick failed to teach, The automatic account processing system of claim 11 wherein said negotiable instrument is a cashier's check having a select value. However, Havlovick does teach, an electronic checkbook device with multiple function keys including a "check number, to, amount, memo" and the checkbook performs an operation when the associated key is pressed. Havlovick did not explicitly define the check as being a cashier's check. It would have been obvious to one having ordinary skill in the art at the time the invention was made to have the negotiable instrument to be a cashier's check having a select value in view of Lockwood's remote terminal having a printer, Nishimura's terminal printer for printing a negotiable instrument and Havlovick's electronic checkbook printing device capable of printing the amount on a check because such a modification would allow Lockwood,

Nishimura, and Havlovick to have a negotiable instrument where a payee can receive

upon demand the amount (value) printed on the check.

Regarding claim 14, Lockwood teaches, The automatic account processing

system of claim 1 further comprising a printer located at the remote interface for printing

checks, said data processing system further adapted to cooperate with said remote

interface to effect printing a negotiable instrument having an assigned value to be

drafted from the account (column 14, lines 12-14 –a remote terminal with a printer and

column 7, lines 29-32 –automatically dispensing information, goods, and services ...

from travel, financial, and other service providers).  Nishimura teaches, The automatic

account processing system of claim 1 further comprising a printer located at the remote

interface for printing checks, said data processing system further adapted to cooperate

with said remote interface to effect printing a negotiable instrument having an assigned

value to be drafted from the account, page 6, lines 46-48 –processing portions 54

comprises a conveyor device 54a linked to ... a printing head 54b, and page 7, lines 18-

20 –"the account number and other data are written to the bankbook 16 by the printing

head 54b and the bankbook is ejected from the bankbook insertion/ejection opening

14").  Nishimura does not expressly teach using the terminal printer to print a negotiable

instrument associated with the account.  Havlovick teaches, a device for "printing

checks with all of the relevant information, storing the entered information, and

reconciling the transactional information with the data from a financial institution (column

3, line 56 –column 4, line 2).  It would have been obvious to one having ordinary skill in

the art at the time the invention was made to have a printer located at the remote

interface for printing checks, said data processing system further adapted to cooperate with said remote interface to effect printing a negotiable instrument having an assigned value to be drafted from the account and to incorporate in Lockwood's terminal and Nishimura's terminal with Havlovick's printing device because such an incorporation would allow Lockwood and Nishimura to have a means for the electronic printing of a negotiable instrument associated with a selected value to be drafted from a financial institution account.

Regarding claim 15, Lockwood failed to teach, The automatic account processing system of claim 1 wherein said data processing system is further adapted to effect ordering negotiable instruments associated with the account. Nishimura teaches, wherein said data processing system is further adapted to effect ordering negotiable instruments associated with the account (page 8, lines 17-20). Havlovick teaches an electronic checkbook device that performs an operation when the associated function key is pressed which is capable of printing negotiable instruments associated with an account when they are ordered. It would have been obvious to one having ordinary skill in the art at the time the invention was made to have a data processing system further adapted to effect ordering negotiable instruments associated with the account and to incorporate in Lockwood and Havlovick Nishimura's ability of an applicant to establish a checking account and an issuance of a bankbook associated with the established account because such an incorporation would allow Lockwood and Havlovick to have the ability of an applicant to order checks or other negotiable instruments associated with an account.

Regarding claim 16, Lockwood teaches, The automatic account processing system of claim 1 wherein said remote interface is a public kiosk (column 12, lines 38-41 and fig. 7- "a plurality of self-service terminals at various remote sites" each of which include a data processor for use in contracting with an applicant and communicating with the central processor of a financial institution).

Regarding claim 17, Lockwood and Nishimura failed to teach, The automatic account processing system of claim 1 further comprising an electronic signature pad located at the remote interface and adapted to electronically receive the applicant's signature to indicate acceptance of a financial transaction. Havlovick teaches, an electronic signature pad located at the remote interface and adapted to electronically receive the applicant's signature to indicate acceptance of a financial transaction (column 4, lines 50-55 and fig. 1 –an electronic signature pad (25) which may allow a pen based input of a signature that is read by x-y mapping and stored for printing a check). It would have been obvious to one having ordinary skill in the art at the time the invention was made to have an electronic signature pad located at the remote interface and adapted to electronically receive the applicant's signature to indicate acceptance of a financial transaction and to incorporate in Lockwood and Nishimura because such an incorporation would allow Lockwood and Nishimura to have the ability to have a pen-based input signature on a pad that can be pressure sensitive, resistive, optical, or use other script sensing technologies for indicating the acceptance of a financial transaction.

