# Exhibit 5
# Part 27
# To Third Declaration of
# Joseph N. Hosteny

in the '007 patent than any prior art applied or discussed by the Examiner during prosecution of the '007 patent. Consequently, a reexamination request may be properly based on any of the above cited references alone or in combination.

As discussed in detail below, the above references either alone or in combination, disclose each and every feature of the '007 patent, and render all claims of the '007 patent unpatentable for obviousness under 35 U.S.C. §103. Thus, a substantial new question of patentability exists.

III.     Related Pending Proceedings

As discussed above, a request for reexamination was filed on April 27, 2000, for U.S. Patent No. 5,940,811 (the "'811 patent"). A Final Office Action rejecting those claims was issued on February 18, 2004. There may be further proceedings in that matter. In addition, the Examiner should also be aware that the '007 patent is the subject of three patent litigations presently pending in two district courts.[7] The Third Party Requester here is a party to one of those litigations. The Requester expects that the litigation will be stayed during the reexamination.[8]

IV.     Explanation of pertinence and manner of applying cited prior art[9] to every claim for which reexamination is requested

A substantial new question of the patentability of claims 1-44 exists, as discussed in detail below.

   **A.     Independent Claim 1 of the '007 Patent is Obvious under 35 U.S.C. §103 Over Lockwood and/or the Combination of Nishimura and Lockwood.**

Claim 1, reproduced below, is directed at an automatic account processing system for establishing a financial account without human intervention, and includes a remote interface and a data processing system. In particular, a chart of claim 1 is provided below, which shows the claim elements on the left-hand side of the table and the support from Lockwood and Nishimura for each of the recited elements on the right hand side of the table.

---

[7]     The cases are: *decisioning.com v. Federated Dept. Stores, et al.,* No. 3:03-01924-22 (D. S.C.); *decisioning.com v. Ameritrade Holding Corp., et al.,* No. 3:03-2837-22 (D. S.C.); and *Household Int'l Inc. v. decisioning.com,* No. 1:02CV01601 (D. Del).

[8]     The patent owner has consented, subject to the court's approval, to a stay of the District of South Carolina actions pending the outcome of the reexamination of the '007 patent.

[9]     The 3rd Party Requester submits that the claims of the '007 patent are only entitled to a priority date of October 24, 1994 because the disclosure relating to establishing an account does not find support in the specification filed on August 27, 1993.

| Claim 1 | Disclosure in Nishimura and Lockwood |
|---|---|
| An automatic account processing system for establishing a financial account without human intervention for applicants located at a remote interface, said system comprising: | Nishimura Translation; pg. 2, lines 40-41; pg. 4, lines 40-42; pg. 10, lines 36-38<br><br>Lockwood; col. 12, lines 38-41; col. 16, lines 15-18 and lines 36-41 |
| a. a remote interface adapted to: | Nishimura Translation; pg. 4, lines 40-42; Fig. 2<br><br>Lockwood; col. 12, lines 38-41 |
|    i.   allow an applicant to remotely request an account; and | Nishimura Translation; pg. 8, lines 1-24; Fig. 7<br><br>Lockwood; col. 16, lines 38-41 |
|    ii.   receive data from an applicant; | Nishimura Translation; pg. 5, lines 15-22; Fig. 3; pg. 10, lines 11-13<br><br>Lockwood; col. 13, lines 27-31; col. 13, line 66 - col. 14, line 12; col. 14, lines 57-60; Fig. 8 |
| b. a data processing system with associated memory having establishment criteria[10] bearing on the ability and willingness of the applicant to comply with account requirements for establishing and holding an account at a financial institution based on prescribed data obtained from the applicant and information about the applicant obtained from at least one database containing information about the applicant relevant to the ability and willingness of the applicant to comply with the account requirements; | Nishimura Translation; pg. 7, lines 43-46 and pg. 9, lines 7-12; Fig. 2<br><br>Lockwood, col. 13, lines 27-36 and lines 59-65; col. 12, lines 61-65 |
| c. a communication network electronically coupling said data processing system to said applicant interface; | Nishimura Translation; pg. 7, lines 40-43; Fig. 4<br><br>Lockwood, col. 12, lines 38-41 |
| d. without human assistance, said data processing system adapted to: | Nishimura Translation; pg. 2, lines 40-41; pg. 10, lines 36-38<br><br>Lockwood, col. 15, lines 58-64 |
|    i.   receive the data from the applicant received at the remote interface; | Nishimura Translation; pg. 8, lines 5-26; pg. 9, lines 3-7<br><br>Lockwood, col. 14, lines 49-51; col. 13, lines 27-31; col. 13, line 66 - col. 14, line 12; Fig. 8 |
|    ii.   access the at least one database for information relevant to the applicant's identity and for the information relevant to the applicant's ability and willingness to comply with the account requirements; | Lockwood, col. 13, lines 5-18 and lines 31-35; col. 15, lines 39-54<br><br>Nishimura Translation, pg. 9, lines 7-12 |

---

[10]    The term "establishment criteria" is not supported by the specification of the '007 patent.

| | | |
|---|---|---|
| iii. | verify the applicant's identity by comparing certain of the information received from the applicant with certain of the information received from said at least one database relevant to the applicant's identity; | Lockwood; col. 15, lines 38-45 and col. 18, line 65 - col. 19, line 3 <br><br> Nishimura Translation, pg. 8, lines 25-35 |
| iv. | compare certain of the information received from the applicant and certain of the information received from said at least one database relevant to the applicant's ability and willingness to comply with the account requirements to determine in real time and without human assistance if the applicant's requested account is approved; and | Lockwood; col. 13, lines 31-36, col. 15, lines 1-6, and col. 15, lines 48-54 <br><br> Nishimura Translation, pg. 9, lines 7-12 |
| v. | send a result to the remote applicant interface informing the applicant whether or not establishment of the requested account was approved. | Nishimura Translation; pg. 9, lines 11-17 <br><br> Lockwood; col. 15, line 1 - col. 16, line 14 |

Claim 1 is obvious in view of Lockwood, as described below. Lockwood issued from U.S. Patent Application 210,301 filed on March 16, 1994 and claims continuation-in-part status to U.S. Patent Application 822,115, filed January 24, 1986, continuation-in-part status to U.S. Patent Application 07/396,283, filed August 21, 1989, and to U.S. Patent Application 08/096,610, filed July 23, 1993 (which is a continuation of U.S. Patent Application 07/752,026, filed August 29, 1991), and continuation status to the combination of U.S. Patent Application No. 08/116,654, filed September 3, 1993 and U.S. Patent Application No. 08/096,610, filed July 23, 1993. Thus, Lockwood is prior art under §102(e).[11]

Claim 1 is further obvious in view of the combination of Nishimura and Lockwood, as described below. Nishimura has a publication date of July 15, 1992 which is more than one year prior to the earliest possible priority date of the '007 patent. Thus, Nishimura is prior art under 35 U.S.C. § 102(b).

