# Exhibit 5
# Part 41
# To Third Declaration of
# Joseph N. Hosteny

Dockets.Justia.com

This rejection was proposed by the third party requester in said '199 Request and is adopted with modification for the reasons discussed above. Thus, page 29 of Appendix "C" that relate to claim 31 are hereby incorporated by reference.

In addition, the examiner further notes that each element of the claimed inventions is taught by either the Janison publications or the Topclass Instructor's Guide. Thus, the claimed invention is merely a combination of old elements, and in combination each element merely would have performed the same functions as it did separately (e.g., selecting a hyperlink that provides a web page comprising data regarding instructors of the course). Thus, one of ordinary skill in the art would have recognized that the results of the combination were predictable. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." KSR Intern. Co. V. Teleflex Inc., 127 S.Ct. 1727, 1749 (2007). In addition, the combination relate to implementing a classroom environment using modern technology (e.g., selecting hyperlinks to retrieve course information, such as data regarding the instructors rather than the older method of posting class staff information in a course catalog or public bulletin board). The combination is an adaptation of an old idea (implementing a classroom environment) using newer technology (World Wide Web network of computers) that is commonly available and understood in the art and thus obvious. Leapfrog Enterprises, Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1162 (Fed. Cir. 2007).

**Claim 39** is rejected under 35 U.S.C. 103(a) as being unpatentable over the

Janison Solutions Management Guide in view of the Janison Web Training Getting

Started, and further in view of the Design Document for Ceilidh and the Student's Guide

to Ceilidh.


This rejection was proposed by the third party requester in said '199 Request and

is adopted with modification for the reasons discussed above. Thus, page 17 of the '199

Request and pages 82 and 83 of Appendix "C" that relate to claim 39 are hereby

incorporated by reference.


In addition, the examiner further notes that each element of the claimed

inventions is taught by either the Janison publications or the Ceilidh publications. Thus,

the claimed invention is merely a combination of old elements, and in combination each

element merely would have performed the same functions as it did separately (e.g.,

posting the grade to a file on the server computer accessible to the student). Thus, one of

ordinary skill in the art would have recognized that the results of the combination were

predictable. "The combination of familiar elements according to known methods is

likely to be obvious when it does no more than yield predictable results." KSR Intern.

Co. V. Teleflex Inc., 127 S.Ct. 1727, 1749 (2007). In addition, the combination relate to

implementing a classroom environment using modern technology (e.g., making grades

available to a student via a computer server rather than the older method of sending the

student a report card). The combination is an adaptation of an old idea (implementing a

classroom environment) using newer technology (World Wide Web network of

computers) that is commonly available and understood in the art and thus obvious.

Leapfrog Enterprises, Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1162 (Fed. Cir. 2007).

**Claims 41 and 42** are rejected under 35 U.S.C. 103(a) as being unpatentable over

the Janison Solutions Management Guide in view of the Janison Web Training Getting

Started, and further in view of the Teacher's Guide to Ceilidh and the Student's Guide to

Ceilidh.

This rejection was proposed by the third party requester in said '199 Request and

is adopted with modification for the reasons discussed above. Thus, page 17 of the '199

Request and pages 87, 88 and 90 of Appendix "C" that relate to claims 41 and 42 are

hereby incorporated by reference.

In addition, the examiner further notes that each element of the claimed

inventions is taught by either the Janison publications or the Ceilidh publication. Thus,

the claimed invention is merely a combination of old elements, and in combination each

element merely would have performed the same functions as it did separately (e.g., the

process of assigning grades taking into account statistical data regarding the grades).

Thus, one of ordinary skill in the art would have recognized that the results of the

combination were predictable. "The combination of familiar elements according to

known methods is likely to be obvious when it does no more than yield predictable

results." KSR Intern. Co. V. Teleflex Inc., 127 S.Ct. 1727, 1749 (2007). In addition, the

combination relate to implementing a classroom environment using modern technology

(e.g., assigning grades using statistical information via a computer program rather than
the older method of manually grading assignments and then assigning grades after
manually calculating statistics for the class). The combination is an adaptation of an old
idea (performing typical classroom tasks) using newer technology (computer automation)
that is commonly available and understood in the art and thus obvious. Leapfrog
Enterprises, Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1162 (Fed. Cir. 2007).


