**Exhibit 1**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMEBASE PTY LTD., | Case No. 07-CV-4551 (JNE/JJG) |
| | Case No. 07-CV-1687 (JNE/JJG) |
| Plaintiff, | |
| vs. | DEFENDANTS' MEMORANDUM |
| | IN SUPPORT OF APPEAL OF AND |
| THE THOMSON CORPORATION, | OBJECTIONS TO ORDERS |
| WEST PUBLISHING CORPORATION, | DENYING A STAY OF THE '228 |
| and WEST SERVICES, INC., | CASE (NO. 07-4551) AND LIFTING |
| | THE STAY OF THE |
| Defendants. | '592 CASE (NO. 07-1687) |

## INTRODUCTION

This appeal raises important questions about the management of patent litigation cases. When there are multiple patents in suit, and some but not all of those patents are in reexamination at the U.S. Patent and Trademark Office ("PTO"), courts generally stay the entire litigation pending completion of the reexamination. In this case, however, Magistrate Judge Graham did the complete opposite, deciding to proceed with the entire litigation despite the fact that one of the patents in suit is undergoing reexamination in the PTO. This represents a significant departure from how patent cases are and ought to be managed in this District.

This case involves two related patent cases, now consolidated, where one of the two patents at issue is undergoing reexamination. The Court stayed the first of the now-consolidated cases in June of 2007. Plaintiff brought the second case, based on a related

patent, in November of 2007. Defendants moved to consolidate the two cases and to stay the entire case pending completion of the reexamination proceedings for the first patent.

Magistrate Judge Graham consolidated the two cases, but declined to stay the second patent case and went so far as to lift the Court's previously-ordered stay of the first case. (Case No. 07-4551, Order at 11, Feb. 12, 2008, Docket No. 24 [hereinafter Ex. 1][1].) The effect of this Order is to require the parties to move forward with the litigation of a two-patent case even though one of the patents is undergoing reexamination by the PTO. In reaching this result, the Magistrate Judge made three errors:

First, the Order was clearly erroneous in finding that the circumstances underlying the stay the Court had previously issued for the first case had changed. (*Id.* at 10.)

Second, the Order was clearly erroneous in finding that, because a PTO examiner had allowed the patent in the second case to issue over the same prior art being considered by a different examiner in the reexamination proceeding, the PTO's reexamination proceedings "can have little to no effect on the [second patent], or the instant litigation." (*Id.* at 6).

Third, the Order was clearly erroneous in finding that, because TimeBase must take positions during the reexamination to which it will be bound and "Thomson does not

---

[1] The Magistrate Judge issued a separate order in the first case lifting the stay. (Case No. 07-1687, Order, Feb. 12, 2008, Docket No. 51 [attached hereto as Ex. 2].) Defendants refer to only the Order in Case No. 07-4551, which contains all of the substantive discussion, for the remainder of this brief.

have to take any position in the reexamination," Timebase will suffer a clear tactical disadvantage if the case is stayed. (*Id.* at 8.)

These errors caused Magistrate Judge Graham to misapply two of the three factors of the relevant legal test. Under a correct application of the factors, the Orders should be reversed and the consolidated case stayed pending the outcome of the reexamination. *See, e.g., VData, LLC v. Aetna, Inc.*, No. 06-CV-1701, 2006 WL 3392889 (D. Minn. Nov. 21, 2006) (Ericksen, J.); *Pacesetter Inc. v. Cardiac Pacemakers, Inc.*, No. 02-1337, 2003 WL 23303473 (D. Minn. Nov. 19, 2003) (Frank, J.).

## BACKGROUND

The plaintiff in both cases is TimeBase Pty. Ltd. ("TimeBase"), an Australian company owned by Deutsche Bank or its subsidiaries. TimeBase does not sell any products, offer any services, or have any employees, offices, or other facilities in the United States.

