**Exhibit 6**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMEBASE PTY LTD., ) | |
| ) | Civil Action Nos.   07-cv-1687 (JNE/JJG) |
| Plaintiff, ) | 07-cv-4551 (JNE/JJG) |
| vs. ) | |
| ) | **TIMEBASE'S RESPONSE TO** |
| THE THOMSON CORPORATION, ) | **DEFENDANTS' MEMORANDUM IN** |
| WEST PUBLISHING CORPORATION, ) | **SUPPORT OF APPEAL OF AND** |
| AND WEST SERVICES, INC., ) | **OBJECTIONS TO ORDERS** |
| ) | **DENYING A STAY OF THE '228** |
| Defendants. ) | **CASE (NO. 07-4551) AND LIFTING** |
| ) | **THE STAY OF THE** |
| ) | **'592 CASE (NO. 07-1687)** |

The standard of review here is whether the Order is clearly erroneous, or contrary to law. "This is an extremely deferential standard." *Pacesetter Inc. v. Cardiac Pacemakers, Inc.*, No. 02-1337, 2003 WL 23303473 at *1 (D. Minn. Nov. 19, 2003) (citing *Reko v. Creative Promotions, Inc.,* 70 F.Supp.2d 1005, 1007 (D.Minn.1999)); *Ortiz v. Donatelle Assoc., L.L.C.*, 2008 U.S. Dist. LEXIS 3483 at *6 (D. Minn. January 16, 2008) (affirming the Magistrate's denial of a motion to stay discovery and saying that "[t]he standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential.")  (also citing *Reko*) (LEXIS and Westlaw cited cases are Exhibit 4 to the Second Declaration of Joseph N. Hosteny, submitted herewith).

Thomson does not point to any error of fact or law in the Order from which it appeals. The Order considered cases cited by Thomson, and correctly found that there were significant differences between those cases and this case. Thomson omits facts considered by the Magistrate Judge, ignores additional facts that distinguish this case from others, and gets some facts wrong.

Thomson's claim of unfair burdens created by the decision is quite speculative, and disregards that the Order enhances efficiency.

Case 07-1687 involves the '592 patent, presently in reexamination. That case was stayed by the court's order of June 28, 2007, which also provided that the parties were to provide periodic status reports on the reexamination. (Exhibit 1 to Second Hosteny Dec., Order of February 12, 2008, Document No. 24 in case 07-4551, page 3, the "Order.").

Case 07-4551 involves the later '228 patent. It is not being reexamined. The examiner of the '228 considered the references and arguments giving rise to the examination of the '592. (Order, page 3).

There are three defendants. We refer to them jointly as "Thomson."

**<u>Thomson Fails to Show Clear Error</u>**

Rehashing the same arguments and positions taken in the original papers submitted to a magistrate judge is not the right course. Parties are not to be afforded a second bite at the apple when they file objections, as the "goal of the federal statute providing for the assignment of cases to magistrates is to increase the overall efficiency of the federal judiciary." *Camardo v. GM Hourly-Rate Emples. Pension Plan*, 806 F. Supp. 380 (W.D.N.Y. 1992) (citing *McCarthy v. Manson*, 554 F. Supp. 1275, 1286 (D.Conn. 1982), aff'd, 714 F.2d 234 (2d Cir. 1983) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982) (*en banc*)) (footnote omitted). "The purpose of the Federal Magistrates Act is to relieve courts of unnecessary work." *Id.,* citing *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980). There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge. *Id*.

The district court's analysis in *Ortiz v. Donatelle Assoc., L.L.C.*, 2008 U.S. Dist. LEXIS 3483 (D. Minn. January 16, 2008) is helpful here. In *Ortiz*, Magistrate Judge Noel denied a motion to stay discovery prior to resolution of a pending motion to remand to state court. The defendant in *Ortiz* opposed the stay, noting (among other points) that "even if the case is ultimately remanded, any discovery conducted now will be worthwhile, because the state proceedings would require discovery as well." *Id*. at *7. Judge Tunheim in *Ortiz* agreed with Magistrate Noel and the defendant: "As defendant notes, the mere possibility of a remand did not make it fruitless to proceed with discovery." *Id*.