Regarding claim 18, Lockwood teaches, The automatic account processing system of claim 1 wherein said remote interface includes and input device selected from

the group consisting of touch screens, input keys, keypads, card reader, scanner, and

signature pad (column 13, line 66-column 14, line 12 – a remote terminal with a touch

pad, a keyboard, and a magnetic strip reader and an account number or an

identification by means of a credit card"). Nishimura teaches, other input devices, such

as a keyboard, mouse, scanner, or similar device may be employed (page 10, lines 11-

13). Havlovick teaches a keyboard with pen input (24) and a signature pad (25)

(column 4, lines 50-58). Lockwood, Nishimura, and Havlovick together teach the

limitation of claim 18.

Regarding claim 26, this dependent claim is rejected for the similar rationale as

given above for claim 11.

Regarding claim 27, this dependent claim is rejected for the similar rationale as

given above for claim 12.

Regarding claim 28, this dependent claim is rejected for the similar rationale as

given above for claim 13.

Regarding claim 29, this dependent claim is rejected for the similar rationale as

given above for claim 14.

Regarding claim 30, this dependent claim is rejected for the similar rationale as

given above for claim 16.

Regarding claim 31, this dependent claim is rejected for the similar rationale as

given above for claim 17.

Regarding claim 32, this dependent claim is rejected for the similar rationale as

given above for claim 18.

Regarding claim 33, Lockwood teaches, The automatic credit account processing system of claim 23 wherein said remote interface is further configured to receive funds from the applicant and said data processing system is adapted to receive information relating to the funds received from the applicant at the remote interface and to transfer to the credit account an amount corresponding to the funds received from the applicant (column 21, lines 43-47 and lines 25-58 and column 22, lines 13-65).

Regarding claim 34, Lockwood teaches, The automatic credit account processing system of claim 33 wherein said remote interface may include one of the group consisting of a cash acceptor, card reader, and scanner to receive the funds (column 14, lines 10-12 –a magnetic strip reader (122) may be provided so the applicant can give an account number or an identification by means of a credit card. Lockwood further teaches, a remote interface may include one of the group consisting of a cash acceptor, a card reader, and a scanner.

Regarding claim 41, Lockwood failed to teach, the automatic transaction card issuing system of claim 40 wherein said transaction card is one of the group consisting of smart, debit, and credit cards. Nishimura teaches, wherein said transaction card is one of the group consisting of smart, debit, and credit cards (page 9, lines 14-24, page 4, lines 40-44, and fig. 4). It would have been obvious to one having ordinary skill in the art at the time the invention was made to modify the system of Lockwood to include the teaching of Nishimura to have the transaction card to be one of the group consisting of smart, debit, and credit cards because such a modification would allow Lockwood to

have a transaction card to consist of smart, debit, and credit cards for the establishment of an account and completing a transaction.

Regarding claim 44, Lockwood teaches, The automatic credit account processing system of claim 39 wherein said processing system is further adapted to effect an increase in credit for the existing account if the increase in credit is approved (column 16, lines 1-14). Lockwood does not expressly teach allowing an applicant to request an increase for an existing account, it would have been obvious to one having ordinary skill in the art at the time the invention was made to incorporate in Lockwood entering different amounts via the touch and because such an incorporation would allow Lockwood to have a system capable of performing an increase in credit for an existing account when the increase for credit is approved by Lockwood's automatic financial account processing system.

As per claims 45, 59, 73, and 87 Lockwood teaches, The automatic account processing system of claim 1, wherein said data processing system (column 21, lines 43-47) is further adapted to:

vi.    send documentation required by regulation regarding the account to the applicant at the remote interface (column 14, lines 49-51, column 13, lines 2-31 and column 14, lines 1- 12, and fig. 8); and

vii.    receive acknowledgement of the documentation required by regulation by the applicant at the remote interface (column 13, lines 31-44). Lockwood did not expressly disclose that the sent documentation was required by regulation or the acknowledgement of the documentation that was received was required by regulation.