*1.*      ***Both Nishimura and Lockwood disclose an automatic account processing system for establishing a financial account without human intervention for applicants located at a remote interface.***

Nishimura discloses an account establishment system "capable of automatically establishing an account" without human intervention. (Nishimura Translation, p. 2, lines 40-41 and p. 10, lines 36-38) ("hence, even if employees for account establishment are not present, a new account can be established by customer operation"). As can be seen below in Figure 2 of Nishimura, Nishimura discloses a host computer 6

---

[11]    In the '721 reexamination proceeding, the Patentee relies on disclosures in an earlier application (07/752,026) to which Lockwood claims continuation-in-part status to define the scope of the Lockwood invention.

and a remote terminal 4 for interfacing with an applicant. (Nishimura Translation, p. 4, lines 40-42; *See also* Figure 3).

## Fig. 2



Lockwood teaches an automatic financial services accounts processing terminal system, an application of which includes "the selection and purchase of stocks and other securities, the selection and opening of so-called 'self-directed investments' such as *Individual Retirement Accounts*, and other complex transactions which normally require a great deal of time and attention on the part of the officers of an institution." (Lockwood, col. 16, lines 36-41; *See also*, col. 16, lines 15-18)(emphasis added). The '007 patent teaches that IRA's are one of the types of accounts that can be established. ('007 patent, col. 10, line 2). As would be well known to professionals in the financial services industry, Individual Retirement Accounts (IRAs) are financial accounts in which a customer can hold other investments, including equities, bonds, and mutual funds. IRAs are subject to various restrictions as to the type of investments that can be made therein and the timing of the deposit and withdrawal of funds, but benefit from advantageous tax treatment in exchange. One limitation on IRAs is that the institution issuing the account can almost never lend money to the account. Like the '007 patent, Lockwood teaches many of the claim limitations with reference to an embodiment dealing only with processing a loan request. By operation of the above referenced language of Lockwood, Lockwood teaches a system that can be used for the establishment of a financial account. As can be seen below in Figure 7 of Lockwood, Lockwood discloses a plurality of remote interfaces (i.e., terminals 105) for interfacing with an applicant. (Lockwood, col. 12, lines 38-41). Finally, Lockwood discloses that the "entire decision whether or not to grant the loan is performed automatically and onsite by the terminal 105 *without intervention whatsoever from any of the financial institution personnel.*" (Lockwood, col. 15, lines 58-64)(emphasis

---

These statements were deleted from the Lockwood specification. Third Party Requester submits that the disclosure of Lockwood is what must be examined, and not Patentee's interpretation of an earlier application.

added). Thus, Lockwood discloses an automatic account processing system for establishing a financial account without human intervention for applicants located at a remote interface.



**Figure 7**

2. *Both Nishimura and Lockwood disclose a remote interface[12] adapted to allow an applicant to remotely request an account and receive data from an applicant.*

Lockwood discloses a system that links "a financial institution 101, a plurality of self-service terminals [105] at various remote sites 102 and a credit rating service 103." (Lockwood, col. 12, lines 38-40; *See also*, Fig. 7). As discussed above, Lockwood teaches an automatic financial account processing terminal system, an application of which includes "the selection and purchase of stocks and other securities, the selection and opening of so-called 'self-directed investments' such as Individual Retirement Accounts." (Lockwood, col. 16, lines 36-41). In Lockwood, an applicant enters data via various user interface mechanisms provided at the self-service terminal including a touch pad, keyboard, or magnetic strip reader. (Lockwood, col. 13, lines 27-31 and col. 13, line 66 - col. 14, line 12; *See also*, Fig. 8).

Nishimura discloses a remote terminal (see (4) in Figure 2) that has several modes of operation, including account establishment transaction mode. (Nishimura Translation, pg. 8, lines 1-4). An applicant requests establishment of an account by selecting the "open account" key displayed on the terminal. (Nishimura Translation, pg. 8, lines 5-17; *See also*, Fig. 7). The terminal includes various mechanisms for

---

[12]    The specification of the '007 patent discloses the remote interface as a kiosk having a card reader, keyboard, monitor, etc. ('007 patent, col. 9, lines 4-60).

receiving information from the applicant. (Nishimura Translation, pg. 8, lines 15-24 and pg. 10, lines 11-13; Fig. 3). The information includes, but is not limited to, account type, applicant name, and password. (Nishimura Translation, pg. 8, lines 25-26).

> **3. Lockwood discloses a data processing system with associated memory having establishment criteria bearing on the ability and willingness of the applicant to comply with account requirements for establishing and holding an account at a financial institution based on prescribed data obtained from the applicant and information about the applicant obtained from at least one database containing information about the applicant relevant to the ability and willingness of the applicant to comply with the account requirements.**

Lockwood discloses a distributed data processing system including a plurality of terminals, each terminal having a data processor 113 and an associated memory 117, and a centralized processor 104 having an associated memory 108. (Lockwood, Figs. 7 and 8). Memory 108 in the centralized processor includes data related/to various loans available to customers from the institution including loan rates and repayment schedules. (Lockwood, col. 12, lines 61-65). Memory 117 in the terminal holds data obtained from memory 108 as well as "some of the operating routines necessary for the operations of the terminal." (Lockwood, col. 13, lines 59-65). During the application process, the terminal (via the fictitious loan officer) asks a series of questions "corresponding to questions that would be found on a standard loan application form." (Lockwood, col. 14, lines 57-60). This and other information provided by the applicant is supplemented by the financial profile obtained from a credit reporting service. (Lockwood, col. 13, lines 30-34). The terminal then computes "a debt ratio or other criterion devised by the financial institution to access [sic] the credit worthiness of the applicant. The debt ratio is the ratio of the applicant's current expenses to his current income. Other parameters such as debt to equity ratio or fixed assets to debt may be computed by the terminal data processor 113 and used in determining the qualifications of the applicant" (Lockwood, col. 15, lines 50-58).

Thus, Lockwood describes the terminal (through operation routines stored in memory 117) using multiple criteria bearing on the ability and willingness of the applicant to comply with account requirements (i.e., debt ratio, debt to equity ratio, fixed assets to debt, and "other criterion devised by the financial institution") based on information from the applicant and information from a database (i.e., credit reporting service).

Nishimura also discloses a data processing system. (Nishimura Translation, Fig. 2). The host computer 6 provides, "for each customer, a file having records with bank numbers, branch numbers, [account] types, account numbers, deposit balances, and similar." (Nishimura Translation, pg. 7, lines 43-46). In Nishimura, "when account establishment is requested, the host computer 6 judges whether there is an

-12-

impediment to account establishment." (Nishimura Translation, pg. 9, lines 7-12). Memory is an inherent component in a computer system. One having ordinary skill in the art would immediately appreciate that the memory associated with the host computer 6 must store establishment criteria in order to adequately "judge whether there is an impediment to account establishment." Furthermore, based on the teachings and suggestions of both Nishimura and Lockwood, it would have been obvious to one having ordinary skill in the art to base the judgment in Nishimura at least partially on information obtained about the applicant from a database, such as the credit rating service database disclosed in Lockwood.

### 4. Nishimura discloses a communication network electronically coupling said data processing system to said applicant interface.