### Issue 3

### Summary of the Ceilidh Design Document

The Ceilidh Design Document is substantially similar to the invention taught in
the Alcorn patent under reexamination. For example, the Ceilidh Design Document
teaches a course-based system for providing to an educational community of users access
to a plurality of online courses. The Ceilidh Design Document teaches on page 1 that:

> Ceilidh is a course management system. The main objective of Ceilidh is to support teaching and
> learning through computer. As a course management system, it also provides some facilities for
> the course teacher to organize the teaching and to monitor the progress of the students attending
> the course.

The Ceilidh Design Document publication also teaches a plurality of user
computers (page 5), with each user computer being associated with a user of the system
and with each user having predefined characteristics indicative of roles, such as student,
instructor, and administrator, and thus having access to files associated with these
differing roles (page 2).

## The Proposed Ceilidh Rejections

The proposed rejection asserts that the Ceilidh Design Document anticipates, or renders obvious, in alone or in combination with other prior art, claims 1-44 of the Alcorn patent. See pages 2 and 19 of the '199 Request and Appendix "D" to said '199 Request.

As discussed above, said Design Document is substantially similar to the invention taught in the specification of the Alcorn patent under reexamination. Thus, the Design Document is a highly relevant reference.

## The Proposed Ceilidh Anticipatory Rejections Are Not Adopted

The proposed rejection asserts that the Ceilidh Design Document anticipates claim 1. See page 19 of the '199 Request and pages 1-11 of Appendix "D" to said '199 Request. The Ceilidh Design Document is similar to the Alcorn patent as discussed above. The requester however provides no detail on how a single reference, the Ceilidh Design Document, anticipates any claims. Indeed, the proposed rejection of claim 1 relies upon other Ceilidh publications to teach certain limitations within the claim (e.g., see page 1 of Appendix "B"). Thus, the proposed anticipatory rejection is not adopted.

The Proposed Ceilidh Obviousness Rejections Are Adopted with Modification

The requester also asserts that the Ceilidh Design Document renders obvious, by itself or in combination with various Ceilidh related references, claims 1-28 and 36-44 of the Alcorn patent (page 17 of the '199 Request).

The proposed 103 rejections however, as formulated in Appendix "D" (including additional rejections of claims 29-35 not addressed in the '199 Request), fail to set forth sufficient reasoning regarding legal conclusions of obviousness. "[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re* Kahn, 441 F.3d 977, 988, 78 USPQ2d 1329, 1336 (Fed. Cir. 2006). See also KSR International Co. v. Teleflex Inc., 127 S.Ct. 1727, 1741 (2007).

Thus, the proposed obviousness rejections are adopted with the following modifications:  the examiner adds articulated reasoning to support the legal conclusion of obviousness.  See the claim rejections below for additional details.

### *Claim Rejections - 35 USC § 103*

**Claims 1-34 and 36-44** are rejected under 35 U.S.C. 103(a) as being unpatentable over the Ceilidh Design Document  Janison Solutions Management Guide in view of the Janison Solutions, Web Training Toolbox, Getting Started, June 1999 (hereafter "Janison Web Training Getting Started") in view of various other Ceilidh publications specifically identified for each claim rejection on page 19 of the '199 Request and Appendix "D".

This rejection was proposed by the third party requester in said '199 Request and is adopted with modification for the reasons discussed above. Thus, pages 17-20 of the '199 Request and those pages of Appendix "D" that relate to claims 1-34 and 36-44 are hereby incorporated by reference.

In addition, the examiner further notes that each element of the claimed inventions is taught by at least one of the Ceilidh related publications. Thus, the claimed invention is merely a combination of old elements, and in combination each element merely would have performed the same functions as it did separately. This is especially the case since both the Ceilidh publications are both directed to the same system. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." KSR Intern. Co. V. Teleflex Inc., 127 S.Ct. 1727, 1749 (2007). In addition, one of ordinary skill in the art, when analyzing the Ceilidh Design Document base reference, would have looked to a publication describing the same Ceilidh system for additional teachings.

**Claim 35** is rejected under 35 U.S.C. 103(a) as being unpatentable over the Ceilidh Design Document and further in view of Janison Web Training Getting Started.

This rejection was proposed by the third party requester and is adopted with modification for the reasons discussed above. Thus, pages 36-38 of Appendix "D" that relate to claim 35 are hereby incorporated by reference.