The defendants in each case are The Thomson Corporation, West Publishing Corporation, and West Services, Inc. (collectively "Thomson"). Thomson offers a variety of information services, including legal information services, throughout the United States.

***The '592 Patent Case.*** On January 24, 2007, TimeBase filed suit on U.S. Patent No. 6,233,592 ("the '592 patent"), accusing Thomson's PastStat Locator, RegulationsPlus, and Graphical Statutes products of infringement. (Ex. 1 at 2.) Shortly thereafter, a third party filed a request for *ex parte* reexamination of the '592 patent based on three prior art references. (*Id.* at 3.) The PTO granted the request, finding that each of

the references raised substantial questions of patentability. (*Id.*) Thomson had no involvement in the reexamination request and has no ability to participate in the reexamination.

Thomson moved to stay the '592 case pending the completion of the reexamination process. On June 28, 2007, Magistrate Judge Graham granted Thomson's motion to stay the '592 case because it was "very clear" that each of the three factors in the applicable legal test favored a stay. (First Stay Hr'g Tr. 27:9-28:11, June 28, 2007 [hereinafter Ex. 3].) Magistrate Judge Graham found that (1) judicial economy supported a stay; (2) the early stage of the proceedings supported a stay; and (3) Timebase would not suffer undue prejudice or a clear tactical disadvantage as a result of the stay. (*Id.*)

***The '228 Patent Case.*** On November 6, 2007, TimeBase was granted U.S. Patent 7,293,228 ("the '228 patent"), which is a continuation-in-part of the '592 patent. Prior to the issuance of this patent, TimeBase submitted to the examiner the same three prior art references that provided the basis for the reexamination of the '592 patent. The examiner for the '228 patent allowed the patent to issue over these prior art references. (Ex. 1 at 3.)

On November 7, 2007, TimeBase filed suit against the same Thomson defendants, alleging that the same products – PastStat Locator, RegulationsPlus, and Graphical Statutes – infringe the '228 patent. (*Id.* at 2.) TimeBase filed the case as a related case to the '592 case. (*Id.*) The patents are closely related because: (1) they are directed toward similar subject matter; (2) the '228 patent contains the entire '592 patent specification; and (3) they contain a number of nearly-identical claim terms.

Because the cases involve the same parties, products, overlapping patents, and common questions of law and fact, Thomson moved to consolidate the '228 case with the '592 case, and to stay the consolidated case.

In the February 12, 2008 Order, Magistrate Judge Graham agreed that the cases should be consolidated. (Ex. 1 at 10-11.) She declined to stay the '228 case, however, and went on to lift the stay of the '592 case, *sua sponte*. (*Id.* at 11; Ex. 2.) Thomson appeals the denial of the stay of the consolidated case.

## ISSUES FOR APPEAL

On this appeal, the issues are whether the following findings are clearly erroneous or contrary to law: (1) that the circumstances underlying the stay of the '592 patent have changed; (2) that the "PTO's issuance of the '228 over the prior art at issue in the reexamination means that the PTO's disposition of the '592 can have little to no effect on the '228, or the instant litigation"; and (3) that TimeBase would suffer a clear tactical disadvantage because it may have to take a position on the '592 patent that binds it in subsequent litigation if the case is stayed.

## ARGUMENT

**I.   Applicable Legal Standards.**

This Court must modify or set aside any portion of a Magistrate Judge's order found to be clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. R. 72.2(a); *RP, Inc. v. Liefschultz,* No. 05-86, 2005 WL 1432224, *1-2 ((D. Minn. April 4, 2005 ) (granting appeal and reversing a portion of magistrate judge's order).

The following three factors, relied upon by Magistrate Judge Graham in the Order, are used to determine whether to grant a stay pending reexamination:

1. whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party;

2. whether a stay will simplify the issues in question; and

3. whether discovery is complete and whether a trial date has been set.

*See VData*, 2006 WL 3392889, at *5. The ultimate decision of whether to grant a stay rests with the discretion of the court, although "[c]ourts have adopted a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *Id.* at *4.