As in *Ortiz*, the Magistrate's order to deny a stay in the present case does not create any error, much less the "clear error" sufficient to overcome the "extreme deference" due to Judge Graham's order. As Judge Graham noted:

> A stay of the '228 litigation cannot be premised on the PTO's expertise, because the PTO has already provided its expertise with respect to the '228. The parties agreed at oral argument that the two matters are completely independent within the PTO. In other words, the issuance of the '228 does not affect the '592 reexamination, and the '592 reexamination does not impact the issuance of the '228.

(Order, page 6). Thomson acknowledged as much. *Id.* As Judge Graham noted, "both parties agree that the PTO's expertise will have minimal, if any, effect on this matter." (Order, page 7). Thus, as Judge Graham concluded:

> [T]he sole basis for the stay is the possibility that TimeBase may make a statement that could narrow its claims with respect to the '592, and therefore with respect to the '228. The Court finds this too slim a reed upon which to predicate a stay of the '228 litigation.

(Order, page 7). Like *Ortiz,* Judge Graham found that the "slim" possibility of a future event did not warrant staying the litigation. In *Ortiz*, the discovery sought would be beneficial, since the litigation would still go forward regardless of the outcome of any remand decision. Likewise, in

the present case, discovery on the accused products will be beneficial regardless of the outcome of the reexamination.  In other words, even in the unlikely event that claims of the '592 patent were cancelled, the claims of the '228 patent would still have to be litigated.  No result in the '592 reexamination will narrow the scope of the products in suit for this consolidated case.  And TimeBase, being cognizant of its issued '228 claims, is not going to take any position in the '592 reexamination that redefines the terms of the '228 patent.  Thus, like the district court in *Ortiz*, this Court should defer to the Magistrate Judge's weighing of these stay factors and affirm Judge Graham's denial of the motion to stay discovery.

### **Thomson Points to No Error Regarding the Law**

The court considered and distinguished Thomson's cases. In *Pacesetter Inc*, the plaintiff, not a third party, started the reexaminations.  2003 WL 23303473.  The references in the reexaminations had not been considered in any of the patents asserted in that case.  Here, TimeBase did not start any reexamination. On the contrary, it petitioned the PTO to withdraw the '228 patent from issue after its claims had been allowed. TimeBase then presented the '228 examiner with the references and arguments made to provoke the '592 reexamination, and with observations by third parties provided to the European Patent Office, too.  Withdrawing the '228 from issue and dealing with the additional references took months.  (Hosteny Dec., Document no. 17-3, Exhibit 16).  The '228 patent then issued after the additional materials were cited and considered by the '228 examiner.  (Order, pages 3 and 6; pages 6 and 7 of TimeBase's Response To Thomson's Motion To Stay And Consolidate, Docket No. 17, and Hosteny Dec., Exhibits 8 and 16).

Thomson cited *VData LLC v. Aetna, Inc.*, No. 06-1701, 2006 WL 3392889, at *4 (D. Minn. Nov. 21, 2006). But in that case, reexamination had been sought on both patents in the

4

suit, and had been granted on one. The decision about the other reexamination was pending at the time of the opinion. (It was subsequently granted in January, 2007. Hosteny Dec., Exhibit 1). The period of potential harm to the plaintiffs in *VData* was short: the patents had only a year of life remaining when the stay was granted. *VData LLC*, at *3. Here, the patents have a decade or more of life remaining.

Thomson also cited *Alloc v. Unilin Decor N.V.,* 2003 U.S. Dist. LEXIS 11917 (D.Del. 2003), where one of four patents was being reexamined, and where the other three had been held not infringed by the International Trade Commission. The ITC decision was on appeal. The status of all four patents was unsettled.

Thomson admits that the Magistrate Judge considered the correct factors governing stays. (Appeal memo, page 6). The Magistrate Judge considered all three of these cases and said:

> The unusual history of the two patents at issue before the PTO distinguishes this case from those upon which Thomson relies . . . . In none of those cases had the PTO already considered the import of the prior art references at issue at the time the stay was sought. Thus, while courts have stayed patent infringement cases pending reexamination of related patents, and even unrelated patents, those cases did not involve a situation, as here, where the PTO had already issued its opinion on the prior art in question. Thus, the Court finds those cases inapposite.