However, Lockwood does teach the credit rating service is an institution ... and makes

the information available ... the confidentiality is guaranteed by the use of identifying

codes which must be provide with each request. The information is stored in various

terminals and can be reviewed by an applicant in need of a loan". It would have been

obvious to one having ordinary skill in the art at the time the invention was made to

incorporate sending documentation required by regulation regarding the account to the

applicant at the remote interface and to receive acknowledgement of the documentation

required by regulation by the applicant at the remote interface because such an

incorporation in Lockwood's system would allow Lockwood to provide the lender the

ability to meet the required internal requirements and regulatory requirements by the

Federal Reserve Board to a loan applicant regarding the terms of the transaction and

the reasons for the denial of credit (a loan).

     Regarding claims 46, 60, 74, and 88, Lockwood teaches, The automatic account

processing system of claim 45 wherein said data processing system sends the

documentation required by regulation regarding the account to the applicant at the

remote interface after said data processing system receives the data from the applicant

received at the remote interface (column 15, line 14- column 16, line 6).

     Regarding claims 47, 61, 75, and 89, Lockwood teaches, The automatic account

processing system of claim 45 wherein said data processing system sends the

documentation required by regulation regarding the account to the applicant at the

remote interface before said data processing system sends a result to the remote

interface informing the applicant whether or not establishment of the requested account

was approved (column 15, line 33- column 16, line 4)

Regarding claims 48, 62, 76, and 90, Lockwood teaches, The automatic account

processing system of claim 45 wherein the documentation required by regulation is a

consumer lending law (column 15, lines 17-20). Lockwood did not expressly disclose

the regulation is a consumer lending law. However, Lockwood did teach "... legal

responsibilities of obtaining a loan" which is considered to be required by regulation as a

consumer lending law when applying for credit.

Regarding claims 49, 63, 77, and 91, Lockwood, Nishimura, and Havlovick failed

to teach, The automatic account processing system of claim 45 wherein the

documentation required by regulation is comprised from the group consisting of

regulatory requirements, the Federal Reserve Board Regulations B and Z, Title I of the

Consumer Credit Protection Act, and the Federal Truth In Lending Act. Official notice is

taken that these regulatory requirements are well known in the art of consumer lending.

Therefore, it would have been obvious to one having ordinary skill in the art of the

Patent owner's invention to modify the teachings of Lockwood, Nishimura, and

Havlovick to include the regulatory requirements because these requirements are by

law required to be given to a consumer as to why the credit was denied. Regulation Z is

known as the Federal Reserve Board's Regulation B is used to obtain monitoring

information under 12 CFR 202.13 of the Federal Reserve Board's Equal Credit

Opportunity ("regulation is to promote the availability of credit to all creditworthy

applicants without regard to race, color, religion, national origin, sex, marital status, or

age, and the Truth in Lending Act, Title I of the Consumer Credit Protection Act bests

the Commission with the responsibility for assuring compliance by non-depository

entities with a variety of statutory provisions. The Act requires all creditors who deal

with consumers to make certain written disclosures concerning finance charges and

related aspects of credit transactions.

Regarding claims 50, 64, 78, and 92, Lockwood teaches, The automatic

processing system of claim 45 wherein the documentation required by regulation

comprises terms of the account (column 15, lines 11-20).

Regarding claims 51, 65, 79, and 93, Lockwood and Nirshimura failed to teach,

The automatic account processing system of claim 45 wherein the acknowledgement of

the documentation required by regulation by the applicant at the remote interface is an

electronic signature. Havlovick teaches, wherein the acknowledgement of the

documentation required by regulation by the applicant at the remote interface is an

electronic signature (column 4, lines 50-55 and fig. 1 – an electronic signature page (25)

which may allow a pen based input of a signature that is read by x-y mapping. It would

have been obvious to one having ordinary skill in the art at the time of Patent owner's

invention to modify the teachings of Lockwood and Nishimura and include the

acknowledgement of the documentation to be required by regulation by the applicant at

the remote interface to be an electronic signature because it provides a more efficient

means of authenticating a customer's (applicant's) signature on documents.

Regarding claims 52, 66, 80, and 94, Lockwood and Nishimura failed to teach,

The automatic account processing system of claim 51 wherein the electronic signature