As can be seen in Figure 4 of Nishimura reproduced below, Nishimura discloses a transmission line 66 coupling the terminal 4 to the host computer 6. The terminal 4 exchanges electronic messages "with the host computer 6 via the transmission line 66." (Nishimura Translation, pg. 7, lines 40-42). Although Nishimura discloses a transmission line, it would have been immediately obvious to a person of ordinary skill in the art to use a communications network in place of the transmission line, particularly given the almost identical disclosure in the '007 patent.

Lockwood discloses a system that links "a financial institution 101, a plurality of self-service terminals [105] at various remote sites 102 and a credit rating service 103 by telephone lines or other means of telecommunication." (Lockwood, col. 12, lines 38-41). As discussed above, the processing in Lockwood is performed at the terminal instead of at a remote data processing system. Lockwood does disclose a central processor 104 remote from the terminal 105. It would have been obvious to a person skilled in the art to design the system of Lockwood to have the processing centralized in central processor 104.

Furthermore, claim 1 of the '007 patent includes the limitation of "a communications network electronically coupling said data processing system to said applicant interface."[13] However, the '007 specification does not describe a communications network connecting the kiosk to the transaction processor nor does the specification include any description of the mechanism for coupling the kiosk to the data processing system. Therefore, it appears that the '007 patent relied upon inherent knowledge that two devices can be coupled via a communications network to supply the description of the communications network missing from the specification.

---

[13]     The claim limitation refers to "said applicant interface." However, the claim contains no earlier recitation of an applicant interface.

**Fig. 4**



5. **Both Nishimura and Lockwood disclose without human assistance, a data processing system adapted to receive the data from the applicant received at the remote interface.**

Nishimura discloses an account establishment system "capable of automatically establishing an account" without human intervention. (Nishimura Translation, p. 2, lines 40-41 and p. 10, lines 36-38)("hence, even if employees for account establishment are not present, a new account can be established by customer operation"). As described above, the applicant enters various information through one or more interfaces at the terminal. (Nishimura Translation, pg. 8, lines 5-26). The information received from the user is transmitted to the host computer. (Nishimura Translation, pg. 9, lines 3-7).

In Lockwood, "the entire decision whether or not to grant the loan is performed automatically and onsite by the terminal 105 *without intervention whatsoever from any of the financial institution personnel.*" (Lockwood, col. 15, lines 58-64)(emphasis added). An applicant enters information via various user interface mechanisms provided at the terminal including a touch pad, keyboard, or magnetic strip reader. (Lockwood, col. 13, lines 27-31 and col. 13, line 66 - col. 14, line 12; Fig. 8). The information includes, but is not limited to, information that would be obtained from a standard loan application form. (Lockwood, col. 14, lines 57-



60). After the information is accepted, the information is communicated to and processed by the terminal data processor. (Lockwood, col. 14, lines 49-51).

6. **Lockwood discloses a data processing system adapted to access the at least one database for information relevant to the applicant's identity and for the information relevant to the applicant's ability and willingness to comply with the account requirements.**

In Lockwood, the terminal 105 automatically requests a financial profile from a credit rating service. (Lockwood, col. 13, lines 31-33). The credit rating service of Lockwood is an institution "which maintains financial files of consumers based on past and current loan payment obligations, credit card uses and balance sheets provided as part of loan applications, and makes that information available to a membership of merchants and financial institutions who need to access the credit worthiness of a particular customer." (Lockwood, col. 13, lines 5-12). Thus, the financial files are relevant to both the identity of the applicant and applicant's ability and willingness to comply with account requirements. The terminal accesses the credit rating service through "telephone lines or other communications networks." (Lockwood, col. 13, lines 15-18).

In Nishimura, "when account establishment is requested, the host computer 6 judges whether there is an impediment to account establishment." (Nishimura Translation, pg. 9, lines 7-12). Nishimura does not explicitly disclose a data processing system adapted to access the at least one database for information related to the applicant. However, based on the teachings and suggestions of both Nishimura and Lockwood, it would have been obvious to one having ordinary skill in the art to base the judgment in Nishimura at least partially on information obtained about the applicant from a database, such as the credit rating service database disclosed in Lockwood.

7. **Lockwood discloses a data processing system adapted to verify the applicant's identity by comparing certain of the information received from the applicant with certain of the information received from said at least one database relevant to the applicant's identity.**

In Lockwood, the applicant is asked to provide "a password or other identification" that is used to allow access to the applicant's file at the credit rating service. (Lockwood, col. 15, lines 38-41). This information can be entered by means of an "identification card" run through the magnetic strip reader or entered manually at the terminal. (Lockwood, col. 15, lines 41-45). The matching of this information to a financial profile at the credit rating service is itself a verification of the applicant's identity. Moreover, such matching must occur to obtain the applicant's profile. Furthermore, with respect to the embodiment of Figure 12, "if a customer decides to order a service or product he would then enter his purchase and payment by

either an account identification or credit card number on the telephone keypad 276, which would be authorized upon verification of the customer's credit worthiness by a credit information service or the central data processing center." (Lockwood, col. 18, line 65 – col. 19, line 3).

In Nishimura, a customer is required to enter a name and a password. (Nishimura Translation, pg. 8, lines 25-35). One skilled in the art would immediately appreciate that the purpose of entering a name and password is to permit the host computer to compare the information entered by an applicant to some "information relevant to the applicant's identity" (e.g., a list of authorized names and passwords) before proceeding with a transaction.

> **8. Lockwood discloses a data processing system adapted to compare certain of the information received from the applicant and certain of the information received from said at least one database relevant to the applicant's ability and willingness to comply with the account requirements to determine in real time and without human assistance if the applicant's requested account is approved.**

In Lockwood, the "information provided by the applicant is supplemented by a financial profile obtained directly from the credit rating service after being automatically requested by the terminal 105. The terminal 105 is programmed to compute the credit worthiness of the applicant and to approve or disapprove the loan." (Lockwood, col. 13, lines 31-36). The processing performed by the data processor may involve analyzing certain key answers received from the applicant to identify any element or data that would automatically disqualify the applicant. (Lockwood, col. 15, lines 1-6). The terminal also analyzes the applicant's received financial profile in order to compute "a debt ratio or other criterion devised by the financial institution to access [sic] the credit worthiness of the applicant." (Lockwood, col. 15, lines 48-54). Thus, the data processing system of Lockwood compares information from the applicant and information for a database to determine whether to approve the loan account.

In Nishimura, "when account establishment is requested, the host computer 6 judges whether there is an impediment to account establishment, and if there is no impediment, creates a new file having a bank number, branch number, [account] type, account number, name, deposit amount, and other records." (Nishimura Translation, pg. 9, lines 7-12). Nishimura does not explicitly disclose comparing information recited from the applicant and information received from a database to determine if applicant's requested account is approved. However, based on the teachings and suggestions of both Nishimura and Lockwood, it would have been obvious to one having ordinary skill in the art to base the judgment in Nishimura at least partially on a comparison of information obtained from the applicant and from a database, such as the credit rating service database disclosed in Lockwood.