In addition, the examiner further notes that each element of the claimed inventions is taught by either the Ceilidh publications or the Janison publications. Thus, the claimed invention is merely a combination of old elements, and in combination each element merely would have performed the same functions as it did separately (e.g., providing asynchronous communications, e.g., discussion groups or email, or synchronous communications, e.g., real-time chat). Thus, one of ordinary skill in the art would have recognized that the results of the combination were predictable. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." KSR Intern. Co. V. Teleflex Inc., 127 S.Ct. 1727, 1749 (2007). In addition, the combination relates to implementing a classroom environment using modern technology (e.g., communicating via asynchronous communications, e.g., discussion groups, or synchronous communications, e.g., real-time chat rather than the older method of students and instructors discussing classroom topics in the classroom). The combination is an adaptation of an old idea (implementing a classroom environment) using newer technology (World Wide Web network of computers supporting various communication modes) that is commonly available and understood in the art and thus obvious. Leapfrog Enterprises, Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1162 (Fed. Cir. 2007).

## Issue 4

### Summary of the Serf User Guide

The Serf User Guide is substantially similar to the invention taught in the Alcorn patent under reexamination. For example, the Serf User Guide teaches a course-based

system for providing to an educational community of users access to a plurality of online

courses. The Serf User Guide teaches on page 99 that:

> Serf is an acronym that stands for Server-side educational records facilitator. It's your servant on the Internet; hence the name Serf. Serf provides an environment for delivering courses anywhere in the world, using the World Wide Web as a distance education medium.

Thus, the Serf User Guide publication also teaches a plurality of computer

associated with the user's World Wide Web access.

The Serf User Guide publication also teaches that each user has predefined

characteristics indicative of roles, such as student, instructor, and administrator, and thus

having access to files associated with these differing roles. For example, the Serf User

Guide teaches on page 99 that:

> Serf provides support for students, teaching assistants, instructors, and administrators. The administrators use Serf to create courses and enroll students. Instructors use Serf to create their course syllabus, which consists of an ordered list of instructional events, assignments, and multimedia resources. Teaching assistants help the instructor provide services to students, and may assist in the grading of the assignments. The beneficiary is you, the student, who partakes in a learning environment rich in multimedia resources and Internet services.

### The Proposed Serf Rejections

The proposed rejection asserts that the Serf User Guide anticipates, or renders

obvious, in alone or in combination with other prior art, claims 1-44 of the Alcorn patent.

See pages 2 and 20 of the '199 Request and Appendix "E" to said '199 Request.

As discussed above, said Serf User Guide is substantially similar to the invention taught in the specification of the Alcorn patent under reexamination. Thus, the Serf User Guide is a highly relevant reference.

### The Proposed Serf Anticipatory Rejections Are Not Adopted

The proposed rejection asserts that the Serf User Guide anticipates claims 1-3, 7, 8, 10-12, 18-20, 22-30, 32-34, 37-42 and 44. See page 20 of the '199 Request and Appendix "E" to said '199 Request. The Serf User Guide is similar to the Alcorn patent as discussed above. The requester however provides no detail on how a single reference, the Serf User Guide, anticipates any claims. Indeed, the proposed rejection of claim 1 relies upon other Serf publications to teach certain limitations within the claim (e.g., see page 8 of Appendix "E"). Thus, the proposed anticipatory rejection is not adopted.

### The Proposed Serf Obviousness Rejections Are Adopted with Modification

The requester also asserts that the Serf User Guide renders obvious, by itself or in combination with various Ceilidh related references, claims 1-44 of the Alcorn patent (page 21 of the '199 Request).

The proposed 103 rejections however, as formulated in Appendix "E" fail to set forth sufficient reasoning regarding legal conclusions of obviousness. "[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re* Kahn, 441 F.3d 977, 988, 78 USPQ2d 1329, 1336 (Fed. Cir. 2006). See also KSR International Co. v. Teleflex Inc., 127 S.Ct. 1727, 1741

(2007).    In addition, the proposed rejection asserts that the Serf User Guide renders

obvious by itself claims 1-3, 7, 8, 10-12, 18-20, 22-30, 32-34, 37-42 and 44.  See page 21

of the '199 Request and Appendix "E" to said '199 Request.  The requester however

provides no detail on how a single reference, the Serf User Guide, renders obvious any

claims.  Indeed, the proposed rejection of claim 1 relies upon other Serf publications to

teach certain limitations within the claim (e.g., see page 8 of Appendix "E").  Thus, the

proposed obviousness rejection based on the Serf User Guide alone is not adopted.

However, modifying the 103 rejections based on Serf to rely not only upon the Serf User

guide, but also the other two Serf related publications, which are also applied to every

claim rejection in Appendix "E", would remedy this situation.