## II. The Decision Not to Stay the Consolidated Case Was Clearly Erroneous and Contrary to Law.

### A. None of the Circumstances Supporting the Stay of the '592 Litigation Have Changed.

In June 2007, Magistrate Judge Graham granted a stay of the litigation concerning the '592 patent because it was "very clear" that all of the factors supported a stay. (Ex. 3 at 27:9-28:11.) The '592 patent remains in reexamination. In the February 12, 2008 Order, however, Magistrate Judge Graham lifted the stay of the '592 case based on a finding that the "circumstances underlying the stay [the Court] issued in the '592 litigation have changed." (Ex. 1 at 10.)

The only circumstance identified in the Order as a change concerning the **'592 patent** (the patent from the first case) was that a "PTO examiner has now indicated that the prior art references at issue in the reexamination did not preclude issuance of the **'228 patent**." (Ex. 1 at 10 (emphasis added).) However, the PTO examiner's decision to

allow the '228 patent (the patent from the second case) to issue over the references that are part of the '592 patent reexamination does not affect what happens during that reexamination. The claims of the '592 patent may still be amended, canceled, invalidated, or confirmed during that reexamination in view of those, or any other, references.[2] TimeBase admitted this during the hearing. (*See id.* at 6 ("The parties agreed at oral argument that the two matters are completely independent within the PTO."); *see also* Second Stay Hr'g Tr. at 40:7-13, Jan. 24, 2008 [hereinafter Ex. 4].) Magistrate Judge Graham likewise recognized that "the issuance of the '228 does not affect the '592 reexamination." (Ex. 1 at 6.) Therefore, all the reasons for staying the '592 litigation in June 2007 still apply, and Magistrate Judge Graham's finding to the contrary was clearly erroneous. The stay for the '592 case should not have been lifted.

Courts routinely stay litigation pending reexamination proceedings. *VData*, 2006 WL 3392889, at *8. Decisions of the PTO during reexamination can affect: (1) fact discovery, (2) expert discovery, (3) discovery motions, (4) *Markman* hearings, (5) summary judgment motions, and (6) the trial itself, all of which might need to be redone in light of the reexamination. *See, e.g., id.* at *6. For example, if the parties and the Court move forward based on the current scope of the claims and the current prosecution history record, witnesses, documents, prior art, and other discovery will be based on the scope of the current claims and that record. The Court will prepare for and hold a

---

[2] One reason for this is that, although the patents are directed to similar subject matter, they have different claims, and patentability is determined on a claim-by-claim basis.

*Markman* hearing and construe the claims based on the current record and prosecution history. The parties will then file dispositive motions and the Court will decide them based on these constructions. The parties and the Court will prepare for trial based on the current scope and record for the '592 claims. If the PTO's reexamination causes a cancellation or amendment of the claims or a change in the prosecution history, however, the judiciary and the parties will have wasted considerable resources. As this Court recognized in *VData*:

> It would be a **serious waste** of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.

2006 WL 3392889 at *8 (emphasis added) (citation omitted). Indeed, it is possible that the reexamination might eliminate the trial for the patent under reexamination altogether, making moving forward even more inefficient. *See id.* at *6 ("An obvious benefit to a stay in terms of judicial economy is that the PTO could potentially eliminate trial on the issue of infringement.").

The fact that the '228 patent issued over references that are part of the reexamination of the '592 patent has no impact on the above analysis. The '592 patent reexamination will proceed independently, as TimeBase and Magistrate Judge Graham have acknowledged. Unless the stay of the '592 patent remains in effect, the benefits of simplifying the issues and promoting judicial economy will be lost and the risk of wasting judicial and party resources will remain.