(Order, page 7). The distinction is correct.

Thomson disagrees with the Magistrate Judge's interpretation of these cases. But it does not say she got the facts of the cases wrong.

### **The Magistrate Judge's Conclusions Are Reasonable**

The Magistrate Judge's decision that "A PTO examiner has now indicated that the prior art references at issue in the reexamination did not preclude issuance of the '228 patent" is accurate. (Appeal memo, page 6, quoting page 10 of the Order). Thomson does not point to any error of fact. It simply – and unrealistically – argues with the reasonable inference to be drawn

from that fact. The court stated that the reexamination of the '592 could "have little or no effect on the '228, or the instant litigation." (Order, page 6). It found Thomson's argument – that TimeBase might have to say something about the '592 that might affect the '228 – "too slim a need upon which to predicate a stay of the '228 litigation." (Order, page 7). It said Thomson's cases were distinguishable. *Id*. The court exercised its discretion in an appropriate way:

> A PTO examiner has now indicated that the prior art references at issue in the reexamination did not preclude issuance of the '228 patent. While the '592 examiner could conclude otherwise, the record now before the Court supports moving forward with the litigation. The Court, therefore, in its discretion, finds that circumstances underlying the stay it issued in the '592 litigation have changed, and the '592 stay should be lifted. The '228 and '592 cases shall now proceed together.

Order, page 10.

The standard here is not whether the Magistrate Judge was correct; what matters is whether there is any clear error. The decision by the Magistrate Judge is, in TimeBase's opinion, correct. In any event, however, it certainly is not clear error, and is reasonable, as in *Ortiz*. Thomson's disagreement with the court is not a demonstration of clear error.

### **Thomson's Appeal Memorandum Contains Factual Errors and Omissions**

Thomson persists in saying that TimeBase submitted, and the '228 examiner considered the three references giving rise to the reexamination of the '592 patent. (Appeal memo, page 4). That is not correct. TimeBase submitted more than just the references to the PTO. It submitted the request for reexamination of the '592 patent, which contains the arguments supporting reexamination. It submitted the order granting reexamination. It submitted the third party observations made to the European Patent Office. (See the third page of the '228 patent, in the Hosteny Dec., Exhibit 8). The Magistrate Judge agrees. (Order, page 3). Thus, the '228 examiner had the references. The examiner also had the arguments made by those parties who

are adverse; they assert that TimeBase's inventions are not patentable. The examiner allowed the '228 patent to issue over the references and the arguments against patentability. Page 4 of Thomson's appeal brief is inaccurate.

Thomson says that the circumstances have not changed since the stay of the '592 was granted. That, too, is incorrect. First, the stay of the '592 was granted with a condition: periodic reports about the status of that reexamination. (Order, page 3). The court's requirement for updates at six-month intervals was a clear sign that any stay would not be indefinite in the absence of progress in the Patent Office. Second, there had been no progress in the '592 reexamination when the court issued its Order. (Order, pages 3-4). Third, a new patent had issued, the '228. Fourth, that new patent cited and issued over the materials and arguments described above. (Order, page 3 ("While the circumstances existing at that time made that stay appropriate, things have changed.")). The court also had the benefit of additional statistical evidence concerning the duration of reexaminations. (Order, page 4, n. 3; see Exhibits 1-6 and 10 to the Hosteny Dec.) A decision to wait no longer cannot be said to be unreasonable, much less clear error.

Thomson's arguments are clouded by its inconsistent treatment of examiners, too. It repeatedly argues that we should wait for the '592 reexamination, in part because that examiner make take substantive action affecting the '592. The Magistrate Judge considered that possibility. But, rather inconsistently, Thomson suggests that the examiner of the later patent, the '228, failed to do his duty:

> No one knows how carefully that examiner really looked at those. Those were submitted after he had already granted an allowance and they were put in with a whole bunch of other art. You know, we can presume he did, but nobody really knows how they operate.