9. *Both Nishimura and Lockwood disclose a data processing system adapted to send a result to the remote applicant interface informing the applicant whether or not establishment of the requested account was approved.*

Nishimura discloses that "when file creation [at the host computer] ends, the host computer 6 sends to the ATM 4 an electronic message to the effect that an account has been established. The ATM 4 receives from the host computer 6, via the transmission control device 62 and interface 46, the electronic message to the effect that an account has been established, and displays on the CRT 10 a card/bankbook issue screen displaying a "Please take your card or bankbook" guidance message." (Nishimura Translation, pg. 9, lines 11-17). Thus, Nishimura teaches user notification of the status of account establishment.

Lockwood discloses that "once the terminal equipment has determined that the applicant qualifies 162 for the loan, the applicant is so notified 163, and instructed how to obtain the loan funds ... If the applicant does not qualify for the amount of loan requested, he is first asked whether a lesser amount 167 would be acceptable to him. He is then instructed to enter the lesser amount 168 through the touch pad 119. That new amount is then checked against the determination already made by the terminal. The process is repeated until an acceptable amount is requested by the applicant, or until such time as the applicant declines to proceed with the loan application." (Lockwood, col. 15, line 15 – col. 16, line 14). Thus, Lockwood also teaches user notification of the status of account establishment.

### B. *Independent Claims 19, 35, 37, 39, and 42 of the '007 Patent are Obvious under 35 U.S.C. §103 Over Lockwood and/or the Combination of Nishimura and Lockwood.*

Independent claim 19 is identical to independent claim 1 with the following key exceptions: references to "account" are replaced with "credit account;" references to "remote interface" are replaced with "remote applicant interface;" references to "establishment criteria" are replaced with "underwriting criteria;" and references to the "ability and willingness of the applicant to comply with account requirements for establishing and holding an account at a financial institution" are replaced with "ability and willingness of an applicant to repay a credit obligation." Exhibit D provides a comparison of claims 1 and 19. As discussed above, Lockwood teaches an automatic loan processing system for real-time approval of loans. A loan is simply one species of credit account available to a consumer. Therefore, the arguments made above in reference to claim 1 apply equally to claim 19. As discussed below in reference to dependent claim 10, Nishimura teaches the ability of an applicant to open various types of accounts. Although Nishimura does not explicitly state a "credit account," it would be immediately apparent to one skilled in the art to extend the teachings of Nishimura to credit accounts. Thus, independent claim 19 is obvious over Lockwood and/or the combination of Lockwood and Nishimura.

Independent claim 35 is identical to claim 1 except claim 35 includes the limitations of dependent claim 8 related to the issuance of a card. Exhibit D provides a comparison of claims 1 and 35. As such, the arguments made above in reference to claim 1 and below in reference to claim 8 apply equally to claim 35. Thus, independent claim 35 is obvious over Lockwood and/or the combination of Lockwood and Nishimura.

Independent claim 37 is identical to independent claim 1 with the following key exceptions: references to "account" are replaced with "credit account;" and references to the "ability and willingness of the applicant to comply with account requirements for establishing and holding an account at a financial institution" are replaced with "ability and willingness of an applicant to repay a credit obligation." Exhibit D provides a comparison of claims 1 and 37. As discussed above, Lockwood teaches an automatic loan processing system for real-time approval of loans. A loan is simply one species of credit account available to a consumer. Therefore, the arguments made above in reference to claim 1 apply equally to claim 37. As discussed below in reference to dependent claim 10, Nishimura teaches the ability of an applicant to open various types of accounts. Although Nishimura does not explicitly state a "credit account," it would be immediately apparent to one skilled in the art to extend the teachings of Nishimura to credit accounts. Thus, independent claim 37 is obvious over Lockwood and/or the combination of Lockwood and Nishimura.

Independent claim 39 is identical to independent claim 1 with the following key exceptions: references to requesting and/or establishing accounts have been removed; and the limitations of dependent claim 8 related to the issuance of a card have been included.[14] Exhibit D provides a comparison of claims 1 and 39. As such, the arguments made above in reference to claim 1 and below in reference to claim 8 apply equally to claim 35. Thus, independent claim 39 is obvious over Lockwood and/or the combination of Lockwood and Nishimura.

Independent claim 42 is identical to independent claim 1 with the following key exceptions: references to "account" are replaced with "credit account;" references to "remote interface" are replaced with "remote applicant interface;" references to requesting or establishing an account are replaced with requesting "a credit increase for an existing account;" references to "establishment criteria" are replaced with "weighted underwriting criteria;" and references to the "ability and willingness of the applicant to comply with account requirements for establishing and holding an account at a financial institution" are replaced with "ability and willingness of an applicant to repay a credit obligation." Exhibit D provides a comparison of claims 1 and 42. As discussed above, Lockwood teaches an automatic financial account processing system including the real-time approval of loans. A loan is simply one species of credit account available to a consumer. Lockwood describes that if an applicant does not qualify for the amount of loan requested, the user can enter in a lesser

---

[14] The Third Party Requester notes that claim 39 includes the phrase "the requested account" which has no antecedent basis in the claim. Further, the phrase "criteria bearing on the ability and willingness of the applicant to comply with requirements for obtaining a transaction card for the account" is not supported by the specification of the '007 patent. It is therefore unclear how these criteria and requirements differ from criteria and requirements for establishing and holding an account or criteria related to repayment of a credit obligation. For at least these reasons, the scope of claim 39 is indefinite.

amount via the touch pad and the system repeats the approval process. (Lockwood, Col. 16, lines 1-14). Although Lockwood does not explicitly discuss allowing an applicant to request an increase for an existing account, it would have been obvious to a person skilled in the art to extend the teachings of Lockwood of entering different amounts via the touch pad to incorporate requesting an increase in amount. Therefore, the arguments made above in reference to claim 1 apply equally to claim 42. Thus, independent claim 42 is obvious over Lockwood and/or the combination of Lockwood and Nishimura.

**C.** **_Dependent Claims 2-10, 16, and 18 are Obvious in View of Lockwood Alone or in Combination with Nishimura._**

**_1._** **_Claim 2 and 20_**

Claims 2 and 20 depend from claims 1 and 19, respectively, and recite that the data processing system is "further adapted to open an account at a financial institution upon approval." As discussed above, Lockwood teaches an automatic financial account processing terminal, an application of which includes "the selection and *opening* of so-called 'self-directed investments' such as Individual Retirement Accounts." (Lockwood, col. 12, lines 32-37; col. 16, lines 36-41) (emphasis added).

As discussed above, in Nishimura, if there is no impediment to account establishment, the host computer opens an account by creating "a new file having a bank number, branch number, [account] type, account number, name, deposit amount, and other records." (Nishimura Translation, pg. 9, lines 7-11). The host computer then sends a message to the terminal indicating "that an account has been established." (Nishimura Translation, pg. 9, lines 11-12). Accordingly, both Lockwood and Nishimura disclose a data processing system adapted to open an account at a financial institution upon approval, as recited in claims 2 and 20.