Thus, the proposed obviousness rejections are adopted with the following

modifications:  claims 1-44 are rejected based upon the combination of all three Serf

related publications, which is also consistent with Appendix "E".  The examiner also adds

articulated reasoning to support the legal conclusion of obviousness.  See the claim

rejections below for additional details.


### Claim Rejections - 35 USC § 103

**Claims 1-44** are rejected under 35 U.S.C. 103(a) as being unpatentable over the

Serf User Guide in view of F. Hofstetter, Virtual Learning Environments, Serf's Up:

Teaching and Learning with Serf, Your Servant on the Internet ("Serf's Up") and F.

Hofstetter, Three Waves of the Serf Web-Based Teaching and Learning Environment,

May 19, 1999 ("Three Waves of Serf").


This rejection was proposed by the third party requester in said '199 Request and

is adopted with modification for the reasons discussed above. Thus, page 21 and

Appendix "D" tare hereby incorporated by reference.


In addition, the examiner further notes that each element of the claimed

inventions is taught by at least one of the Serf related publications.    Thus, the claimed

invention is merely a combination of old elements, and in combination each element

merely would have performed the same functions as it did separately. This is especially

the case since all Serf publications are both directed to the same system. "The

combination of familiar elements according to known methods is likely to be obvious

when it does no more than yield predictable results." KSR Intern. Co. V. Teleflex Inc.,

127 S.Ct. 1727, 1749 (2007).   In addition, one of ordinary skill in the art, when

analyzing the Serf User Guide base reference, would have looked to a publication

describing the same Serf system for additional teachings.


## Issue 5

### Summary of Topclass Version 2.0 Instructor's Guide

The Topclass Version 2.0 Instructor's Guide is substantially similar to the

invention taught in the Alcorn patent under reexamination.   For example, TopClass

teaches a course-based system for providing to an educational community of users access

to a plurality of online courses. Specifically, TopClass teaches a "learning environment

that distributes course materials" and "allow[s] on-line communication between

instructors and students." TopClass, pp. 1 and 4. "Students are users who are taking

courses" and instructors assist students taking courses. TopClass, p. 4. Student users are

assigned to one or more classes, each having a specific set of course material; instructors

are assigned to one or more classes, and for each class they have a number of students

assigned to them. TopClass, p. 74.


The TopClass Publication also teaches a plurality of user computers, with each

user computer being associated with a user of the system and with each user having

predefined characteristics indicative of roles, such as student, instructor, and

administrator. Specifically, TopClass teaches that each user has a computer (http client)

associated with the TopClass server, as illustrated in Figure 1, which is reproduced as

Figure 3 below.



**Figure 1. TopClass, HTTP Server and Client**

1.  The Client sends a TopClass HTTP request to the server.

2.  The HTTP Server passes the request directly to TopClass.

3.  TopClass generates the appropriate HTML page and
    returns it to the HTTP server.

4.  The HTTP server sends the page and any associated media
    files to the client.

<u>Figure 3.  TopClass, HTTP Server and Client</u>

Furthermore, TopClass teaches a course-based system with three predefined

categories of user: student, instructors, and administrators. TopClass, pp. 4-6, 19, 23-24,

and 74-81. "[A]dministrators always have access to the entire TopClass server."

TopClass, p. 74. Students have limited access to system files (they are not given any of

the security privileges described in TopClass at pp. 78-80). Instructors' access to create

and edit files depends on the configuration of security privileges for each instructor,

which determines the degree to which an instructor can edit course files, modify

individual student coursework, create and edit class announcements, and delete messages

posted to class discussion lists. TopClass, pp. 78-80. See also TopClass, p. 32 (illustrated

"Access Preferences" page can be used by administrator to "specify default access rights

for various system objects," including checkboxes for administrators, instructors, and

students that can be used to determine whether a particular predefined user category can,

for example, view, edit, or delete messages and course unit material).

## The Proposed Topclass Rejections

The proposed rejection asserts that the Topclass Instruction Guide anticipates, or

renders obvious, in alone or in combination with other prior art, claims 1-44 of the

Alcorn patent. See pages 2 and 21 of the '199 Request and Appendix "F" to said '199

Request.

As discussed above, said Topclass Instruction Guide is substantially similar to the

invention taught in the specification of the Alcorn patent under reexamination. Thus, the

Topclass Instruction Guide is a highly relevant reference.