B.   **Judicial Economy Favors a Stay of the Entire Case.**

Because it is clear that the stay of the '592 case should remain in effect, it follows that this entire action should be stayed pending the conclusion of the reexamination proceedings for the '592 patent. Magistrate Judge Graham found, and there can be no genuine dispute, that in light of the close relationship between the parties, the products, and the patents in the '592 and '228 cases, the cases should be consolidated. (Ex. 1 at 10-11.) Therefore, this is a single case in which two patents have been asserted, one of which is undergoing reexamination.

Courts in this District have recognized that staying an entire case involving multiple patents, where not all patents are in reexamination, is the appropriate way to manage litigation. *See VData*, 2006 WL 3392886, at *8 ("this factor weighs strongly in favor of **staying the entire case** pending reexamination of only the [earlier] patent, even if the PTO does not grant reexamination of the [later] patent" (emphasis added)); *Pacesetter*, 2003 WL 23303473, at *3; *see also CNS, Inc. v. Silver Eagle Labs, Inc.*, No. 04-968, 2004 WL 3631121, at *2 (D. Minn. Nov. 29, 2004) ("There are few efficiencies to be found in engaging in discovery and trial on one patent, while staying the case on a second patent, particularly where there is only one accused product and where the patents share some common prosecution history."). In *Pacesetter*, for example, the four patents-at-issue were unrelated, yet the entire case was stayed when only two of the patents were in reexamination. 2003 WL 23303473, at *1. Because the patents were unrelated, the patents not undergoing reexamination likely would remain unaffected by the reexamination. The *Pacesetter* Court still rejected "the option of a partial stay of the two

patents that are not in reexamination" because "the four patents in question, although unrelated, are inextricably intertwined. There is no discernable demarcation of issues, experts, or products. In addition, duplicity and overlap will occur when addressing issues such as experts, discovery, damages, and products." *Id.* at *1.

Magistrate Judge Graham reasoned that *VData* and *Pacesetter* were inapposite because neither of those cases involved a situation where the PTO already had considered the reexamination references and "issued its opinion on the prior art in question." (Ex. 1 at 7.) This reasoning is clearly erroneous, however, because, as explained earlier, the PTO's decision to allow the '228 patent over the same references being considered in the '592 patent reexamination has no bearing as a matter of law on whether some or all of the claims of the '592 patent will be amended, canceled, invalidated, or confirmed in reexamination, or on what positions TimeBase may be required to take, all of which may considerably affect the scope of the '592 patent.

The same reasons for staying the entire case in *VData* and *Pacesetter* apply here. The parties, products, documents, and witnesses overlap for both cases. It would be inefficient for the parties to move forward with separate discovery, and for the Court to consider separate discovery motions, *Markman* proceedings, summary judgment proceedings, and perhaps trials, for both the '228 and '592 patents. *Pacesetter*, 2003 WL 23303473, at *3 ("A partial stay could create multiple and duplicitous proceedings."). As Magistrate Judge Graham recognized, "judicial economy dictates litigating the two cases together." (Ex. 1 at 7.) Therefore, even if the '592 and '228 patents were unrelated, judicial economy would dictate that the entire case should be stayed, because no change

in circumstances has occurred that would warrant lifting the stay with regard to the '592 patent.

Here, however, because the '592 and '228 patents are closely related, there are even stronger reasons to stay the entire proceeding. The '228 patent duplicates the specification of the '592 patent, and TimeBase has claimed that the '228 patent is entitled to the earlier filing date of the '592 patent based on this overlap. Therefore, statements made during reexamination of the '592 patent may be relevant to the claim construction and infringement analysis of the '228 patent. *See, e.g., Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004). Thus, the prosecution history of both the '592 patent and the '228 patent will remain in flux pending the results of the '592 patent reexamination. Under these circumstances, discovery, claim construction, and other activities that proceed while this prosecution history remains unsettled creates the potential for having to duplicate discovery or proceedings based on changes in the prosecution history. Therefore, proceeding with both the '592 patent case and the '228 patent case now risks *additional* waste of judicial and party resources.