(Exhibit 2, Hearing Transcript of January 24, 2008, page 13, lines 5 to 10). Examiners are quasi-judicial officials who are presumed to carry out their duties. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995), *affirmed,* 517 U.S. 370 (1996) ("Patent applications, unlike contracts, are reviewed by patent examiners, quasi-judicial officials trained in the law and presumed to "have some expertise in interpreting the [prior art] references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359, 220 U.S.P.Q. (BNA) 763, 770 (Fed. Cir. 1984).*"). Nor may an examiner's work be challenged without evidence. *Genzyme Corp. v. Transkaryotic Therapies, Inc.,* 346 F.3d 1094, 1103 n.3 (Fed. Cir. 2003) (the examiner is presumed to have done his job unless there is evidence to the contrary). Here, the evidence is that the examiner of the '228 considered the arguments and references. (See the Hosteny Dec., Exhibit 16, and in particular the examiner's detailed actions on April 23, 2007 and May 30, 2007).

### Thomson's Only New Case is Distinguishable

Thomson cites one new case, *RP, Inc. v. Liefschultz,* 2005 WL 1432224 (D. Minn. April 4, 2005) which says that the "standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential." Winston Schimming, the sole shareholder of the defunct corporation, RP, Inc., sought to represent his dissolved corporation *pro se* with respect to a claim for breach of contract to which RP had been a party. The Magistrate Judge denied his motion, using as authority a case from the Court of Appeals for the Federal Circuit. The District Judge affirmed that part of the order but, following a case from the Eleventh Circuit and Rule 25(c) of the Federal Rules of Civil Procedure, overruled a part of the order for two reasons. First, Schimming should have been allowed to substitute himself on the

breach of contract claim because he had assumed RP's assets. Minnesota law provided for the distribution of a dissolved corporation's assets to its shareholders. Second, there were other claims in the case that Schimming was asserting as an individual; those claims were going to continue in any case.

This case is no help to Thomson. The Magistrate Judge here did not fail to consider appropriate authority, or one of the Federal Rules, or Minnesota law. She considered the authorities cited by Thomson, and did not agree with Thomson's reasoning.

### **Thomson's Claim of Inefficiency Is Both Incorrect and Speculative**

Thomson claims that any PTO decision affects fact and expert discovery, discovery motions, dispositive motions, a Markman hearing, and a trial. (Appeal memo, page 7). Thomson even claims that the issuance of the '228 has "no impact" on its analysis. (Appeal memo, page 8).

The Magistrate Judge said that, based on the statements of both parties, "judicial economy dictates litigating the two cases together." (Order, page 7). Because a stay of the '228 was not appropriate, the overlap made handling the cases separately inefficient. (Order, pages 7-8). Much like the decision in *Ortiz,* the Magistrate Judge also recognized that much could be done while waiting for anything that might be useful from the PTO:

> If the PTO confirms the '592's claims, Thomson can still argue the invalidity of both patents in court or the PTO using prior art it has kept to itself during the current PTO proceeding. If the PTO cancels or modifies a claim, Thomson can use that decision to its advantage in subsequent litigation.

Order, page 8.

One of the cases Thomson cited, *Pacesetter Inc.,* suggested that the parties "tailor a discovery plan to meet the needs" of that case, where the plaintiff itself had provoked reexamination of two of the four patents in the complaint it had recently filed. 2003 WL

9

23303473 at *3. Thomson ignored that avenue, and went for all or nothing. The Magistrate Judge's decision here to proceed with discovery, while recognizing that a PTO decision might have some effect – but only on one patent – cannot be said to be unreasonable.

Thomson did not give concrete examples of what duplication or inefficiency might occur. Indeed, since it says that the accused products are the same, discovery about how the products work and damages are unlikely to be affected by any PTO decision. The persons knowledgeable about these subjects can be deposed once. Testimony of inventors is extrinsic, and entitled to less weight than the intrinsic evidence (the patent and its file history). *Philips v. AWH*, 415 F.3d 1303, 1317-19 and 1324 (Fed. Cir. 2005) (*en banc*) (inventor and expert testimony is extrinsic and entitled to less weight than intrinsic evidence; testimony can be helpful about the relevant art, but cannot be used to contradict clear intrinsic evidence).