**_2._** **_Claim 3 and 23_**

Claims 3 and 23 depend from claim 1 and 19, respectively, and recite that the data processing system is "further adapted to effect a funds transfer to the account at the financial institution." The data processing system in Nishimura performs various transactions including "fund transfer." (Nishimura Translation, pg. 5, 36-40). When operating in transfer transaction mode, the terminal prompts the applicant to insert a magnetic strip card and for information such as password number, transfer destination, and transfer amount and performs the "transfer of funds from the account to a transfer destination." (Nishimura Translation, pg. 9, lines 43-47). Although not explicitly stated in Nishimura, a person of ordinary skill in the art would immediately recognize that a transfer destination could include the established account. In addition, during the opening of an account (or a subsequent deposit transaction), an applicant can transfer funds to the newly opened account

-19-

by depositing paper currency or coins into the terminal. The terminal determines the deposited amount and includes the amount in a message to the host computer. Thus, the amount of the deposit is electronically transferred to the host computer which adds the deposited amount to the account file. (Nishimura Translation, pg. 8, line 40 - pg. 9, line 12). Accordingly, Nishimura discloses a data processing system adapted to affect a funds transfer to the account at the financial institution, as recited in claims 3 and 23.

Lockwood teaches a data processing system adapted to facilitate payments for products and services via funds transfer between established accounts. (Lockwood, col. 21, lines 43-47; *See also*, Lockwood, col. 22, lines 13-65)("typically the customer has an established account number on file 247. The customer would enter a PIN (Personal Identification Number), credit card number 248 or other suitable payment data manually on the keypad").

### 3. *Claim 4*

Claim 4 depends from claim 3 and recites that the remote interface and data processing system "cooperate to receive information from the applicant identifying a source for the funds to transfer to the account and an amount of funds to transfer." As described above, the applicant in Nishimura identifies the source of the funds to transfer via an interface at the terminal (e.g., from an account number encoded on a magnetic strip read by a reader at the terminal or by inserting currency into a currency acceptor at the terminal) and the amount of the funds to transfer to an account. (Nishimura Translation, pg. 9, lines 43-47; *See Also,* Nishimura Translation, pg. 8, line 40 - pg. 9, line 12). The amount of funds to transfer could be entered by the applicant via the terminal interface or could be determined by the terminal after counting the currency inserted by the user. Accordingly, Nishimura discloses a remote interface and a data processing system that cooperate to receive information from the applicant identifying a source for the funds to transfer to the account and an amount of funds to transfer, as recited in claim 4.

As described above, Lockwood teaches a data processing system adapted to facilitate payments for products and services via funds transfer between established accounts. (Lockwood, col. 21, lines 43-47; *See also*, Lockwood, col. 22, lines 13-65). Lockwood also teaches that the applicant identifies the source for the funds to transfer (e.g., credit card number) and the amount of the funds (e.g., price of good or service) via a remote terminal. (Lockwood, col. 21, lines 25-58).

### 4. *Claim 5 and 33*

Claims 5 and 33 depend from claim 3 and 23, respectively, and recite that the remote interface "is further configured to receive funds from the applicant" and the data processing system "is adapted to receive information relating to the funds received from the applicant at the remote interface and to transfer to the account an amount corresponding to the funds received from the applicant." As described above, in Nishimura, an applicant can transfer funds to the newly opened account or existing account by depositing

paper currency or coins into a currency acceptor at the terminal. The terminal determines the deposited amount and includes the amount in a message to the host computer which adds the deposited amount to the account file. (Nishimura Translation, pg. 8, line 40 - pg. 9, line 12). Accordingly, Nishimura discloses a remote interface configured to receive funds from the applicant and a data processing system adapted to receive information relating to the funds received from the applicant and to transfer to the account an amount corresponding to the funds received, as recited in claims 5 and 33.

As described above, Lockwood teaches a data processing system adapted to facilitate payments for products and services via funds transfer between established accounts. (Lockwood, col. 21, lines 43-47; *See also*, Lockwood, col. 22, lines 13-65). Lockwood also teaches that the applicant identifies the source for the funds to transfer (e.g., credit card number) and the amount of the funds (e.g., price of good or service) via a remote terminal. (Lockwood, col. 21, lines 25-58). Although Lockwood does not explicitly state that the remote terminal receives funds, it would have been obvious to a person of skill in the art that a debit card storing funds or cash could also be used as forms of payment at the remote terminal.

### 5. *Claim 6 and 34*

Claims 6 and 34 depend from claim 5 and 33, respectively, and recite that the remote interface "may include one of the group consisting of a cash acceptor, card reader, and scanner to receive the funds." Nishimura teaches a terminal having "a paper currency insertion/ejection opening" and "a coin insertion/ejection opening." (Nishimura Translation, pg. 5, lines 15-22). In addition, Nishimura provides "a card insertion/ejection opening." (Nishimura Translation, pg. 5, lines 6-14).

Lockwood also teaches that "a magnetic strip reader 122 may be provided so that the applicant can give an account number or an identification by means of a credit card." (Lockwood, col. 14, lines 10-12). Accordingly, both Lockwood and Nishimura disclose that the remote interface may include one of the group consisting of a cash acceptor (the currency, coin insertion/ejection opening of Nishimura), a card reader, and scanner, as recited in claims 6 and 34.

### 6. *Claim 7*

Claim 7 depends from claim 2 and recites that data processing system "is further adapted to effect a funds transfer to the account at the financial institution from another account." As described above, in Nishimura, when operating in transfer transaction mode, the terminal prompts the applicant to insert a magnetic strip card and for information such as password number, transfer destination, and transfer amount (Nishimura Translation, pg. 9, lines 43-47). Thus, the applicant in Nishimura can select the transfer destination (e.g., the established account) and the source (e.g., account encoded on the inserted magnetic strip).

The system then performs the transfer of the funds from the account to the transfer destination. (Nishimura Translation, pg. 9, lines 43-47). Accordingly, Nishimura discloses a data processing system adapted to effect a funds transfer to the account from another account, as recited in claim 7.

As described above, Lockwood teaches a data processing system adapted to facilitate payments for products and services via funds transfer between established accounts. (Lockwood, col. 21, lines 43-47; *See also*, Lockwood, col. 22, lines 13-65).

### 7. Claim 8 and 24

Claims 8 and 24 depend from claim 1 and 19, respectively, and recite that account processing system further comprises "a card issuing device located at said remote interface and adapted to configure a card based on applicant and account information wherein said data processing system is further adapted to effect issuance of a transaction card associated with the account from the card issuing device after approval of the requested account." The terminal in Nishimura includes a card issuing device for issuing a magnetic card to the applicant upon account establishment. (Nishimura Translation, pg. 9, lines 19-24; pg. 4, lines 40-44; Fig. 4). Upon verification of account establishment from the host computer, the terminal issues a magnetic card and displays a guidance message telling the applicant to "please take your card." (Nishimura, pg. 9, lines 14-24). Accordingly, Nishimura discloses an account processing system comprising a card issuing device located at said remote interface and adapted to configure a card based on applicant and account information wherein said data processing system is further adapted to effect issuance of a transaction card associated with the account from the card issuing device after approval of the requested account, as recited in claims 8 and 24.