## The Proposed Topclass Rejections Are Not Adopted

The proposed rejection asserts that the Topclass Instruction Guide anticipates

certain claims of the Alcorn patent. See page 21 of the '199 Request and Appendix "F"

to said '199 Request. The Topclass publication is similar to the Alcorn patent as

discussed above. The requester however provides no detail on how a single reference,

the Topclass Instruction Guide, anticipates any claims. Indeed, the proposed rejection of

claim 1 relies upon other Topclass publications to teach certain limitations within the

claim (e.g., see pages 1-11 of Appendix "F"). Thus, the proposed anticipatory rejection

is not adopted.

### The Proposed Topclass Obviousness Rejections Are Adopted with Modification

The requester also asserts that the Topclass Instruction Guide renders obvious, by itself or in combination with various Topclass related references, claims 1-44 of the Alcorn patent (page 21 of the '199 Request).

The proposed 103 rejections however, as formulated in Appendix "F" fail to set forth sufficient reasoning regarding legal conclusions of obviousness. "[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re* Kahn, 441 F.3d 977, 988, 78 USPQ2d 1329, 1336 (Fed. Cir. 2006). See also KSR International Co. v. Teleflex Inc., 127 S.Ct. 1727, 1741 (2007). The requester however provides no detail on how a single reference, e.g., the Topclass Instruction Guide, renders obvious any claims. Indeed, the proposed rejection of claim 1 relies upon another Topclass publication, The Topclass Administrator's Guide, to teach certain limitations within the claim (e.g., see pages 1-11 of Appendix "F"). Thus, the proposed obviousness rejection based on the Topclass Installation Guide is not adopted. However, modifying the 103 rejections based on Topclass to rely not only upon the Topclass Installation guide, but also the Topclass Administrator's Guide, which was also applied to almost every claim rejection in Appendix "F", would remedy this situation.

The other proposed obviousness rejections (e.g., claims 10, 20, 28-35, 42, and 44) rely upon multiple secondary references teaching similar and overlapping features, rendering the proposed rejections ambiguous as to which secondary reference is actually

relied upon. Furthermore, the proposed 103 rejections however, as formulated in Appendix "E" fail to set forth sufficient reasoning regarding legal conclusions of obviousness. "[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re* Kahn, 441 F.3d 977, 988, 78 USPQ2d 1329, 1336 (Fed. Cir. 2006). See also KSR International Co. v. Teleflex Inc., 127 S.Ct. 1727, 1741 (2007).

Thus, the proposed obviousness rejections are adopted with the following modifications: claims 1-9, 11-19, 21-27, 36-41, and 43 are rejected based upon the combination of both Topclass publications, which is also consistent with Appendix "F". The examiner also adds articulated reasoning to support the legal conclusion of obviousness. See the claim rejections below for additional details.

### *Claim Rejections - 35 USC § 103*

**Claims 1-9, 11-19, 21-27, 36-41 and 43** are rejected under 35 U.S.C. 103(a) as being unpatentable over the Topclass Instructor's Guide in view of the Topclass Version 2.0.0 Administrator's Guide, March 1998 ("Topclass Administrator's Guide').

This rejection was proposed by the third party requester in said '199 Request and is adopted with modification for the reasons discussed above. Thus, page 21 and those portions of Appendix "F" that relate claims 1-9, 11-19, 21-27, 36-41, and 43 are hereby incorporated by reference.

In addition, the examiner further notes that each element of the claimed inventions is taught by at least one of the Topclass related publications.    Thus, the claimed invention is merely a combination of old elements, and in combination each element merely would have performed the same functions as it did separately.  This is especially the case since all Topclass publications are both directed to the same system. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." KSR Intern. Co. V. Teleflex Inc., 127 S.Ct. 1727, 1749 (2007).   In addition, one of ordinary skill in the art, when analyzing the Topclass Instructor's Guide base reference, would have looked to a publication describing the same Topclass system for additional teachings.

### Issue 6

### Summary of the Virtual Campus Publication

The Virtual Campus publication is substantially similar to the invention taught in the Alcorn patent under reexamination.   For example, the Virtual Campus publication teaches a course-based system for providing to an educational community of users access to a plurality of online courses.  For example, the Virtual Campus publication teaches on page 4 that:

> The Virtual Campus rests on the interaction of different actors with resources on   a network. These actors meet to participate in learning events:  curriculum programs, courses, learning units, or single learning activities.