### C. TimeBase Will Not Suffer a Clear Tactical Disadvantage by Participating in the Reexamination Proceedings During the Stay.

Magistrate Judge Graham concluded that TimeBase would suffer a clear tactical disadvantage if the cases were stayed because "Thomson does not have to take any position in the reexamination" while TimeBase "may have to take a position on the scope of the '592 patent in the reexamination, a position that binds it in subsequent litigation." (Ex. 1 at 8.) This conclusion is clearly erroneous and contrary to law.

The very fact that TimeBase might indeed make such statements that will bind it under patent law and affect the litigation supports a stay by simplifying issues and avoiding duplicative proceedings and activities, as discussed earlier. In addition, if the Magistrate Judge's conclusion were true, then any stay pending reexamination would *always* cause the patentee to suffer an unfair tactical disadvantage, because the patentee almost inevitably will have to take positions about its patent during the reexamination proceedings. Similar arguments relating to unfair tactical disadvantage and prejudice resulting from the reexamination process itself have been rejected. *See VData*, 2006 WL 3392889, at *5 (rejecting argument that patentee's obligation to defend itself in both a reexamination and in litigation results in an unfair tactical disadvantage or prejudice).

In fact, instead of suffering a disadvantage, Timebase actually may gain a tactical advantage through the reexamination process because the reexamination is an *ex parte* proceeding in which Thomson does not get to participate. Timebase will be able to advocate the patentability of the '592 patent to the PTO without having its arguments "subjected to the traditional testing mechanisms of the adversary process," *Ballew v. Georgia*, 435 U.S. 223, 246 (1978) (Powell, J. concurring in judgment), and then can return to the Court and jury proclaiming that the PTO already has considered the prior art and found the '592 patent to be patentable. That is a potential advantage to TimeBase, and a tactical disadvantage to Thomson, which will have no say in the reexamination. Accordingly, Magistrate Judge Graham's finding that a stay pending reexamination would operate as a clear tactical disadvantage to Timebase was clearly erroneous as a factual matter as well as contrary to law.

Other than the purported tactical disadvantage described above, the Order does not identify any other form of prejudice that would result if the consolidated case were stayed pending reexamination of the '592 patent. In addition, as Thomson previously explained in its briefs requesting a stay of litigation regarding the '592 patent and '228 patent, any other alleged prejudice to TimeBase can be "sufficiently ameliorated" by monetary damages. *See* No. 07-1687, Dkt. No. 35 at 9-11; No. 07-4551, Dkt. No. 12 at 8-9; *see also VData*, 2006 WL 3392889, at *5.

## CONCLUSION

Because of the errors of fact and law in the February 12, 2008 Orders, the Magistrate Judge incorrectly found that two of the three factors that govern the decision whether to grant the stay of patent cases in view of reexamination proceedings weighed against a stay. All three factors, in fact, strongly support the granting of a stay. Magistrate Judge Graham correctly found that the timing factor weighed in favor of a stay – the parties are at the earliest stages of the litigation. As discussed above, the other factors also favor a stay – a stay will not unduly prejudice or present a clear tactical disadvantage to TimeBase, and a stay will simplify the issues and avoid wasteful inefficiencies. Accordingly, for the foregoing reasons, Thomson respectfully requests that the Court reverse the February 12, 2008 Orders and enter an order staying the consolidated cases pending the results of the reexamination of the '592 patent by the PTO.

Dated: February 26, 2008

**FAEGRE & BENSON LLP**

By: *s/ Calvin L. Litsey*
Calvin L. Litsey #153746
David J.F. Gross, #208772
Shawn T. Gordon, # 336439
Kevin P. Wagner, # 34008X

2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Fax: (612) 766-1600
Email: clitsey@faegre.com
Email: dgross@faegre.com
Email: sgordon@faegre.com
Email: kwagner@faegre.com

**Attorneys for Defendants The Thomson Corporation, West Publishing Corporation, and West Services, Inc.**

fb.us.2634498.06