Thomson's original proposal in the discovery schedule prepared by the parties proposed over a year for fact discovery. There will be more than enough time to consider any event occurring in the '592 reexamination before any trial, and probably before dispositive motions, too.

Thomson speculated at oral argument that discovery in two separate cases would be difficult and duplicative. (Exhibit 2 to Second Hosteny Dec., Transcript, pages 15-16). It speculated that, in the event the cases proceeded separately, there would be instructions not to answer in a second deposition because the question had been asked in the first deposition. (Exhibit 2, Transcript, page 16). Instructions not to answer are limited to those instances identified in prohibited by Rule 30(d)(1) of the Federal Rules of Civil Procedure. Furthermore, the Order allows discovery to be taken with respect to both cases simultaneously. Thomson complains that the parties should not "move forward with separate discovery . . . " (Appeal

Memo, page 10). But that factor was dealt with by Thomson's motion to consolidate, which was granted. Thomson, we suspect, made that motion to enhance its chances for a stay. Whatever the reason, no separate discovery will be needed. The speculative problem raised by Thomson does not exist.

### Thomson's Argument About Prejudice Was Considered and Rejected

Thomson asserts that, even though the Magistrate Judge addressed the prejudice factor, she nevertheless came to the wrong conclusion. (Appeal Memo, pages 11-13). But the first conclusion in the Order is absolutely correct: TimeBase can be bound by what is said in a reexamination, and Thomson cannot be bound. (Order, page 8). Second, the Order recognized that TimeBase would be prejudiced with respect to the '228 patent because it would have to wait for a PTO decision about the effect of references that had already been considered by the PTO with respect to the '228 patent. (Order, page 9). This, too, is a correct conclusion.

Third, Thomson's decision to keep its "defenses and arguments under cloak" is disadvantageous to the litigation process. (Order, page 9). One of the rationales Thomson pointed to for its first motion for a stay was that the litigation process would benefit from the PTO's expertise. (See Defendants' Memorandum In Support Of Motion To Stay Litigation Pending Reexamination Proceedings, Document no. 35 in the '592 case, at page 8, and see page 18 of Exhibit 3 to the Second Hosteny Dec., the transcript of the hearing on that motion). TimeBase suggested that Thomson disclose any printed publications and patents it was aware of, so that the PTO's views could be sought on these references, too. (Exhibit 3, pages 18, 19 and 29). Thomson declined. (Exhibit 3, pages 23-25). Thomson can, as the court observed, keep its arguments to itself for later use in the litigation. But doing so disadvantages the litigation process

11

if the PTO could have considered a reference, because the litigation is denied the benefit of the PTO's expertise.

Thomson's last comment about prejudice is that money damages are sufficient, citing only *VData*. The period of potential harm to the plaintiffs in *VData* was short: the patents had only a year of life remaining when the stay was granted. *VData LLC*, at *3. Here, the patents have a decade or more of remaining life.

The Magistrate Judge's analysis of prejudice was reasonable, and Thomson shows no clear error here, either factually or legally.

### The Objections Should be Overruled and the Order Affirmed

The issue here is not whether the Magistrate Judge was correct. It is instead whether Thomson has shown clear error under the "extremely deferential standard" stated in *Ortiz* at *6, in *Pacesetter Inc.,* at *1, and in *Reko,* 70 F.Supp.2d at 1007. The Magistrate Judge weighed the factors, and made a reasonable decision. Thomson has failed to show clear error. Its objections must be overruled and the Order affirmed.

          Respectfully submitted,

          /s/ Joseph N. Hosteny
          Joseph N. Hosteny
          Arthur A. Gasey
          Niro, Scavone, Haller & Niro
          181 West Madison, Suite 4600
          Chicago, Illinois 60602
          Phone: 312-236-0733; Fax: (312) 236-3137
          jhosteny@hosteny.com, gasey@nshn.com

Michael R. Cunningham
Attorney No. 20424
Gray, Plant, Mooty, Mooty & Bennett,  P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Phone: (612) 632-3000
Fax: (612) 632-4444
michael.cunningham@gpmlaw.com
Attorneys for TimeBase Pty Ltd.