### 8. Claim 9, 25, 36, 38, 40, and 43

Claims 9, 25, 36, 38, 40, and 43 depend from claims 1, 19, 35, 37, 39, and 42, respectively, and recite, in relevant part:[15]

> The automatic account processing system of claim <u>1</u> [19, 35, 37, 38, and 42] wherein said criteria bearing on the ability and willingness of the applicant to <u>comply with account requirements</u> [repay a credit obligation] is weighted and said data processing system is further adapted to:
>
> a. provide a score based on comparison of certain of the information received from the applicant and certain of the information received from said at least one database relevant to the applicant's ability and willingness to <u>comply with the account requirements</u> [to repay a credit obligation], and
>
> b. determine whether or not to approve the account request based on the score.

---

[15] The underlined portion of the claim indicates language that is used in claim 9. The bracketed portion indicates language that is used in claims 25, 36, 38, and 43. Claim 40 includes a slight variation of the recited language in these claims.

As described above, the terminal in Lockwood assesses the credit worthiness of the applicant. During the application process, the terminal (via the fictitious loan officer) asks a series of questions "corresponding to questions that would be found on a standard loan application form." (Lockwood, col. 14, lines 57-60). This and other information provided by the applicant is supplemented by the financial profile obtained from the credit reporting service. (Lockwood, col. 13, lines 30-34). The terminal then computes "a debt ratio or other criterion devised by the financial institution to access [sic] the credit worthiness of the applicant. The debt ratio is the ratio of the applicant's current expenses to his current income. Other parameters such as debt to equity ratio or fixed assets to debt may be computed by the terminal data processor 113 and used in determining the qualifications of the applicant" (Lockwood, col. 15, lines 50-58).

Thus, Lockwood describes the use of multiple criteria bearing on the ability and willingness of the applicant to comply with account requirements (i.e., debt ratio, debt to equity ratio, fixed assets to debt, and "other criterion devised by the financial institution). Anytime multiple criteria are used to make a decision, some form of weighting must be applied to each criterion. In fact, the order in which a criterion is considered relative to other criteria may change the relative value (or weight) of an individual criterion in the decision process. In many cases, each criterion is given an equal weight.

The terminal in Lockwood computes multiple scores (e.g., debt ratio, debt to equity ratio, and fixed assets to debt). Lockwood does not explicitly state that a score is based on the comparison of certain information received from the applicant and certain information received from a database. However, it would be immediately apparent to a person of ordinary skill in the relevant art that the determination of the scores taught in Lockwood would require or could be enhanced by this comparison. For example, Lockwood defines the debt ratio as the ratio of applicant's current expenses to his current income. It would have been obvious to a person skilled in the art that information relative to an applicant's current expenses (e.g., monthly credit card bills, mortgage, etc.) would be included in the applicant's financial profile and could be compared and supplemented with information obtained from applicant directly (e.g., questions from a standard loan application form) to derive the applicant's debt ratio.

As described above, the terminal in Lockwood is programmed to compute the credit worthiness of the applicant using certain criteria such as debt ratio, debt to equity ratio, fixed assets to debt, and other criteria devised by the financial institution and to approve or disapprove the loan. (Lockwood, col. 13, lines 31-36; col. 15, lines 50-58). Thus, Lockwood determines whether or not to approve the account request based on the score. Accordingly, the limitations of claims 9 and 25 are either disclosed by Lockwood or obvious in view of the teachings and suggestions of Lockwood.

### 9. Claim 10

Claim 10 depends from claim 1 and recites that the account is "one of the group consisting of a checking account, savings account, retirement account, interest bearing, non-interest bearing account, and credit account." Lockwood teaches an automatic financial account processing terminal system, an application of which includes "the selection and purchase of stocks and other securities, the selection and opening of so-called 'self-directed investments' such as Individual Retirement Accounts, and other complex transactions which normally require a great deal of time and attention on the part of the officers of an institution." (Lockwood, col. 16, lines 36-41).

Nishimura teaches the ability of an applicant to open various types of accounts including checking and savings accounts. In Nishimura, the applicant enters the type of account that he or she wishes to establish. In the type selection screen, the applicant is presented with a "please specify new account to open" guidance message "prompting selection of an account type" and a "'savings' key 84, 'checking' key 86, and 'fixed-term' key." The applicant operates one of the keys according to the guidance message to select an account type to establish. (Nishimura Translation, pg. 8, lines 15-24). Accordingly, both Lockwood and Nishimura disclose that the account is one of the group consisting of a checking account, savings account, retirement account, interest bearing, non-interest bearing account, and credit account, as recited in claim 10.

### 10. Claim 16 and 30

Claims 16 and 30 depend from claim 1 and 19, respectively, and recite that the "remote interface is a public kiosk." The specification of the '007 describes a kiosk as "a housing that can contain all of the equipment for a borrower to use in contracting and communicating with a remote, centrally located transaction processor 10, or, alternatively, kiosk 40 can contain processor 10." ('007 patent, col. 9, lines 7-11). As described above, Lockwood teaches "a plurality of self-service terminals at various remote sites" each of which include a data processor for use in contracting with an applicant and communicating with the central processor of the financial institution. (Lockwood, col. 12, lines 38-41; Fig. 7). Nishimura also teaches a remote terminal "installed in a location enabling use by customers outside of business hours" including a CPU for contracting with an applicant and communicating with a host computer. (Nishimura Translation, pg. 3, lines 50-52). Therefore, Lockwood and Nishimura disclose a kiosk according to the specification of the '007 patent.

### 11. Claim 18 and 32

Claims 18 and 32 depend from claim 1 and 19, respectively, and recite that the remote interface includes "an input device selected from the group consisting of touch screens, input keys, keypads, card reader, scanner, and signature pad." Lockwood describes a remote terminal having a touch pad, keyboard, and

magnetic strip reader. In Lockwood, the applicant answers requests posed by a fictitious loan officer displayed on a video screen, "by means of a touch pad or a keyboard." (Lockwood, col. 14, lines 3-5). An applicant can also input information by means of the magnetic strip reader such as giving "an account number or an identification by means of a credit card." (Lockwood, col. 13, line 66 - col. 14, line 12). Nishimura describes a terminal having "touch panel switch," transaction selection keys, a numeric keypad, and "various other keys." (Nishimura Translation, pg. 5, lines 15-22). As described above, the terminal in Nishimura also includes a magnetic "card insertion/ejection opening." Nishimura further teaches that "other input devices, such as a keyboard, mouse, scanner, or similar may be employed." (Nishimura Translation, pg. 10, lines 11-13). Accordingly, both Lockwood and Nishimura disclose an input device selected from the group consisting of touch screens, input keys, keypads, card reader, scanner, and signature pad, as recited in claims 18 and 32.

### 12. Claim 21

Claim 21 depends from claim 19 and recites that the "credit account is a credit card account." As described above, one skilled in the art would recognize that a Lockwood could be modified to extend to credit accounts. It would be further obvious to one skilled in the art that one type of credit account is a credit card account. As described above, Nishimura teaches the ability of an applicant to open various types of accounts. Although Nishimura does not explicitly state a "credit account," it would be immediately apparent to one skilled in the art to extend the teachings of Nishimura to credit accounts and thus, "credit card accounts." Thus, claim 21 is obvious over Lockwood and/or the combination of Lockwood and Nishimura.