The Virtual Campus publication also teaches a plurality of user computers, with each user computer being associated with a user of the system and with each user having

predefined characteristics indicative of roles, such as student, instructor, and

administrator (content provider) and thus having access to files associated with these

differing roles. Specifically, see Figure 4 below, which is reproduced from page 17,

Figure 1 of the Virtual Campus publication.



Figure 4. Actors Networked in the Virtual Campus

Regarding predefined roles, the Virtual Campus publication further teaches that

the users can also be members of a student class (learners), instructor (trainers), and

administrators (managers) and access files associated with these differing roles (page 5).

## The Proposed Virtual Campus Rejections

The proposed rejection asserts that the Virtual Campus publication anticipates, or renders obvious, in view of various secondary references, claims 1-44 of the Alcorn patent. See pages 2, 22, 23, and Appendix "G" to said '199 Request

As discussed above, the Virtual Campus publication is substantially similar to the invention taught in the specification of the Alcorn patent under reexamination. Thus, the Virtual Camps publication is a highly relevant reference.

## The Proposed Virtual Campus Anticipatory Rejections Are Adopted as Proposed

Specifically, the requester asserts that the Virtual Campus publication anticipates claims 1, 2, 6, 7, 9-11, 13, 14, 36, 37, 43, and 44 (page 22 of the '199 Request) as is also consistent with the proposed rejections formulated in Appendix "G."

Due to the similarities between the Virtual Campus publication and the Alcorn patent (as discussed above), the proposed anticipatory rejection is adopted as proposed.

## The Proposed Virtual Campus Obviousness Rejections Are Not Adopted

The requester also asserts that the Virtual Campus publication renders obvious, by itself or in combination with various secondary references, claims 1-44 (page 22 of the '199 Request). The requester asserts in Appendix "G" however (as discussed above) that the Virtual Campus publication anticipates claims 1, 2, 6, 7, 9-11, 13, 14, 36, 37, 43, and

44. Thus, Appendix "G" fails to clearly ascertain the differences between the claimed

invention and the prior art. Thus, the proposed rejection fails to set forth a *prima facie*

case of obviousness under the *Graham* factors for said claims.   In addition, these

proposed 103 rejections however, as formulated in Appendix "G", fail to set forth

sufficient reasoning regarding legal conclusions of obviousness. "[T]here must be some

articulated reasoning with some rational underpinning to support the legal conclusion of

obviousness." *In re* Kahn,  441 F.3d 977, 988, 78 USPQ2d 1329, 1336 (Fed. Cir. 2006).

See also KSR International Co. v. Teleflex Inc., 127 S.Ct. 1727, 1741 (2007).


Thus, the proposed obviousness rejections are not adopted.


### Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

**Claims 1, 2, 6, 7, 9-11, 13, 14, 36, 37, 43, and 44** are rejected under 35

U.S.C. 102(b) as being anticipated by the Virtual Campus publication.


This rejection was proposed by the third party requester in said '199 Request and

is adopted as proposed. Thus, pages 22 and 23 of the '199 Request and those pages of

Appendix "G" that relate to claims 1, 2, 6, 7, 9-11, 13, 14, 36, 37, 43, and 44 are hereby

incorporated by reference.

## Issue 7

The proposed rejection asserts that claims 1-44 of the Alcorn patent are rendered obvious by various publications and patents disclosing rule based access control, considered in combination with other prior art. See pages 23-29 of the '199 Request. The proposed rejections however fail to include even a minimal claim by claim analysis comparing limitations from the Alcorn patent claims to elements of the prior art and thus fails to ascertain the differences between the claimed invention and the prior art. Thus, the proposed rejection fails to set forth a *prima facie* case of obviousness under the *Graham* factors for said claims. Thus, the proposed rejections are not adopted.

## Issue 8

The proposed rejection asserts that claims 1-44 of the Alcorn patent are rendered obvious by various publications describing educational software environments, considered in combination with other prior art. See pages 29-34 of the '199 Request and Appendix "H". The proposed rejections however fail to include even a minimal claim by claim analysis comparing limitations from the Alcorn patent claims to element of the prior art and thus fails to ascertain the differences between the claimed invention and the prior art. Thus, the proposed rejection fails to set forth a *prima facie* case of obviousness under the *Graham* factors for said claims. Thus, the proposed rejections are not adopted.