### 13. Claim 22

Claim 22 depends from claim 19 and recites that the "data processing system is further adapted to provide a loan from a financial institution based on the credit account." As discussed above, Lockwood teaches an automatic financial account processing system for real-time approval of loans. Thus, claim 22 is obvious over Lockwood.

### 14. Claim 41

Claim 41 depends from claim 40 and recites that the "transaction card is one of the group consisting of smart, debit, and credit cards." As discussed above, Nishimura teaches a terminal having a card issuing device for issuing a magnetic card to the applicant upon account establishment. Therefore, it would be obvious to one of skill in the art that the issued card in Nishimura is one of the group of "smart, debit, and credit cards."

### 15. Claim 44

Claim 44 depends from claim 39 and recites that the "processing system is further adapted to effect an increase in credit for the existing account if the increase in credit is approved." As discussed above,

-25-

Lockwood teaches an automatic financial account processing system including the real-time approval of loans. A loan is simply one species of credit account available to a consumer. Lockwood describes that if an applicant does not qualify for the amount of loan requested, the user can enter in a lesser amount via the touch pad and the system repeats the approval process. (Lockwood, Col. 16, lines 1-14). Although Lockwood does not explicitly discuss allowing an applicant to request an increase for an existing account, it would have been obvious to a person skilled in the art to extend the teachings of Lockwood of entering different amounts via the touch pad to incorporate requesting an increase in amount and to effect an increase in credit for the existing account if the increase in credit is approved.

**D.    Dependent Claims 11-15, 17, 26-29, and 31 are Obvious Over Lockwood and/or Nishimura in Combination with Havlovick**

Claims 11-15, 17, 26-29, and 31 are obvious in view of Lockwood and/or Nishimura in combination with Havlovick. Havlovick was filed on November 25, 1992, more than 9 months prior to the earliest possible priority date of the '007 patent, and thus is prior art under 35 U.S.C. §102(e).

**1.    Claim 11 and 26**

Claims 11 and 26 depend from claim 1 and 19, respectively, and recite that the automatic account processing system further comprises "a printer located at the remote interface for printing checks" and that the data processing system is adapted to "cooperate with said remote interface to effect printing a negotiable instrument associated with the account." Nishimura teaches that one of the many account types an applicant can establish is a checking account. (Nishimura Translation, pg. 8, lines 17-20). Nishimura further teaches a terminal having a printer. (Nishimura Translation, pg. 6, lines 46-48) ("bankbook processing portion 54 comprises a conveyor device 54a linked to ... a printing head 54b"). When a new account is established, the terminal issues a bankbook associated with the account. The "account number and other data is written to the bankbook 16 by the printing head 54b, and [the bankbook] is ejected from the bankbook insertion/ejection opening 14." (Nishimura Translation, pg. 7, lines 18-20). Nishimura does not define the term bankbook nor does Nishimura explicitly describe using the terminal printer to print a negotiable instrument associated with the account.

Havlovick discloses a device for "printing checks with all relevant information, such as amount of check, date, payee, and any memorandum ... for storing entered information, and for reconciling transactional information with data from a financial institution." (Havlovick, col. 3, line 56 - col. 4, line 2). Based on the fact that Nishimura teaches opening a checking account and printing a bankbook, and that bankbooks are typically the size of checks and include much of the information printed on a check, it would have been immediately apparent to a person of ordinary skill in the art to incorporate the electronic checkbook printing

device of Havlovick into the terminal of Nishimura. Accordingly, the limitations of claim 11 and 26 are obvious over Nishimura in view of Havlovick.

Lockwood also teaches a remote terminal having a printer. Lockwood describes the printer being used to "deliver to the applicant a hard copy of any loan quotation as well as a confirmation of his accepted loan." (Lockwood, col. 14, lines 12-14). Lockwood further teaches in a separate embodiment a system for "automatically dispensing information, goods, and services ... from travel, *financial*, and other service provider." (Lockwood, col. 7, lines 29-32) (emphasis added). Based on the suggestion of providing financial goods and services via the invention of Lockwood, it would have been apparent to a person of ordinary skill in the art to incorporate the electronic checkbook device of Havlovick into the terminal of Lockwood. Accordingly, the limitations of claim 11 and 26 are also obvious over Lockwood in view of Havlovick.

### 2. *Claim 12 and 27*

Claims 12 and 27 depend from claim 11 and 19, respectively, and recite that the negotiable instrument "is a blank check." Havlovick teaches an electronic checkbook device having multiple function keys including, among others, "check number, to, amount, memo." The checkbook performs an operation when the associated function key is pressed. (Havlovick, col. 16, lines 1-36). Thus, a user can print a blank check by not activating certain function keys. Therefore, it would have been obvious to combine the teachings of Nishimura and/or Lockwood and Havlovick in order to print a blank check.

### 3. *Claim 13 and 28*

Claims 13 and 28 depend from claim 11 and 19, respectively, and recite that the negotiable instrument "is a cashier's check having a select value." As described above, Havlovick teaches an electronic checkbook printing device capable of printing the amount on a check. Havlovick does not explicitly define a check to include a cashier's check. However, it would have been obvious to a person of ordinary skill in the art to include the ability for the electronic checkbook to print cashier's checks having select value in addition to printing ordinary account checks. Accordingly, the limitations of claim 13 and 28 are obvious over Nishimura and/or Lockwood and Havlovick.

### 4. *Claim 14 and 29*

Claims 14 and 29 depend from claim 1 and 19, respectively, and recite that the automatic account processing system further comprises "a printer located at the remote interface for printing checks" and the data processing system is adapted to "cooperate with said remote interface to effect printing a negotiable instrument having an assigned value to be drafted from the account." Claims 14 and 29 are identical to claims 11 and 26, except the limitation of claims 11 and 26 of "a negotiable instrument associated with the account" is replaced

in claims 14 and 29 with "a negotiable instrument having an assigned value to be drafted from the account." Therefore, the argument related to claims 11 and 26 above, is applicable to claims 14 and 29 as well.

As described above, Havlovick teaches an electronic checkbook capable of printing the amount on a check. It would have been immediately obvious to a person of ordinary skill in the art to combine Nishimura and/or Lockwood and Havlovick to have the remote terminal print a check (i.e., negotiable instrument) having an assigned value to be drafted from the account.

### 5.    Claim 15

Claim 15 depends from claim 1 and recites that the data processing system is "further adapted to effect ordering negotiable instruments associated with the account." As described above, Nishimura teaches the ability of an applicant to establish a checking account and the immediate issuance of a bankbook associated with the established account. Therefore, it would have been obvious to a person of ordinary skill in the art to add the ability of an applicant to order checks or other negotiable instruments associated with the account. Accordingly, the limitations of claim 15 are obvious in view of Nishimura.