## Issue 9

### Whether the Earliest Effective Filing Date of Claims 1-44
### of the Alcorn Patent is June 30, 2000.

MPEP § 2658.I.C, citing to 2258.I.C, states that rejections may be made in

reexamination proceedings based on intervening patents or printed publications where the

patent claims under reexamination are entitled only to the  filing date of the patent and

are not supported by an earlier foreign or United States patent application whose filing

date is claimed.  No intervening patents or printed publications (i.e., prior art with an

effective date before the filing data of the Alcorn patent, but <u>after</u> the filing date of the

earlier U.S. provisional applications whose priority is sought) were applied in this Office

action.  Thus, the issue of the earliest effective date of claims 1-44 of the Alcorn patent

will not be addressed and rejections based on a lack of priority will not be adopted at this

time.

## Issue 10

### Summary of Topclass Version 1.2 Administrator's Guide

The Topclass Version 1.2 Administrator's Guide is substantially similar to the

invention taught in the Alcorn patent under reexamination.  For example, For example,

TopClass teaches a course-based system for providing to an educational community of

users access to a plurality of online courses.  Specifically, TopClass teaches a "learning

environment that distributes course materials" and "allow[s] on-line communication

between instructors and students."  TopClass, pp. 1 and 4.  "Students are users who are

taking courses" and instructors assist students taking courses. TopClass, p. 4. Student

users are assigned to one or more classes, each having a specific set of course material;

instructors are assigned to one or more classes, and for each class they have a number of

students assigned to them. .TopClass, p. 74.


The TopClass publication also teaches a plurality of user computers, with each

user computer being associated with a user of the system and with each user having

predefined characteristics indicative of roles, such as student, instructor, and

administrator. Specifically, TopClass teaches that each user has a computer (http client)

associated with the TopClass server, as illustrated in Fig. 1, and as reproduced below.



**Figure 1. TopClass, HTTP Server and Client**

1.  The Client sends a TopClass HTTP request to the server.

2.  The HTTP Server passes the request directly to TopClass.

3.  TopClass generates the appropriate HTML page and
    returns it to the HTTP server.

4.  The HTTP server sends the page and any associated media
    files to the client.


Furthermore, TopClass teaches a course-based system with three predefined

categories of user: student, instructors, and administrators. TopClass, pp. 4-6, 19, 23-24,

and 74-81. "[A]dministrators always have access to the entire TopClass server."

TopClass, p. 74. Students have limited access to system files (they are not given any of the security privileges described in TopClass at pp. 78-80). Instructors' access to create and edit files depends on the configuration of security privileges for each instructor, which determines the degree to which an instructor can edit course files, modify individual student coursework, create and edit class announcements, and delete messages posted to class discussion lists. TopClass, pp. 78-80. See also TopClass, p. 32 (illustrated "Access Preferences" page can be used by administrator to "specify default access rights for various system objects," including checkboxes for administrators, instructors, and students that can be used to determine whether a particular predefined user category can, for example, view, edit, or delete messages and course unit material).

### The Proposed Topclass Version 1.2 Administrator's Guide Rejections

The proposed rejection asserts that the Topclass Version 1.2 publication anticipates, or renders obvious, in view of various secondary references, claims 1-44 of the Alcorn patent. See pages 1, 9-16, and Appendix "B" to said '199 Request

As discussed above, the IMS Specification is substantially similar to the invention taught in the specification of the Alcorn patent under reexamination. Thus, the IMS Specification is a highly relevant reference.

### The Proposed Topclass Version 1.2 Administrator's Guide
### Anticipatory Rejections Are Adopted as Proposed

Specifically, the requester asserts that the Topclass Version 1.2 Administrator's

Guide anticipates claims 1-7, 9, 11-21, 24-34, 36-40, and 43 (page 1 of the '330

Request).

Due to the similarities between the Topclass Version 1.2 Administrator's Guide

and the Alcorn patent (as discussed above), the proposed anticipatory rejection is adopted

as proposed.

### The Proposed Topclass Version 1.2 Administrator's Guide
### Obviousness Rejections Are Adopted with Modification

The requester also asserts that the Topclass publication renders obvious, by itself

or in combination with various secondary references, claims 1-44 (page 10 of the '330

Request).  The requester asserts on page 1 however (as discussed above) that the

Topclass publication anticipates claims 1-7, 9, 11-21, 24-34, 36-40, and 43.  Thus, the

'330 Request fails to clearly ascertain the differences between the claimed invention and

the prior art.  Thus, the proposed rejection fails to set forth a *prima facie* case of

obviousness under the *Graham* factors for said claims.