### 6.    Claim 17 and 31

Claims 17 and 31 depend from claim 1 and 19, respectively, and recite that the account processing system further comprises "an electronic signature pad located at the remote interface and adapted to electronically receive the applicant's signature to indicate acceptance of a financial transaction." As described above, it would have been obvious to a person of ordinary skill in the art to combine Nishimura and/or Lockwood and Havlovick to include the ability to print checks for checking accounts being or already established. As depicted in Figure 1 of Havlovick, reproduced below, Havlovick further teaches an electronic signature pad 25. Havlovick discloses that the electronic signature pad 25 "may also be included, which allows pen based input of a signature that is read by x-y mapping and stored for printing on a check. Such a pad may be pressure sensitive, resistive, optical, or other known script sensing technologies." (Havlovick, col. 4, lines 50-55). Therefore, it would have also been obvious to combine the teachings of Lockwood and Havlovick or Lockwood, Nishimura, and Havlovick so as to include the electronic signature pad of Havlovick.



*FIG. 1*

### E.  Other References

**1.  Independent claims 1, 19, 35, 37, 39, and 42 are obvious under 35 U.S.C. §103 over the combination of Lockwood, Nishimura, and Keen.**

The application of Lockwood and Nishimura to the independent claims is described above.  Keen which was filed on October 25, 1993 is a continuation-in-part of Application No. 07/850,028, filed on March 12, 1992.  Thus, Keen is prior art under §102(e).  Keen is directed to an automated security credit checking system for checking a credit application for fraud before a credit card is issued.  (Keen, Abstract).  Because fraud is a major concern associated with all types of financial accounts, it would have been obvious to a person of skill in the art to combine the teachings of Lockwood, which describes establishment of accounts such as loan accounts and investment accounts, and Nishimura, which describes establishment of various types of financial accounts, with the teachings of Keen.

Among other things, Keen teaches a data processing system having criteria bearing on the ability and willingness to comply with account requirements and to repay a credit obligation based on data obtained from the applicant and information obtained from a database.  In Keen, the system uses information provided on an application scanned into the system and information accessed from on-line credit bureaus to determine whether to approve or deny a credit account.  (Keen, col. 4, line 64 - col. 5, line 18).  When making the

determination, the data processing system uses various determinants such as "whether (a) the applicant earns enough money for different levels of credit, (b) the applicant has been employed at applicant's current employer long enough to obtain credit ... (d) the applicant has paid his past bills in a timely manner." (Keen, col. 5, lines 2-9).

Keen also teaches a data processing system adapted to verify the applicant's identity by comparing information from the application with certain of the information received from a database. (Keen, col. 4, lines 18-37) ("Preferably, security 20 compares the information on the application 45 against the information from on-line information systems 135, preferably on-line credit bureaus 130 and the on-line fraud information (or national fraud information source) 140, loaded in system memory 50.")

As discussed above, Keen also teaches a data processing system adapted to compare certain of the information received from the applicant and certain of the information received from a database to determine in real time and without human assistance if the applicant's requested account is approved. (Keen, col. 4, line 64 - col. 5, line 18).

Accordingly, the combinations of Lockwood in view of Keen, Nishimura in view of Keen, Lockwood and Nishimura in view of Keen, also suggest the obviousness of the claims of the '007 patent.

2. *Independent claims 1, 19, 35, 37, 39, and 42 are obvious under 35 U.S.C. §103 over the combination of Lockwood, Nishimura, and Jones I.*

Jones I has a filing date of February 25, 1992, which is prior to the earliest possible priority date of the '007 patent. Thus, Jones I is prior art under 35 U.S.C. § 102(e). Jones I discloses an automated loan processing system. (Jones I, col. 3, lines 57-61) ("a facsimile transmission-based method and apparatus for automatically providing the real-time automatic determination of the approval status of a potential borrower, including pre-approval and prequalification for a loan"). The system of Jones I includes a remote interface (i.e., receiving units located a remote point-of sale stations) that receives data from an applicant. (Jones I, col. 5, lines 50-62) ("the potential borrower ... enters predefined information relating to the borrower's ability to obtain a loan (such as the borrower's social security number and annual income)"). The system of Jones I also includes a data processing system having establishment criteria based on prescribed data obtained from the applicant and from at least one database (e.g., credit bureau) containing information about the applicant relevant to the ability and willingness of the applicant to comply with account requirements. (Jones I, col. 6, lines 49-67). The data processing system is coupled to the applicant interface via a communications network. (Jones I, col. 5, lines 21-29). The system of Jones I receives information from the applicant and information from a database (e.g., credit bureau) relevant to the applicant's identity and ability and willingness to comply with the account requirements. (Jones I, col. 6, lines 21-40). The system uses the information to verify the applicant's identity and compares the information to determine if applicant's request is approved. (Jones I, col. 6, lines 49-67). The system notifies the applicant of the status of his request. (Jones I, col. 6, line 67-col. 7,

line 10; col. 7, lines 18-36). For loan requests that result in pre-approved, pre-qualified, or rejected status, the entire transaction is handled without human assistance. (*See, e.g.,* FIG. 1).

Accordingly, the combinations of Lockwood in view of Jones I, Nishimura in view of Jones I, or Lockwood and Nishimura in view of Jones I, also suggest the obviousness of the claims of the '007 patent.[16]

> 3.  *Independent claims 1, 19, 35, 37, 39, and 42 are obvious under 35 U.S.C. §103 over Klesse Along or In Combination with Lockwood and/or Nishimura.*

The application of Lockwood and Nishimura to the independent claims is described above. Klesse issued from U.S. Patent Application 285,076, filed on August 3, 1994, and claims continuation status to U.S. Patent Application No. 887,089, filed on May 22, 1992, which is prior to the earliest possible priority date of the '007 patent. Klesse teaches a data processing system for establishing charge accounts without human intervention. (Klesse, Abstract). Although Klesse does not explicitly describe a remote interface or a communications network, Klesse does teach that a provider transmits application data electronically to the servicing company. (Klesse, col. 3, lines 2-10). Thus, a remote interface that is located at the provider in order for the system to accept application data is inherently taught and a communication network that allows the provider to transmit this data electronically to a servicing company is also inherently taught.

Klesse further describes a data processing system adapted to receive data from the applicant received at the remote interface and access the at least one database (i.e., a national credit bureau) for information relevant to the applicant's identity and for the information relevant to the applicant's ability and willingness to comply with account requirements and/or repay an obligation. (Klesse, col. 3, lines 11-23) ("The system then accesses credit history information concerning the patient from a national credit bureau (step 102) and compares the credit history data with *predetermined credit criteria data to determine the creditworthiness of the new patient.*")(emphasis added). The data processing system of Klesse also is adapted to compare the information received from the applicant and the information received from the database to determine in real time without human assistance if the applicant's requested account is approved. (Klesse, col. 3, lines 24-50) ("Based on the results of the comparison of the credit history of the patient and the credit criteria data, a decision is made whether to create a funded or post-funded account.")

Furthermore, Klesse states that systems performing this type of creditworthiness determination were already commercially available at the time his patent application was filed (May 1992). Klesse lists the SNAP® service provided by Beneficial National Bank USA of Wilmington, DE as one example of a commercially available system.

---

[16]   In the reexamination proceedings, the owner of the patents distinguished the Jones I reference from claims in the '721 and '811 based on the argument that Jones is directed to pre-qualification and pre-approval. This argument is irrelevant to establishing accounts as recited in the claims of the '007 patent.