The other proposed obviousness rejections however clearly set forth a *prima facie*

case of obviousness and thus are adopted as proposed.

### *Claim Rejections - 35 USC § 102*

**Claims 1-7, 9, 11-21, 24-34, 36-40, and 43** are rejected under 35 U.S.C. 102(b)
as being anticipated by the Toplcass Version 1.2 Administrator's Guide publication.

This rejection was proposed by the third party requester in said '330 Request and
is adopted as proposed. Thus, pages 4-18 of the '330 Request (claim rejection chart) that
that relate to claims 1-7, 9, 11-21, 24-34, 36-40, and 43 are hereby incorporated by
reference.

### *Claim Rejections - 35 USC § 103*

**Claims 8, 22, and 23** are rejected under 35 U.S.C. 103(a) as being unpatentable
over the Toplcass Version 1.2 Administrator's Guide publication, and further in view of
Galt et al., "Information Sharing: Collaborating Across the Networks," Proceedings of
the 11th Annual International Conference on Systems Documentation, (Waterloo,
Ontario, Canada, 1993), 361-362 (New York: ACM Press, 1993) ("Galt").

This rejection was proposed by the third party requester in said '330 Request and
is adopted as proposed. Thus, pages 4-18 of the '330 Request (claim rejection chart) that
that relate to claims 8, 22, and 23 are hereby incorporated by reference.

**Claims 10, 35, and 44** are rejected under 35 U.S.C. 103(a) as being unpatentable
over the Toplcass Version 1.2 Administrator's Guide publication, and further in view of
Hartley et al., "Enhancing Teaching Using the Internet: Report of the Working Group on

the World Wide Web as an Interactive Teaching Resource," Proceedings of the 1st

Conference on Integrating Technology into Computer Science Education (Barcelona,

June 2-6, 1996) 218-228 (New York: ACM Press, 1996) ("Hartley").


This rejection was proposed by the third party requester in said '330 Request and

is adopted as proposed. Thus, pages 4-18 of the '330 Request (claim rejection chart) that

that relate to claims 10, 35, and 44 are hereby incorporated by reference.


**Claims 41 and 42** are rejected under 35 U.S.C. 103(a) as being unpatentable over

the Toplcass Version 1.2 Administrator's Guide publication, and further in view of U.S.

Patent No. 5,002,491 ("Abrahamson").

This rejection was proposed by the third party requester in said '330 Request and

is adopted as proposed. Thus, pages 4-18 of the '330 Request (claim rejection chart) that

that relate to claims 41 and 42 are hereby incorporated by reference.

## VI. Conclusion

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be an Action Closing Prosecution (ACP), will be governed by 37 CFR 1.116, which will be strictly enforced.

Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes* reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to the patent owner in a reexamination proceeding. Additionally, 35 U.S.C. 314(c) requires that inter partes reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.937). Patent owner extensions of time in inter partes reexamination proceedings are provided for in 37 CFR 1.956. Extensions of time are not available for third party requester comments, because a comment period of 30 days from service of patent owner's response is set by statute. 35 U.S.C. 314(b)(3).

The Patent Owner is reminded of the continuing responsibility under 37 CFR 1.985(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the Benoit patent (U.S. Patent No. 6,988,138 B1) throughout the course of this reexamination proceeding. The Third Party Requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding through the course of this reexamination proceeding. See MPEP § 2686 and 2686.04.

All correspondence relating to this inter partes reexamination proceeding should

be directed as follows:

By **U.S. Postal Service Mail** to:

      Mail Stop *Inter Partes* Reexam
      ATTN: Central Reexamination Unit
      Commissioner for Patents
      P.O. Box 1450
      Alexandria, VA 22313-1450

By FAX to:   (571) 273-9900
          Central Reexamination Unit

By hand to:   Customer Service Window
          Randolph Building
          401 Dulany St.
          Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the

examiner, or as to the status of this proceeding, should be directed to the Central

Reexamination Unit at telephone number (571) 272-7705.

Signed:                                Conferees:

                                             AD

Roland G. Foster
Primary Examiner
Central Reexamination Unit 3992

                                           ESK
                                   ERIC S. KEASEL
                                   CRU SPE-AU 3992



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,330 | 11/17/2006 | 6988138 | | 3192 |

7590          01/25/2007

WAYNE M. KENNARD
HALE AND DORR LLP
60 STATE STREET
BOSTON, MA  02109

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 01/25/2007

Please find below and/or attached an Office communication concerning this application or proceeding.